## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSE CRUZ, )<br><br>Plaintiff, )<br><br>v. )<br><br>REYNALDO GUEVARA, et al., )<br><br>Defendants. ) | Case No. 23 C 4268<br><br>District Judge Jeremy C. Daniel<br><br>Magistrate Judge Gabriel A. Fuentes |

### MEMORANDUM OPINION AND ORDER

In this matter before the magistrate judge on referral for discovery supervision (D.E. 49, 50), the Defendant City of Chicago ("City") has moved to (1) bifurcate trial in this case so that the claim by Plaintiff Jose Cruz ("Plaintiff") against the City for unconstitutional municipal policy under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), is not adjudicated until after resolution of Plaintiff's constitutional tort claims against the individuals he has sued, and (2) stay the *Monell* discovery until at least after that resolution. Defendant City of Chicago's Motion to Bifurcate Plaintiff's *Monell* Claim and To Stay Monell Discovery ("Bifurcation Motion"; D.E. 72). The Court necessarily examines these two requests separately, and as to discovery, we exercise our broad discretion to manage discovery in a manner that promotes the just, speedy and inexpensive determination of this matter. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); Fed. R. Civ. P. 1.

### BACKGROUND

Plaintiff's lawsuit revolves around his allegations that former Chicago Police Detective Reynaldo Guevara, seven other former police detectives (including one who is

1

deceased), a police sergeant, and an assistant state's attorney (collectively, "the Individual Defendants") wrongfully procured the 1996 murder and attempted murder convictions of Plaintiff in connection with an October 1993 shooting in which he asserts he had no involvement. First Amended Complaint ("First Am. Cmplt."; D.E. 44), passim. Plaintiff alleges that the Individual Defendants caused a witness to identify Plaintiff falsely as one of the shooters, suppressed exculpatory evidence including purported eyewitness accounts saying that the shooters were of a different race than Plaintiff, fabricated police reports, and deliberately failed to investigate the shooting to identify the actual shooters. *Id.* ¶ 3. Plaintiff alleges that as a result of the Individual Defendants having "framed"[1] him, he spent more than 28 years in prison as an innocent person. *Id.* ¶¶ 1-3. The Cook County Circuit Court vacated Plaintiff's convictions in July 2022 and granted Plaintiff a form of Illinois statutory relief known as a "certificate of innocence" in August 2023. *Id.* ¶ 8. The factual allegations Plaintiff makes against the Individual Defendants and the City, if true, point to officer misconduct spanning more than 40 years and resulting in the vacatur, by the Cook County Circuit Court, of at least 40 murder convictions associated with

---

[1] The term "frame" is a slang or colloquial term whose usage in the English language goes back some 500 years:

> The noun frame-up, along with its short form frame, is defined by Eric Partridge in his Dictionary of the Underworld as "a criminal act in which an innocent person is made to appear to be a criminal." …. In the 16th century, the Middle English noun frame, meaning "a construction," gained a more sinister meaning of "contrivance," something fashioned to gain an advantage or undue profit. "He openeth our eyes," wrote Bishop Thomas Watson in 1558, "to see the frames of our enemyes." In 1901, the Oxford English Dictionary labeled this sense "obsolete," but it turned out that this sense was not dead, only in hiding overseas, among sleazy characters far from its mother tongue's origins. In the first volume of the current O.E.D. supplement, published in 1972, that dictionary's readers were told to "delete Obs. and add later examples in U.S. Slang; especially - Frame-Up."

William Safire, "On Language; Setup, Trumped-Up, But Not Framed-Up," *The New York Times* (Oct. 5, 1986).

Defendant Guevara since December 2017. *Id.* ¶ 143; Jose Cruz's Opposition to Bifurcation Motion ("Opp."; D.E. 76) at 1. Plaintiff's *Monell* claims allege that the City orchestrated the climate in which he was convicted, in that:

> Guevara and his fellow officers' malicious and unconstitutional conduct was part of a widespread pattern and practice at [Chicago Police Grand-Central Detective] Area 5, which Defendant City of Chicago condoned, facilitated, and ratified, and under which police fabrication of incriminating evidence, withholding of exculpatory evidence, and perjured testimony to support the fabrication and concealment of evidence was routine at Area 5.

First Am. Cmplt. ¶ 10. According to the parties, Plaintiff is one of 20 persons who so far have sued Defendant Guevara, other officers and the City in this federal district on wrongful conviction claims related to Defendant Guevara's conduct. Bifurcation Motion at 5; Opp. at 2.

In the Bifurcation Motion, the City is looking to deliver a knockout or near-knockout blow to Plaintiff's *Monell* claims – the only ones leveled at the City – early in the case. The City wants the Court to bifurcate the trial to exclude Plaintiff's *Monell* claims and to stay the *Monell* discovery so that no discovery occurs on those claims, at least for now, and maybe ever. This type of motion "seeks to put completely on hold the discovery and adjudication of the *Monell* claim until resolution of the Section 1983 claims against the individual officers" and to "prevent any merits adjudication of the *Monell* claim" whether or not Plaintiff succeeds on the claims against the individuals. *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *1 (N.D. Ill. Nov. 29, 2007). In the case at bar, as in *Cadiz*, the City's Bifurcation Motion presumes that *Monell* litigation is barred if the claims against the individuals fail and unnecessary if those claims succeed, in that the plaintiff who succeeds on claims against the individuals would not receive additional compensatory damages through *Monell* liability. *Id.*; City's Reply in Support of Its Motion to Bifurcate

("Reply"; D.E. 87) at 7-8. The *Monell* aspect of the litigation becomes unnecessary for Plaintiff if he prevails against the Individual Defendants, the City maintains, because the City is consenting now to be liable for any compensatory award entered against the Individual Defendants. Bifurcation Motion at 10 & Exh. C ("Limited Consent to Entry of Judgment Against City of Chicago"; D.E. 72-3) ("Limited Consent"). In the Limited Consent, the City would consent to judgment against it for any compensatory damage award against the Individual Defendants, but expressly *not* for *Monell* liability:

> *Without admitting the Monell allegations in the Complaint*, the City will consent to entry of judgment against the City *for compensatory damages* and, to the extent allowed by the court, reasonable attorney fees pursuant to 42 U.S.C. § 1988, if the finder of fact in this case finds that any of the Individual Officer Defendants are liable for a violation of Plaintiff's constitutional rights as alleged in the Complaint.

Limited Consent ⁋ 4 (emphasis added). The Limited Consent also makes the City liable for compensatory damages stemming from a situation in which the officers are found to have committed constitutional torts but are shielded by the doctrine of qualified immunity. *Id.* ⁋ 5.

The City advances essentially three grounds for its proposed bifurcation as the most efficient way to manage this litigation, arguing that (a) with the City consenting to its own liability for compensatory damages against any of the Individual Defendants, *Monell* discovery will be wasteful if Plaintiff prevails against the Individual Defendants (because the City would pay their judgment amounts) or if he does not prevail (whereupon there would be no municipal *Monell* liability absent a factually distinct ground for relief or grounds for an injunction (not sought here) against the City); (b) the nature of the *Monell* discovery likely to be requested will place an extreme and unnecessary burden on the City in responding to it; and (c) the *Monell* evidence on municipal policy and practice,

predicated as it will be on facts concerning events and officer conduct other than that specifically implicated by what Plaintiff says happened to him, will necessarily cause unfair prejudice to the Individual Defendants if a jury were to hear all the claims without bifurcation. Bifurcation Motion, passim.

## DISCUSSION

Whether to grant the form of relief sought in the Bifurcation Motion is decided on a case-by-case basis, depending on the individual facts and posture of the case at bar. *See Rodriguez v. City of Chicago*, No. 17 C 7248, 2018 WL 3474538, at *2 (N.D. Ill. July 19, 2018) (stating that precedent on bifurcation of *Monell* discovery "shows that determining whether to allow bifurcation must be done on a case-by-case basis, looking at the specific facts and claims presented"). District courts (including magistrate judges) have wide discretion in managing discovery, *Jones*, 737 F.3d at 1107, and under Federal Rule of Civil Procedure 26(d), they may stay discovery on *Monell* claims. *Bradford v. City of Chicago*, No. 16 C 1663, 2019 WL 5208852, at *2 (N.D. Ill. Oct. 16, 2019). Courts will bifurcate civil discovery on a showing of good cause, and the party seeking to limit the discovery through bifurcation has the burden of establishing good cause based on a particular and specific demonstration of fact. *See Rivera v. Guevara*, No. 12 C 4428, 2018 WL 11469073, at *6 (N.D. Ill. May 18, 2018) ("defendants have not carried their burden to show that ordering separate trials of *Monell* and individual § 1983 claims is warranted"); *New England Carpenters Health & Welfare Fund v. Abbott Labs.,* No. 12 C 1662, 2013 WL 690613, at *3 (N.D. Ill. Feb. 20, 2013) (describing burden of establishing good cause for bifurcation as resting with the movant in civil case).

I.      **The City's Request for Bifurcation of the Respective Claims for Trial Appears Premature Now and Is Reserved for the District Court.**

Insofar as this action is before the magistrate judge on a referral including discovery supervision (D.E. 49, 50), the bifurcation of the claims for trial is a more far-reaching remedy that goes beyond the mere management of discovery.  As such, bifurcation of the claims for trial per Federal Rule of Civil Procedure 42(b) is a matter the magistrate judge reserves for the district court by denying without prejudice the trial bifurcation aspect of the City's motion.  That said, a decision now to bifurcate the trial of this matter strikes the magistrate judge as premature, with this case having been filed in July 2023, and with discovery not yet having begun in earnest.  *See Bradford*, 2019 WL 5208852, at *5 ("courts in this District have disfavored bifurcation motions filed prior to discovery"); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000) ("[D]iscovery has just begun. The Court believes that it is far too early to determine that the trial should be bifurcated.")

        Although "prejudice alone can justify bifurcation," *Bradford*, 2019 WL 5208852, at *4, the Court sees the prejudice risk as more attendant to the jury trial than to discovery, and with trial bifurcation not before us, we bypass the City's unfair prejudice argument for now. *See Medina*, 100 F. Supp. 2d at 897 (bypassing unfair prejudice arguments for trial bifurcation where, as here, "at this point neither the parties nor the Court has the least idea what evidence actually would be offered at trial on the *Monell* claim or just how prejudicial that evidence might actually be to the officers").  Unfair prejudice from *Monell* discovery, may be managed through enforcement of Rule 26(b)(1) proportionality. The remainder of this order thus addresses whether the City's arguments carry the City's burden of establishing good cause for its proposed stay of the *Monell* discovery.

## II. The City Does Not Carry Its Burden on Its Request To Stay *Monell* Discovery.

To grapple with the question of whether to stay *Monell* discovery, then, we will discuss the City's arguments that the City's consent to pay any compensatory damages incurred by the Individual Defendants, coupled with what the City says is an extreme burden of the anticipated *Monell* discovery, justifies this form of bifurcation. Under the City's arguments, bifurcation is virtually automatic no matter how Plaintiff's claims against the Individual Defendants are resolved. According to the City, if Plaintiff prevails on those claims, the City's agreement to be liable for the compensatory damages leaves Plaintiff with no ability to obtain more compensatory damages against the City, and if Plaintiff does not prevail against the Individual Defendants, the City cannot be liable as a matter of law under *Monell*. Under either scenario, the City maintains, discovery and litigation of the *Monell* claims in advance of resolving the claims against the Individual Defendants is a waste of judicial and party resources and ought to be stayed. But as we explain below, this analysis does not account for the *Monell* plaintiff who wants to use *Monell* to obtain a judgment against a municipality, even for nominal damages, in order to hold the municipality accountable for its allegedly unconstitutional policies and practices. The City's analysis presumes that a nominal judgment against it is valueless, such that *Monell* discovery in advance of resolution of the claims against the Individual Defendants is just too much trouble, not worth all that trouble, a waste of the City's and the Court's time and resources, and harmful to Plaintiff's interests. The Court respectfully disagrees that this argument establishes good cause for staying *Monell* discovery, at least where, as here, the *Monell* plaintiff sees a judgment against the municipality as important and worth the burden that *Monell* discovery will impose on him. Nor do we see the *Monell* discovery

7

is this matter as so burdensome that it must be stayed, given that the City already is undertaking to provide substantial *Monell* discovery in like cases, and given the Court's ability to monitor and to confine that discovery within the bounds of Rule 26(b)(1) relevancy and proportionality.

A.  **The City's Argument That Plaintiff's *Monell* Claims Are Dead on Arrival If He Wins Against the Individual Defendants Ignores Plaintiff's Ability To Obtain a *Monell* Judgment for Nominal Damages.**

The City argues that if Plaintiff prevails on his claims against the Individual Defendants, staying discovery of Plaintiff's *Monell* claims against the City is the necessary and logical result in light of the City's consent to be liable for any compensatory damages levied against the Individual Defendants. The City asks the Court to follow various district court decisions that have seen bifurcation and a *Monell* discovery stay as a common-sense result when the City consents to liability for compensatory damages entered against the Individual Defendants, as the City does here. Bifurcation Motion at 12-13; Reply at 8-9. The consent-to-liability mechanism is not quite the same as the statutory indemnity available to officers for tort judgments or settlements for compensatory damages and attorney's fees and costs where the officers were acting within the scope of their employment in connection with the tort in question. 745 ILCS 10/9-102. Rather, the limited consent makes the City a sort of guarantor for compensatory damages, in the event statutory or contractual indemnity for whatever reason might be disputed or unavailable. The limited consent mechanism appears to be a response to judicial concerns that the possibility of indemnity disputes or of qualified immunity for the officers calls into question the assumption that Section 1983 plaintiffs will be made whole – monetarily, at least – by obtaining judgments against the individual officers and therefore makes

bifurcation and/or *Monell* discovery stays less attractive to courts and less palatable to such plaintiffs. *See Medina*, 100 F. Supp. 2d at 896. By consenting to liability for compensatory damages, the City would foreclose the possibility of Section 1983 plaintiffs having to litigate further to obtain their monetary compensation when officers are found liable. If getting compensated upon a determination of liability is in effect guaranteed, the City posits that no *Monell* litigation is necessary because plaintiffs will obtain nothing for it. Below we address this argument by considering whether the Court is prepared to find that this Plaintiff truly does take nothing from a judgment against the City under *Monell*, assuming as we must that a *Monell* judgment does not result in his receiving further monetary compensation beyond nominal damages.

Preliminarily, we acknowledge that district courts have bifurcated Section 1983 actions (and thus stayed *Monell* discovery) where the City has consented to its liability for compensatory damages against the individuals, under the theory that the consent-to-liability agreement renders a plaintiff's *Monell* claim a superfluous exercise that is a drain on the plaintiff as well. *See, e.g., Ezell v. City of Chicago*, Nos. 18 C 1049, 1053, 1062 and 1968, 2019 WL 3776616, at *4-5 (N.D. Ill. Aug. 12, 2019) (bifurcating action where City consented to its liability for individual officers, but reasoning also that bifurcation was appropriate as well because denying it would "require Plaintiffs to wait *years* longer than is necessary to resolve their claims for compensatory damages."). Referring to how bifurcation can relieve Section 1983 plaintiffs of the burden of litigating *Monell* claims where doing so will not bring them more monetary compensation, the City calls bifurcation "no small benefit to Plaintiff." Bifurcation Motion at 10.

Plaintiff's response to the City's expressed concern for his *Monell* litigation burdens is clear enough: "Thank you very much, but no thanks at all." Opp. at 22. As for what Plaintiff seeks against the City in this lawsuit, Plaintiff has not included in his complaint a claim for injunctive relief but pleads for a judgment in his favor "against all defendants" and for "such other relief as this Court deems appropriate." First Am. Cmplt. at 56. Plaintiff further explains, in his opposition to the Bifurcation Motion, that he has two goals in this litigation: (1) being compensated for his alleged injuries, and (2) having the City "acknowledge the horrific pattern of violence, torture, perjury, fabricated and withheld evidence that he and others have suffered." Opp. at 22. Plaintiff's confirmation that he wants a judgment against the City, aside from monetary compensation, for the purpose of holding the City accountable for its alleged unconstitutional policies and practices, distinguishes this case from those on which the City primarily relies for the notion that the City's limited consent to liability for compensatory damages against the Individual Defendants counsels decisively in favor of bifurcation. *See* Reply at 8-9.

In one of those cases, *Kuri v. Folino*, 409 F. Supp. 3d 626 (N.D. Ill. 2019), the plaintiff won a verdict against individual officers and then moved to re-open the *Monell* aspect of the litigation, long after the court had bifurcated the case and stayed *Monell* discovery – *with the plaintiff's agreement. Id.* at 652-53. Plaintiff in the case at bar is not agreeing to bifurcation at the outset of pretrial litigation; he wants his *Monell* claim included in that litigation, even if no additional money damages are available later, because, he says, he wants to obtain a judgment against the City so that its alleged unconstitutional policies are "acknowledge[d]." First Am. Cmplt. at 56. The decision in *Kuri* did not address the value to plaintiff, or to society at large, of a judgment against the

City under *Monell*, reasoning that because of the Illinois statutory indemnification provisions, "Kuri is virtually certain to collect his compensatory damages award," "is not able to collect anything in addition to that," and was not pressing any claim for injunctive relief, so that "there is no live case or controversy against the City on which Kuri can move forward" under *Monell*. *Id.* at 653. Thus, *Kuri* captures in a nutshell the arguments the City makes here about how useless and wasteful *Monell* litigation would turn out to be if Plaintiff prevails against the Individual Defendants. But the problem is that *Kuri* did not address the value of a judgment against the City for nominal damages and assumed that without a claim for compensatory damages or injunctive relief, no live controversy remained.

Similarly, in another case cited by the City, *Andersen v. City of Chicago*, No. 16 C 1963, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016), the City consented to entry of judgment against itself in the event of a liability finding against the individual officers, and the court granted bifurcation, but it did so in large part based on judicial economy and the court's refusal to accept the plaintiff's argument that individual defendant discovery overlapped significantly with *Monell* discovery. *Id.* at *5-6. Like *Kuri*, *Andersen* did not evaluate whether Section 1983 plaintiffs have any right or ability to pursue *Monell*-based judgments against municipalities not because these plaintiffs want more money, but because they see nominal judgments as having an intrinsic value to them and to society.

The law allows Section 1983 plaintiffs to do so. Section 1983 itself provides as follows in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

To be clear, the Supreme Court has held definitively that federal civil rights plaintiffs suing for certain "absolute" constitutional rights or those with "importance to organized society" may employ Section 1983 to pursue judgments for nominal damages "without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978). In *Carey*, which was decided nearly three months before *Monell*, public school students sued several Chicago school administrators in their official capacity for alleged procedural due process violations stemming from the students' suspensions from school, and the Supreme Court confirmed that nominal damages were available against these defendants. *Id.* at 250 n.2, 266-67. Municipal *Monell* liability was not before the Supreme Court in *Carey*, but other courts including the Seventh Circuit have acknowledged that nominal damages for civil rights violations are available in *Monell* litigation. ***See Swanigan v. City of Chicago***, 775 F.3d 953, 962 (7th Cir. 2015) ("if a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs, a *Monell* claim against the municipality will offer a prevailing plaintiff no additional remedy (*aside, perhaps, from nominal damages.*)" (emphasis added) (*Swanigan I*). (We will discuss the *Swanigan* cases further below.) "[I]n civil rights cases, nominal damages are appropriate when a plaintiff's rights are violated but there is no monetary injury." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 805 (7th Cir. 2016), citing *Carey*, 435 U.S. at 266–67. The Seventh Circuit in *Six Star* affirmed the district court's judgment awarding nominal damages against the City of Milwaukee for

alleged First Amendment violations arising from that city's enforcement of ordinances directed at strip clubs. *Six Star*, 821 F.3d at 805. The lawsuit in *Six Star* was brought under Section 1983. *Six Star Holdings, LLC v. City of Milwaukee*, 932 F. Supp. 2d 942, 944 (E.D. Wis. 2013). *See also Devbrow v. Kalu*, 705 F.3d 765, 769 (7th Cir. 2013) ("'Damages are not an element of liability in a[n Eighth Amendment] deliberate indifference claim.'"), quoting *Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012).

The Second Circuit, citing *Carey*, has addressed this question in greater detail in the context of *Monell* and bifurcation, holding specifically that even in case postures in which a civil rights plaintiff is barred from seeking compensatory damages against municipal defendants through *Monell* claims, such plaintiff still may seek $1 in nominal damages against the municipal defendants. *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 317 (2d Cir. 1999), cited with approval in *Dumiak v. Village of Downers Grove*, 475 F. Supp. 3d 851, 857 (N.D. Ill. 2020) ("nominal damages are all plaintiffs need for their *Monell* claim to avoid dismissal") and *Cadiz*, 2007 WL 4293976, at *9-10 (denying bifurcation for some of the reasons expressed in *Amato*). The Second Circuit rejected the municipality's position (taken here by the City) that if only nominal damages were available against the municipality, there could be no *Monell* claim against it:

> This position is contrary to the rationale behind permitting suits based on the deprivation of constitutional rights to proceed despite a lack of proof as to actual injury. As the Supreme Court has stated, "[b]y making the deprivation of such ['absolute'] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." *Carey*, 435 U.S. at 266, 98 S.Ct. 1042. Thus, while the monetary value of a nominal damage award must, by definition, be negligible, its value can be of great significance to the litigant and to society.

*Amato*, 170 F.3d at 317.

The City's syllogism in the Bifurcation Motion posits that a stay of *Monell* discovery is the most logical and natural result from the assumption that two scenarios could emerge from Plaintiff's pursuit of his individual claims. In the first scenario, the Individual Defendants are found liable and are tagged with actual or compensatory damages. In the second scenario, the Individual Defendants are found not liable. The syllogism says that in either scenario, Plaintiff would have no *Monell* claim, but that syllogism is an oversimplification because it does not account for a third scenario: one in which the officers are found liable, and nominal damages are awarded against the municipality under *Monell*. *See id.* at 320. The City confirms that its syllogism is the "core" of its argument for a *Monell* discovery stay: "Resolution of Plaintiff's claims against the Defendant Officers, *necessarily* resolves the *Monell* claim against the City. There is no need for wasteful and expansive *Monell* discovery and the limited consent offered by the City underscores this point." Reply at 7-8 (emphasis added). But that "core" assumption behind the City's Bifurcation Motion is inaccurate. The City's limited consent to liability for the Individual Defendants is not a consent to *Monell* liability. Nominal damages under *Monell* remain as a remedy against the City if Plaintiff obtains compensatory damage awards against the Individual Defendants, no matter if the City has agreed to pay those damages. And in failing to grasp the availability of a nominal damages award, the City has not accounted for the value a nominal *Monell* judgment may have for Plaintiff and his stated interest in changing what he says is a systemic pattern and practice of abusing criminal suspects and procuring repeated wrongful murder convictions for some 40 years in Chicago. Or, at least, the City invites the Court to value those interests at zero. This we decline to do.

14

The Second Circuit addressed the potential significance of *Monell* claims for nominal damages this way:

> The ability to promote an individual official's "scrupulous observance" of the Constitution is important. Perhaps even more important to society, however, is the ability to hold a municipality accountable where official policy or custom has resulted in the deprivation of constitutional rights. A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality….[N]ominal damages serve a different function by allowing plaintiffs to sue merely "to obtain a ruling by a court that the defendant's conduct was tortious." The primary purpose of nominal damages in these cases is thus to guarantee that a defendant's breach of these duties will remain actionable regardless of their consequences in terms of compensable damages …. [W]e need not worry that Amato has already "scored his victory" or that our present holding otherwise runs afoul of the principle disallowing duplicative awards. First, as the above discussion demonstrates, there is a real question as to whether nominal damages can ever be strictly "duplicative" in the present context because they are meant to guarantee that unconstitutional acts remain actionable rather than to "measure" the constitutional injury in any meaningful sense (or to serve as a replacement for speculative damages).

*Amato*, 170 F.3d at 317-19 (internal citations omitted). In *Amato*, the district court dismissed the *Monell* claim after the civil rights plaintiff obtained a liability verdict against the individual officers at a jury trial only as to them, as the district court had bifurcated the litigation to put the *Monell* claim on hold. *Id.* at 320-21. On review, *Amato* did not dismiss the concept of bifurcation altogether, describing it as "an important tool" but warning that it "should not constitute a barrier to suits against municipalities." *Id.* at 321. The holding of *Amato* was that the district court erred in dismissing the *Monell* claim after the plaintiff had obtained a liability verdict against the officers "[p]recisely because nominal damages afford a litigant vindication of the deprivation of his constitutional rights …." *Id.* at 320.

In *Swanigan I*, the Seventh Circuit addressed a similar case posture, in which a Section 1983 plaintiff saw his action bifurcated so that the *Monell* aspect of the litigation was stayed, and after the plaintiff prevailed at trial against the individual defendants, the district court dismissed the *Monell* claims under the theory that the plaintiff had nothing left to litigate, and the court of appeals reversed. 775 F.3d at 955, 964. The Seventh Circuit reversed the district court's dismissal of the *Monell* claim because the dismissal had "wrongly assumed that Swanigan had waived all other possible theories of *Monell* liability. He clearly did not." *Id.* at 962. The court noted that it was "sensible" to stay a *Monell* claim while claims against individual officers were litigated to judgment (although that issue was not then before the court) "*[i]f a § 1983 plaintiff seeks only monetary relief,*" and noted the legal bar to double recovery as an obstacle to the plaintiff's ability to recover damages in his *Monell* suit. *Id*. (emphasis added). Here, Plaintiff has expressly said that he looks to *Monell* to obtain something more than money: He wants a judgment against the City as well as monetary compensation for his injuries. Nothing in *Swanigan I* indicates that a stay of *Monell* discovery would be appropriate in this situation.

Indeed, the foregoing discussion in *Swanigan I*, in referring to the availability of non-compensatory relief that a plaintiff might pursue under *Monell* once officer liability is established, is consistent with *Amato* and the Second Circuit's warnings in that case about the possible ills of bifurcation in Section 1983 cases with *Monell* claims. *Swanigan I* envisioned multiple circumstances in which *Monell* liability might not overlap with individual officer liability, such as cases with "factually distinct" *Monell* claims that thus were not precluded by a defense verdict on the individual claims, or cases in which plaintiffs might seek "an injunction against future constitutional violations or some other

equitable remedy, and he may be willing to invest the time and effort needed to prove his entitlement to that relief." *Id.* In those sorts of cases, the Seventh Circuit said in *Swanigan I*, plaintiffs should be entitled to try to prove their *Monell* claims, as such claims may have "remedial import" beyond the money damages claims. *Id.*, citing David F. Hamilton, *The Importance and Overuse of Policy and Custom Claims: A View From One Trench,* 48 DePaul L. Rev. 723, 734–35 (1999) ("Hamilton").[2]

As we already have noted, Plaintiff has confirmed that in addition to compensatory damages, he wants a judgment against the City under *Monell* as a way of forcing an acknowledgement of the City's alleged unconstitutional policies and practices. Opp. at 22. The Bifurcation Motion, by passing over the idea of nominal damages and a judgment against the City, invites the Court to pass over it as well, or to conclude that this aspect of Plaintiff's litigation goals are so negligible that they must be sacrificed at the altar of judicial economy. The City's argument presumes that *Monell* claims are simply not that important to plaintiffs, because after all, no compensatory damage award or injunction is included in a nominal damages award against the City. That of course is the very argument that the Second Circuit rejected in *Amato*. In addition, it ignores the Seventh Circuit's

---

[2] The cited passage from the Judge Hamilton article is as follows:

> *Monell* custom and policy claims retain an important role in protecting individual rights. That role is narrower than simply finding a deep pocket or opening up doors to a lot of prejudicial evidence. . . . There may be a few cases in which government wrongdoing appears so systemic and widespread that a *Monell* trial would, if plaintiffs prevail, have significant deterrent value-- significantly greater than successful litigation of individual claims …. [T]hese may be some of the most important cases. Where a plaintiff and her knowledgeable lawyers are prepared to invest substantial time and money in such an effort, the court may want to consider whether the particular case is one of these rare cases that warrant the greater efforts necessary to litigate and resolve the *Monell* issues.

Hamilton, 48 DePaul L. Rev. at 734-35.

reminder that "[s]ome cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights." *Swanigan I*, 775 F.3d at 962

In the 24 years since the Judge Hamilton article, many allegations have swirled around certain Chicago police detectives, including Defendant Guevara, whose criminal investigations have led to no less than 40 – and that is a big number – persons being exonerated of the grave offense of murder in Cook County in the past six years, according to an undisputed assertion by Plaintiff. *See* Opp. at 1. In other Section 1983 cases related to these exonerations, Defendant Guevara has invoked his Fifth Amendment right against self-incrimination rather than testify. *Serrano v. Guevara*, Nos. 17 C 2869, 17 C 4560, 2020 WL 3000284, at *12 (N.D. Ill. June 4, 2020); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1038 (N.D. Ill. 2018). The Court takes not much of a leap in concluding that Plaintiff's *Monell* claim is one of these important *Monell* claims that Judge Hamilton saw as worth closer judicial consideration on bifurcation motions. In undertaking that closer examination, we are not prepared to second-guess Plaintiff's assertions about the significance of his *Monell* claims and thus the importance of his ability to discover and litigate them just as any other plaintiff might litigate other significant claims, unfettered by bifurcation and the delays it imposes on *Monell* discovery. Likewise, we also find ourselves reluctant to speculate that deterrent effects from liability judgments against cities under *Monell* will be so minimal (or so comparatively less than compensatory damage awards against individual officers where the City pays the awards) that judges should pay little or no heed to a plaintiff's stated interest – as in this case, for example – in obtaining

a *Monell* judgment intended to force an acknowledgement of past unconstitutional municipal practices. *See Cadiz*, 2007 WL 4293976, at *10 (declining to so speculate and acknowledging the reasonableness of a conclusion that a *Monell* verdict against the City "could provide a greater incentive for change than the payment of a damages award that the City could then chalk up to aberrational conduct by a rogue officer").

After *Swanigan I*, the plaintiff in that matter on remand repleaded his *Monell* claim, which the district court dismissed, generating a second appeal in which the Seventh Circuit affirmed. *Swanigan v. City of Chicago*, 881 F.3d 577, 582-84 (7th Cir. 2018) (*Swanigan II*). The City cites *Swanigan II* for the premise that double recovery through a *Monell* claim is impermissible or that the outcome of a trial with a *Monell* claim would be the same as the outcome of a bifurcated trial without one. Bifurcation Motion at 12-13, Reply at 8-9, 14-15. The City is only partially correct in its assertion, because as we know from our careful review of *Swanigan I*, and of the line of cases tracing to *Carey*, a judgment on the *Monell* claim against the municipality for nominal damages plus a judgment against the individuals for compensatory damages is *not* a double recovery, and together these outcomes represent vindications of very different interests, namely the same interests as Plaintiff says he wishes to vindicate here. Opp. at 22. Although the parties' briefing did not cite *Swanigan I*, the Court nonetheless saw *Swanigan I* as significant to the resolution of the Bifurcation Motion. As for *Swanigan II*, the far-earlier bifurcation in the district court was not before the Seventh Circuit and was not mentioned on review of the district court's second dismissal of the *Monell* claims, which the court of appeals determined were rightly dismissed because no viable additional theories of compensatory damage or

injunctive relief were alleged, with nominal damages or the value of a nominal damage judgment against the City not at issue. 881 F.3d at 582-84.

We must also note that Plaintiff relied heavily on *Cadiz*, a decision that in many respects tracks *Amato*, and that declined to minimize the potential value of nominal judgments against cities under *Monell* even where plaintiffs recovered compensatory damages against individual officers. 2007 WL 4293976, at *9-10. Plaintiff argues that "the ultimate effect of granting the City's Motion would be to bar Cruz's *Monell* claim in perpetuity," Opp. at 22, and this Court sees that argument as having merit, even if the claim is not barred completely but is sidelined or disabled for such a long period that the effort, expense and litigative risks involved in reviving it later may well leave it barred in perpetuity for practical purposes.

> [T]he City proposal would foist upon an unwilling plaintiff the elimination of her *Monell* claim. We do not believe that the City should be allowed to deprive a plaintiff of a merits determination of a *Monell* claim by the expedient of agreeing to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway.

*Cadiz*, 2007 WL 4293976, at *11.[3] The City's Limited Consent in this case removes all doubt that the City will pay any compensatory damages, but it does not operate to render "fruitless" the *Monell* facet of this litigation amid its independent value. *See Warfield v. City of Chicago*, No. 05 C 3712, 2009 WL 10739475, at *2 (N.D. Ill. June 25, 2009) (barring *Monell* claims where City's consent to liability included liability for *Monell* claims and agreeing with *Cadiz* that in cases involving consents to liability only for compensatory damages, "a judgment [under *Monell*] against the City itself has independent value" and

---

[3] Further, we agree with *Cadiz*'s reasoning that bifurcation and *Monell* discovery stays are not automatic in Section 1983 cases with *Monell* claims, in that if that relief were automatic, courts would never refuse to bifurcate, yet they do. *Id.* at *3.

should not be barred as "fruitless").  In view of the availability and possible public import of nominal damages on Plaintiff's *Monell* claim, we follow *Cadiz* in declining to foist a *Monell* discovery stay on this unwilling Plaintiff where bifurcating or staying discovery on the *Monell* claims risks substantially the deprivation of a *Monell* merits determination.[4]

> **B.**    **The Court Declines To Stay *Monell* Discovery Based on the Speculative Possibility that Plaintiff Might Lose Against the Individual Defendants and Then Have No Factually Distinct *Monell* Claim Against the City.**

Because the death of Plaintiff's *Monell* claims does not necessarily flow from his prevailing on his compensatory damages claims against the Individual Defendants (if Plaintiff does so prevail), the City's syllogism collapses.  Stays of *Monell* discovery, and bifurcation, are not categorically called for no matter how a plaintiff's claims against individuals are resolved.  Amid this collapse, the second scenario – in which Plaintiff does not prevail on his claims against the Individual Defendants – loses much of its force in the argument for a *Monell* discovery stay.  In addition, the Court is not prepared to join in the City's assumption that Plaintiff's *Monell* claims will necessarily fail if he does *not* prevail against the Individual Defendants.

The City has stated correctly the legal rule for what happens to Section 1983 *Monell* claims if a plaintiff does not prove constitutional torts by the individual officers.  In *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the Supreme Court held that municipal

---

[4] Our discussion of *Cadiz* brings us to the parties' spirited debate, in the briefing on the Bifurcation Motion, about just what is this district's prevailing or minority view on bifurcations and discovery stays in *Monell* cases.  Plaintiff insists that bifurcation has become a "minority view" since *Cadiz*, which Plaintiff says triggered a "major sea change" in this district's jurisprudence on discovery bifurcation concerning *Monell* claims; the City disagrees.  Opp. at 5-7; Reply at 7-8. But the Court is refraining today from resolving that particular disagreement, and from deciding the Bifurcation Motion based on which way the wind may be blowing now as opposed to 10 to 20 years ago. Instead, we look at the cases on their own merits, as applied to the specific facts in the instant case and the degree to which the City has or has not met its burden of establishing good cause for discovery bifurcation based on a particular and specific demonstration of fact.

liability is contingent on officer liability. But our court of appeals has noted a narrow exception to the rule in *Heller* where the *Monell* claim is factually distinct from the claims against the individual officers. *See Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2009) ("a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict"). The possibility that Plaintiff may retain a *Monell* claim factually distinct from the claims against the individual officers weighs against staying *Monell* discovery in this case.

First, we will not speculate on whether Plaintiff indeed will fail in his claims against the Individual Defendants and nor will we speculate as to whether Plaintiff, under the *Thomas* exception to *Heller*, would or would not have a factually distinct *Monell* claim if his compensatory damage claims against the Individual Defendants fail. Plaintiff may or may not obtain liability verdicts against these defendants. We do not weigh in on the strength of Plaintiff's allegations here, except to say that as the party with the burden on the Bifurcation Motion, the City has not persuaded the Court that Plaintiff's failure against the Individual Defendants is so likely that discovery on the *Monell* claim should be shelved now because that claim is certain to die after trial of his Section 1983 claims against the Individual Defendants.

Second, because a jury may find independent municipal *Monell* liability even if the Individual Defendants prevail as to Plaintiff's claims against them individually, "bifurcation weighs against the interests of judicial economy." *Maysonet v. Guevara*, No. 18 C 2342, 2020 WL 3100840 (N.D. Ill. June 11, 2020). In *Maysonet*, the district court considered a motion very much like this one, seeking bifurcation of the claims for trial and a stay of *Monell* discovery. The parties in that case agreed that most of the *Maysonet*

plaintiff's theories would require, for municipal *Monell* liability, findings of misconduct against the individual officer, with the possible exception of plaintiff's *Monell* claim that the City had an unconstitutional policy or practice of suppressing exculpatory evidence. *Id.* at *2. (In the case at bar, Plaintiff also alleges a *Monell* claim that the City had a policy of suppressing exculpatory evidence. First. Am. Cmplt. ¶¶ 10, 151, 159-61, 215(b), 221.) The district court noted in *Maysonet* that such a policy could subject the City to *Monell* liability even in the absence of a finding of liability against the individual officers or if the officers were shielded from liability under the defense of qualified immunity, so that bifurcation ought to be denied. *See Maysonet*, 2020 WL 3100840, at *2 (citing cases). The very same possibilities exist here for independent municipal liability even if the Individual Defendants prevail as to Plaintiff's claims against them individually.

Third, we are not in a position to resolve definitively, before any discovery, whether the overlap of the *Monell* discovery with the individual discovery will be at a level that would weigh in favor of staying *Monell* discovery to promote a just, speedy and inexpensive resolution of this matter. *See* Fed. R. Civ. P. 1. The City has taken somewhat inconsistent positions on this point. On the one hand, the City points to Plaintiff's limited admission that there is substantial overlap between the individual allegations and the *Monell* allegations (*see* Opp. at 8 n.1 ("[S]olely for purposes of this Motion … Cruz will concede that the City is likely to establish that there is significant overlap")) as proof that "it is very likely the parties could avoid both *Monell* discovery and a *Monell* trial, saving significant amounts of money and time for both the parties and the Court." Reply at 2. On the other hand, the City argues "[t]he discovery necessary to adjudicate Plaintiff's claims against Defendant Officers will be miniscule compared to the volume of discovery

necessary to prepare Plaintiff's Monell claim for trial." Bifurcation Motion at 15. Few courts at this early phase of a Section 1983 action would ever be in the position to determine the degree of overlap, and requiring a complete or virtually complete overlap to deny bifurcation seems like an extreme result. *See Cadiz*, 2007 WL 4293976, at *3 (denying bifurcation and concluding that the absence of a perfect overlap between *Monell* discovery and individual claim discovery will be "inevitable with any *Monell* claim," in that the *Monell* aspect of any Section 1983 case expands the scope and cost of discovery beyond what likely would be seen in a Section 1983 case without *Monell* claims).

Accordingly, we cannot assume that a no-liability finding for the Individual Defendants would occur or that if it does, it would definitively preclude *Monell* liability against the City, and so this second scenario in the City's bifurcation syllogism falls along with the first.

### C. The City Overstates the Purported "Extreme and Unnecessary" Burden of *Monell* Discovery, Insofar As the City Is Producing *Monell* Discovery in Other Guevara Wrongful Conviction Lawsuits.

The City argues that the *Monell* discovery will be so vastly different and more expansive than the individual discovery that the Court ought to stay *Monell* discovery as a way of managing what otherwise would be an overwhelming burden for the parties and the Court. Bifurcation Motion at 12. We do not concern ourselves here with any burden on Plaintiff from such discovery, as he is prepared to shoulder that burden and does not see it as a reason to stay the *Monell* discovery. We focus instead on the burdens said to be imposed on the Court and the City if *Monell* discovery is not stayed. We do not see the City's arguments as carrying the City's burden of showing good cause for the stay.

As for burden on the Court, this point came up in *Cadiz* and is worth repeating:

> To the extent that plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the Court can and will tailor them as necessary, as other courts have done.

*Cadiz*, 2007 WL 4293976, at *3. This Court agrees, and as we discuss further below, we do not see the wide scope of the anticipated *Monell* discovery as a reason to stay it, at least under the circumstances of the instant matter. The City's assertions about the unmanageable scope of *Monell* discovery in this case appear to discount, without basis, the ability of district courts to rein in *Monell* discovery if it should become irrelevant or disproportionate to the needs of the case per the limits on discovery scope in Federal Rule of Civil Procedure 26(b)(1). *See DeLeon-Reyes v. Guevara*, Nos. 18 C 1028 and 18 C 2312, 2019 WL 4278043, at *1 (N.D. Ill. Sept. 10, 2019) (ruling on discovery motions concerning the scope of *Monell* discovery after the district court had denied a bifurcation motion). For example, the City's claim that Plaintiff will seek to discover "all documents related to every homicide investigation in the City," Bifurcation Motion at 14, does little more than persuade the Court that on a proper discovery motion, the Court could evaluate a discovery request's proportionality and could limit the request as appropriate under Rule 26(b)(1).

As for the *Monell* discovery's burden on the City, the City relies on various decisions in which courts granted bifurcation or stayed *Monell* discovery after determining that the City's liability was dependent on the liability of its officers. *See, e.g.*, *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1083 (N.D. Ill. 2018) (reasoning that plaintiff had not explained "how the individual discovery based on his allegations of misconduct against the Officers involved in his case overlaps in a meaningful way with his contention that the City maintained a coercive investigative practice and maintained street files"), citing

*Andersen v. City of Chicago*, No. 16 C 1963, 2016 WL 7240765, at *4-5 (N.D. Ill. Dec. 14, 2016). To some extent, these cases flip the burden onto plaintiffs on bifurcation motions, and as the Court explained above, it is premature in this case to determine the extent of overlap between Plaintiff's individual and *Monell* claims.

Nonetheless, we take an independent look at just what the scope of the *Monell* discovery is, or at least at the degree to which it may overburden the City to a degree that might warrant staying that discovery. The City describes the *Monell* claims as accusing the City of having "de facto" policies of actively encouraging, through a regime of deficient training and supervision, at least the following:

- allowing officers to conceal secret files from criminal defendants;

- allowing officers to coerce suspect and witness statements and identifications;

- allowing evidence fabrication;

- allowing officers to lie under oath per an alleged "code of silence"; and

- failing to properly document interviews in homicide investigations.

Bifurcation Motion at 1-2. The City adds:

> In the recently litigated Guevara-related cases that have proceeded without *Monell* bifurcation, plaintiffs have requested discovery spanning decades related to: 1) every policy and procedure regarding police officer discipline or disciplinary proceedings, 2) all policies related to numerous other topics, including but not limited to documentation, preservation, and use of homicide files and documents, responding to subpoenas in homicide cases, witness interviews, use of gang books, training for homicide investigations, disciplinary investigations, supervision, and testifying at criminal cases, 3) all documents identifying all policymakers for any of these policies, 4) disciplinary records of every CPD employee (not just officers or Area 5 detectives), 5) other disciplinary records, and 6) all documents related to every homicide investigation throughout the City …. If Plaintiff here seeks half, or even a quarter of the amount of documents and other discovery that other plaintiffs have requested in the past, or that Plaintiff's law firm has in the past, the burden would be astounding …. [C]ostly expert discovery will invariably follow …. [T]he City will be required to identify multiple Rule

30(b)(6) witnesses on multiple wide-ranging topics addressing policies from 33+ years ago. Further, if past is prologue, Plaintiff will likely subpoena defense files from the Cook County Public Defender's Office to prove his *Monell* theory based on the City's purported "clandestine file" practice. (See Dkt. 44, ¶¶ 158-61). In defense, the City will have to issue subpoenas to the Cook County State's Attorney's Office to obtain companion files for years of homicide files, meaning more wasteful public spending. These agencies are already spread thin as it is but would be forced to dig up hundreds (or thousands) of files.

*Id.* at 13-16. The City adds that "[t]here is no question that the scope of the *Monell* discovery in this case will differ from those in the past," as "Plaintiff's *Monell* allegations are broader and more wide-ranging that those of other Guevara plaintiffs." *Id.* at 13-14.

This Court does not question that the volume of the *Monell* discovery will be very substantial, but that situation is not of this Plaintiff's making. The City takes this Plaintiff as it finds him, and he is alleging a widespread and longstanding set of policies involving Defendant Guevara and other officers at Area 5, implicating numerous other murder exonerations. The Court will not order a discovery stay that stifles the unwilling Plaintiff's litigation of his *Monell* claims simply because those claims – and the discovery that will come with them – are, in a word, big. If that were the rule, *Monell* discovery categorically could not proceed in Section 1983 cases alleging the most significant and far-reaching forms of *Monell* liability. That would be a perverse result.

In addition, the factual context of this matter includes the proliferation of lawsuits, and some 20 at this point in this district, directed at Defendant Guevara, other officers who worked with him, and the City under *Monell*. Plaintiff's *Monell* allegations are hardly unique to this case, and the City's having to undertake *Monell* discovery in other Guevara wrongful conviction matters undercuts the City's argument that such discovery here is so burdensome that a stay of *Monell* discovery is necessary. The other cases in which the City

is being required to produce *Monell* discovery include *Maysonet*, in which the district court three years ago noted, in denying bifurcation, that despite the significant burden *Monell* discovery would place on the City, the City already had produced or would be producing *Monell* discovery in numerous other cases involving "a similar group of Chicago Police Officers" including Defendant Guevara. 2020 WL 3100840, at *3. Such *Monell* discovery, likely to be a substantial part of *Monell* discovery in the case at bar as well, included "written policies and training manuals, employee records, and samples of homicide and or CR files [that] have or will be produced in other cases …." *Id.*

Here, the City's collection, in its briefing on the Bifurcation Motion, of wrongful conviction cases in this district involving Defendant Guevara only confirms that the City as of this writing has undertaken or is undertaking substantial *Monell* discovery in several Guevera Section 1983 matters. The City's list includes *Maysonet* and at least seven other matters in which, according to the City, courts either denied bifurcation or phased the *Monell* discovery by calling for it to be addressed after non-*Monell* fact discovery, without formally staying it. Reply at 5-6, citing *Rivera v. Guevara*, No. 12 C 4428; *Solache v. Guevara*, No. 18 C 2312; *Maysonet v. Guevara*, 18 C 2342; *Gomez v. Guevara*, 18 C 3335; *Rodriguez v. Guevara*, No. 18 C 7951; *Iglesias v. Guevara*, No. 19 C 6508; and *Johnson v. Guevara*, No. 20 C 4156. From all this, we must conclude that the City has substantial experience in searching for and producing the species of *Monell* discovery that Plaintiff is likely to seek in this matter. And that lessens the City's burden.

We thus conclude, in our case-specific analysis, that by virtue of *Monell* discovery having proceeded in multiple other Guevara-related lawsuits, the City's burden in producing *Monell* discovery in this case is not as great as how the City describes it in the

Bifurcation Motion. The progress of *Monell* discovery in other Guevara cases such as *Maysonet* suggests strongly to the Court that producing this discovery will not be the insurmountable hurdle that the City has described. Other courts have seen this question in the same light. "'The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation.'" *Maysonet*, 2020 WL 3100840, at *3, quoting *Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015). Moreover, as we have said, the Court is confident that Rule 26(b)(1) remains as an adequate tool for judicial management of this discovery.

### D. The Court Will Not Discount The Theory that a Plaintiff Ought To Be Allowed To Be "the Master of His Complaint."

Finally, the Court must also consider the effect of s stay of *Monell* discovery on Plaintiff's ability to pursue his claims in the lawsuit. As courts including *Swanigan I*, *Amato*, and *Cadiz* indicated, the *Monell* claims in a Section 1983 lawsuit may well be aimed at ending unconstitutional municipal practices, and plaintiffs in these cases are allowed to attempt to do so. Staying *Monell* discovery until resolution of claims against individuals cuts against pursuit of that aim. At least one court in this district in one of the Guevara matters has questioned whether that outcome is fair or even efficient, particularly where there is overlap between the individual and *Monell* discovery, as there is here.

> Moreover, much of the evidence required to litigate the individual claims will be relevant to the *Monell* claim and *vice a versa*, such that bifurcation could result in two rounds of depositions and document production. *See e.g., Gomez*, 2019 U.S. Dist. LEXIS 155120, at *11 (denying bifurcation of *Monell* claim in part because in § 1983 cases "there is a significant overlap in the witnesses, experts, and evidence" such that it "could create double work in the sense of, for example, needing to depose witnesses or solicit testimony first regarding [plaintiff's] specific case and a second time regarding how the City's policies impacted that case work.") …. [I]n the

> case that there is a second trial, Plaintiff would certainly seek the right to ask these individuals *Monell*-related questions and request *Monell*-related documents that were not produced earlier. Thus, because bifurcation would likely duplicate discovery efforts and expense, and because the burden of unitary discovery is lessened by the expanse of similar litigation, the interests of judicial economy weigh against bifurcation.

*Maysonet,* 2020 WL 3100840, at *3 & n.3. Another district court, in a non-Guevara case, questioned whether bifurcation ought to be allowed to detract from Plaintiff's ability to be "the master of his complaint." *Gibson v. City of Chicago,* No. 19 C 4152, 2021 WL 2127182, at *2 (N.D. Ill. Apr. 6, 2021). In *Gibson*, the district court, in a matter involving Section 1983 allegations against the City and detectives including the late Jon Burge, denied *Monell* bifurcation by reasoning that "the City's argument discounts that Gibson is the master of his complaint and has chosen to pursue both individual and municipal liability claims." *Id.*

Decisions like *Maysonet* and *Gibson* recognize that as difficult as *Monell* claims may be to prove, some plaintiffs should be allowed to attempt to prosecute their Section 1983 actions unimpeded by bifurcation and/or *Monell* discovery stays, even if the municipality is consenting to be liable for compensatory damage awards against the individual officers. *See Maysonet*, 2020 WL 3100840, at *5 ("This Court will not deprive a plaintiff, particularly one who has spent 27 years in prison on a conviction that has been vacated by the state courts, a merits determination on a *Monell* claim …. [C]onsent to judgment agreements like that proposed here may pose a benefit to someone in Maysonet's position. But the Court will not force Maysonet to accept such an agreement and forfeit a merits determination on his *Monell* claim through the vehicle of bifurcation.").

The City also relies on an unpublished grant of bifurcation in another Guevara matter, *Serrano/Montanez v. Guevara*, No. 17 C 4560 (3/19/19 Tr.) (Exhibit B to

Bifurcation Motion, D.E. 72-2 at 9), in which the district court stated that "[j]ust because

plaintiffs can resort to Section 1983 and *Monell* liability doesn't mean that that theory is

always a good use of resources. Rules 1 and 42 contemplate that courts should try to bring

costs and time down." Bifurcation Motion at 13, quoting *Serrano/Montanez v. Guevara*,

No. 17 C 4560 (3/19/19 Tr.) (Exhibit B to Bifurcation Motion, D.E. 72-2) at 9. This Court

neither disagrees with *Serrano/Montanez* nor sees that unreported decision as changing the

outcome on the Bifurcation Motion here. The court's statement in *Serrano/Montanez* about

the need to conserve judicial and party resources, and about the utility of bifurcation in

doing so in certain Section 1983 cases with *Monell* claims, is correct and fully in line with

the Seventh Circuit's discussion in *Swanigan I*. This Court simply looks at the proposed

stay of *Monell* discovery in this case differently in placing greater weight on the plaintiff's

desire to be the "master" of his complaint and to press *Monell* claims he sees as particularly

significant within the factual context of this matter. That context also includes the ongoing

*Monell* discovery the City already is producing in other Section 1983 and *Monell* cases

arising from constitutional torts alleged to have been committed by Defendant Guevara.[5]

---

[5] Nor is the Court persuaded by the City's account of how a magistrate judge of this court apparently denied bifurcation in a Guevara case and then later made on-the-record comments indicating a change of heart in light of the *Monell* discovery turning out to be more expansive than the judge had expected or than counsel in that case had represented. *See Bouto v. Guevara*, No. 19 C 2441, 2020 WL 956294, at *2-3 (N.D. Ill. Feb. 27, 2020); Reply at 3-4 (citing *Bouto*, No. 19 C 2441 (9/22/21 Tr.), Exhibit 1 to Reply, D.E. 87-2 at 7). The City offers its account of *Bouto* for the first time on reply. The fact that a judge had a change of mind over discovery bifurcation in a Guevara Section 1983 lawsuit, assuming that this is what happened, would not represent the first or the last time a judge reconsidered or rethought the efficacy of an earlier order. The quoted passage does not persuade this Court that a *Monell* discovery stay is necessary in this action (or, for that matter, all analogous actions) based on a theory that the plaintiffs' bar in these cases somehow cannot be trusted to describe the putative *Monell* discovery accurately. Nothing before the Court today would support such a theory. Incidentally, the court in *Bouto* initially denied bifurcation upon observing that "[b]ecause litigating a case in a piecemeal fashion is likely to cause delay, bifurcation is the exception and not the rule. The last ten years of bifurcation jurisprudence in the Seventh Circuit demonstrates that it is clear that the weight of authority holds that bifurcation is now heavily

That is not to say that the amount of burden a plaintiff with *Monell* claims may impose on a municipal defendant, or on the courts, ought to be unlimited or boundless. But the Court is skeptical about the City's conclusory and speculative assertions that *Monell* discovery in this case will necessarily be unlimited, boundless, or judicially uncontrollable. The Court also places no weight on the City's conclusory and frankly inconsequential commentary about how Plaintiff's lawyers have sought expansive *Monell* discovery in other cases. *See* Bifurcation Motion at 14-15. Nothing about how Plaintiff's lawyers have conducted themselves in other matters will bear upon how the Court might regulate *Monell* discovery here under Rule 26(b)(1).

This Court, in its discretion to manage discovery, is considering the negative impact of a discovery stay on Plaintiff's ability to litigate his *Monell* claims, and on his ability to be the "master of his complaint," not as a controlling factor, but as an important factor that may have been underemphasized in the past and that deserves significant weight in the context of the City's request to stay *Monell* discovery. Considering the City's ongoing *Monell* discovery obligations in other Section 1983 lawsuits against Defendant Guevara, and with discovery not categorically preferable as a result of either the City's Limited Consent (to liability for compensatory damages if awarded against the Individual Defendants) or the possibility that *Heller* would bar *Monell* claims if Plaintiff does not prevail against the Individual Defendants, the need to allow Plaintiff leeway to prosecute and discover his *Monell* claims is added support for the Court's conclusion that the City falls short of meeting its burden of showing good cause for a stay of *Monell* discovery. The Bifurcation Motion's request for a stay of *Monell* discovery is denied.

disfavored in cases such as the instant suit." 2020 WL 956294, at *1 (citations and internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Bifurcation Motion's request to bifurcate Plaintiff's claims at trial is denied without prejudice, and the motion's requested stay of *Monell* discovery in this case is denied. A Rule 26(f) conference is ordered, and a joint discovery status report and proposed agreed or contested discovery schedule from that conference is due by noon on January 12, 2024.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**U.S. Magistrate Judge**

**Dated:  December 27, 2023**