IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Cruz, | ) | |
| Plaintiff, | ) | No. 23 cv 4268 |
| v. | ) | |
| | ) | The Honorable Jeremy Daniel |
| Reynaldo Guevara, et al. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT
CITY OF CHICAGO TO PRODUCE CRs FOR THREE WITNESSES**

Plaintiff Jose Cruz respectfully requests this Court to compel Defendant City of Chicago to produce three sets of CRs that Cruz requested on October 18, 2023. In support of this Motion, Cruz states as follows:

1. On October 18, 2023, Cruz made the following document request:

 All "Log Number" files, "Complaint Register" (CR) files, "Universal" (U) files, "Extraordinary Occurrence" (EO) files, "Non-Disciplinary Intervention" (NDI) files, "Summary Punishment Action Requests" (SPARs), or other files relating to any investigation of misconduct by Chicago police officers, including all attachments to such files, which relate to any of the following CPD officers.

*See* Request attached as Exhibit 1. For ease of reference, we collectively refer to this list of requests as the "request for CRs." Cruz's request for CRs was directed at the following:

 (a) Reynaldo Guevara (#20681);
 (b) Ernest Halvorsen (#20692);
 (c) Anthony Wojcik (#20834);
 (d) Robert Rutherford (#20720);
 (e) Anthony Riccio (#20870);
 (f) Robert Boris (#20670);
 (g) Stephen Gawrys (#20689);
 (h) Edward Mingey (#1731);
 (i) Frank Cappitelli (#1212);
 (j) Maria Soto (#20657);
 (k) Kevin McDonald (#20994);
 (l) Raymond Schalk (#20718); and
 (m) Jerome Bogucki (#20668).

The City agreed to produce the CRs for the Defendants identified in (a) through (h) but

refused to produce the CRs for the other five witnesses. Plaintiff has withdrawn the requests for Frank Capitelli and Kevin McDonald, but is moving to compel the CRs for (j) Maria Soto; (l) Raymond Schalk; and (m) Jerome Bogucki.

2. Maria Soto was an Area 5 Detective who was directly involved in the investigation of the October 6, 1993 shooting resulting in Plaintiff's nearly 29 year long wrongful incarceration. Soto, according to the police reports, participated in the interview of eyewitness Pedro Jaramillo and translated Jaramillo's written statement, which Plaintiff specifically alleges contained false statements. *See* First Amended Complaint ("FAC"), Dkt. 44 at ¶¶80-88. Notably, Defendant City of Chicago has listed Soto as a witness in its Rule 26(a)(1) disclosures, stating that she is "[l]ikely to have discoverable information about the investigation of the October 6, 1993, murder of Antwane Douglas and attempt murder of Vernon Meadors …."

3. Five months before Guevara led the conspiracy to frame Plaintiff Cruz for murder, on May 27, 1993, Detectives Schalk and Bogucki charged Cruz with two counts of attempted murder in a case arising out of a May 26, 1993 shooting in Humboldt Park. In that case, Schalk and Bogucki claimed that Cruz, during a foot chase, had fired shots at the police. Cruz's First Amended Complaint specifically states that Cruz became Guevara's target because of the Humboldt Park shooting. Dkt. 44 at ¶42.

4. Notably, Schalk and Bogucki worked as detectives at Area Five Violent Crimes, the same Area where Guevara and his associates framed at least 40 people for murders they did not commit. Several Guevara exonerees have alleged that Schalk and Bogucki, working with Guevara and his associates, were directly involved in their wrongful convictions, including Eruby Abrego, Francisco Benitez, Jeremiah Cain, and James Fletcher, Jr.

## THE PARTIES' MEET AND CONFER

5. On November 17, 2023, the City filed a written response to Cruz's request for

3

CRs, attached as Exhibit 2, stating in pertinent part:

> Subject to and without waiving these objections, to the extent this request seeks Complaint Register Files relating to complaints made against any of the Defendant Officers, Defendant City will produce responsive documents upon receipt and pursuant to the eventual confidentiality protective order to be entered in this case. Investigation continues.

The City further wrote that the requests for records pertaining to "individuals who are not defendants" are "overly broad and unduly burdensome." That was the full extent of its explanation.

6. On January 4, 2024, the parties had a meet and confer by telephone. The City was represented by Eileen Rosen, and Cruz was represented by me. The call lasted approximately 45 minutes, although only about five minutes were spent on this issue. I explained that CRs are just as relevant for witnesses as for defendants and that that was especially true for Soto, Schalk, and Bogucki (and also McDonald and Cappitelli, although we have since dropped those two requests). I walked through the relevance of each witness, as set forth in paragraphs 2-3 above and 7-9 below. Ms. Rosen requested time to investigate the position I had stated and discuss it with her client. On January 25, Ms. Rosen responded,

> Thank you for allowing the City the time to consider Plaintiff's request. Unfortunately, we cannot agree to provide you with CR files for non-defendant police officers. We don't believe Plaintiff's articulated reasons justify providing non-defendant officers CR files which are essentially employment records.

## **CRUZ'S ARGUMENT**

7. Defendants have offered nothing to justify withholding the CRs of these witnesses. Detective Soto is not a Defendant, but she was present and directly involved, together with Defendants Wojick and Maloney, in interrogating eyewitness Jaramillo and translating his written statement to the police. In fact, Defendant Maloney has argued that the false statements in Jaramillo's written statement may have resulted from Soto failing to accurately translate Jaramillo's statement. See Dkt. 67 at 22 ("there was no clearly

4

established duty for prosecutors to ensure accurate translation of witness statements in 1993"). Cruz's request for Soto's CRs easily falls within the broad scope of discovery permitted under Federal Rule 26(b)(1) and as already noted above, the City has implicitly conceded as much by identifying Soto in its initial disclosures.

8. Detectives Schalk and Bogucki's CRs are equally relevant and discoverable. Schalk and Bogucki's involvement in charging Cruz with two counts of attempted murder in connection with the May 26, 1993 Humboldt Park shooting, which Cruz specifically states led to Guevara targeting him, only five months later, make the CRs plainly discoverable. Moreover, Schalk and Bogucki's history of police misconduct in other Guevara exoneration cases, negates the City's unsupported argument that their CRs are somehow off limits merely because Plaintiff, for now, has not named Schalk and Bogucki as defendants in this case.

9. Further, these witnesses' CRs are fully protected from any mis-use by the Protective Order that this Court entered on January 12, 2024. *See* Dkt.111. The City insisted on numerous changes to the standard Northern District Protective Order, and Plaintiff agreed to all the changes the City requested. That Protective Order wholly protects Detectives Soto, Schalk, and Bogucki from further disclosure of their "employment records." Indeed, that was the whole point of the amendments to the Protective Order.

For these three reasons, Cruz respectfully requests this Court to compel the City to produce these three sets of CRs.

Date: February 28, 2024

                                              Respectfully submitted,

                                              PLAINTIFF JOSE CRUZ

                                              */s/ Stuart J Chanen*

Stuart J. Chanen, Ariel Olstein
CHANEN & OLSTEIN
7373 Lincoln Avenue
Suite 100
Lincolnwood, IL 60712
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com