IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Cruz, | ) | |
|                Plaintiff, | ) | No.  23 cv 4268 |
| v. | ) | |
| | ) | The Honorable Jeremy Daniels |
| Reynaldo Guevara, et al. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
|                Defendants. | ) | |

**PLAINTIFF"S MOTION TO COMPEL THE DEFENDANT
CITY OF CHICAGO TO PRODUCE A 30(b)(6) WITNESS**

Plaintiff Jose Cruz respectfully requests this Court to compel Defendant City of Chicago to produce a 30(b)(6) witness (or witnesses) in response to the 30(b)(6) Deposition Notice that Cruz issued on January 31, 2024, and which is attached to this Motion to Compel as Exhibit 1 (hereafter, the "30(b)(6) Notice" or the "Notice," and the "Motion"). In support of this Motion, Cruz states as follows:

1. On September 7, 2023, this Court denied the City's request to bar *Monell* discovery that the City had inserted into a Joint Status Report. See Dkt.51 ("Monell discovery proceeds and will not be bifurcated per Defendants' bare request in the status report").

2. On December 27, 2023, this Court more formally denied the City's Motion to Bifurcate *Monell* discovery, again ordering that *Monell* discovery was to proceed. Dkt.72 (Motion); Dkt.105 (Opinion and Order); *Id*. at 3 ("In the Bifurcation Motion, the City is looking to deliver a knockout or near knockout blow to Plaintiff's *Monell* claims – the only ones leveled at the City – early in the case.").

3. On February 8, 2024, Plaintiff served the 30(b)(6) Notice.  The Notice demanded that the City produce a 30(b)(6) witness or witnesses to cover only three

topics: (1) the factual bases for 64 of the City's admissions in its Answer;[1] (2) the factual bases for 48 of the City's denials in its Answer;[2] and (3) the factual bases for the City's numerous statements (in almost every paragraph) that it lacked information sufficient to form a belief about certain specific allegations made in the Complaint (hereafter, "statements of lack of knowledge"). (The City's Answer is attached as Exhibit 2.)

4. The Topics of the 30(b)(6) Notice include both *Monell*-related allegations and allegations against specific individual defendants, including Defendant Guevara.

5. On February 16, 2024, the City responded to the Notice with the letter attached as Exhibit 3 (the "Letter Objection"), in which the City asserts three bases for refusing to produce a witness or witnesses in response to the 30(b)(6) Notice, as follows:

(a) "[A] Rule 30(b)(6) deposition is an overbroad, inefficient, and unreasonable means of discovering the factual and legal basis for an opposing party's claims." City's Letter Objection, Exhibit 3, at 1.

(b) "Plaintiff's request for the City to present a witness to testify regarding the factual basis as to any part of its answer to Plaintiff's amended complaint invades the attorney-client and work product privileges." *Id.* at 1-2.

(c) Requiring the City to produce "a witness to testify about why [the City] answered that it lacked knowledge to certain factual allegations is unduly burdensome and not proportional to the needs of the case." More specifically, the City asserts that once it states in its Answer that it lacks knowledge, Rule 30(b)(6) is inapplicable because the rule applies only to "information known or reasonably available to the organization." *Id.* at 2.

---

[1] Admissions contained in paragraphs 5, 7, 11, 18, 20, 22-26, 28-30, 32, 34-44, 47, 49-51, 55, 57, 61, 78-79, 81-83, 87, 89, 96, 98-99, 103-06, 115, 121, 123, 127-29, 137, 138, 142, 144, 147, 148, 153, 166, 167, 168, 172, and 243.

[2] Denials contained in paragraphs 4, 10, 12, 27, 45, 49, 52, 54, 63, 64, 84, 90, 91, 95, 106, 110, 119, 126, 134, 141, 146, 148, 149, and 151-175.

3

Plaintiff disagrees on all three grounds and therefore brings this Motion.

## THE PARTIES' "MEET AND CONFER" CALL

On February 20, 2024, the parties conducted a "meet and confer" by telephone, in which they discussed these grounds. Plaintiff was represented by me, Stuart Chanen. The City was represented by Catherine Barber. The call lasted 37 minutes. Both sides explained in some detail their conflicting positions, and the parties could not come to an agreement. Near the end of the call, Ms. Barber requested that I provide more information and case law, if any, to support Plaintiff's position, and I followed-up with two emails to Ms. Barber, one on February 20 (attached as Exhibit 4) and one on February 22 (attached as Exhibit 5). On February 26, Ms. Barber wrote in a second letter, Exhibit 6, that she was not persuaded by the eight cases I had supplied and that we were likely at an impasse. Although I had some discussion with Ms. Barber about the possibility of the City filing a motion for protective order, Cruz's counsel chose not to wait for the City to file, but rather has filed this Motion in order to get the issue before the Court.

## THE CONTROLLING CASE LAW: MAJORITY AND MINORITY VIEWS

As the Court will learn in this Motion, a party seeking the "factual bases" of admissions, denials, or other contentions in an opposing party's Complaint or Answer (1) is not new; and (2) has significantly developed from the minority view, which was popular in the late 90's and early 00's, to the majority view, which has developed over the past two decades.

In the City's Letter Objection, Exhibit 3, the City identified four cases – from 1996, 2000, 2002, and 2013 – that it asserts supports its position. Cruz's research established that these four cases expressed a minority view, at best, and further that these cases were somewhat outdated in light of the fact that numerous more contemporary cases – including from 2017,

4

2019, 2021, and 2022 – establish a more modern trend to accept deposition notices of this type and to reject the old arguments that were previously persuasive in striking such notices. In addition to being the more recent trend, these cases also represent the majority view.

For example, in *Woods v. Standard Fire Ins. Co.*, 589 F. Supp. 3d 675 (E.D. Ky. 2022), the district court acknowledged that there was a split in authority among different judges, but then proceeds to explain in detail why the cases permitting a Rule 30(b)(6) deposition of this type are better reasoned. *Id*. at 685. The court in *Woods* held that such depositions are proper as long as the proponent of the deposition seeks information about the "underlying facts, not attorney impressions." *Id*., *citing Yerkes v. Weiss*, No. CV 17-2493 (NLH/AMD), 2019 WL 12056384, at *6 n.2 (D.N.J. Sept. 30, 2019) (analyzing propriety of Rule 30(b)(6) questions using standards for Rule 33 contention interrogatories); *Dennis v. United States*, No. 3:16-cv-3148-GBN, 2017 WL 4778708, at *9 (N.D. Tex. Oct. 23, 2017) (explaining that contention interrogatories seeking the factual basis of a denial is not protected work product, and that "[t]he same analysis applies to a Rule 30(b)(6) deposition topic seeking the identification of facts"); and *Radian Asset Assur., Inc. v. College of the Christian Bros. of New Mexico*, 273 F.R.D. 689, 692 (D. New Mex. 2011) (stating that "allow[ing] parties to craft [Rule] 30(b)(6) inquiries . . . advances the policy underlying the rules favoring disclosure of information").

Similarly, in *Erickson v. City of Lakewood*, No. 1:19-cv-2613, 2021 WL 4947231 (D. Colo. Sept. 23, 2021), the Court held:

> The use of Rule 30(b)(6) depositions for the purpose of obtaining the factual bases for a defendant's asserted position statements or affirmative defenses is not novel. . . . Contention interrogatories seeking the factual basis of a claim or defense are expressly permitted by Rule 33 of the Federal Rules of Civil Procedure. The court cannot conclude that questions permitted in other forms of discovery would be per se improper if raised during a deposition.

*Id*. at *5.

Most specifically, these courts rejected the notions that questions that Cruz may ask at such a 30(b)(6) deposition "could be answered more easily through interrogatories." In three different cases (cited in the most recent case, *Woods*), the courts held that the responding parties' preference for "interrogatories" over a deposition is not controlling: "While [defendant] might prefer to provide answers to interrogatories than to prepare a witness for a Rule 30(b)(6) deposition, in this context, its preference does not provide the court with a basis for giving it the relief it seeks[, quashing the deposition notice]." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 488 (N.D. Cal. 2012). "[T]he Federal Rules of Civil Procedure do not permit a party . . . 'to elect to supply the answers in a written response to an interrogatory' in response to a Rule 30(b)(6) deposition notice or subpoena request." *Kelly v. Provident Life and Accident Ins. Co.,* Civil No. 04cv807–AJB (BGS), 2011 WL 2448276, at *3 (S.D. Cal. June 20, 2011). *See also Marker v. Union Fidelity Life Insurance,* 125 F.R.D. 121, 126 (M.D.N.C.1989) (same).

These eight cases represent a majority view and more recent trend of permitting 30(b)(6) depositions of this type, provided that party taking the deposition asks questions related to the "underlying facts, not attorney impressions." *Woods*, 589 F. Supp. 3d at 685.

### DEFENDANTS' ARGUMENTS

**1. The City Asserts that a Rule 30(b)(6) Deposition is an Overbroad, Inefficient, and Unreasonable Means of Discovering the Factual Bases for Defendants' Admissions, Denials, and "Lacks Knowledge" Responses.**

The City first asserts that Plaintiff's 30(b)(6) Notice is "an overbroad, inefficient, and unreasonable means of discovering the factual and legal basis for an opposing party's claims." Letter Objection, Exh. 2, at 1. Plaintiff disagrees.

First, to push a non-issue aside, Plaintiff's Notice did not identify as a 30(b)(6) topic any "*legal bases*" for the City's positions. Therefore, the City's argument in its Letter that

6

the Notice is "an overbroad, inefficient, and unreasonable means of discovering the . . . *legal basis* for an opposing party's claims" (emphasis added) is simply not relevant at all to this Motion. Plaintiff's Notice focuses solely on the *factual bases* of the City's defenses, and Plaintiff's counsel re-commits in this Motion that it does not intend to ask the City's designated witness about the City's legal positions.

Second, Cruz disagrees that a 30(b)(6) deposition will be inefficient. To the contrary, asking questions of a 30(b)(6) representative is a far more efficient way to obtain the factual basis of the City's positions than going through a long, drawn-out, and often very painful process of written discovery. Respectfully, Plaintiff believes that using interrogatories (including contention interrogatories at the end of discovery) is a highly inefficient way to obtain information about the evidence on which a party is relying. This is so for many reasons, including that when a party asks a question by written interrogatory, the lawyers are often a roadblock between the question being asked and the answer being provided. The response is often prefaced with a million objections and other non-responsive interjections, such as "the document speaks for itself," the request is "overbroad, cumbersome, burdensome, prejudicial," and "investigation continues."

In contrast, Plaintiff seeks to move directly to the factual bases of the City's admissions, denials, and "lack of information" responses in its Answer, including several with respect to his *Monell* claim. For example, Plaintiff alleges in paragraph 10 of his Complaint (the same paragraph that this Court used as an example in its bifurcation denial opinion, Dkt.105, at 3):

> 10. Guevara and his fellow officers' malicious and unconstitutional conduct was part of a widespread pattern and practice at [Chicago Police Grand-Central Detective] Area 5, which Defendant City of Chicago condoned, facilitated, and ratified, and under which police fabrication of incriminating evidence, withholding of exculpatory evidence, and perjured testimony to support the fabrication and concealment of evidence was routine at Area 5.

7

The City's Answer to this allegation was:

> **ANSWER: To the extent the allegations in this paragraph are directed at the City, the City denies these allegations. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 134.**

Respectfully, Plaintiff believes this response requires clarification. Which allegations is the City answering as "directed at the City" and which allegations are the "remaining allegations?" Does the City have any knowledge of whether Guevara engaged in malicious and unconstitutional conduct at Area 5? Does it have any knowledge of whether any other Detective Defendants at Area 5 engaged in unconstitutional conduct in the 80's and 90's? If the answer is yes, when did the City gain that knowledge? Why isn't that knowledge sufficient to admit or deny this and numerous other allegations to which the City answered "lacks information sufficient to form a belief?" Another example would be that if the City is denying that it condoned police misconduct at Area 5 (which it appears to do in response to paragraph 134), what, if anything, did the City do to stop police misconduct at Area 5?

While these are only examples, the City has not pointed to any basis that makes this type of exploration at a deposition "unduly burdensome" and "not proportional to the needs of the case." The City attempts to support its claim of burden by citing two cases, a 1996 Kansas case, *In re Indep. Serv. Orgs. Antitrust Litig.,* 168 F.R.D. 651 (D. Kan. 1996), and a 2000 case from this district, *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000). (Neither case included a *Monell* claim, so that may end the inquiry right there.)

Nevertheless, Defendants are correct that the *Antitrust* case supports the City's position, in that the court in *Antitrust* held (1) that the corporate defendant "is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able

8

to testify on a given defense or counterclaim;" and (2) "[a]lthough [the court has] no quarrel with [the] contention that [CCS] has a right to discover the facts upon which Xerox will rely for its defense and counterclaims, CCS's attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable." *Id*. at 654. The court in *Antitrust* did not say anything further about burdensomeness or efficiency, or explain why it reached that conclusion, but it is clearly a case that favors the City.

*SmithKline*, on the other hand, presents a mixed bag for the City. *SmithKline* was a patent case in which defendants served a Rule 30(b)(6) Notice with 20 topics. Plaintiff designated witnesses for 14 of those 20 topics and disputed only six; Defendants moved to compel, and the Court granted the motion on three of the topics and denied the motion on three topics. Therefore, from the start, the posture of these two cases are very different. In *SmithKline*, the objecting party blocked 15% of the identified 30(b)(6) topics. Here, the City seeks to bar the deposition in its entirety.

Second, the three categories that Judge Kocoras struck were very fact specific to that case. More specifically, he held that as to the information Defendants were seeking, either: (1) the Plaintiff had already answered the questions that Defendants wanted to put to the 30(b)(6) witness; or (2) if Plaintiff had, in fact, not yet sufficiently answered the questions, the Defendants could obtain "the same information in a more efficient manner by propounding 'standard' interrogatories upon its opponent." *Id*. at *9. At the same time, however, Judge Kocoras also embraced the numerous values that a 30(b)(6) deposition presents:

> Rule 30(b)(6) is a vehicle for streamlining the discovery process. . . . The effect of the rule is to place upon the business entity the burden of identifying witnesses who have knowledge responsive to subjects requested in the Rule 30(b)(6) requests of its opponent. *See id.* Rule 30(b)(6) is also designed to prevent business entities from "bandying," the practice of presenting employees for their deposition who disclaim knowledge of facts known by other individuals within the entity. Consequently, Rule 30(b)(6) imposes a duty upon the named business entity to prepare its selected

9

> deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know. . . . If a deponent is unable to testify about certain relevant areas of inquiry the business entity must designate additional parties to satisfy a Rule 30(b)(6) notice. Failure to adequately prepare the deponent may subject the entity to sanctions.
>
> A Rule 30(b)(6) deponent's testimony does not represent the knowledge or opinions of the deponent, but that of the business entity. . . . In effect, the deponent is "speaking for the corporation," giving the corporation's position on the topic. . . . . The deponent must testify to both the facts within the knowledge of the business entity and the entity's opinions and subjective beliefs. . . . This includes the entity's interpretation of events and documents.

Id at. *8-9.

Third, Judge Kocoras's decision to block three topics because there was a more efficient way to seek the same information has since been rejected by numerous district courts:

> The use of Rule 30(b)(6) depositions for the purpose of obtaining the factual bases for a defendant's asserted position statements or affirmative defenses is not novel. . . .
>
> The court cannot conclude that questions permitted in other forms of discovery [such as contention interrogatories] would be per se improper if raised during a deposition.

*Erickson*, 2021 WL 4947231, at *5. *See also* cases cited.

> "While [defendant] might prefer to provide answers to interrogatories than to prepare a witness for a Rule 30(b)(6) deposition, in this context, its preference does not provide the court with a basis for giving it the relief it seeks[, quashing the deposition notice]."

*Louisiana Pac.*, 285 F.R.D. at 488. *See also* cases cited.

In sum, Cruz respectfully submits that neither efficiency nor burdensomeness are a basis to strike Cruz's Rule 30(b)(6) deposition notice.

2. **The City Incorrectly Asserts That Permitting Cruz to Take A Rule 30(b)(6) Deposition On These Topics Would Invade The Attorney-Client and Work Product Privileges.**

The City's second basis for trying to block the 30(b)(6) Deposition is its assertion that the Notice "invades the attorney-client and work product privileges." Exhibit 3, at 1-2. The

10

City appears to assert that because "answering a complaint necessarily involves the assistance of counsel," inquiring into that process would require the City to reveal its communications [with counsel] as well as counsel's mental impressions and strategies." *Id*. There are three reasons this Court should reject this argument: (1) the proposition is incorrect; (2) if the proposition were correct, it would bar virtually all 30(b)(6) depositions because one element of a 30(b)(6) deposition is the entity's lawyer preparing the witness; and (3) the proposition has since been discredited by numerous recent cases.

> First, the proposition is just wrong. For example, with respect to paragraph 44:
>
> On the evening of October 6, 1993, after Meadors returned home from the hospital, Detective Guevara, Sergeant Mingey, and Detective Halvorsen paid Meadors a visit at his house. There, although two eyewitnesses, Rios, and Jaramillo, had already told the police that the shooters were Black, the officers showed Meadors a photo lineup consisting of 21 Hispanic males, including Cruz.
>
> **ANSWER:**
>
> **Based upon records from the Chicago Police Department, the City admits that Meadors informed police that the night of October 6, 1993, three detectives came to his house to investigate the offense.**
>
> **The City further admits based on records of the Chicago Police Department that Sgt. Mingey and Detectives Guevara and Halvorsen showed Meadors a stack of "21 IR photos of subjects recently arrested in Area Five for weapons violations" to see if he could recognize any of the offenders.**
>
> **The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44.**

Respectfully, Plaintiff believes that he could ask the noticed 30(b)(6) witness numerous questions about this answer without invading the attorney-client privilege or the work product doctrine. For example, Plaintiff could ask the City on which **"records of" or "records from" the Chicago Police Department is the City relying?** Is it a GPR? A Supplemental Report? Were the 21 IR photos shown to Meadors preserved in the Chicago Police Dept. file? There is nothing about asking for the "factual bases" of this answer that

11

opens up the inquiry to attorney-client privileged or work production principles.

Indeed, the City oddly asserts that because it has answered 50 paragraphs with the phrase "based upon records from the Chicago Police Department," it would invade the work product privilege for Cruz to ask a 30(b)(6) witness what "records from the Chicago Police Department" the City is referring to in its specific admissions and denials. That makes no sense at all. While the City's Answer may have been physically prepared by an attorney, it is still *the City's Answer to Cruz's Complaint*. The City should – and indeed, under Rule 30(b)(6), especially in a *Monell* case, *must* – be able to explain the detailed factual bases of its admissions, denials, and statements of lack of knowledge.

Separate from the evidence that supports the City's admissions and denials, Cruz should also be permitted to inquire why the City "lacks knowledge or information sufficient to form a belief as to the truth of" an allegation. For example, in the example above, the City responds that it lacks information sufficient to form a belief that "two eyewitnesses, Rios and Jaramillo, had already told the police that the shooters were Black." The City should be required to state why the information it has access to is insufficient to admit or deny the allegation. (Otherwise, a party that does not want to admit to a fact for which it otherwise has supporting evidence could still take the position that it lacks sufficient information to answer that specific allegation and avoid having to make an admission or denial altogether. This is why Plaintiff finds it so disturbing that the City uses the "lacks knowledge or information sufficient to form a belief" in virtually every paragraph.)

Another example from the paragraph above is that the City asserts that it lacks information sufficient to form a belief as to whether the "photo lineup consisting of 21 Hispanic males" included a photo of Cruz. This is something that the City certainly knows, but it neither admits nor denies this allegation.

Most importantly, none of these questions invade the attorney-client or work product privileges. If Cruz's counsel asked what the 30(b)(6) witness said to the City's litigation counsel or the City's litigation counsel said to the 30(b)(6) witness, that would invade the privileges, but Plaintiff only intends to ask about and has only included in the Notice, the "factual bases" for admissions, denials, and statements of lack of knowledge.

The City further asserts that Plaintiff is not seeking *facts* but rather is only seeking "the City's own assessment of the information that would support or undercut its claims or defenses" and that the City's "assessment" of such information is protected work product. There is nothing in any of the examples that have been discussed above that implicates the City's attorneys' "assessment of the evidence." Indeed, several of the cases cited here distinguish expressly between the "content or substance of an attorney's evaluation of why or how those facts support a claim or defense," which may be protected work product, and the "factual basis" of a claim or defense, which is not. *See Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at *9 (N.D. Tex. Oct. 23, 2017), *cited in Erickson*, 2021 WL 4947231, at *4, for the same proposition.

Respectfully, this Court should be particularly wary of the City attempting to block Cruz from getting to ask the City about "the factual paragraphs that relate to . . . past litigation against the City, as in paragraphs . . . 134, 137, 148, and 151-175" on the ground that the City's answers constitute protected work product. Exhibit 3, at 2 (citation omitted). If the Court looks closely at those paragraphs, however, it will see that each and every one of them involve the City's *Monell* liability. Why shouldn't a plaintiff be able to ask questions related to the City's past litigation regarding Guevara when plaintiff has a *Monell* liability claim against the City?

In *Erickson v. City of Lakewood*, No. 119CV02613PABNYW, 2021 WL 4947231, at *4 (D. Colo. Sept. 23, 2021), the district court explained that there was a difference of opinion

in district courts as to whether these lines of questioning will invade the attorney-client and work product privilege (just as the district court has in *Woods* regarding efficiency and burdensomeness). After outlining the two competing views, the court in *Erickson* held that it found the group that permitted the depositions to proceed "more persuasive in this instance." *Id.* at 5. The Court noted, "Courts have regularly permitted such deposition topics so long as they are expressly limited to seeking facts, rather than attorney impressions or legal theories, finding such lines of questioning akin to contention interrogatories under Rule 33, citing *Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at *9 (N.D. Tex. Oct. 23, 2017) (explaining that contention interrogatories seeking the factual basis of a denial is not protected work product, and that "[t]he same analysis applies to a Rule 30(b)(6) deposition topic seeking the identification of facts"); *see also Radian*, 273 F.R.D. at 692 (stating that "allow[ing] parties to craft [Rule] 30(b)(6) inquiries ... advances the policy underlying the rules favoring disclosure of information"); *Yerkes,* 2019 WL 12056384, at *6 n.2 (analyzing propriety of Rule 30(b)(6) questions using standards for Rule 33 contention interrogatories).

      Plaintiff respectfully submits that there is nothing privileged about asking the City about "past litigation against the City" when the questions about that litigation go directly to what the City knew and when it knew it with respect to Guevara or any other significant police misconduct that the City did nothing to stop. The facts related to Guevara's misconduct in those cases do not magically become work product simply because an outside attorney for the City had to deal with those facts years later in civil litigation.

      Finally, contrary to the City's insistence, Cruz is not looking for the City's own assessment of its case; he desires basic factual information about the admissions, denials, and "we don't knows" in the City's Answer, information Cruz respectfully admits to which Mr. Cruz is entitled under Rules 26 and 30.

3. **The City Incorrectly Asserts That Because Rule 30(b)(6) Only Requires It To Present a Witness Regarding Information "*Known or Reasonably Available*," And It Has Denied That Certain Facts Are Known, No Further Inquiry Into Such Denials is Permitted.**

In its final argument, the City asserts that having a City witness explain why the City has insufficient information to admit or deny an allegation would be unduly burdensome, not proportional to the needs of the case, and would invade the attorney-client privilege. The City further asserts that because "Rule 30(b)(6) only requires a party present a witness regarding information *known or reasonably available*," the plaintiff should not be able to look past any assertion that there is insufficient information available. Cruz disagrees. Cruz does not believe that he should be barred from investigating the City's claim of "lack of knowledge," especially when it is used in virtually every paragraph of the Answer, especially where such repeated assertions may be used to dodge of the City's obligations to answer, and especially when "what the City knew and when it knew it" is a central component of Cruz's burden on his *Monell* claim.

## CONCLUSION

For all these reasons, Plaintiff Jose Cruz respectfully requests this Court to order Defendant City of Chicago to produce a 30(b)(6) witness or witnesses in response to Cruz's January 31, 2024 30(b)(6) Deposition Notice.

**Date:** February 28, 2024

                                        Respectfully submitted,
                                        *PLAINTIFF JOSE CRUZ*

                                        /s/ *Stuart J Chanen*

Stuart J. Chanen, Ariel Olstein
CHANEN & OLSTEIN
7373 Lincoln Avenue
Suite 100
Lincolnwood, IL 60712
847-469-4669
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com

15