**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-04268 |
| v. | ) | |
| | ) | Judge Jeremy C. Daniel |
| FORMER DETECTIVES REYNALDO | ) | |
| GUEVARA, et al., | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MALONEY'S SUPPLEMENTAL MOTION TO COMPEL AGAINST PLAINTIFF

NOW COMES defendant, former Assistant State's Attorney and current Cook County

Associate Judge, EDWARD MALONEY ("Maloney"), by and through his attorneys, Tribler

Orpett & Meyer, P.C., and moves this Court pursuant to Federal Rules of Civil Procedure 33, 34,

and 37 to compel Plaintiff to provide full and complete responses to Maloney's First Set of

Interrogatories 2, 3, 5, 9, 14, 15, and 17 and strike Plaintiff's General Objections. In support

thereof, Maloney states the following:

1. On December 28, 2023, Plaintiff was served with Defendant Maloney's First Set of
   Interrogatories to Plaintiff.

2. On January 12, 2024, Plaintiff's counsel served Plaintiff's responses to Defendant
   Maloney's First Set of Interrogatories. *See* Plaintiff's Follow-up on January 15, 2024,
   Plaintiff's counsel sent Plaintiff's signed verification with his wet signature attached
   as Exhibit A.

**MALONEY'S ATTEMPTS TO RESOLVE THIS DISCOVERY DISPUTE**

3. On March 25, 2024, counsel for Maloney sent Plaintiff's counsel a letter highlighting deficiencies in Plaintiff's responses to Maloney's First Set of Interrogatories pursuant to Local Rule 37.2 and requested Plaintiff's counsel advise of his availability to discuss. See William Oberts March 25, 2024 correspondence to Stuart Chanen and Ariel Olstein attached as Exhibit B.

4. The March 25, 2024 correspondence identified why Plaintiff's generalized "Objections" were without merit and should be stricken and addressed each interrogatory in which Defendant sought Plaintiff to supplement and explained the basis for said request.

5. On March 27, 2024, Stuart Chanen emailed all counsels regarding various ongoing discovery issues. See email chain between counsels for Plaintiff and Maloney attached as Exhibit C. Mr. Chanen indicated that he was preparing a written response to Maloney's 37.2 letter, which he would complete and send no later than Friday [March 29, 2024]. *Id.* Mr. Chanen further indicated he would be available to meet and confer any day the following week.

6. Plaintiff's counsel did not respond send a written response and did not respond to Maloney's counsel's request to schedule a meet and confer regarding Plaintiff's deficient discovery responses.

7. Maloney's counsel emailed Plaintiff's counsel on April 2, 2024, April 3, 2024, and April 4, 2024. *Id.* Plaintiff's counsel did not respond to these emails.

8. Since March 27, 2024, when Plaintiff's counsel advised that he would respond to Maloney's 37.2 letter, he has emailed all parties four times discussing scheduling out-

of-state depositions of third-party witnesses, scheduling party depositions, and scheduling an inspection of CPD records.

9. Maloney's counsel made good-faith effort to resolve the issue of Plaintiff's deficient discovery responses and made repeated efforts to schedule a meet and confer with Plaintiff's counsel in the hope of resolving this dispute without Court intervention. Just yesterday, Maloney's counsel advised that almost two weeks had passed without a response and that, absent a response, Maloney would need to seek Court intervention. Counsel also advised of his willingness to discuss per L.R. 37.2 even after a motion is filed, but needed to move forward. Plaintiff's counsel has simply not responded thereby requiring court intervention.

10. On April 5, 2024, Defendant Maloney filed his Motion to Compel Against Plaintiff. [Dkt. 143].

11. On April 5, 2024, this Court denied Maloney's Motion to Compel Against Plaintiff without prejudice and directed Plaintiff's counsel to meet in person or on the phone with Maloney's counsel by the close of business on April 12, 2024. [Dkt. 144].

12. Pursuant to this Cout's direction, counsel for Plaintiff and Defendant met via phone on April 9, 2024 to discuss the issues raised in Defendant Maloney's March 25, 2024 L.R. 37.2 correspondence to Plaintiff. The parties were unable to reach an agreement as to any of the issues raised and are at an impasse necessitating this Court's intervention.

**PLAINTIFF'S CLAIM AGAINST MALONEY**

13. In general, Plaintiff's First Amended Complaint contends Maloney conspired with CPD Defendants to coerce a witness, Jaramillo, to give a statement describing the

3

alleged perpetrators in the shooting. This handwritten statement was taken by Maloney through Officer Soto who translated Spanish to English and English to Spanish between Maloney and Jaramillo. Another CPD officer was also present when Jaramillo gave said statement. Jaramillo's statement was never introduced at trial and Jaramillo was never called to testify at trial.

14. As part of Plaintiff's Post-Conviction proceedings, counsel for Plaintiff retained an investigator who met with Jaramillo and secured the attached Translated Exhibit #1 In Support of Petitioner's Petition for Post-Conviction Relief. See Translated Exhibit #1 In Support of Petitioner's Petition for Post-Conviction Relief attached as Exhibit D. Within Exhibit D is a Translated Affidavit of Pedro Jaramillo. Ex. D, Cruz 003357-003359. In the Affidavit, Mr. Jaramillo affirms that he did not speak with anyone else at the crime scene nor did anyone speak to him besides the two victims and police officers. Ex. D ¶ 4. Mr. Jaramillo also contends, Detective Guevara spoke to him three times, psychologically pressured him and that Jaramillo felt pressured because Officer Guevara would tell him that he wanted Jaramillo to choose a certain person and that Jaramillo would tell him no. Ex. D ¶ 7. Jaramillo makes not claim that Maloney pressured or otherwise coerced him in any way.

15. Exhibit D also contains a transcript from an interview between a private investigator retained by Plaintiff and Pedro Jaramillo. Ex. D, Cruz -003363-003378. Jaramillo contended that he was pressured by Detective Guevara to identify who fired the gun and that the person was Hispanic. *Id.* at Cruz-003371-003372. Jaramillo advised that he does not read English. *Id.* at Cruz-003372. Jaramillo then discussed the signed written statement he gave to Maloney, Det. Wojcik and Det. Maria Soto on October 9,

1993.  See Jaramillo Statement attached as Exhibit E.  Jaramillo was asked if he described the shooter as a male of olive skin, Hispanic or a black skinned person wearing a black cap and a black jacket.  Ex. D, Cruz-003373.  See also Jaramillo Statement, Ex. E Cruz-003500.  Jaramillo stated that he does not remember saying that, claims he did not say that and that "those words were put on me by the police" and identified Det. Guevara. Ex. D, Cruz-003373

16. Jaramillo knew Maloney was an Assistant State's Attorney and not a police officer. Ex. E.  Jaramillo never claimed Maloney forced or coerced him to say anything. Jaramillo also claims he could not read English.  Det. Soto translated Jaramillo's statement from Spanish to English and read over the English version in Spanish.

17. Maloney relied upon Det. Soto to provide him the Spanish to English and English to Spanish translation between Jaramillo as Maloney does not speak Spanish. Plaintiff sues Maloney, but makes no claim against Soto. Maloney could not have possibly coerced Jaramillo when he does not speak Spanish.  Det. Soto was the only person capable of understanding Jaramillo's statement in Spanish and providing Maloney the English version to write down.  Det. Soto was also the only person capable of translating the English statement Maloney wrote, based upon Det. Soto's translation, to Jaramillo while going over the statement.  Again, Det. Soto is not a defendant.

18. Plaintiff admits in answer to interrogatories that he has never claimed any wrongdoing by Maloney throughout his criminal proceedings. Instead, Plaintiff alleged in post-conviction relief that Det. Guevara pressured and/or coerced Jaramillo. Plaintiff and his attorneys had the opportunity to fully investigate the case while fighting for his freedom.

19. Now, after approximately thirty years, a First Amended Complaint, signed by Plaintiff's counsels asserts claims against Maloney and seeks monetary damages. Yet, Plaintiff never asserted any claims against Maloney while fighting for his freedom. Maloney is entitled to learn the good faith basis for these claims and allegations and what new evidence supports such serious claims against him after all this time.

20. Furthermore, Jaramillo's statement had no impact on Plaintiff's conviction as it was not introduced into evidence nor did he testify. There was also independent probable cause based upon eyewitness identifications to support the charges against Plaintiff which is the basis for Maloney's pending motion to dismiss. [Dkt. 67]

## GENERALIZED OBJECTIONS

21. Plaintiff asserts various general "Objections" that are not contained within any particular interrogatory response, but somehow apply generally to each response.

22. Maloney's March 27, 2024 L.R. 37.2 letter explained why these generalized objections are without any basis, due not comport the Federal Rules of Civil Procedure and applicable caselaw and should be stricken. See Ex. B.

## PLAINTIFF'S DEFICIENT RESPONSES TO MALONEY'S INTERROGATORIES

23. Plaintiff objected to answering alleged "contention interrogatories" at this time and on that basis, Plaintiff refuses to answer Interrogatories 2, 3, 4, 5, 6, and 9. Plaintiff also raises this objection to Interrogatory 10 but answers over his objection.

24. In addition, Plaintiff asserted a "work product objection" and refused to answer Interrogatories 14, 15, 16, 17. Plaintiff raises this objection to Interrogatories 18 and 19 but answers over his objection.

## "CONTENTION" INTERROGATORIES

25. Maloney disagrees with Plaintiff's generalized characterization that these interrogatives are "contention interrogatories" and even if they are, it does not excuse Plaintiff's wholesale refusal to answer them. [A]n interrogatory is not immune from being answered simply because it is a contention interrogatory." *In re Peregrine Financial Group Customer Litigation*, 2015 WL 1344466, *4 (N.D. Ill. Mar. 20, 2015). "Contention interrogatories are permitted when answering them could contribute to clarifying the issues." *Id.* "In the usual case, a party will have sufficient information to respond to contention interrogatories well before the close of discovery." *Hill-Rom Services, Inc. v. Tellisense Medical*, LLC, 2019 WL 10888459, *3 (S.D. Ind. Nov. 18, 2019). "There must be an initial answer and response in good faith and as complete as possible." *Burnett & Morand Partnership v. Estate of Youngs*, 2011 WL 1237950, *3 (S.D. Ind. Apr. 4, 2011). "If later discovery efforts bring to light new facts and sources, Rule 26 allows and requires supplementation at the conclusion of discovery." *Id.*

26. Maloney acknowledges that in some cases, contention interrogatories are most appropriate towards the end of fact discovery. This is not one of those cases. Plaintiff has had extensive opportunity to investigate and conduct discovery since the underlying criminal charges were filed in 1993 through their eventual dismissal in 2022. As a result of this extensive opportunity for discovery, Plaintiff produced over sixteen thousand pages of documents related to his claim as part of his initial disclosures. This is not a case where Plaintiff has been unable to develop his claims through the aid of discovery.

27. Moreover, as Plaintiff acknowledges in his answer to Interrogatory 10, Plaintiff, by and through his criminal defense attorneys, did not allege, either in writing or orally, that Maloney engaged in the deprivation of Plaintiff's constitutional rights or engaged in any other misconduct at any point during the nearly three decades he spent fighting said charges. As Plaintiff is now bringing said claims against Maloney for the first time thirty years after the fact, answering said interrogatories will help clarify what issues or claims he brings against Maloney and the alleged basis for said claims.

28. Courts have found that "contention" interrogatories are permitted when answering them would contribute to clarifying the issues. *Fellowes, Inc. v. Aurora Corp. of Am.*, 2009 WL 1097063 at *1 (N.D. Ill. April 1, 2009). See also, *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*, 1995 WL 399712 at *3 (N.D. Ill. July 7, 1995)(allowing contention interrogatories in patent case where answers would clarify issues by informing defendants of the decision to pursue or abandon an invalidity claim).

29. As such, Plaintiff must properly answer these interrogatories and in the event new facts come to light during the course of discovery Plaintiff can, and properly should, supplement his answers pursuant to Rule 26(e).

30. Moreover, many of the interrogatories in which Plaintiff is claiming are "contention interrogatories" are not really contention interrogatories. Interrogatory #2 asks Plaintiff to state every activity, action, or task known to Plaintiff in which he contends Maloney acted as an "investigator" as alleged in the complaint. Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory.

31. Interrogatory 2 is not a contention interrogatory. Plaintiff made said allegations in the complaint and must have had a good faith basis in doing so. This interrogatory is

asking what actions, activities, or tasks does Plaintiff claim Maloney engaged in while acting as an "investigator" that provided the basis for said allegation.

32. Interrogatory 3 asks "What evidence was introduced at your [Plaintiff's] criminal trial that you contend was created by Defendant Maloney?" Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory.

33. Plaintiff's criminal trial occurred in 1995. Plaintiff has possessed transcripts of his criminal trial since at least the inception of this case and produced them as part of his initial disclosures pursuant to Rule 26(a)(1). Plaintiff's First Amended Complaint asserts a claim of "Violation of Due Process- Fabrication of Evidence Used at Trial" against Maloney. In order to bring such a claim, Plaintiff must believe that some piece of evidence offered against him at trial was created by Maloney. Plaintiff cannot allege such a claim and then feign ignorance and claim he needs additional discovery (on top of the nearly three decades of investigation by Plaintiff and those on his behalf) before he can answer. It is further important to note that Jaramillo's statement was never introduced at trial and he was never called to testify.

34. Similarly, interrogatory 9 asks "Do you allege Defendant Maloney suppressed any evidence?" Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory. Plaintiff's First Amended Complaint alleged that the individual defendants, including Maloney, withheld and suppressed exculpatory evidence from Plaintiff and his attorneys. Maloney is entitled to know what evidence Plaintiff alleged was withheld or suppressed by Maloney.

35. Lastly, Interrogatory 5 asks if Plaintiff contends that Defendant Maloney had knowledge of the alleged misconduct and/or unconstitutional acts allegedly engaged

in by Guevara and the other officer defendants. Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory.

36. In paragraph 77 of Plaintiff's First Amended Complaint, it is alleged "[t]he officer defendants, and on information and belief, ASA Maloney, were all aware of Guevara's intimidation and harassment of Jaramillo." Maloney is entitled to know what, if any, information Plaintiff has to base this alleged belief.

37. Plaintiff's "Contention Interrogatory" objections were discussed during the L.R. 37.2 conference. Plaintiff's counsel advised that he stands on said objections and that all the answers could be found in the First Amended Complaint. Plaintiff's counsel believed it was not Plaintiff's job to go through the documents and lay out how Maloney was involved. Plaintiff's counsel believed these interrogatories were best answered at the end of discovery.

38. Plaintiff's counsel's position misses the point of said interrogatories. Maloney disputes that there is any good faith basis for asserting the claims against him. Plaintiff must have gone through the documents and other evidence to support such claims contained in Plaintiff's First Amended Complaint when no such claims were ever asserted in his criminal proceedings. Jaramillo's position is already documented in his Translated Affidavit and Transcribed Interview secured by Plaintiff's criminal attorneys. These documents do not support any claims against Maloney. Maloney is entitled to complete answers to said interrogatories. Plaintiff's answers can always be supplemented upon further discovery.

### "WORK PRODUCT" OBJECTION

39. Interrogatory 14 asks Plaintiff to identify any documents relied upon at the time of filing Plaintiff's complaint upon which you based you based your good faith belief in the allegations against Maloney.

40. Interrogatory 15 asks Plaintiff to identify any individuals, agents, investigators, or attorneys who provided you information relied upon at the time of filing Plaintiff's complaint upon which you based your good faith belief in the allegations against Maloney.

41. Lastly, Interrogatory 17 asks Plaintiff to state the names and addresses of all persons who have been interviewed by, or on behalf of, Plaintiff, his attorneys, or agents regarding the murder of Antwane Douglas and the shooting of Vernon Meadors. Interrogatory 17 further asks for the type of statement, the full name and address of the person who took the statement, the date(s) of the conversation or statement, and all documents related to the interview. During the L.R. 37.2 conference, Defense counsel clarified that this "his attorneys" refers to the attorneys that filed the First Amended Complaint on behalf of Plaintiff.

42. Plaintiff asserts a work product objection over interrogatories 14, 15, and 17 and refuses to answer. During our L.R. 37.2 conference, Plaintiff's counsel maintained his work product objections contending the interrogatories seek mental impressions and trial strategy.

43. Plaintiff's invocation of the work product doctrine is without basis. Defendant acknowledges that certain documents prepared by Plaintiff's counsel in anticipation of litigation reflected mental impressions and trial strategy would be protected from

disclosure under the work product doctrine, the facts or documents underlying facts or documents are not. *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015)(citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96, (1981)). These interrogatories do not seek documents created by Plaintiff's counsels. They seek only those underlying facts, documents, or witnesses that Plaintiff and Plaintiff's counsel relied upon in bringing these allegations against Maloney. These documents have presumably already been tendered in discovery. No documents produced support Plaintiff's claims against Maloney. That is why a complete response to said interrogatories is vital to learn the basis for Plaintiff's allegations. Plaintiff can always prepare a privilege log to any documents which he contends are work-product.

**WHEREFORE**, Defendant, former Assistant State's Attorney and current Cook County Associate Judge EDWARD MALONEY respectfully requests this Honorable Court, strike Plaintiff's generalized "Objections," strike Plaintiff's specific objections to Maloney's First Set of Interrogatories 2, 3, 5, 9, 14, 15, and 17, order Plaintiff to provide full and complete responses to said interrogatories, and any further relief this Court deems fair and just.

Respectfully submitted,

s/ William B. Oberts
Special State's Attorney for
defendant, Edward Maloney

William B. Oberts - #6244723
Kevin C. Kirk - # 6329937
Tribler Orpett & Meyer, P.C.
225 W. Washington St., Suite 2550
Chicago, IL 60606
(312) 201-6400

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of **MALONEY'S SUPPLEMENTAL MOTION TO COMPEL AGAINST PLAINTIFF** was served upon:

| | |
|---|---|
| ***Attorneys for Plaintiff***<br>Ariel Olstein<br>Stuart Chanen<br>7373 Lincoln Ave., Suite 100<br>Lincolnwood, IL 60712<br>(847) 469-4669<br>ariel@chanenolstein.com<br>stuart@chanenolstein.com<br>admin@chanenolstein.com<br><br>***Attorneys for Reynaldo Guevara***<br>Steven B. Borkan<br>Timothy P. Scahill<br>Misha Itchhaporia<br>Whitney Hutchinson<br>Graham P. Miller<br>Emily E. Schnidt<br>Molly Boekeloo<br>Borkan & Scahill, Ltd.<br>20 S. Clark Street, Suite 1700<br>Chicago, IL 60603<br>(312) 580-1030<br>sborkan@borkanscahill.com<br>tscahill@borkanscahill.com<br>mitchhaporia@borkanscahill.com<br>whutchinson@borkanscahill.com<br>gmiller@borkanscahill.com<br>eschnidt@borkanscahill.com<br>mboekeloo@borkanscahill.com | ***Attorneys for City of Chicago***<br>Eileen Ellen Rosen<br>Andrew Joseph Grill<br>Austin Gordon Rahe<br>Catherine Macneil Barber<br>Jessica Zehner<br>Theresa Berousek Carney<br>Rock, Fusco & Connelly<br>333 West Wacker Drive<br>Ste 19th Floor<br>Chicago, IL 60606<br>(312) 494-1000<br>erosen@rfclaw.com<br>agrill@rfclaw.com<br>arahe@rfclaw.com<br>cbarber@rfclaw.com<br>jzehner@rfclaw.com<br>tcarney@rfclaw.com<br>khutson@rfclaw.com<br><br>***Attorneys for Gawrys, Rutherford, Riccio, Mingey,<br>Wojcik, Boris, Yanow***<br>James G. Sotos<br>Josh M. Enguist<br>Lisa M. Meador<br>Alexis Gamboa<br>The Sotos Law Firm<br>141 W. Jackson Blvd., Ste 1240A<br>Chicago, IL 60604<br>(630) 735-3300<br>jsotos@jsotoslaw.com<br>jenguist@jsotoslaw.com<br>LMeador@jsotoslaw.com<br>AGamboa@jsotoslaw.com |

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 16th day of April, 2024, with proper postage prepaid.


s/ William B. Oberts
an Attorney

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOSE CRUZ,                           )
                    Plaintiff,       )
                                     )       Case No. 23-cv-4268
        v.                           )
                                     )       Honorable Judge Jeremy Daniel
REYNALDO GUEVARA, et al.             )       Honorable Judge Gabriel Fuentes
                                     )
                    Defendants.      )

## PLAINTIFF CRUZ'S RESPONSE TO DEFENDANT MALONEY'S INTERROGATORIES

Plaintiff Jose Cruz responds to Defendant Maloney's December 28, 2023

Interrogatories as follows:

### OBJECTIONS

1.      Federal Rule of Civil Procedure 33(a)(2) states that while "[a]n interrogatory is

not objectionable merely because it asks for an opinion or contention that relates to fact or

the application of law to fact, . . . the court may order that the interrogatory need not be

answered until after designated discovery is complete, or until a pretrial conference or some

other time."  Fed. R. Civ. P. 33(a)(2).  Plaintiff Cruz objects without prejudice to each of

Defendant's contention interrogatories set forth below.  Contention interrogatories are

interrogatories "used to elicit a description of the opposing party's theory and proof to be

employed."  *Tragoszanos v. City of Algoma*, 2011 WL 2650852, at *1 (E.D. Wis. July 6, 2011),

*citing Zenith Electronics v. WH-TV Broadcasting Corp.,* 395 F.3d 416, 420 (7th Cir. 2005).

Defendant's interrogatories below ask Cruz "whether he contends X" or whether he is

"mak[ing] some specific contention" and then goes on to demand that Cruz "state all the

*facts"* or "identify all the *evidence* on which [he] *bases* some specified contention."

Sometimes the interrogatory demands that Cruz explain or defend that position further,

including spelling out the legal bases behind his contentions and/or to explain how the law

1

applies to the facts.  *See generally Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-01060, 2021 WL 4745376, at *5 n.4 (N.D. Ill. Oct. 12, 2021) and *U.S. ex rel. Tyson v. Amerigroup Ill. Inc.*, 230 F.R.D. 538, 545 (N.D. Ill., 2005).  See also *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009) ("The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position").

As Rule 33(a)(2) itself recognizes, and as the case law in relation to the rule particularly emphasizes, contention interrogatories are "most appropriate toward the close of discovery, or even after the close of discovery, to eliminate the possibility that a plaintiff . . . has not yet had time to gather the information to support its claim." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2019 WL 6498081, at *6 (N.D. Ill. Dec. 3, 2019), *citing and quoting Whitchurch v. Canton Marine Towing Co.*, 2017 WL 1165988, at *2 (C.D. Ill. Mar. 23, 2017) ("Contention interrogatories are often better answered after parties are near the end of discovery because they are better able to give complete responses.").

Courts in this district have routinely delay compelling responses to contention interrogatories until after "considerable discovery."  *See Auto Meter Products, Inc. v. Maxima Technologies & Systems, LLC,* 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) ("When one party poses contention interrogatories *after considerable discovery,* and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories") (emphasis added) (citations omitted).  *See also* all cases cited above.

Contention interrogatories are particularly inappropriate here where Cruz has provided a tremendous amount of factual detail in his July 4, 2023 Complaint (Dkt.1), his September 1, 2023 First Amended Complaint (Dkt.44), and his October 9, 2023 Rule 26(a)(1) Initial Disclosures.  By asking Cruz to answer Defendant's contention interrogatories at the very beginning of discovery, Defendant is simply asking Cruz to repeat what he has already

2

outlined with particularity in his Complaints and Disclosure.

On all these grounds, Cruz objects to answering Defendant's contention interrogatories at this time, but without prejudice to answering them near or immediately after the close of discovery (hereafter, "Contention Interrogatory Objection").

2.     Defendant objects to each attempt by Defendant to impose any duty, obligation, or restriction on Plaintiff's responses to interrogatories that exceed the requirements of the Federal Rules of Civil Procedure, including most specifically, Federal Rule of Civil Procedure 33.

3.     Defendant objects to each of Defendant's interrogatories that seek information protected by the attorney-client privilege and/or the work product doctrine (hereafter, "Work Product Objection").

4.     Defendant objects to each of Defendant's interrogatories that are directed to Plaintiff's counsel, as opposed to Plaintiff himself.

## RESPONSES TO INTERROGATORIES

1.     Were you present on scene or near the area where Antwane Douglas was murdered and Vernon Meadors was shot on October 6, 1993 at the time of the shooting? If your answer is no, state: a) Where were you located, including the address, at the time of the murder of Antwane Douglas and the shooting of Vernon Meadors on October 6, 1993; (b) Identify the names of any individuals who were with you at the address identified in subparagraph (a) at the time Antwane Douglas was murdered and Vernon Meadors was shot on October 6, 1993; (c) Identify any documents, records or other tangible information that supports where you were located and who you were with at the time of the shooting.; (d) Identify the names of any individuals you disclosed as witnesses and called to testify to your location at the time of the shooting in Plaintiff's criminal case.

**ANSWER:**

**1.     NO.**

**1(a).    3334 W. Beach in Chicago 60651, in the basement, asleep.**

**1(b).    My aunt Ada Pacheco, my uncle Santiago McClaren, my cousin Luis Eduardo Tartabu ("Tito"), and my cousin Luis Rodriguez ("Danny") were in the house**

but not with me in the basement. My aunt came into the basement between approximately 5:00 and 5:30 a.m. that same day.

**1(c). None.**

**1(d). Plaintiff Cruz objects to this sub-interrogatory because as written, it is unintelligible. If the interrogatory was intended to ask if Cruz's attorney listed any alibi witnesses as potential witnesses for Mr. Cruz's criminal trial, the answer is that Mr. Cruz does not know what his attorney disclosed to the State, if anything, in that regard. Mr. Cruz's criminal defense attorney did not call any alibi witnesses on his behalf.**

2.      In paragraph 21 of Plaintiff's Complaint, it is alleged Defendant Maloney has [sic] non-prosecutorial, investigatory responsibilities". [sic] State with specificity every activity, action, or task known to Plaintiff to date in which Plaintiff contends Maloney acted as an "investigator", the date Plaintiff alleges Defendant Maloney performed each investigatory activity, action or task alleged and identify anyone present at the time Plaintiff contends Defendant Maloney performed the investigatory activity, action or task identified. If Plaintiff refers to documents, identify with specificity the Bates page which provides the aforementioned information requested. Defendant Maloney will Rely upon your answer and any supplement as a complete identification of all alleged activity, action or task Plaintiff alleges Defendant performed that led to his conviction on the date identified and before the individuals identified which Plaintiff intends to introduce at trial and will move in limine to bar any matters not specifically disclosed herein.

**ANSWER:      CONTENTION INTERROGATORY OBJECTION.**

3.      What evidence was introduced at your criminal trial that you contend was created by Defendant Maloney?

**ANSWER:      CONTENTION INTERROGATORY OBJECTION.**

4.      State with specificity every activity, action, or task that you allege Defendant Maloney took that led to your conviction, state the date of each activity, action or task alleged and identify any individuals who were present at the time Defendant Maloney took the alleged activity, action or task on the aforementioned date. If Plaintiff refers to documents, identify with specificity the Bates page which provides the aforementioned

information requested. Defendant Maloney will rely upon your answer and any supplement

as a complete identification of all alleged activity, action or task Plaintiff alleges Defendant

performed that led to his conviction on the date identified and before the individuals

identified which Plaintiff intends to introduce at trial and will move in limine to bar any

matters not specifically disclosed herein.

**ANSWER:** **CONTENTION INTERROGATORY OBJECTION.**

5. Do you contend that Defendant Maloney had knowledge of the alleged

misconduct and/or unconstitutional acts allegedly engaged in by Defendant Guevara and/or

other Defendant Officers? If yes, please state with specificity the factual basis of this

contention and identify any document and/or evidence supporting this contention.

**ANSWER:** **CONTENTION INTERROGATORY OBJECTION.**

6. Do you contend that Defendant Maloney was in any way involved in the
identification of Plaintiff as the shooter in the Douglas Murder by Vernon Jay Meadors?
If yes, please state the date and time of Defendant Maloney's involvement, the action(s) or
task(s) taken by Defendant Maloney, and who else was present during Defendant
Maloney's involvement in the identification of Plaintiff by Vernon Jay Meadors. If Plaintiff
refers to documents, identify with specificity the Bates page which provides the
aforementioned information requested.

**ANSWER:** **CONTENTION INTERROGATORY OBJECTION.**

7. Have you ever paid, or suggested to your attorney to pay, for the testimony of
any witness in relation to *People of the State of Illinois v Jose Cruz* 93CR25151 or any
related criminal proceedings?

**ANSWER:** **NO.**

8. Do you allege Defendant Maloney fabricated and/or manufactured any
evidence generated during the Chicago Police Department investigation of the murder of
Antwane Douglas and shooting of Vernon Meadors and the Cook County State's Attorney's
Office's review thereof? If so, please identify how Plaintiff defines fabrication and/or
manufacture of evidence as alleged in the Complaint, what evidence was fabricated and/or
manufactured, the manner in which it was fabricated and/or manufactured, and the facts
and circumstances that lead you to believe Defendant Maloney knew the evidence was false,
and who participated in the fabrication and or manufacture of said evidence.

**ANSWER:** **CONTENTION INTERROGATORY OBJECTION.**

9.      Do you allege Defendant Maloney suppressed any evidence? If so, please identify when the evidence was suppressed, how the evidence was suppressed, the facts and circumstances which lead you to believe Defendant Maloney suppressed said evidence, and how the evidence would have proved Plaintiff's innocence?

**ANSWER:      CONTENTION INTERROGATORY OBJECTION.**

10.      Did Plaintiff allege any misconduct and/or deprivation of constitutional rights by Defendant Maloney in any filing or proceeding in *People of the State of Illinois v Jose Cruz* 93CR25151? If so, identify the filing or proceeding, including the page and Bates number if already produced.

**ANSWER:      CONTENTION INTERROGATORY OBJECTION.   Answering over the objection, to the best of my knowledge, my criminal defense attorney did not allege during my criminal proceeding – either in writing or orally – that ASA Maloney had, during the criminal investigation, engaged in a deprivation of my constitutional rights (or engage in other misconduct).**

11.      Did you ever give a statement to Defendant Maloney regarding the Douglas Murder that was reduced to writing? If so, please state who was present, the location where the statement was given or/or taken, and the manner in which the statement was memorialized.

**ANSWER:      I did not give a statement to Defendant Maloney that was reduced to writing.   But in an interrogation room of the police station at Grand and Central, Mr. Maloney gave me a written statement that he demanded I sign, but which I refused to sign.  Defendants Riccio and Wojcik were present when this occurred.  I do not know the contents of the statement because I refused it without looking at it.**

12.      Prior to October 9, 1993, had you ever interacted with Defendant Maloney? If so, please identify (a) the dates of your prior interactions; (b) the nature of the prior interactions, (c) whether he ever prosecuted you for any other criminal matter and, (d) whether he ever interviewed and/or spoke with you in connection with any investigations of any law enforcement agency;

**RESPONSE:      To the best of my knowledge, no.**

13.     Have you communicated with any of the individuals identified on Plaintiff's 26(a)(1)(A) disclosures at any time from the date of the Douglas Murder to the present? If so, please identify:

(a) the date of the communication;

(b) the method of communication;

(c) the subject and or topics of the communication; and

(d) any location of any documents in any way referencing and/or memorizing the communication.

**Anthony Wojcik (#20834)          YES**
**Anthony Riccio (#20870)          YES**
    (a) October 9, 1993;
    (b) Face-to-face Interrogation;
    (c) Detectives Wojcik and Riccio interrogated me.
    I denied any involvement in the shooting
    I told them where I was at 3:30 a.m.
    I told them what I was doing at 3:30 a.m.
    I told them that I was sleeping in the basement where I lived with my aunt.
    I told them that I arrived home around 12:30 a.m.
    I told them that I went to my bedroom in the basement around 1:00 a.m.
    I told them that I remained there until my aunt, Ada Pacheco, woke me at approximately 5:00 when my aunt left for Puerto Rico.
    I told them that my aunt's husband, Santiago McClaren also lived there.
    I told them that my cousin, 24-year-old Luis Tartabu ("Tito") also lived there.
    I told them that my other cousin, 13- year-old Luis Rodriguez ("Danny"), also lived there.
    I told Wojcik and Riccio that my aunt and cousin Tito were both awake around 1:00 a.m. when I went down to the basement to go to sleep.
    I told them that my cousin Danny was asleep when I arrived home that night.
    (d) I believe GPR and/or Supplemental Report.

**Reynaldo Guevara                     NO**
**Robert Rutherford (#20720)      NO**
**Robert Boris (#20670)              NO**
**Stephen Gawrys (#20689)          NO**
**Edward Mingey (#1731)            NO**
**Geri Lynn Yanow                     NO**
**Edward Maloney                     YES**
    (a) October 9, 1993;
    (b) Face-to-face;
    (c) Maloney told me who he was and pulled out his ID to show me. He placed a document in front of me and told me to sign it, and I refused.
    (d) I do not what happened to the piece of paper that he demanded that I sign.

**Sergeant Nick Gaudio (#1167) NO**
**Sergeant Lynn Kuehn (#2117) NO**
**Sgt. Frank Cappitelli (#1212)  NO**
**Maria Soto (#20657)              NO**
**Kevin McDonald (#20994)       NO**
**James Cornelison (#20157)      NO**
**Thomas Murphy (#14930)        NO**
**Julie Butzen (#8582)             NO**

7

| | |
|---|---|
| **Charles Odegard (#13258)** | **NO** |
| **Keith Fleming (#12328)** | **NO** |
| **Craig Letrich (#6198)** | **NO** |
| **Eliezer Ortiz (#10979)** | **NO** |
| **Hector Vergara (#14416)** | **NO** |
| **Thomas Shouse (#4522)** | **NO** |
| **Ronald Ferrari (#5150)** | **NO** |
| **Joseph Bembynista (#15359)** | **NO** |
| **James Van Tilburg (#15145)** | **NO** |
| **Larry Krause (#3372)** | **NO** |
| **James Hogan (#6414)** | **NO** |
| **Dr. Larry Simms** | **NO** |
| **Any other medical examiners** | **NO** |
| **Pedro Jaramillo** | **NO** |
| **Ivan Rios** | **NO** |
| **Vernon Jay Meadors** | **NO** |
| **Francisco "Frank" Valverde** | **NO** |
| **Luis Tartabu ("Tito")** | **YES** |
| | (a) don't recall; |
| | (b) in person, text, or phone; |
| | (c) family matters; and |
| | (d) none. |
| **Luis Rodriguez ("Danny")** | **YES** |
| | (a) don't recall generally, but last time was this week; |
| | (b) in person, text, or phone, this week by phone; |
| | (c) family matters generally; this week I asked him to contact one of my lawyers; and |
| | (d) none. |
| **Santiago McClaren** | **YES** |
| | (a) don't recall; |
| | (b) in person, text, or phone; |
| | (c) family matters; |
| | (d) none. |
| **Other Guevara/Area 5 Victims** | **YES, some** |
| | (a) The conversations date back to my incarceration and have continued after my release. |
| | (b) During incarceration, they were face-to-face and since release, they are face-to-face and by phone. |
| | (c) We discuss that we shared very similar experiences; we discuss our cases; we discuss our family and friends. |
| | (d) None of these conversations have been reduced to writing as far as I know. |
| **Sidley Austin LLP Attorneys** | **NO** |
| **High-Ranking Chicago Off.** | **NO** |
| **High-Ranking CPD Officials** | **NO** |
| **City 30(b)(6) Representatives** | **Not sure, because they have not yet been identified, but highly unlikely.** |

8

**CPD 30(b)(6) Representatives Same**
**Jose Cruz**                          **YES, sometimes I talk to myself; I think we all do**
                                       **that from time to time.**

14.    Identify any documents via specific Bates stamp page that you relied upon at the time of filing your complaint which you base a good faith belief for your allegations against Defendant Maloney and identify the specific paragraphs of Plaintiff's Complaint asserting said allegations based upon said specific Bates stamp documents.

**ANSWER:    WORK PRODUCT OBJECTION.**

15.    Identify any individuals you, your agents, investigators, attorneys or anyone acting on your behalf spoke with and for which you relied upon information they provided that you relied upon at the time of filing your complaint which you base a good faith belief for your allegations against Defendant Maloney and identify the paragraphs of Plaintiff's Complaint asserting said allegations by the respective individual.

**ANSWER:    WORK PRODUCT OBJECTION.**

16.    Did you ever use the documents identified in Answer 14 or call the individuals identified in Answer 15 in the defense of Plaintiff's Criminal Case? If so, identify the documents by Bates stamp page, the specific individual, along with the date that specific document was introduced at Plaintiff's Criminal Case and that date that specific individual testified in Plaintiff's Criminal Case.

**ANSWER:    WORK PRODUCT OBJECTION.**

17.    State the full names and addresses of all persons who have been interviewed by, or on behalf of, you, your attorneys, or agents regarding the murder of Antwane Douglas and shooting of Vernon Meadors and/or Plaintiff's Criminal Case.  In addition state:
   a)    What type of statement, i.e., written, reported by shorthand, oral, recorded, etc. was secured based upon the interview;
   b)    The full name and residence address and business address of the person or persons who took the statement;
   c)    The date or dates of such conversations and/or statements; and
   d)    Pursuant to Rule 33, produce all documents related to the interview and/or statement provided.

**ANSWER:    WORK PRODUCT OBJECTION.**

18.    Did Plaintiff (including his attorneys and agents) ever speak with Pedro Jaramillo regarding his statement to Defendant Maloney and Detective Maria Soto? If yes, please provide the date of the interaction, who interacted with Jaramillo, the method of communication, and what Jaramillo advised regarding said statement.

**ANSWER:    WORK PRODUCT OBJECTION.  Answering over the work product**

**objection (solely because it has already been narrowly waived at to these**

9

documents), my former investigator Alfredo Lopez spoke with Mr. Jaramillo on May 25, 2017. The conversation was recorded and transcribed, first in Spanish, then translated into English. Both copies will be produced as soon as they are bates labeled, which will occur the week of January 15.

Mr. Lopez returned to Mr. Jaramillo on November 30, 2017, at which time Mr. Jaramillo signed an affidavit, a copy of which was produced with Mr. Cruz's initial disclosure documents at bates number Cruz006918-006920.

As to the content of the recorded statement and the affidavit, that content can most precisely be obtained from the documents themselves, but in summary and in pertinent part they state that at the scene, Mr. Jaramillo spoke only to the two victims and to police. He stated that the person who he saw shoot the gun was "of the black race" and that he was scared "of the person who killed the victim." He stated that Guevara spoke with him three times and pressured him to change his identification, with Guevara indicating that he wanted Jarmillo to identify Jose Cruz. When Jaramillo told Guevara that he "had not seen" Cruz, Guevara "would get furious." When Jaramillo informed his boss, Francisco Valverde, that he was being pressured, Mr. Valverde obtained a lawyer for Jaramillo. Finally, Mr. Jaramillo stated that he made the statements to Mr. Lopez and in his affidavit of his own free will and that he had not been promised anything or threatened in any way in making the statements.

19. Did Pedro Jaramillo ever tell Plaintiff (including his attorneys or agents) that Defendant Maloney coerced or improperly transcribed Jaramillo's statement? If yes, please provide the date of the communication, method of communication, and what specifically Jaramillo advised?

**ANSWER:** **See Response to #18 directly above.**

20. Does Plaintiff claim that Pedro Jaramillo could not speak English and that Detective Maria Soto translated the statement to Defendant Maloney?

**ANSWER:** Yes, Plaintiff Cruz claims that Mr. Jaramillo could not speak English.

Yes, Plaintiff Cruz claims that Detective Maria Soto translated to the Defendants statements that Mr. Jaramillo made to her. The claim that Soto "translated," however, is not a concession that the statements the Defendants attributed to Mr. Jaramillo in their report accurately reflected what Soto translated to the Defendants.

Dated: January 12, 2024

Respectfully submitted,

/s/ Stuart J. Chanen
on behalf of Plaintiff Jose Cruz

Stuart J. Chanen (Stuart@ChanenOlstein.com)
Ariel Olstein (Ariel@ChanenOlstein.com)
CHANEN & OLSTEIN LLP
7373 Lincoln Ave., Suite 100
Lincolnwood, IL 60712
847-469-4669

Jack Samuel Tenenbaum (s-tenenbaum@law.northwestern.edu)
Northwestern Pritzker School of Law
375 E. Chicago Ave.
Suite 411
Chicago, IL 60611
312-503-4808

11

**<u>VERIFICATION</u>**

I, Jose Cruz, verify under oath subject to the penalties of perjury that I have read the

following four documents produced to Defendants during the week of January 8, 2024:

      Plaintiff Cruz's Response to Defendant Guevara's Interrogatories
      Plaintiff Cruz's Response to Defendant Boris's Interrogatories
      Plaintiff Cruz's Response to Defendant Wojcik's Interrogatories
      Plaintiff Cruz's Response to Defendant Maloney's Interrogatories

These responses are true and correct to the best of my knowledge and belief.

                        <u>/s/ *Jose Cruz*</u>
                        Plaintiff Jose Cruz


                        <u>January 12 , 2024</u>
                        Date

## CERTIFICATE OF SERVICE

I certify that on Friday, January 12, 2024, I caused **Plaintiff's Responses to Defendant Maloney's Interrogatories** to be served upon counsel of record via electronic mail at the following electronic mail addresses:

***Attorneys for Reynaldo Guevara***
Steven B. Borkan (Sborkan@borkanscahill.com)
Timothy P. Scahill (tscahill@borkanscahill.com)
Graham P. Miller (gmiller@borkanscahill.com)
Emily E. Schnidt (eschnidt@borkanscahill.com)
Molly Boekeloo (mboekeloo@borkanscahill.com)
Whitney Hutchinson (whutchinson@borkanscahill.com)
Mischa Itchhaporia (mitchhaporia@borkanscahill.com)
Borkan & Scahill
20 S. Clark Street, Suite 1700
Chicago, IL 60603
(312)-580-1030

***Attorneys for Defendant the City of Chicago***
Eileen E. Rosen (erosen@rfclaw.com)
Andrew J. Grill (agrill@rfclaw.com)
Austin G. Rahe (arahe@rfclaw.com)
Catherine M. Barber (cbarber@rfclaw.com)
Jessica Zehner (jzehner@rfclaw.com)
Lauren M. Ferrise (lferrise@rfclaw.com)
Theresa B. Carney (tcarney@rfclaw.com)
Rock, Fusco & Connely
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
(312) 494-1000

***Attorneys for Edward Maloney***
William B. Oberts (wboberts@tribler.com)
Kevin C. Kirk (kckirk@tribler.com)
Tribler Orpett and Meyer, P.C.
225 West Washington St, Suite 2550
Chicago, IL 60606
(312) 201-6400

***Attorneys for Gawrys, Rutherford, Riccio, Mingey, Wojcik, Boris,***
***and the deceased Detective***
James G. Sotos (jsotos@jsotoslaw.com)
Josh M. Engquist (jengquist@jsotoslaw.com)
Lisa M. Meador (LMeador@jsotoslaw.com)
Jeffrey N. Given (JGiven@jstoslaw.com)
Alexis M. Gamboa (agamboa@jsotoslaw.com)
The Sotos Law Firm, P.C.
141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60604
(630) 735-3300

# EXHIBIT B



**TRIBLER**
**ORPETT**
**& MEYER P.C.**

225 West Washington – Suite 2550
Chicago, IL  60606-2418

312-201-6400
www.tribler.com

March 25, 2024

<u>*VIA ELECTRONIC MAIL*</u>
Stuart J. Chanen
Ariel Olstein
Chanen & Olstein LLP
7373 Lincoln Ave, Suite 100
Lincolnwood, IL 60712
Stuart@ChanenOlstein.com
Ariel@ChanenOlstein.com


Re:     *Jose Cruz v Reynaldo Guevara, et al.*
         Case No.:  23-CV-4268
         Our File No.:  298.27741

Dear Counsels,

I write pursuant to Local Rule 37.2 regarding Plaintiff's responses to Defendant Maloney's interrogatories.

**Plaintiff Cruz' Responses to Maloney's Interrogatories:**

**Plaintiff's generalized objection regarding "contention interrogatories"**

Plaintiff responds to Maloney's interrogatories by first raising several "objections" which appear to be general to all answers. First and foremost, Plaintiff objects to answering any "contention interrogatories" at this time and offers to answer them near or immediately after the close of discovery. On the basis of this objection, Plaintiff refuses to answer Interrogatories 2, 3, 4, 5, 6, 8, and 9. Additionally, Plaintiff raises this objection to Interrogatory 10 but answers over his objection.

Plaintiff's "objections" two through four assert additional "objections", but do not identify any particular answer to interrogatory in which they apply. Therefore, it appears incumbent upon the Defendants to make the subjective determination whether the "objection" applies in any given circumstance to any given interrogatory.

For Plaintiffs' "objections" two through four, Defendant cannot determine which objections Plaintiffs seek to apply to any given answer/response.  Therefore, please strike said general objections and identify which objection applies to any particular interrogatory.

For further explanation, we note that objection two claims Defendant is attempting to impose a duty, obligation or restriction that exceeds the Federal Rules.  What duty, obligation, restriction do you refer to, what Federal Rule do you contend is applicable and to what interrogatory do you contend that applies?

Objection three provides a general objection based upon the attorney-client and work product privilege.  What is the basis for the assertion of said privilege as to any particular

interrogatory?  We did not receive a privilege log in accordance with the Federal Rules. Please provide a privilege log.

Objection four objects to the extent an interrogatory is directed to Plaintiff's counsel rather than Plaintiff.  All interrogatories are directed to Plaintiff.  That is clear in the introductory paragraph.  It is true that Plaintiff's counsel may have reviewed documents and/or have information not possessed by Plaintiff, yet Plaintiff is still in *possession* of any information possessed by his counsels which they may not have shared with him.

Plaintiff's generalized objections further contend that "Defendant is simply asking Cruz to repeat what he has already outlined with particularity in his Complaints and Disclosures." Plaintiff did not sign the Complaint or Disclosures.  Those documents are signed by his attorneys.  Interrogatories are answered by the party and signed under oath.  There is a significant difference between the two.

Plaintiffs' "objections" do not comport with the Federal Rules of Civil Procedure, and it cannot be determined based upon said objection, whether it applies to any given answer and/or response – other than the first objection addressing alleged contention interrogatories in which Plaintiff specifically identifies Interrogatories 2, 3, 4, 5, 6, 8, and 9 and 10.  If a party objects to an interrogatory, the grounds for the objection shall be stated with specificity.  Fed. R. Civ. P. 33(b)(4).  *See also In Re Sulfuric Acid Anti Trust Litig.*, 231 F.R.D. 351 (N.D. 2005); *Jones v. Syntex Labs*, 2011 U.S. Dist. LEXIS 17926 (N.D. 2011). Plaintiffs' general objections two through four are not stated with the "specificity" as required by the federal rules.

Plaintiffs' answers and/or responses must also clearly assert the basis of a party's objection, if any, in relation to the specific information and/or documents in question.  Broad objections to all of a party's interrogatories and/or requests are improper.  *See Buonauro v. City of Berwyn,* 2011 U.S. Dist. LEXIS 56194 (N.D. 2011).  Any objection must clearly specify the objection and how that objection relates to the documents being demanded and/or information requested.  *In Re Aircrash Near Roselawn,* 172 F.R.D. 295 (N.D. 1997).  Courts have repeatedly admonished against "boilerplate" objections.  *United Automobile Ins. v. Pethinaidu Veluchamy,* 2010 U.S. Dist. LEXIS 19435 (N.D. 2010).  *See also Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073 (7th Cir. 1987); *Channell v. CitiCorp Nat.. Services, Inc.,* 89 F.3d 379 (7th Cir. 1996).  Courts have repeatedly rejected genetic, non–specific, boilerplate objections.  *See In Re Aircrash Near Roselawn,* Ind. 172 F.R.D. 295 (N.D. IL. 1997); *Klein v. AIG Trading Group, Inc.,* 228 F.R.D. 418 (D. Conn. 2005); *Athridge v. Aetna Casualty & Surety Co.,* 184 F.R.D. 181 (D. D. C. 1998).

Maloney disagrees with Plaintiff's generalized characterization that these interrogatories are "contention interrogatories" and even if they are, it does not excuse Plaintiff's wholesale refusal to answer them. [A]n interrogatory is not immune from being answered simply because it is a contention interrogatory." *In re Peregrine Financial Group Customer Litigation*, 2015 WL 1344466, *4 (N.D. Ill. Mar. 20, 2015). "Contention interrogatories are permitted when answering them could contribute to clarifying the issues." *Id.*  "In the usual case, a party will have sufficient information to respond to contention interrogatories well before the close of discovery." *Hili–Rom Services, Inc. v. Tellisense Medical, LLC,* 2019 WL 10888459, *3 (S.D. Ind. Nov. 18, 2019). "There must be an initial answer and response in

2

good faith and as complete as possible." *Burnett & Morand Partnership v. Estate of Youngs*, 2011 WL 1237950, *3 (S.D. Ind. Apr. 4, 2011). "If later discovery efforts bring to light new facts and sources, Rule 26 allows and requires supplementation at the conclusion of discovery." *Id.*

We acknowledge that in some cases, contention interrogatories are most appropriate towards the end of fact discovery. This is not one of those cases. Plaintiff has had extensive opportunity to investigate and conduct discovery since the underlying criminal charges were filed in 1993 through their eventual dismissal in 2022. As a result of this extensive opportunity for discovery, Plaintiff produced over sixteen thousand pages of documents related to his claim as part of his initial disclosures. This is not a case where Plaintiff has been unable to develop his claims through the aid of discovery.

Moreover, as Plaintiff acknowledges in his answer to Interrogatory 10, Plaintiff, by and through his criminal defense attorneys, did not allege, either in writing or orally, that Maloney engaged in a deprivation of Plaintiff's constitutional rights or engaged in any misconduct whatsoever at any point during the nearly three decades he spent fighting said charges. As Plaintiff is now bringing said claims against Maloney for the first time thirty years after the fact, answering said interrogatories will help clarify what issues or claims he is bringing against Maloney and the bases therein. It will also identify what good faith basis supports the allegations against Maloney.  We understand Jaramillo contends he did not identify the perpetrators in a certain way in his statement, yet Jaramillo has never contended that Judge Maloney coerced him or otherwise alleged any wrongful conduct by him, nor has Mr. Cruz throughout the criminal proceedings.  Furthermore, Jaramillo's statement was taken through an interpreter – Officer Soto.  Maloney spoke through the interpreter who translated everything stated by Maloney and Jaramillo.  Officer Soto is not a defendant.  This begs the question of how Maloney could possibly be a defendant when he was not interpreting Jaramillo's statements and relying upon Officer Soto.  This fact alone provides additional basis as to why Maloney is entitled to proper answers to said interrogatories.

Furthermore, certain interrogatories are specific as to the time period. For example, interrogatory number two specifically states "to date".  For clarification, and for purposes of answering said interrogatory now, please interpret "to date" as September 1, 2023, the date Plaintiff's First Amended complaint was filed.  Interrogatory number three asks about Plaintiff's criminal trial that happened approximately 30 years ago.  This is not an issue of securing additional discovery.  Plaintiff was present at his criminal trial.  Both Plaintiff nad his attorneys have had documents from all criminal proceedings for several years.  These are just a few examples we highlight.  We address each interrogatory in particular below.

Courts have found that "contention" interrogatories are permitted when answering them would contribute to clarifying the issues. Contention interrogatories are permitted when answering them could contribute to clarifying the issues. *Fellowes, Inc. v. Aurora Corp. of Am.*, 2009 WL 1097063 at *1 (N.D. Ill. April 1, 2009). See also, *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*, 1995 WL 399712 at *3 (N.D. Ill. July 7, 1995)(allowing contention interrogatories in patent case where answers would clarify issues by informing defendants of the decision to pursue or abandon an invalidity claim).

As such, we request Plaintiff to properly answer these interrogatories now. In the event any new facts come to light during the course of discovery Plaintiff can, and properly should, supplement his answers pursuant to Rule 26(e).

Please supplement Plaintiff's answers to interrogatories 2, 3, 5, 6, 8, 9, 14, 15 and 17,

**Interrogatory 2**

In paragraph 21 of Plaintiff's First Amended, it is alleged that Maloney had non-prosecutorial, investigatory responsibilities in connection with the investigation of the murder of Antwane Douglas and the shooting of Vernon Meadors.

Interrogatory #2 asks Plaintiff to state every activity, action, or task known to Plaintiff **to date** (emphasis added) in which Plaintiff contends Maloney acted as an "investigator" as alleged in the complaint. Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory.

First, this is not a contention interrogatory. Plaintiff made allegations in the complaint and must have had a good faith basis in doing so. Again, as Plaintiff concedes in his answer to Interrogatory No. 10, he has never alleged any wrongdoing by Maloney, nor has any witness for that matter. This interrogatory asks what actions, activities, or tasks does Plaintiff claims Maloney engaged in while acting as an "investigator" that provided the basis for said allegation.

This is not a contention interrogatory in which discovery is needed as, again, Plaintiff is well aware of the history of his criminal proceedings and, the interrogatory specifically states "to date". For purposes of "to date", and answering said interrogatory at this time, Plaintiff can use September 1, 2023 as the "to date" date which is the date Plaintiff's First Amended Complaint was filed.

**Interrogatory 3 and 9**

Interrogatory 3 asks "What evidence was introduced at your [Plaintiff's] criminal trial that you contend was created by Defendant Maloney?" Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory.

Interrogatory 3 is a simple question. Plaintiff's criminal trial occurred in 1995. Plaintiff has had possession of transcripts of his criminal trial since at least the inception of this case and produced them as part of his initial disclosures pursuant to Rule 26(a)(1). Plaintiff's First Amended Complaint asserts a claim of "Violation of Due Process– Fabrication of Evidence Used at Trial" against Maloney. In order to bring such a claim, Plaintiff must believe that some piece of evidence offered against him at trial was created by Maloney. Plaintiff cannot allege such a claim and then feign ignorance and claim he needs additional discovery (on top of the nearly three decades of investigation by Plaintiff and those on his behalf) before he can answer.

Similarly, interrogatory 9 asks "Do you allege Defendant Maloney suppressed any evidence?" Plaintiff asserts a "contention interrogatory objection" and refuses to answer

said interrogatory. Plaintiff's First Amended Complaint alleged that the individual defendants, including Maloney, withheld and suppressed exculpatory evidence from Plaintiff and his attorneys. Maloney is entitled to know what evidence Plaintiff alleged was withheld or suppressed by Maloney.

**Interrogatory 5**

Interrogatory 5 asks if Plaintiff contends that Defendant Maloney had knowledge of the alleged misconduct and/or unconstitutional acts allegedly engaged in by Guevara and the other officer defendants. Plaintiff asserts a "contention interrogatory objection" and refuses to answer said interrogatory.

In paragraph 77 of Plaintiff's First Amended Complaint, it is alleged "[t]he officer defendants, and on information and belief, ASA Maloney, were all aware of Guevara's intimidation and harassment of Jaramillo." Maloney is entitled to know what, if any, information Plaintiff has to base this alleged good faith belief. Again, Plaintiff has never alleged any wrongdoing by Maloney throughout his criminal proceedings

**Interrogatory 6**

Interrogatory 6 asks if Plaintiff contends Maloney was in any way involved in the identification of Plaintiff as the shooter in the Douglas Murder by Vernon Jay Meadors? And if so, to provide additional information.

Plaintiff is in possession of all the police reports, documents from the CCSAO and other entities, individuals. Plaintiff was also present at his criminal trial and possess all subsequent documents filed as part of his criminal proceedings, including appeals and post-conviction proceedings. There are no documents that claim ASA Maloney was present for any lineups or otherwise was involved in the identification of Plaintiff by Meadors. Similarly, Plaintiff has never alleged any such involvement by Maloney. This is not a contention interrogatory requiring any additional discovery. Meadors testified and Plaintiff, via his counsel, had the opportunity to examine Meadors. Maloney is entitled to an answer now without any additional discovery.

**Interrogatory 8**

Interrogatory 8 asks if Plaintiff alleges Maloney fabricated and/or manufactured any evidence generated during the CPD's investigation of the murder of Antwane Douglas and shooting of Vernon Meadors and the CCSAO's review thereof? And if so, to provide additional information.

Plaintiff has all of the documents in the criminal investigation and was present for his criminal trial. Plaintiff is also aware of when Maloney was present at the police station and what acts he performed.

This is not a contention interrogatory necessitating additional discovery.

5

**Interrogatory 14 and 15:**

Interrogatory 14 asks Plaintiff to identify any documents relied upon at the time of filing Plaintiff's complaint upon which you base a good faith belief for the allegations against Maloney.

Similarly, Interrogatory 15 asks Plaintiff to identify any individuals, agents, investigators, or attorneys who provided you information relied upon at the time of filing Plaintiff's complaint upon which you based your good faith belief in the allegations against Maloney. Plaintiff asserts a work product objection over both interrogatories and refuses to answer.

As you know, Federal Rule of Civil Procedure 11 requires an attorney to sign any pleadings, certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… (3) that the factual contentions have evidentiary support…". Mr. Olstein signed Plaintiff's First Amended Complaint which alleges Maloney fabricated false evidence against Plaintiff, withheld exculpatory evidence, and conspired with CPD officers to violate Plaintiff's constitutional rights. Therefore, Mr. Olstein must have had a good faith basis upon which he based these allegations against Maloney.

Plaintiff's invocation of the work product doctrine is without basis. While any documents prepared by Plaintiff's counsel in anticipation of litigation would be protected from disclosure under the work product doctrine, the facts or documents underlying facts or documents are not. *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015)(citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96, (1981)). Theses interrogatories do not seek documents created by Plaintiff's counsels. They seek only those underlying facts, documents, or witnesses that Plaintiff and Mr. Olstein relied upon in bringing these allegations against Maloney. As such, your invocation of the work product doctrine and refusal to answer is inappropriate.

**Interrogatory 17**

Interrogatory 17 asks Plaintiff to state the names and addresses of all persons who have been interviewed by, or on behalf of, Plaintiff, his attorneys, or agents regarding the murder of Antwane Douglas and the shooting of Vernon Meadors. Interrogatory 17 further asks for the type of statement, the full name and address of the person who took the statement, the date(s) of the conversation or statement, and all documents related to the interview. Plaintiff asserts "work product objection" and refuses to answer.

As discussed above, the work product doctrine protects only those documents created by counsel in anticipation of litigation, not the underlying facts. Any statements taken by Plaintiff (or his attorneys/agents) would not be protected from disclosure under the work product doctrine and should properly be produced.  Furthermore, the name and address, the date and type of statement is also not work product.

<u>Conclusion</u>

We appreciate your anticipated cooperation in addressing the issues raised above. Please advise if you are available to discuss these issues this week pursuant to Local Rule 37.2. It would be helpful in advance of any call, if you provide an email advising of your position so we know what, if any issues, must be addressed.

Thank you.

Very truly yours,

s/ William B. Oberts
Wboberts@tribler.com
(312) 201-6436

# EXHIBIT C

| | |
|---|---|
| **From:** | Bill Oberts |
| **To:** | Stuart Chanen |
| **Cc:** | Ariel Olstein; Kevin C. Kirk |
| **Subject:** | RE: Cruz v. Guevara, et al; Case No. 23-cv-4268 - |
| **Date:** | Thursday, April 4, 2024 1:23:12 PM |
| **Attachments:** | image002.png |
| | image003.png |
| | image005.png |

Stuart:

We have attempted to address our issues pursuant to L.R. 37.2 on multiple occasions since sending correspondence outlining the discovery issues we raised. We will need to move forward with motion practice tomorrow if we cannot meet and confer. We are always amenable to addressing issues per L.R. 37.2 even after a motion is filed, however, we cannot delay any further.

Bill

**William B. Oberts**
Attorney at Law

PLEASE NOTE:
Service per IL Sup. Ct. Rule 11
is accepted at docket@tribler.com

**TRIBLER ORPETT & MEYER P.C.**
225 West Washington - Suite 2550
Chicago, IL 60606-2418

312-201-6400   |   312-201-6436 (d)
www.tribler.com

This e-mail, including attachments, contains information that is confidential and it may be protected by the attorney-client or other privileges. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not an intended recipient, please delete this e-mail, including attachments, and notify me by return mail, e-mail, or telephone. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful.

**From:** Kevin C. Kirk <kckirk@tribler.com>
**Sent:** Wednesday, April 3, 2024 2:12 PM
**To:** Stuart Chanen <Stuart@ChanenOlstein.com>
**Cc:** Ariel Olstein <Ariel@ChanenOlstein.com>; Bill Oberts <wboberts@TRIBLER.COM>
**Subject:** RE: Cruz v. Guevara, et al; Case No. 23-cv-4268 -

Stuart,

Following up again on Maloney's 37.2 letter. Do you anticipate issuing a written response as indicated in your email from last Wednesday? Are you available this Friday around 3 or 330 pm for a meet and confer?

**Kevin C. Kirk**
Attorney at Law

PLEASE NOTE:
Service per IL Sup. Ct. Rule 11
is accepted at docket@tribler.com

**TRIBLER ORPETT & MEYER P.C.**
225 West Washington - Suite 2550
Chicago, IL 60606-2418
312-201-6400    |    312-201-6415 (d)
www.tribler.com

This e-mail, including attachments, contains information that is confidential and it may be protected by the attorney-client or other privileges. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not an intended recipient, please delete this e-mail, including attachments, and notify me by return mail, e-mail, or telephone. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful.

**From:** Kevin C. Kirk
**Sent:** Tuesday, April 2, 2024 1:17 PM
**To:** Stuart Chanen <Stuart@ChanenOlstein.com>
**Cc:** Ariel Olstein <Ariel@ChanenOlstein.com>; Bill Oberts <wboberts@TRIBLER.COM>
**Subject:** RE: Cruz v. Guevara, et al; Case No. 23-cv-4268 -

Stuart,

I wanted to follow up on Maloney's 37.2 letter to Plaintiff. Last Wednesday you indicated you would get us a written response by Friday. We didn't receive a response so we wanted to follow up with you to see when you planned to respond.

Additionally, we are available on Friday at 3pm for a phone call meet and confer. Would that time work for you two?

**Kevin C. Kirk**
Attorney at Law

PLEASE NOTE:
Service per IL Sup. Ct. Rule 11
is accepted at docket@tribler.com

**TRIBLER ORPETT & MEYER P.C.**
225 West Washington - Suite 2550
Chicago, IL 60606-2418

312-201-6400    |    312-201-6415 (d)
www.tribler.com

This e-mail, including attachments, contains information that is confidential and it may be protected by the attorney-client or other privileges. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not an intended recipient, please delete this e-mail, including attachments, and notify me by return mail, e-mail, or telephone. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful.

**From:** Stuart Chanen <Stuart@ChanenOlstein.com>
**Sent:** Wednesday, March 27, 2024 9:09 PM
**To:** Jeffrey C. Grossich <JGrossich@jsotoslaw.com>; Catherine M. Barber <cbarber@rfclaw.com>
**Cc:** Kevin C. Kirk <kckirk@tribler.com>; kboyle@borkanscahill.com; Ariel Olstein <Ariel@ChanenOlstein.com>; Alexis M. Gamboa <AGamboa@jsotoslaw.com>; Caroline P. Golden <CGolden@jsotoslaw.com>; Katelyn Salek <ksalek@jsotoslaw.com>; Jim Sotos <JSotos@jsotoslaw.com>; Elise A. Lindsley <elindsley@jsotoslaw.com>; Katelyn Salek <ksalek@jsotoslaw.com>; Valerie Stubbe <VStubbe@jsotoslaw.com>; fsmith@ancelglink.com; Josh M. Engquist <JEngquist@jsotoslaw.com>; Lisa Meador <LMeador@jsotoslaw.com>; Tonet Ballard <TBallard@jsotoslaw.com>; Rachael L. H. Letten <rletten@jsotoslaw.com>; Lauren E. Muhr <LMuhr@jsotoslaw.com>; agrill@rfclaw.com; Kara Hutson <khutson@rfclaw.com>; Austin Rahe <arahe@rfclaw.com>; Eileen E. Rosen <erosen@rfclaw.com>; jzehner@rfclaw.com; Melanie Senesac <msenesac@rfclaw.com>; Theresa B. Carney <tcarney@rfclaw.com>; eschnidt@borkanscahill.com; Elena Favela <Elena@borkanscahill.com>; Liana Favela <LFavela@borkanscahill.com>; Wendy Chasteen <wendy@kmlltdlaw.com>; gmiller@borkanscahill.com; mboekeloo@borkanscahill.com; Kellie Voss <Kellie@kmlltdlaw.com>; sborkan@borkanscahill.com; tscahill@borkanscahill.com; whutchinson@borkanscahill.com; mitchhaporia@borkanscahill.com; Docket <docket@TRIBLER.COM>; Nick Gierlak <ngierlak@tribler.com>; Bill Oberts <wboberts@TRIBLER.COM>; Deborah McClain <Admin@ChanenOlstein.com>; s-tenenbaum@law.northwestern.edu
**Subject:** RE: Cruz v. Guevara, et al; Case No. 23-cv-4268 -

Folks:

Here are all of the discovery issues that I believe are percolating.
The first four are related to Judge Fuentes's most recent Court's Order; and the remainder are just to summarize where items stand between us.
I am sure I have left items out, though not intentionally. If I have, please add them.

COURT'S MARCH 22 ORDER
1. On March 26, the CCPDO produced documents responsive to the Individual Defendants' subpoena, but the fight continues. We are reviewing the new production to determine if documents need to be clawed back.
2. Cruz will produce responsive CWC documents no later than Friday, March 29, by 5 pm.
3. Cruz will produce a privilege log on April 1 (seriously, April 1) or April 2.
4. Pursuant to the Court's Order, the CCSAO is scheduled to file a brief Friday, March 29, by 5 pm.
I enclose our response to Jeff's draft JSR.

ADDITIONAL DOCUMENT PRODUCTION AND TESTING

1. On December 28, Defendant Maloney sent document requests to Cruz. Cruz responded and objected on January 12. On March 25, Maloney sent a Rule 37.2 letter. I am preparing a brief written response to that letter, which I will complete and send no later than Friday by 3 pm, and I will be available for a phone "meet and confer" any day next week.

2. On February 19, Cruz issued its second document request to the City, seeking certain originals housed at the Chicago Police Department. On March 20, the City indicated it would permit an inspection by counsel. Extensive written and face-to-face meet and confers followed, in which Plaintiff disclosed two experts who intended to examine and test certain documents forensically under Rule 34. The ball is now in the City's court to provide dates that such inspection and testing may proceed.

3. On February 26, Cruz issued its third document request to the City, seeking (1) certain homicide files and (2) other *Monell* documents housed in the offices of the Police Superintendent, the Police Board, the Mayor, and the Corporation Counsel. The City objected, and there have been several written and face-to-face meet and confers, and the ball is now in Plaintiff Cruz's court to respond to the City's last written summary of the parties' discussions.

DEPOSITIONS

4. On February 29, Cruz subpoenaed third-party witness Charles Odegard, a CPD officer for a March 25 deposition.. On March 1, The City indicated that it would provide Mr. Odegard's availability, but it has yet to do so and canceled the March 25 deposition.

5. On February 29, Cruz subpoenaed third-party witness Joseph Bembynista, a CPD officer for a March 28 deposition.. On March 1, The City indicated that it would provide Mr. Odegard's availability, but it has yet to do so and canceled the March 29 deposition.

6. On March 22, the Court encouraged the parties to agree upon dates for depositions. The first seven below did not go forward on the date noticed. The next three have been discussed previously but are new as of today, with the three subpoenas that are attached. We are also prepared to agree to a date for Cruz after Rutherford, Riccio, Wojcik, and Mingey are taken.

    1. Rutherford  – Individuals defendants' counsel to produce dates by 4-5.
    2. Riccio  -- Waiting on documents, which should come shortly after J. Fuentes rules.
    3. Wojcik  -- Waiting on documents, which should come shortly after J. Fuentes rules.
    4. Mingey  -- Waiting on documents, which should come shortly after J.. Fuentes rules.
    5. Odegard  -- Noticed four weeks ago for March 25; no date provided
    6. Bembynista  -- Noticed four weeks ago for March 27; no date provided
    7. Soto  – Attempting to coordinate her dep. in Fort Myers on April 24.
    8. Jaramillo  -- Attached is a deposition notice for Jaramillo for April 23 in Miami.
    9. Rios  -- Attached is a deposition notice for Rios for April 23 in Miami.

10.Valverde    -- Attached is a deposition notice for Valverde for April 23 in Miami.

11.Cruz       -- Originally noticed for 3-15; Wojcik moved into that spot; Cruz offered March 26, 27, and 28 and received no response.

Please contact me if you have any questions.

Stuart Chanen

---

**From:** Jeffrey C. Grossich <JGrossich@jsotoslaw.com>
**Sent:** Wednesday, March 27, 2024 12:42 PM
**To:** Stuart Chanen <Stuart@ChanenOlstein.com>; Catherine M. Barber <cbarber@rfclaw.com>
**Cc:** Kevin C. Kirk <kckirk@tribler.com>; kboyle@borkanscahill.com; Ariel Olstein <Ariel@ChanenOlstein.com>; Alexis M. Gamboa <AGamboa@jsotoslaw.com>; Caroline P. Golden <CGolden@jsotoslaw.com>; Katelyn Salek <ksalek@jsotoslaw.com>; Jim Sotos <JSotos@jsotoslaw.com>; Elise A. Lindsley <elindsley@jsotoslaw.com>; Katelyn Salek <ksalek@jsotoslaw.com>; Valerie Stubbe <VStubbe@jsotoslaw.com>; fsmith@ancelglink.com; Josh M. Engquist <JEngquist@jsotoslaw.com>; Lisa Meador <LMeador@jsotoslaw.com>; Tonet Ballard <TBallard@jsotoslaw.com>; Rachael L. H. Letten <rletten@jsotoslaw.com>; Lauren E. Muhr <LMuhr@jsotoslaw.com>; agrill@rfclaw.com; Kara Hutson <khutson@rfclaw.com>; Austin Rahe <arahe@rfclaw.com>; Eileen E. Rosen <erosen@rfclaw.com>; jzehner@rfclaw.com; Melanie Senesac <msenesac@rfclaw.com>; lferrise@rfclaw.com; Theresa B. Carney <tcarney@rfclaw.com>; eschnidt@borkanscahill.com; Elena Favela <Elena@borkanscahill.com>; Liana Favela <LFavela@borkanscahill.com>; Wendy Chasteen <wendy@kmlltdlaw.com>; gmiller@borkanscahill.com; mboekeloo@borkanscahill.com; Kellie Voss <Kellie@kmlltdlaw.com>; sborkan@borkanscahill.com; tscahill@borkanscahill.com; whutchinson@borkanscahill.com; mitchhaporia@borkanscahill.com; Docket <docket@tribler.com>; Nick Gierlak <ngierlak@tribler.com>; Bill Oberts <wboberts@tribler.com>; Deborah McClain <Admin@ChanenOlstein.com>; s-tenenbaum@law.northwestern.edu
**Subject:** Re: Cruz v. Guevara, et al; Case No. 23-cv-4268 -

Stuart,

For the purpose of the joint status report that is due on Friday, do you know when you will be finishing your review of the documents from the Center on Wrongful Convictions and when you will be producing them?

Jeff

**Jeffrey C. Grossich**

The Sotos Law Firm, P.C.

# EXHIBIT D

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,     )
                                       )
      *Respondent,*              )
                                       )
-vs-                               )     No. 93 CR 25151
                                       )
JOSE CRUZ,                    )
                                       )
      *Petitioner.*             )

## TRANSLATED EXHIBIT #1 IN SUPPORT OF PETITIONER'S
## PETITION FOR POST-CONVICTION RELIEF



FILED
2019 JUN -5 PM 1:31
DOROTHY BROWN
CLERK OF THE
CIRCUIT COURT
CRIMINAL DIVISION



RECEIVED
ms 6-5-19

Cruz-003355

# Exhibit 1

## Translated Affidavit of Pedro Jaramillo

## November 30, 2017

Cruz-003356

STATE OF FLORIDA      )
                                )    SS

COUNTY OF MIAMI DADE   )

### TRANSLATED AFFIDAVIT OF PEDRO JARAMILLO

I, Pedro Jaramillo, being duly sworn, do state on oath that the following facts are true to the best of my knowledge:

1.      I am 44 years old and currently live at 9372 South West 37 Street, Miami, Florida. I understand that this affidavit may be filed in Cook County Circuit Court in the case of *People v. Jose Cruz,* Case No. 93 CR 25151.

2.      On May 25, 2017, I gave a statement in an interview with Alfredo Lopez.

3.      I certify that I have read my interview as transcribed, and that it is a true and correct record of the testimony given by me in this interview on May 25, 2017.

4.      Besides the two victims and police officers, I did not speak with anyone else at the crime scene, nor did anyone speak to me.

5.      I never met and do not know Ivan Rios, Vernon Meadors, Antwane Douglas or Jose Cruz, who are involved with this case.

6.      My boss at the time and current boss, Francisco Valverde, got me an attorney for this case. I do not remember his name.

7.      After Jose Cruz's conviction, I was approached by members of his legal team. I did not sign affidavit. The attorney for the accused did not speak with me no private investigator.

Mr. Guevara spoke with me three times.

Psychologically pressured me.

Cruz-003357

I told him the one who shot was of the black race.

I was scared of the person who killed the victim.

My boss got me an attorney because I felt pressured because he would tell me that he wanted to choose him and I would tell him that, no I had not seen him. He would get furious.

Mr. Reynaldo Guevara would get furious.

I am making this statement of my own free will. I have not been threatened in any way or promised anything in connection with the making of this statement.

                    _____s/Pedro Jaramillo_____
                    Pedro Jaramillo


SUBSCRIBED AND SWORN TO BEFORE ME
this 30th day of November, 2017.

Alfred Lopez_____
        NOTARY PUBLIC

                    FLA D.L. # J654-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

Cruz-003358



This is detective Reynaldo Guevara.
He is the person who pressured me.


s/ Pedro Jaramillo

11-30-2017- 11:23 AM


Subscribed and sworn to before me
This 30th day of November, 2017
s/Alfred Lopez

Cruz-003359

STATE OF FLORIDA )
)  SS
COUNTY OF MIAMI DADE )

## DECLARACIÓN JURADA DE PEDRO JARAMILLO

Yo, Pedro Jaramillo, siendo debidamente jurado, declaró lo que manifiesto en esta declaración es verdadero y correcto:

1. Tengo 44 años de edad y vivó en 9372 South West 37 Street, Miami, Florida. Entiendo que esta declaración será usada en el caso *People v. Jose Cruz,* Case No. 93 CR 25151.

2. En 25 de mayo de 2017, di una declaración en una entrevista con Alfredo López.

3. Certifico que he leído mi entrevista como transcrita, y que es un registro verdadero y correcto del testimonio dado por mí en esta entrevista el 25 de mayo de 2017.

4. Además de las dos víctimas y la policía no hablé con nadie más en la escena del crimen, ni nadie me habló.

5. Nunca conocí y no conozco a Ivan Rios, Vernon Meadors, Antwane Douglas o Jose Cruz, los que están involucrados en este caso.

6. Mi jefe en ese momento y que todavía es mi jefe, Francisco Valverde, me consiguió un abogado para este caso. _____NO_____ recuerdo su nombre

_____

7. Después de la condena de Jose Cruz, me contactaron miembros de su equipo legal. Yo no Firme AFFiduvit

El Abogado del ocusada No Ahlo conmigo Ningun Enverstigador Privado.

El señor Guevera oblo con migo + 3 veces Si cologuicamente Me Puse Prision

Cruz-003360

Yo Ledije El que disparo Era de La Raza
negra Yo estava Asustade del quemado
ALa vitma. Mi tefr me puso un abogado
Porque Yo mesintia Presionado
Porque El Medecia de que sierra el Y Yo
Le Ledecia que no que Man Lo Avia visto
El Se Ponia Furioso&Señor Reynaldo
Guevara Se Ponia Furioso

Estoy hacienda está declaración por mi propia voluntad. No he sido amenazado de

ninguna manera ni he prometido nada en relación con esta declaración.

_Pedro J_
Pedro Jaramillo

SUBSCRIBED AND SWORN TO BEFORE ME
this ___30ᵗʰ___ day of November, 2017.

_Alfred Lopez_
NOTARY PUBLIC

FLA. D.L.# J654-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

ALFRED LOPEZ
Commission # GG 099547
Expires July 24, 2021
Bonded Thru Budget Notary Services
NOTARY PUBLIC · STATE OF FLORIDA

Cruz-003361



Este es El detective
Reynaldo Guerrera
El que me puso presion
Pedro Jaramillo
11-30-2017 = 11:23. AM


Subscribed and sworn to before me
this 30th day of November, 2017
Alfred Lopez



ALFRED LOPEZ
Commission # GG 099547
Expires July 24, 2021
Bonded Thru Budget Notary Services

Cruz-003362

| | |
|---|---|
| Alfredo López: | Today is Thursday May 25 2017, it is 12:00 pm noon. Please say your name. |
| Pedro Jaramillo: | My name is Pedro Jaramillo. |
| Alfredo López: | Pedro, my name is Alfredo Lopez. I am a private investigator and I work for an attorney named Gregory Swygert. Mr. Swygert is a lawyer in Chicago, Illinois, and represents a man named Jose Cruz. Is it true that I explained that to you when I spoke to you? |
| Pedro Jaramillo: | Yes, it is true. |
| Alfredo López: | Is it also true that I showed you my private investigator's license and I'm going to show it to you again? |
| Pedro Jaramillo: | Yes, it is true. |
| Alfredo López: | I'm also a notary. I want you to raise your right hand right now. Do you swear that the statement you are going to give me is going to be the truth and only the truth? |
| Pedro Jaramillo: | Yes, I swear the truth only, the truth. |
| Alfredo López: | What is your date of birth? |
| Pedro Jaramillo: | 04 28 of 1973. |
| Alfredo López: | The complete address where you live? |
| Pedro Jaramillo: | 9372 South West 37 Street. |
| Alfredo López: | What city, what zip code? |
| Pedro Jaramillo: | Oh, zip code is 33165, the city is Miami. |
| Alfredo López: | Miami Florida, right? |
| Pedro Jaramillo: | Yes, Miami Florida. |
| Alfredo López: | What is your telephone number? |
| Pedro Jaramillo: | My telephone is 786 614 7706. |
| Alfredo López: | Where are you originally from? |

Cruz-003363

| | |
|---|---|
| Pedro Jaramillo: | Mexican. |
| Alfredo López: | Do you speak English? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Do you understand it? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Do you write it? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Do you read it? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Did you live and work in Chicago, Illinois during 1993? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Specifically on October 6, 1993, were you working at a gas station as a cashier? |
| Pedro Jaramillo: | Yes, I was working at the gas station, as a cashier. |
| Alfredo López: | Do you remember the address of that gas station? |
| Pedro Jaramillo: | Yes. 3142 West Norte Avenue. |
| Alfredo López: | West North Avenue? |
| Pedro Jaramillo: | Yes, West North Avenue. |
| Alfredo López: | Did something happen that early morning that you remember, when you were working at that gas station? |
| Pedro Jaramillo: | Yes, it happened that a boy came to ask for a jump and I said no, that I couldn't open the door, so I didn't have with what to give him a jump. At that moment, he left, went to the bus, to the bus stop, there a car arrived. |
| Alfredo López: | The who asked you for the jump, what color was the gentleman's skin, what race? |

Cruz-003364

| | |
|---|---|
| Pedro Jaramillo: | He was dark. |
| Alfredo López: | Okay. Dark is black? |
| Pedro Jaramillo: | Yes, black. |
| Alfredo López: | Okay. And then you spoke enough English in the sense of being able to know things related to cars, to the gas station? |
| Pedro Jaramillo: | Yes, I knew a little English, about the gas station. |
| Alfredo López: | Okay. And you understood that he wanted a jump and you told him that you could not? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Alright. So, you say he went walking towards the bus stop, to the minibus stop? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | What did the gentleman do there? |
| Pedro Jaramillo: | Well, a car arrived there. A brown car, Toyota, and another black man came out, I don't know if he was black or, but he was dressed in black. |
| Alfredo López: | Okay. Wait. How far was that car from where you were inside your, the gas station? |
| Pedro Jaramillo: | Well, I guess it has to be about 60 feet away. |
| Alfredo López: | And were there lights in the area where the car stopped? |
| Pedro Jaramillo: | There was very little light. There was not enough light to tell. |
| Alfredo López: | But you could see the car and the gentleman who asked for the jump and could see the person getting out of the car? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Okay. Eh – was there any eh – obstac – gas pump or something that blocked your sight? |

Cruz-003365

| | |
|---|---|
| Pedro Jaramillo: | No. |
| Alfredo López: | Okay. The person who gets out of the car, of what rac –? Did you see his face? |
| Pedro Jaramillo: | No, I never saw his face. |
| Alfredo López: | Do you remember the height, whether he was tall, short, medium? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Do you remember what clothes he was wearing? |
| Pedro Jaramillo: | It was a black jacket and a black cap. |
| Alfredo López: | Okay. Do you remember seeing that man's skin? |
| Pedro Jaramillo: | No. |
| Alfredo López: | You didn't see the gentleman's skin? |
| Pedro Jaramillo: | No. |
| Alfredo López: | What – did you see his hands? |
| Pedro Jaramillo: | Well, it was black, I saw nothing but a black thing. |
| Alfredo López: | Okay. Did you see the gentleman's hand, one of the hands? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Okay, How do you know he was black then? |
| Pedro Jaramillo: | Because he was dressed in black. |
| Alfredo López: | I'm talking about the race of the gentleman that, of the person who gets out of the car. Was he of the black race? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Okay. How do you know he was from the black race? |
| Pedro Jaramillo: | Because when he stretched out his hand, I managed to see that it was black. |

Cruz-003366

| | |
|---|---|
| Alfredo López: | Okay. He stretches his arm and in that hand he has a gun. |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Okay. So you managed to see that man's hand? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | And what color was the hand, the skin? |
| Pedro Jaramillo: | Black. |
| Alfredo López: | Was it not olive green, was not it a clear complexion? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Was the black color dark? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | And you say that he had a black jacket too, right? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | But, from what you describe to me at the moment he stretched his out his arm with the gun, what you see is the hand, right? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Was there enough light that you could tell that it was a black skin? |
| Pedro Jaramillo: | No, there wasn't enough light. |
| Alfredo López: | But you could see that it was black skin? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Then there was enough light to see that, my question is, although you say there wasn't much light, but was there enough light for you to see that it was black skin?

That is, you are telling me that you saw the gentleman's skin, and it was black, the skin of the hand. My question is, although you say there wasn't much light, but was there enough for you to see that it was the hand of a gentleman of the black race? |

Cruz-003367

| | |
|---|---|
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Okay, alright. |
| | You understand or recognize the difference between what is the skin of an African American, let's say a person of the African race or the black race, instead of the skin of a person who is Hispanic, who possibly has brown skin or a person who is a mulatto? |
| Pedro Jaramillo: | Yes, I recognize it. |
| Alfredo López: | Okay. Do you know the difference? |
| Pedro Jaramillo: | Yes. I recognize it. |
| Alfredo López: | So what did you see – that man you saw the skin of his hand, you say that the skin was black, what did that gentleman do? |
| Pedro Jaramillo: | Well, that guy started firing and – well, he fired and that's it. |
| Alfredo López: | Who did he shoot? |
| Pedro Jaramillo: | The guy who asked me for the jump. |
| Alfredo López: | Okay. Do you know how many times he shot him? |
| Pedro Jaramillo: | No, I don't know how many. |
| Alfredo López: | Did you hear if he – or could you hear if that man who is firing said something before the shots? |
| Pedro Jaramillo: | No. |
| Alfredo López: | The moment he finished shooting, what did you do? |
| Pedro Jaramillo: | Well, the moment he finishes firing, he went, he got into the car and left. |
| Alfredo López: | Do you know how many people or do you remember how many people were in the car? |
| Pedro Jaramillo: | No, I don't remember. |

Cruz-003368

| | |
|---|---|
| Alfredo López: | Do you remember where that person sat, the one who was shooting, or through which door he went into the car? |
| Pedro Jaramillo: | Oh, the one that was firing was next to the passenger. There were two people. |
| Alfredo López: | Next to the passenger or next to the driver? |
| Pedro Jaramillo: | Next to the passenger. |
| Alfredo López: | From behind then? |
| Pedro Jaramillo: | Yes, next to the passenger, that is, next to the driver. |
| Alfredo López: | That is, it was the passenger from the front. |
| Pedro Jaramillo: | On the right. |
| Alfredo López: | To the driver's right? |
| Pedro Jaramillo: | Uh-huh. |
| Alfredo López: | Correct. |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | And the car, do you know or do you remember when it leaves by what street or avenue it travels? |
| Pedro Jaramillo: | No, I don't remember. |
| Alfredo López: | Okay. Did you call the police? |
| Pedro Jaramillo: | Yes. I called the police. |
| Alfredo López: | And after that car leaves the scene, did someone come to you that was hurt? |
| Pedro Jaramillo: | Yes, another guy came who was wounded. |
| Alfredo López: | And that gentleman was of what race? |
| Pedro Jaramillo: | He was dark too. |
| Alfredo López: | Dark, you're telling me that he's black, right? |

Cruz-003369

| | |
|---|---|
| Pedro Jaramillo: | Yes, right. |
| Alfredo López: | And what did that gentleman say to you? |
| Pedro Jaramillo: | That I open the door and I said no, that I couldn't open it but that I had already called the police. |
| Alfredo López: | And that was in English? |
| Pedro Jaramillo: | Yes, in English. |
| Alfredo López: | And the gentleman was alreadyhurt? |
| Pedro Jaramillo: | Yes, he had a bullet in his right hand. |
| Alfredo López: | In the hand or the arm? |
| Pedro Jaramillo: | In the arm. |
| Alfredo López: | Okay. When the police arrived, did they interview you? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | When they interviewed you, did they ask you the description of the person you saw? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Of the person who made the – who did the shots, right? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Do you remember what description you gave to these policemen? |
| Pedro Jaramillo: | Well, I gave them the description that they were black. |
| Alfredo López: | That was, the person that shoot, black. |
| Pedro Jaramillo: | Black. |
| Alfredo López: | Okay. After that, were you interviewed or did you meet with some detectives? |
| Pedro Jaramillo: | Yes. |

Cruz-003370

| | |
|---|---|
| Alfredo López: | Were these police officers from the Chicago Police Department? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Do you remember the names of the detectives? |
| Pedro Jaramillo: | No. |
| Alfredo López: | I'm going to show you a picture on my cell phone, on my phone that I took from a video. Do you recognize the picture of this gentleman? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Is this one of the detectives who talked to you? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Do you remember if he spoke to you that very morning, that is, the same day of the events or another day after? |
| Pedro Jaramillo: | No, that same day of the facts. |
| Alfredo López: | Okay. I am showing the witness a photograph of Renaldo Guevara. Do you remember how that policeman treated you, Mr. Guevara? |
| Pedro Jaramillo: | Yes, I remember, he pressured me a lot. |
| Alfredo López: | In what way? |
| Pedro Jaramillo: | How he pressured me, that he wanted me to testify by force. |
| Alfredo López: | About what? |
| Pedro Jaramillo: | About who it was that fired. I told him I didn't know. |
| Alfredo López: | What did he want you to say? |
| Pedro Jaramillo: | Well, to tell the truth, but I'm telling the truth. |
| Alfredo López: | Right. And you – did he – at some point did he or another police attempt to put it in your mind that the person who shot was Hispanic or a fair skinned person, and not a black skinned person? |

Cruz-003371

| | |
|---|---|
| Pedro Jaramillo: | Yes, it was the detective who told me that if he was Hispanic, and I told him that no, that I had never seen him. |
| Alfredo López: | And what else did he tell you, do you remember? |
| Pedro Jaramillo: | I don't remember what else he told me. |
| Alfredo López: | But did you feel, felt pressured or under intimidation? |
| Pedro Jaramillo: | Yes, I felt pressured. |
| Alfredo López: | When you spoke with him and other policemen, did they take notes? |
| Pedro Jaramillo: | Yes, they were taking notes. |
| Alfredo López: | Then there was another meeting with those policemen. Do you remember a meeting that you are asked again questions and a police officer in English writes a statement that they say was based on what you said to them? |
| Pedro Jaramillo: | No, I don't remember. |
| Alfredo López: | I am showing you, and I had showed you before, a copy of a statement written in English, by hand, are you looking at it? |
| Pedro Jaramillo: | Yes, I'm looking at it here. |
| Alfredo López: | But you don't read English, right? |
| Pedro Jaramillo: | No, I don't read English. |
| Alfredo López: | Okay. This statement is dated October 6, 1993 at 3:40 a.m. in the morning, I am showing it to you, correct? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Eh – Again, this statement is in writing, right? |
| Pedro Jaramillo: | Yes, it's written. |
| Alfredo López: | And this is not your handwriting and you don't write English? |
| Pedro Jaramillo: | Yes, correct. |

Cruz-003372

| | |
|---|---|
| Alfredo López: | On page 26, the last paragraph says in English, translated into Spanish, that the witness Jaramillo described the man shooting as a masculine of olive skin, Hispanic or a black skinned person wearing a black cap and a black jacket. Ah – in black pants and black hair, do you remember saying that? |
| Pedro Jaramillo: | No, I don't remember saying that. |
| Alfredo López: | Is it possible that you said it? |
| Pedro Jaramillo: | No, it's not possible. |
| Alfredo López: | And why is it not possible? |
| Pedro Jaramillo: | Because those words were put on me by the police. |
| Alfredo López: | What police, the one I showed you the photo? |
| Pedro Jaramillo: | Yes, the one who you showed me the photo. |
| Alfredo López: | That's former police Renaldo Guevara. Do you maintain that the person you saw, what you could see of the person was the hand of a black man? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | So what they put here on Page 26 of this statement is false? |
| Pedro Jaramillo: | Yes, it's false. |
| Alfredo López: | You never said that he was Hispanic, or that you were a mulatto or that it was a person with olive complexion or that he was a light-skinned Negro? |
| Pedro Jaramillo: | No, I never said that. |
| Alfredo López: | You always said that it was a person of the black race? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | And you never saw that person's face? |
| Pedro Jaramillo: | No. |
| Alfredo López: | You don't know ther hair color? |

Cruz-003373

Pedro Jaramillo: No.

Alfredo López: Didn't you see his face?

Pedro Jaramillo: No.

Alfredo López: Did a moment come that they asked you to go to the police station and they made a presentation of certain people to see if you could identify one of them?

Pedro Jaramillo: Yes, the time came, but I said no.

Alfredo López: When they took you to see that presentation, was the same policeman that I showed you the photo there, Mr. Guevara?

Pedro Jaramillo: Yes.

Alfredo López: Eh — Did they try or did he try again for you to implicate a certain person?

Pedro Jaramillo: Yes, he tried, but I never pointed out anyone.

Alfredo López: What did he tell you?

Pedro Jaramillo: No, he told me to say who it was.

Alfredo López: But, he tried to tell you that you point at a certain person?

Pedro Jaramillo: Yes.

Alfredo López: Who did he tell you to point to or that you identify?

Pedro Jaramillo: Well, he didn't exactly tell me to point to a certain person, I simply told him that I had never seen him.

Alfredo López: But didn't he tell you, look it's No. 3 or look at the – at No. 4, nothing like that?

Pedro Jaramillo: No, nothing like that.

Alfredo López: Did you feel under pressure?

Pedro Jaramillo: Yes.

Cruz-003374

| Alfredo López: | And it was due to him? |
|---|---|
| Pedro Jaramillo: | Yes. |

**Alfredo López:** Do you remember how he reacted when you told him that you couldn't identify the person because you never saw his face?

**Pedro Jaramillo:** No, I don't remember.

**Alfredo López:** Okay. Do you remember how long you were there?

**Pedro Jaramillo:** Oh, like two or three hours, they had me there.

**Alfredo López:** Did they interview you again?

**Pedro Jaramillo:** Yes.

**Alfredo López:** Did you maintain that the person you saw, what you saw of him of the hand was a black gentleman?

**Pedro Jaramillo:** Yes.

**Alfredo López:** Do you remember if they tried to change your mind for you to say that he was Hispanic or olive complexion or light complexion?

**Pedro Jaramillo:** Yes, I remember they tried to change the mind.

**Alfredo López:** And you stayed with the truth that doesn't change, that it is a person of the black race?

**Pedro Jaramillo:** Yes.

**Alfredo López:** Eh — After that, do you remember if they came to see you at the gas station or visited you, the police or that detective?

**Pedro Jaramillo:** No, I already don't remember.

**Alfredo López:** Do you remember if you were summoned to court for a trial?

**Pedro Jaramillo:** Yes.

**Alfredo López:** And when you went to court do you remember who you talked to?

**Pedro Jaramillo:** Yes, with the prosecutor.

Cruz-003375

| | |
|---|---|
| Alfredo López: | Do you remember the person's name, face, or description? |
| Pedro Jaramillo: | No, I don't remember. |
| Alfredo López: | If he was tall, was he a white man? |
| Pedro Jaramillo: | Yes, he was tall a white man, yes. |
| Alfredo López: | Was that Guevara policeman present? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Was anyone translating? |
| Pedro Jaramillo: | No, it's just that I was never in court. I was summoned, but I was never in front of the judge. |
| Alfredo López: | No, correct, but I say, in the building. |
| Pedro Jaramillo: | Yes, there was the prosecutor who was there. |
| Alfredo López: | And what did the prosecutor tell you, what did he ask you? |
| Pedro Jaramillo: | No, nothing, he just told me why I hadn't told him if I had a lawyer. I told him that I had to have one — |
| Alfredo López: | He asked you why you had a lawyer? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | And why did you put a lawyer? |
| Pedro Jaramillo: | Well, I called the guy to do something and then — |
| Alfredo López: | I mean, did you call your boss? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | But why did you feel that you had to call your boss, what happened? |
| Pedro Jaramillo: | No, well I was under pressure. |
| Alfredo López: | They were pressuring you, who? |

Cruz-003376

| | |
|---|---|
| Pedro Jaramillo: | No, well I don't know. I felt scared. |
| Alfredo López: | Okay. From Guevara? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Okay. You – When you told the prosecutor that you didn't – you don't remember or never saw the face of the person, did they let you go or kept you there all day? |
| Pedro Jaramillo: | Yes, when I got there the prosecutor told me to be there all day. |
| Alfredo López: | You didn't give testimony? |
| Pedro Jaramillo: | I didn't testify. |
| Alfredo López: | Okay. And after that, do you remember anything else, any other event? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Okay. |
| | Eh — in the end, do you maintain today, this day that the person you remember seeing, even if you didn't see the face, you did see his hand when he fired, that person who fired, was of what race? |
| Pedro Jaramillo: | He was dark. |
| Alfredo López: | Okay, what race is that? |
| Pedro Jaramillo: | Well — |
| Alfredo López: | Black? |
| Pedro Jaramillo: | Black. |
| Alfredo López: | Okay. For you dark is black, right? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | Dark doesn't mean a person with olive complexion or clear or mulatto skin, correct? |
| Pedro Jaramillo: | Yes, correct. |

Cruz-003377

| Alfredo López: | Okay, dark is black. |
|---|---|
| Pedro Jaramillo: | Black. |
| Alfredo López: | Okay. Have I paid you any money or offered you money or gifts in exchange for your testimony? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Did you give this testimony voluntarily? |
| Pedro Jaramillo: | Yes, voluntarily. |
| Alfredo López: | Do you understand the way I talked to you, could you understand my questions? |
| Pedro Jaramillo: | Yes. |
| Alfredo López: | What degree did you arrive to in your education? |
| Pedro Jaramillo: | To fifth grade. |
| Alfredo López: | Okay. I'm going to turn off the recorder. Before doing that, do you know that I am recording or was recording and I have your permission? |
| Pedro Jaramillo: | Yes, you were. |
| Alfredo López: | Okay, I'm going to turn off the recorder, it's 12:21 p.m. Thank you. |

**[End of Audio]**

**Duration: 22 minutes**

Cruz-003378

| | |
|---|---|
| Alfredo López: | Hoy es jueves Mayo 25 2017, son las 12:00 pm del medio día. Por favor diga su nombre. |
| Pedro Jaramillo: | Me llamo Pedro Jaramillo. |
| Alfredo López: | Pedro, mi nombre es Alfredo López. Yo soy un investigador privado y trabajo para un abogado de que se llama Gregory Swygert. El Señor Swygert es abogado en Chicago, Illinois, y representa a un señor que se llama José Cruz. ¿Es cierto que yo le expliqué eso cuando hablé con usted? |
| Pedro Jaramillo: | Sí, es verdad. |
| Alfredo López: | ¿También es cierto que yo le enseñé mi licencia de investigador privado y se la voy a enseñar de nuevo? |
| Pedro Jaramillo: | Sí, es verdad. |
| Alfredo López: | También soy notario. Quisiera que en este momento alce su mano derecha. ¿Usted jura que la declaración que usted me va a dar va a ser la verdad y solamente la verdad? |
| Pedro Jaramillo: | Sí, yo juro la verdad solamente, la verdad. |
| Alfredo López: | ¿Cuál es su fecha de nacimiento? |
| Pedro Jaramillo: | 04 28 de 1973. |
| Alfredo López: | ¿La dirección completa dónde vives? |
| Pedro Jaramillo: | 9372 South West 37 street. |
| Alfredo López: | ¿Qué ciudad, qué zip code? |
| Pedro Jaramillo: | Oh, zip code es 33165, la ciudad es Miami. |
| Alfredo López: | Miami Florida, ¿correcto? |
| Pedro Jaramillo: | Sí, Miami Florida. |
| Alfredo López: | ¿Cuál es su teléfono? |
| Pedro Jaramillo: | Mi teléfono cs 786 614 7706. |
| Alfredo López: | ¿De dónde es usted originalmente? |

Cruz-003379

| | |
|---|---|
| Pedro Jaramillo: | Mexicano. |
| Alfredo López: | ¿Usted habla inglés? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Lo entiendes? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Lo escribes? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Lo lees? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Usted durante el año de 1993 vivió y trabajó en Chicago, Illinois? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Específicamente Octubre 6 de 1993, ¿usted estaba trabajando en una gasolinera como cajero? |
| Pedro Jaramillo: | Sí, yo estaba trabajando en la gasolinera, como cajero. |
| Alfredo López: | ¿Se recuerda la dirección de esa gasolinera? |
| Pedro Jaramillo: | Sí. 3142 West Norte avenue. |
| Alfredo López: | ¿West North avenue? |
| Pedro Jaramillo: | Sí, West North avenue. |
| Alfredo López: | ¿Ocurrió algo esa madrugada que usted se recuerda, cuando estaba trabajando en esa gasolinera? |
| Pedro Jaramillo: | Sí, ocurrió que llegó un muchacho a pedirme un jump y yo le dije que no, que no podía abrirle la puerta, así que no tenía con qué darle el jump. En ese momento, él cogió, se fue hacia el bus, hacia el stop del bus, ahí se llegó un carro. |

Cruz-003380

| | |
|---|---|
| Alfredo López: | El señor que te pidió por el jump, ¿de qué color era la piel del señor, de qué raza? |
| Pedro Jaramillo: | Era moreno. |
| Alfredo López: | Okay. ¿Moreno es negro? |
| Pedro Jaramillo: | Sí, negro. |
| Alfredo López: | Okay. ¿Y en ese entonces usted hablaba suficiente inglés en el sentido de poder saber cosas relacionadas a carros, a la gasolinera? |
| Pedro Jaramillo: | Sí, yo sabía un poco de inglés, sobre la gasolinera. |
| Alfredo López: | Okay. ¿Y usted entendió que él quería un jump y usted le dijo que no podía? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Listo. Entonces, ¿usted dice que él fue caminando hacia el bus stop, a la parada de los minibús? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Qué hizo el señor ahí? |
| Pedro Jaramillo: | Bueno, ahí llegó un carro. Un carro color Brown, Toyota, y se bajó otro moreno, no sé si era moreno o, pero era vestido de negro. |
| Alfredo López: | Okay. Espérese. ¿A qué distancia estaba ese carro de donde estaba usted dentro de su, de la gasolinera? |
| Pedro Jaramillo: | Pues yo me imagino que ha de ser a unos 60 pies de distancia. |
| Alfredo López: | ¿Y habían luces en el área donde paró el carro? |
| Pedro Jaramillo: | Había muy poca luz. No había suficiente luz para declarar. |
| Alfredo López: | ¿Pero usted podía ver el carro y al señor que le pidió el jump y podía ver a la persona que se apea del carro? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Okay. Eh— ¿Había algún eh — obstac — bomba de gasolina u otra cosa que le bloqueaba su vista? |

Cruz-003381

| | |
|---|---|
| Pedro Jaramillo: | No. |
| Alfredo López: | Okay. La persona que se apea del carro, ¿de qué raz —? ¿Usted le vio la cara? |
| Pedro Jaramillo: | No, nunca le vi el rostro. |
| Alfredo López: | ¿Se recuerda la estatura, si era alto, bajo, mediano? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Se recuerda qué ropa tenía puesta? |
| Pedro Jaramillo: | Era un jacket negro y una gorra negra. |
| Alfredo López: | Okay. ¿Se recuerda ver visto la piel de ese señor? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿No vio la piel del señor? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Qué— le vio las manos? |
| Pedro Jaramillo: | Bueno, era de negro, yo no le vi más que una cosa negra. |
| Alfredo López: | Okay. ¿Usted vio la mano del señor, una de las manos? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Okay, ¿cómo sabes que era negro entonces? |
| Pedro Jaramillo: | Porque era vestido de negro. |
| Alfredo López: | Te estoy hablando de la raza del señor ese, de la persona que se apea del carro. ¿Era de la raza negra? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Okay. ¿Cómo sabes que era de la raza negra? |
| Pedro Jaramillo: | Porque cuando estiró la mano, logré mirar que era negra. |

Cruz-003382

| Alfredo López: | Okay. Él, estira el brazo y en esa mano tiene una pistola. |
|---|---|
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Okay. ¿Entonces usted logró ver la mano de ese señor? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Y de qué color era la mano, la piel? |
| Pedro Jaramillo: | Negra. |
| Alfredo López: | ¿No era verde oliva, no era una tez clara? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Era oscuro el color negro? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Y usted dice que tenía una chaqueta negra también, ¿correcto? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Pero, por lo que usted me describe al momento de él extender el brazo con la pistola, lo que usted le ve es la mano, ¿correcto? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Había suficiente luz que usted pudo distinguir que era una piel negra? |
| Pedro Jaramillo: | No, no había suficiente luz. |
| Alfredo López: | ¿Pero pudo ver que era piel negra? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Entonces había suficiente luz para ver eso, mi pregunta es, aunque usted dice que no había mucha luz, pero ¿había suficiente luz para usted ver que era piel negra? |
|  | Es decir, usted me está diciendo que usted vio la piel del señor, y era negra, la piel de la mano. Mi pregunta es, aunque usted dice |

Cruz-003383

que no había mucha luz, pero ¿había suficiente para usted poder ver que era la mano de un señor de la raza negra?

Pedro Jaramillo: Sí.

Alfredo López: Okay, listo.

Usted entiende o reconoce la diferencia entre lo que es la piel de un afroamericano, vamos a decir una persona de la raza africana o la raza negra, a cambio de la piel de una persona que sea hispano, que posiblemente tenga la piel color café, o una persona que sea mulato?

Pedro Jaramillo: Sí, yo la reconozco.

Alfredo López: Okay. ¿Sabes la diferencia?

Pedro Jaramillo: Sí.

Alfredo López: Entonces, ¿qué vio usted — ese señor que usted le vio la piel de la mano, que usted dice que era negra la piel, ¿qué hizo ese señor?

Pedro Jaramillo: Bueno, ese señor comenzó a disparar y — bueno, disparó y ya.

Alfredo López: ¿A quién le disparó?

Pedro Jaramillo: Al muchacho que me fue a pedir el jump.

Alfredo López: Okay. ¿Usted sabe cuántas veces le disparó?

Pedro Jaramillo: No, no sé cuántas.

Alfredo López: ¿Escuchó si él — o pudo escuchar si ese señor que está disparando dijo algo antes de los disparos?

Pedro Jaramillo: No.

Alfredo López: Al momento que termina de disparar, ¿qué hizo?

Pedro Jaramillo: Bueno, al momento que termina de disparar, agarró, se montó al carro y se fue.

Alfredo López: ¿Sabes cuántas personas o se recuerda cuántas personas estaban dentro del carro?

Cruz-003384

Pedro Jaramillo:      No, no me recuerdo.

Alfredo López:       ¿Se recuerda dónde se sentó esa persona, el que estaba disparando o por qué puerta entró al carro?

Pedro Jaramillo:      Oh, el que estaba disparando estaba al lado del pasajero. Había dos personas.

Alfredo López:       ¿Al lado del pasajero o al lado del chofer?

Pedro Jaramillo:      Al lado del pasajero.

Alfredo López:       ¿De atrás entonces?

Pedro Jaramillo:      Sí, al lado del pasajero, o sea, al lado del chofer.

Alfredo López:       Es decir, era el pasajero de adelante.

Pedro Jaramillo:      A la derecha.

Alfredo López:       ¿A la derecha del chofer?

Pedro Jaramillo:      Uh-huh.

Alfredo López:       Correcto.

Pedro Jaramillo:      Sí.

Alfredo López:       Y el carro, ¿sabes o te recuerdas' cuando se va por qué calle o avenida viaja?

Pedro Jaramillo:      No, no recuerdo.

Alfredo López:       Okay. ¿Usted llamó a la policía?

Pedro Jaramillo:      Sí. Yo llamé a la policía.

Alfredo López:       Y después que ese carro se va de la escena, ¿alguien vino donde usted que estaba herido?

Pedro Jaramillo:      Sí, vino otro señor que estaba herido.

Alfredo López:       ¿Y ese señor era de qué raza?

Pedro Jaramillo:      Era moreno también.

Cruz-003385

| | |
|---|---|
| Alfredo López: | Moreno usted me indica que es negro, ¿correcto? |
| Pedro Jaramillo: | Sí, correcto. |
| Alfredo López: | ¿Y qué te dijo ese señor? |
| Pedro Jaramillo: | Que le abriera la puerta y yo le dije que no, que no podía abrirla pero que ya había llamado a la policía. |
| Alfredo López: | ¿Y eso fue en inglés? |
| Pedro Jaramillo: | Sí, en inglés. |
| Alfredo López: | ¿Y estaba herido el señor? |
| Pedro Jaramillo: | Sí, tenía un balazo en la mano derecha. |
| Alfredo López: | ¿En la mano o el brazo? |
| Pedro Jaramillo: | En el brazo. |
| Alfredo López: | Okay. Cuando llega la policía ¿lo entrevistaron? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Cuando lo entrevistaron, ¿le preguntaron la descripción de la persona que usted vio? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | De la persona que hizo los — que dio los disparos, ¿correcto? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Se recuerda qué descripción le dio usted a esos policías? |
| Pedro Jaramillo: | Bueno, yo les di la descripción que eran negros. |
| Alfredo López: | Que era, la persona que disparo, negro. |
| Pedro Jaramillo: | Negro. |
| Alfredo López: | Okay. Después de eso, ¿usted fue entrevistado o se reunió con unos detectives? |

Cruz-003386

Pedro Jaramillo:   Sí.

Alfredo López:   ¿Estos eran policías del departamento de Chicago Police?

Pedro Jaramillo:   Sí.

Alfredo López:   ¿Se recuerda de los nombres de los detectives?

Pedro Jaramillo:   No.

Alfredo López:   Yo le voy a enseñar una fotografía en mi celular, en el teléfono mío que yo tomé de un video. ¿Usted reconoce la fotografía de este señor?

Pedro Jaramillo:   Sí.

Alfredo López:   ¿Este es uno de los detectives que habló con usted?

Pedro Jaramillo:   Sí.

Alfredo López:   ¿Se recuerda si él habló con usted esa misma mañana, es decir el mismo día de los hechos u otro día después?

Pedro Jaramillo:   No, ese mismo día de los hechos.

Alfredo López:   Okay. Yo le estoy enseñando al testigo una fotografía de Renaldo Guevara. ¿Se recuerda cómo ese policía lo trató, el señor Guevara?

Pedro Jaramillo:   Sí, me recuerdo, me presionó mucho.

Alfredo López:   ¿En qué manera?

Pedro Jaramillo:   En qué manera me presionó, en que quería que testiguara a la fuerza.

Alfredo López:   ¿Sobre qué?

Pedro Jaramillo:   Sobre el quien fue que disparó. Yo le dije que no sabía.

Alfredo López:   ¿Qué quería él que tú dijeras?

Pedro Jaramillo:   Bueno, que dijera la verdad, pero la verdad la estoy diciendo.

Cruz-003387

| | |
|---|---|
| Alfredo López: | Correcto. Y usted le — él — ¿en algún momento te trató él u otro policía de poner en tu mente que la persona que disparó era hispano o una persona de piel clara, y no una persona de piel negra? |
| Pedro Jaramillo: | Sí, fue el detective que me dijo, que si era hispano, y yo le dije que no, que yo nunca lo había visto. |
| Alfredo López: | ¿Y qué más te dijo, te recuerdas? |
| Pedro Jaramillo: | No me recuerdo que más me dijo. |
| Alfredo López: | ¿Pero te sentiste, sentiste presionado o bajo intimidación? |
| Pedro Jaramillo: | Sí, me sentí presionado. |
| Alfredo López: | Cuando usted habló con él y otros policías, ¿ellos tomaron notas? |
| Pedro Jaramillo: | Sí, estuvieron tomando notas. |
| Alfredo López: | Después hubo otra reunión con esos policías. ¿Se recuerda una reunión que de nuevo le hacen preguntas y un policía en inglés escribe una declaración que ellos dicen que fue basada en lo que usted le dijo a ellos? |
| Pedro Jaramillo: | No, no me recuerdo. |
| Alfredo López: | Yo le estoy enseñando, y yo se lo había enseñado anteriormente, una copia de una declaración escrita en inglés, a mano, ¿usted la está viendo? |
| Pedro Jaramillo: | Sí, la estoy viendo aquí. |
| Alfredo López: | Pero usted no lee inglés, ¿correcto? |
| Pedro Jaramillo: | No, no leo en inglés. |
| Alfredo López: | Okay. Esta declaración tiene fecha octubre 6 del 93 a las 3:40 am de la madrugada, se la estoy enseñando, ¿correcto? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Eh — De nuevo, esta declaración está por escrito, ¿correcto? |
| Pedro Jaramillo: | Sí, está escrito. |

Cruz-003388

**Alfredo López:** ¿Y esta no es su letra y usted no escribe inglés?

**Pedro Jaramillo:** Sí, correcto.

**Alfredo López:** En la Página 26, el último párrafo dice en inglés, traducido a español que el testigo Jaramillo describió al que dispara como un masculino piel oliva, hispano o una personas negra de piel clara que tenía puesto una gorra negra y una chaqueta negra. Ah — con pantalones negros y que tenía pelo negro, ¿usted se recuerda haber dicho eso?

**Pedro Jaramillo:** No, no me recuerdo haber dicho eso.

**Alfredo López:** ¿Es posible que usted lo dijo?

**Pedro Jaramillo:** No, no es posible.

**Alfredo López:** ¿Y por qué no es posible?

**Pedro Jaramillo:** Porque esas palabras me las puso el policía.

**Alfredo López:** ¿Qué policía, el que yo le enseñé la foto?

**Pedro Jaramillo:** Sí, el que me enseñó usted la foto.

**Alfredo López:** Ese es el ex-policía Renaldo Guevara. ¿Usted mantiene que la persona que usted vio, lo que usted pudo ver de la persona era la mano de un hombre negro?

**Pedro Jaramillo:** Sí.

**Alfredo López:** ¿Así que lo que ponen aquí en la Página 26 de esta declaración es falso?

**Pedro Jaramillo:** Sí, es falso.

**Alfredo López:** ¿Usted nunca dijo que era hispano, o que era un mulato o que era una persona de tez oliva o que era un negro de tez clara?

**Pedro Jaramillo:** No, yo nunca dije eso.

**Alfredo López:** ¿Usted siempre dijo que era una persona de la raza negra?

**Pedro Jaramillo:** Sí.

Cruz-003389

| | |
|---|---|
| Alfredo López: | ¿Y usted nunca le vio el rostro a esa persona? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿No sabe su color de pelo? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿No le vio la cara? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Llegó un momento que pidieron que usted fuera a la estación de la policía y le hicieron una presentación de ciertas personas a ver si usted podía identificar a uno de ellos? |
| Pedro Jaramillo: | Sí, llegó el momento, pero yo dije que no. |
| Alfredo López: | Cuando lo llevaron a ver esa presentación, ¿estaba el mismo policía que yo le enseñé la foto, el señor Guevara? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Eh — ¿Te trataron o él trató de nuevo de que tú implicaras a cierta persona? |
| Pedro Jaramillo: | Sí, él trató, pero yo nunca señalé a nadie. |
| Alfredo López: | ¿Qué te dijo él? |
| Pedro Jaramillo: | No, me dijo que digiera quien era. |
| Alfredo López: | ¿Pero, te trato de decir que apuntaras a cierta persona? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿A quién te dijo que apuntaras o que identificaras? |
| Pedro Jaramillo: | Bueno, no me dijo exactamente que apuntara a cierta persona, simplemente yo le dije que nunca lo había visto. |
| Alfredo López: | Pero, ¿no te dijo, mira es el No. 3 o mira el — al No. 4, nada así? |
| Pedro Jaramillo: | No, nada así. |

Cruz-003390

| | |
|---|---|
| Alfredo López: | ¿Te sentiste bajo presión? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Y fue por él? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Te recuerda cómo él reaccionó cuando le dijiste que no podías identificar a la persona porque nunca le viste la cara? |
| Pedro Jaramillo: | No, no me recuerdo. |
| Alfredo López: | Okay. ¿Te recuerda cuánto tiempo estuviste ahí? |
| Pedro Jaramillo: | Oh, como dos o tres horas, me tuvieron ahí. |
| Alfredo López: | ¿Te entrevistaron de nuevo? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Usted mantuvo que la persona que usted vio lo que le vio de la mano era un señor negro? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Se recuerda si ellos te trataron de cambiar la mente a que usted dijera que era hispano o de tez oliva o tez clara? |
| Pedro Jaramillo: | Sí, sí me recuerdo que trataron de cambiar la mente. |
| Alfredo López: | ¿Y usted se mantuvo con la verdad que no cambia, que es una persona de la raza negra? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Eh — Despúes de eso, ¿se recuerda si lo venían a ver en la gasolinera o lo visitaban, la policía o ese detective? |
| Pedro Jaramillo: | No, ya no me recuerdo. |
| Alfredo López: | ¿Se recuerda si lo citaron a la corte a un juicio? |
| Pedro Jaramillo: | Sí. |

Cruz-003391

| | |
|---|---|
| Alfredo López: | ¿Y cuando usted fue a la corte se recuerda con quién habló? |
| Pedro Jaramillo: | Sí, con el fiscal. |
| Alfredo López: | ¿Se recuerda el nombre, el rostro o la descripción de esa persona? |
| Pedro Jaramillo: | No, no me recuerdo. |
| Alfredo López: | ¿Si era alto, era un hombre blanco? |
| Pedro Jaramillo: | Sí, era alto, un hombre blanco, sí. |
| Alfredo López: | ¿Estaba ese policía Guevara presente? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Había alguien traduciendo? |
| Pedro Jaramillo: | No, es que yo nunca estuve en la corte. Me citaron, pero yo nunca estuve frente al juez. |
| Alfredo López: | No, correcto, pero digo yo, en el edificio. |
| Pedro Jaramillo: | Sí, había el fiscal que estaba ahí. |
| Alfredo López: | ¿Y qué te dijo el fiscal, qué te preguntó? |
| Pedro Jaramillo: | No, nada, nomás me dijo que por qué no le había dicho si tenía un abogado. Yo le dije que tenía que tenerlo — |
| Alfredo López: | ¿Te preguntó por qué tenías un abogado? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Y por qué pusiste un abogado? |
| Pedro Jaramillo: | Bueno, yo llamé al señor para que hiciera algo y entonces — |
| Alfredo López: | Es decir, ¿llamaste a tu jefe? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿Pero por qué te sentiste tú que tenías que llamar a tu jefe, qué pasó? |

Cruz-003392

| | |
|---|---|
| Pedro Jaramillo: | No, pues andaba presionado. |
| Alfredo López: | ¿Te estaban presionando, quién? |
| Pedro Jaramillo: | No, pues yo no sé. Yo me sentía con miedo. |
| Alfredo López: | Okay. ¿Por parte de Guevara? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Okay. Usted — Cuando le dijo el fiscal que usted no con — No se recuerda o que nunca vio el rostro de la persona, ¿te dejaron que te fueras o te mantuvieron ahí el día entero? |
| Pedro Jaramillo: | Sí, cuando yo llegué ahí el fiscal me dijo que me estuviera ahí el día entero. |
| Alfredo López: | ¿No dio testimonio? |
| Pedro Jaramillo: | No di testimonio. |
| Alfredo López: | Okay. Y después de eso, ¿te recuerdas algo más, algún otro evento? |
| Pedro Jaramillo: | No. |
| Alfredo López: | Okay. |
| | Eh — Al fin, ¿usted mantiene hoy en día, este día que la persona que usted se recuerda haber visto, aunque usted no le vio el rostro, usted sí le vio la mano cuando disparó, esa persona que dispara, era de qué raza? |
| Pedro Jaramillo: | Era moreno. |
| Alfredo López: | Okay, ¿qué raza es esa? |
| Pedro Jaramillo: | Bueno — |
| Alfredo López: | ¿Negro? |
| Pedro Jaramillo: | Negro. |
| Alfredo López: | Okay. ¿Para usted es moreno es negro, correcto? |

Cruz-003393

| | |
|---|---|
| Pedro Jaramillo: | Sí. |
| Alfredo López: | Moreno no significa una persona de tez oliva o de la piel clara o mulato, ¿correcto? |
| Pedro Jaramillo: | Sí, correcto. |
| Alfredo López: | Okay, moreno es negro. |
| Pedro Jaramillo: | Negro. |
| Alfredo López: | Okay. ¿Yo le he pagado algún dinero o le he ofrecido dinero o regalos a cambio de su testimonio? |
| Pedro Jaramillo: | No. |
| Alfredo López: | ¿Usted dio este testimonio voluntariamente? |
| Pedro Jaramillo: | Sí, voluntariamente. |
| Alfredo López: | ¿Usted entiende la manera en que yo le hablo, usted pudo entender mis preguntas? |
| Pedro Jaramillo: | Sí. |
| Alfredo López: | ¿A qué grado llegó usted en su educación? |
| Pedro Jaramillo: | Al quinto grado. |
| Alfredo López: | Okay. Voy a apagar la grabadora. Antes de hacer eso, ¿usted tiene conocimiento de que estoy grabando o estuve grabando y tuve su permiso? |
| Pedro Jaramillo: | Sí, estuvo. |
| Alfredo López: | Muy bien, voy a apagar la grabadora, son las 12:21 p.m. Gracias. |

**[End of Audio]**

**Duration: 22 minutes**

Cruz-003394

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| *Respondent,* | ) | |
| | ) | |
| -vs- | ) | No. 93 CR 25151 |
| | ) | |
| JOSE CRUZ, | ) | |
| | ) | |
| *Petitioner.* | ) | |

# NOTICE OF FILING

To:   Kim Foxx, State's Attorney of Cook County
Attn: Assistant State's Attorney Carol Rogala
2650 S. California Avenue, 12 C 40, Chicago, IL 60608

    Please take notice that on June ___, 2019, I filed the attached Translated Exhibit # 1 In Support of Petitioner's Petition for Post-Conviction Relief.

### CERTIFICATE OF SERVICE

    I, Gregory R. Swygert, hereby certify that I caused to be served the attached Translated Exhibit # 1 In Support of Petitioner's Petition for Post-Conviction Relief, on the State's Attorney of Cook County, by personal service, on June ___, 2019.

Respectfully Submitted,

By: _____
Gregory R. Swygert

Gregory R. Swygert
Center on Wrongful Convictions
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-5330

Cruz-003395

# EXHIBIT E

STATEMENT OF

Jaramillo, Pedro

Taken _10/9/93_ At _8 45 P.M_

At _area 5 headquarters_

Present _Det. Wojcik, Ed Maloney (ASA)_
_Det. Maria Soto_

This statement taken regarding the _fatal shooting_

of _Douglas, Antwane_ which occurred on _10/6/93_

at _1600 N. Hudson_ at _3:40 a.m._

I understand I have the right to remain silent and that anything I
say can be used against me in a court of law. I understand that I
have the right to talk to a lawyer and have him present with me
during questioning, and if I cannot afford to hire a lawyer one
will be appointed by the court to represent me before any questioning.
Understanding these rights, I wish to give a statement.

After being advised and stating
that he understood that Ed Maloney
was an assistant States Attorney, a
lawyer and a prosecutor and not his
lawyer Mr. Jaramillo agreed to give
the following statement, in summary
Jaramillo stated that he is
20 years old and his date of
birth is 4/28/73. Jaramillo stated
that he completed the eighth grade
in Mexico in 1985 or 1984. Jaramillo
stated that he reads and writes
in spanish. Jaramillo stated that on
10/6/93 at 3:30 a.m. at the Citgo
Station at 3142 w. North ave. he was

24

E. Maloney (ASA)   Pedro Jaramillo
Wojcik #20834   Maria M____

Cruz-003498

working as a cashier. Jaramillo stated he was counting money from the safe. Jaramillo stated that the victim Antwone Douglas drove a car into the station, got out of the car, walked up to Jaramillo and asked him for a jump. This was after the victim had tried to enter the store section of the gas station. Jaramillo told him he had no cables to give the victim a jump. Jaramillo then saw the victim walk over to another victim Meeders who was standing at the bus stop at North ave and Kedzie. The bus stop and the citgo station are both on the northeast corner of the intersection of North ave and Kedzie. Jaramillo then had Douglas and Meeders have a conversation. At this time, Jaramillo returned to counting money from the safe. While counting the money Jaramillo heard a car pull into the gas station lot. As he was counting the money Jaramillo heard a gun shot. He then turned around and saw an individual standing on the passenger side of an automobile firing a handgun at the bus stop where he had last seen the two victims. Pedro Jaramillo

E. Maly (ASA) Maria SA
A. Ugel #20834

Cruz-003499

25

Jaramillo heard and saw several shots in the direction of the bus stop as he was attempting to phone the police. Jaramillo then saw the individual that was firing the shots turn, walk back towards the car, stop, turn and fire more shots $E^{mms P.J}$ in a down ward direction at victim Meadlocks who was on the ground. Jaramillo then saw the individual who was shooting get into the passenger side of the automobile. Jaramillo then saw the car leave the gas station and go eastbound on north ave. Jaramillo then stated that the victim Meadlocks came over to him and asked him to open the door. Jaramillo said he did not open the door because his boss said he could not open the door when he was alone at the gas station. A few minutes later police and paramedic's arrived at the scene.

Witness Jaramillo describes the shooter as male of PJ $^{AW}_{=M}$ olive complexed hispanic or light skinned black who was wearing a black hat, black jacket, black pants, and

E. Mabry (AW) Pedro Jaramillo
A. Wyatt Maria Kot

Cruz-003500

26

the shooter had black hair. The
witness describe the gun as black
the type which the top slides
back with every shot. Witness
saw the top sliding back with
every shot. Witness Jaramillo states
that the car the shooter was in
was a brown small 2 door Toyota
possible 1979 or 1980 year model.
Jaramillo observed only one
individual shooting, but could
only see the back half of the
car which was parked on an
angle. Jaramillo said that the
front part of the car was blocked
by two gasoline pumps islands
that were between the witness Jaramillo and
the front half of the toyota.
The witness stated that as he saw
the toyota leaving the scene
he saw two individuals in the
toyota.

Witness stated that he was treated well
by the police and assistant states attorney
Ed Maloney. The witness was not made
any promises in return for his statment
nor was he threatned in any way. The
witness understands that he can make

Pedro Jaramillo
Maria xtp
D. Vega #20784

27

Cruz-003501

GENERAL PROGRESS REPORT
DETECTIVE DIVISION/CHICAGO POLICE

DATE OF ORIG. CASE REPORT
DAY    MONTH    YEAR

DATE OF THIS REPORT
DAY    MONTH    YEAR    WATCH

OFFENSE CLASSIFICATION—LAST PREVIOUS REPORT | VICTIM'S NAME AS SHOWN ON CASE REPORT | BEAT/UNIT ASSIGNED

This form is designed for recording handwritten notes and memoranda which are made during the conduct of investigations, including: inter-watch memoranda (handwritten or typewritten), witness and suspect interview notes, on-scene canvas notes, and any handwritten personal notes made by detectives during the field investigation of violent crimes which are used to prepare official Department case reports.



REPORTING OFFICER'S SIGNATURE—STAR NO. | RECEIVED BY: SUPERVISOR'S SIGNATURE—STAR NO. | DAY–MO.–YR.    TIME

CPD-23.122 (Rev. 2/83)

R.D.
NO.

Cruz-003502