**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Jose Cruz, | ) | |
| Plaintiff, | ) | No. 23 cv 4268 |
| v. | ) | |
| | ) | The Honorable Jeremy Daniel |
| Reynaldo Guevara, et al. | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JOSE CRUZ'S OPPOSITION TO
DEFENDANT MALONEY'S MOTION TO COMPEL**

Defendant Maloney has moved to compel additional responses to his December 28, 2023 First Set of Interrogatories to Plaintiff ("Maloney's Interrogatories" and "Maloney's Motion"). Because the four discreet defense groups – (1) Guevara, (2) Individual Defendants, (3) City, and (4) former ASA Maloney – did not coordinate their interrogatories *at all*, many of Maloney's Interrogatories significantly overlap with "the other Defendants' Interrogatories." While the other Defendants' Interrogatories are not technically before the Court, those interrogatories are also important in evaluating Maloney's Motion.

Plaintiff Cruz respectfully requests this Court to deny Maloney's Motion in its entirety for the following reasons:

1. Plaintiff filed his Complaint on July 4, 2023.

2. Discovery opened October 9, 2023. Two months later, on December 8, 2023, Defendant Guevara served 14 interrogatories, *13 of which were contention interrogatories*. On January 8, 2024, Cruz responded, objecting to the contention interrogatories as premature under Rule 33(a)(2). *See* Exhibit 1, at 1-3.

3. Three days later, on December 11, 2023, Defendant Boris served 15 interrogatories on Cruz, *10 of which were contention interrogatories*. On January 10, 2024, Cruz responded, objecting to the contention interrogatories as premature under Rule 33(a)(2). Exhibit 2, at 1-3.

4.      On the same day, Defendant Wojcik served 21 interrogatories on Cruz, *13 of which were contention interrogatories*. On January 10, 2024, Cruz responded, objecting to the contention interrogatories as premature under Rule 33(a)(2). *See* Exhibit 3, at 1-3.

5.      Finally, on December 28, 2023, Defendant Maloney served 20 interrogatories, *8 of which were contention interrogatories*. Fifteen days later, January 12, 2024, Cruz responded, objecting to the contention interrogatories as premature under Rule 33(a)(2). *See* Exhibit 4, at 1-3.

6.      Moreover, Cruz did not respond with a simplistic "Objection, contention interrogatory." Rather, he gave a full-throated general objection to all 44 contention interrogatories:

> Federal Rule of Civil Procedure 33(a)(2) states that while "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, . . . the court may order that the interrogatory need not be answered until after designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).
>
> Plaintiff Cruz objects without prejudice to each of Defendant's contention interrogatories set forth below. Contention interrogatories are interrogatories "used to elicit a description of the opposing party's theory and proof to be employed." *Tragoszanos v. City of Algoma*, 2011 WL 2650852, at *1 (E.D. Wis. July 6, 2011), *citing Zenith Electronics v. WH-TV Broadcasting Corp.,* 395 F.3d 416, 420 (7th Cir. 2005).
>
> Defendant's interrogatories below ask Cruz "whether he contends X" or whether he is "mak[ing] some specific contention" and then goes on to demand that Cruz "state all the *facts"* or "identify all the *evidence* on which [he] *bases* some specified contention." Sometimes the interrogatory demands that Cruz explain or defend that position further, including spelling out the legal bases behind his contentions and/or to explain how the law applies to the facts. *See generally Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-201060, 2021 WL 474376, at *5 n.4 (N.D. Ill Oct. 12, 2021) and *U.S. ex rel. Tyson v. Amerigroup Ill. Inc.*, 230 F.R.D. 538, 545 (N.D. Ill., 2005). See also *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009) ("The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position").
>
> As Rule 33(a)(2) itself recognizes, and as the case law in relation to the rule particularly emphasizes, contention interrogatories are "most appropriate toward the close of discovery, or even after the close of discovery, to eliminate the possibility that a plaintiff . . . has not yet had time to gather the information to support its claim." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2019 WL 6498081, at *6 (N.D. Ill. Dec. 3, 2019), *citing and quoting Whitchurch v. Canton Marine Towing Co.*, 2017 WL 1165988, at *2 (C.D. Ill. Mar.

> 23, 2017) ("Contention interrogatories are often better answered after parties are near the end of discovery because they are better able to give complete responses.").
>
> Courts in this district routinely delay compelling responses to contention interrogatories until after "considerable discovery." *See Auto Meter Products, Inc. v. Maxima Technologies & Systems, LLC,* 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) ("When one party poses contention interrogatories *after considerable discovery,* and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories") (emphasis added) (citations omitted). *See also* all cases cited above.
>
> Contention interrogatories are particularly inappropriate here where Cruz has provided a tremendous amount of factual detail in his July 4, 2023 Complaint (Dkt.1), his September 1, 2023 First Amended Complaint (Dkt.44), and his October 9, 2023 Rule 26(a)(1) Initial Disclosures. By asking Cruz to answer Defendant's contention interrogatories at the very beginning of discovery, Defendant is simply asking Cruz to repeat what he has already outlined with particularity in his Complaints and Disclosure.
>
> On all these grounds, Cruz objects to answering Defendant's contention interrogatories at this time, but without prejudice to answering them near or immediately after the close of discovery (hereafter, "Contention Interrogatory Objection").

Exhibits 1-4, at 1-3.

8. On February 8, 2024, the Individual Defendants – through their counsel Jeffrey Grossich – wrote that we had failed to answer the contention interrogatories, citing two Indiana cases and one case from this district. The next day, February 9, Chanen & Olstein wrote back a detailed explanation of why Plaintiff did not agree with Defendants' analysis regarding contention interrogatories.

> Mr. Grossich,
>
> We disagree with several positions set forth in the Rule 37 letter you sent us yesterday regarding Mr. Boris's interrogatories, Mr. Wojcik's interrogatories, and the Officer Defendants' document requests. We respond in detail below.
>
> **Contention Interrogatories**
>
> First, you rely on two federal cases from Indiana – *Hill-Rom Services, Inc. v. Tellisense Medical, LLC*, 2019 WL 10888459, *3 (S.D. Ind. Nov. 18, 2019); *Burnett & Morand Partnership v. Estate of Youngs*, 2011 WL 1237950, *3 (S.D. Ind. Apr. 4, 2011) – for the proposition that "In the usual case, a party will have sufficient information to respond to contention interrogatories well before the close of discovery" and that "[t]here must be an initial answer and response in good faith and as complete as possible. . . . If later discovery efforts bring to light new facts and sources, Rule 26 allows and requires supplementation at the conclusion of discovery."

3

This is clearly the minority view in this Circuit. First, Federal Rule 33(a)(2) itself states that "the court may order that the interrogatory need not be answered until after designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).

Second, as we point out in our [written] objection, numerous judges in this Circuit have taken a different position. In *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2019 WL 6498081, at *6 (N.D. Ill. Dec. 3, 2019), Judge Gilbert summarized the state of the law in this Circuit as follows:

> As the Rule itself recognizes, contention interrogatories often are most-appropriate toward the close of discovery, or even after the close of discovery, to eliminate the possibility that a plaintiff, or in this case the defendant/counter-plaintiff, has not yet had time to gather the information to support its claim. *See Whitchurch v. Canton Marine Towing Co.*, 2017 WL 1165988, at *2 (C.D. Ill. Mar. 23, 2017) ("Contention interrogatories are often better answered after parties are near the end of discovery because they are better able to give complete responses."). Courts routinely have delayed compelling responses to contention interrogatories until after "considerable discovery." *See Auto Meter Products, Inc. v. Maxima Technologies & Systems, LLC,* 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) . . ..

Other cases in this District that have taken the same position, including as recently as of 2021 and 2023. [These] include: *Jackson v. City of Chicago*, No. 20 CV 5886, 2023 WL 4872380, at *3 (N.D. Ill. June 1, 2023) (McShain, J.) ("the Court agrees that filing a motion to compel answers to contention interrogatories *late in the discovery period* will not always raise a timeliness problem, because parties may be "better able to give complete responses" to contention interrogatories "near the end of discovery."); *Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-1060, 2021 WL 4745376, at *9 (N.D. Ill. Oct. 12, 2021) (Cummings, J.) ("The Court agrees with [Plaintiff] that most – if not all – of the interrogatories at issue constitute contention interrogatories, which are often deferred until near the end of discovery"); *Logan v. Burge*, No. 09 C 5471, 2010 WL 4074150, at *4 (N.D. Ill. Oct. 12, 2010) (Bucklo, J.) ("We agree with Plaintiff that his responses are sufficient at this point and that the City's request for more specific information is premature. Courts routinely delay compelling responses to contention interrogatories such as these until after 'considerable discovery'"); *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995) (Keys, J.) (same). [*See also*] *Tragoszanos v. City of Algoma*, 2011 WL 265052, at *1 (E.D. Wis. July 6, 2011).

Therefore, the two Northern District of Indiana cases on which you rely are clearly outliers. Indeed, those two cases do not even accurately state the law in the Northern District of Indiana, as there appears to be a clear split in authority. *See, e.g.*, *In re H & R Block Mortg. Corp., Prescreening Litig.*, No. 206-MD-230206-CV-232, 2007 WL 325351, at *7 (N.D. Ind. Jan. 30, 2007) ("Courts routinely delay compelling responses to contention interrogatories until after 'considerable discovery.'")

4

>Nor is the one Northern District of Illinois case you cite, *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466 (N.D. Ill. Mar. 20, 2015), to the contrary. In fact, putting aside the quotes you cite wholly out of context, the case in fact strongly favors delay of the contention responses. In *Peregrine*, Judge Martin held that "[t]he general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness," a quote you left out of your summary and which is precisely the opposite of the inference you are asking us to draw from the case. *Id.* at *4. Equally importantly, the Court held on the issue of timing that "[t]he party advocating for an early response to contention interrogatories bears the burden of justifying the request," *Id.* (citation omitted), which you also omit from your summary.
>
>Finally, you do not address at all the additional point we made in our objection, which is that contention interrogatories are particularly inappropriate in this case given that Plaintiff Cruz has already "provided a tremendous amount of factual detail in his July 4, 2023 Complaint (Dkt.1), his September 1, 2023 First Amended Complaint (Dkt.44), and his October 9, 2023 Rule 26(a)(1) Initial Disclosures. By asking Cruz to answer Defendant's contention interrogatories at the very beginning of discovery, Defendant is simply asking Cruz to repeat what he has already outlined with particularity in his Complaints and Disclosure."
>
>On all these grounds, Cruz stands by his contention interrogatory objections, including to Defendant Boris's Interrogatories # 1, 5, 7, 10, 11, 12, 13, 14, and 15 and Defendant Wojcik's Interrogatories #2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14.
>
>Please contact me if you have any questions.

9. This detailed February 9 email was sent to all defense counsel, *including Defendant Maloney's counsel*. The same day as that response, Mr. Grossich requested a "meet and confer" on the subject, which was immediately scheduled for, and did in fact occur on, Tuesday, February 13. Both of Guevara's counsel (Oberts and Kirk) were invited to that meet and confer, but to the best of our recollection, neither attended. In oversimplified terms, the meet and confer was primarily Individual Defendants' counsel relying on the arguments in his February 8 letter and Cruz's counsel relying on the arguments in his February 9 response.

10. Then, Defendants went silent on the issue of contention interrogatories for 40 days and 40 nights. Not a word about Contention Interrogatories.

11. Then, on March 25, 2024, Defendant Maloney – through his counsel – Bill Oberts – wrote a Rule 37.2 Letter stating that Plaintiff Cruz had failed to properly answer Defendants Maloney's December 28, 2023 Contention Interrogatories. Mr. Obert's explanation of Cruz's

5

failure to respond was identical to the email that Mr. Grossich sent on February 8. Not close; identical!

      12.    **The Meet and Confer.** On April 9, the parties had a respectful meet and confer. Among other things, Cruz's counsel re-emphasized all the points he had made in his original January 12 written response (paragraph 7 above), his detailed February 9 written response to Mr. Grossich (paragraph 8 above), and during the February 13 meet and confer. Plaintiff does not dispute that the parties were not able to reach an agreement, but also respectfully points out that that has been true since at least February 13, more than seventy days ago.

      13.    On April 16, 2024, Defendant Maloney filed his Supplemental Motion to Compel Cruz's answers to Maloney's contention interrogatories. Dkt.148. Much of the Motion, however, has nothing to do with Contention Interrogatories. Approximately four pages – 3 to 6 – set forth Defendant Maloney's closing argument to a future jury as to why from his perspective he does not have any liability to Mr. Cruz. See Motion at 3-6.

      14.    On page 7, Defendant Maloney makes the identical contention interrogatory argument that Mr. Grossich made in his February 8 letter, Exhibit 5, and that Maloney's counsel repeated in his March 25 letter, Exhibit 6. Again, the words are virtually identical. None of Maloney's arguments, however, respond at all to the detailed explanations that Cruz provided in both is original objection (paragraph 7 above) or the detailed explanation that Cruz provided on April 9 (paragraph 8 above). In other words, we are moving backward, not forward. For all the reasons stated in paragraphs 7 and 8, Plaintiff Cruz requests this Court to deny the Motion.

      15.    Beginning on page 8 of Maloney's Motion, he repeats an argument from his March 25 Letter. He asserts that he is entitled to have his contention interrogatories answered immediately because at no time during Mr. Cruz's criminal proceedings (from approximately October 9, 1993 to 1998) and at no time during his active post-conviction proceedings (from approximately 2018 to July 12, 2022) did Mr. Cruz or anyone else ever accuse Maloney of violating Jose Cruz's constitutional

rights in his role as felony review ASA. Maloney now argues that because Plaintiff is bringing "said claim" of constitutional misconduct "for the first time thirty years after the fact," the Court should order Cruz to answer the contention interrogatories because it will help "clarify" Cruz's claims and his alleged basis for such claims.

16. Respectfully, the Court should reject this for at least four reasons.

A. First, Cruz has set forth his claim against former ASA Maloney in detail in paragraphs 7, 21, 81, 87, 88, 106-108 of both Plaintiff's Complaint and First Amended Complaint. Dkt.1 and Dkt.44. Defendant Maloney had more than enough understanding of those allegations to file a detailed motion to dismiss, Dkts.66, 67, which is pending before Judge Daniel. In addition, although he was certainly free to do so, Defendant Maloney did not feel a need to move for a Rule 12(e) more definite statement prior to filing his motion to dismiss. *Compare* Dkt.67 *with* Fed. R. Civ. P. 12(e) ("The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired"). Therefore, if the claims against him needed to be clarified, as Maloney now claims, then he could have and should have filed such a motion. In any event, a motion for a more definite statement – not contention interrogatories early in discovery – is the proper method for clarifying a party's allegations.

B. Second, Defendant Maloney's argument that he is disadvantaged by Mr. Cruz waiting more than 30 years to bring his claims would be laughable if they did not involve Mr. Cruz spending almost 29 of those years incarcerated for a murder he did not commit. As Defendants well know, Cruz was "*Heck*-barred" from bringing his claims from 1993 until his conviction was vacated in 2022. *See Heck v. Humphrey*, 513 U.S. 477 (1994) (a convicted defendant may not bring a Section 1983 claim asserting unconstitutional conduct until that conviction is reversed or invalidated). Cruz could not have brought his claims earlier, and it was Cruz – not Maloney – who actually suffered prejudice. *See* Dkt.76, at 20 ("the age of these cases

7

*harms only the plaintiffs*, not the City. . . . [It is] Cruz [who] had to wait 28 years to bring his lawsuit, spent that entire time incarcerated for a crime he did not commit, and now is in the position of having to prove what both the City and the individual defendants did 30 years ago").

        C.      Third, given that a civil rights claim is the appropriate way to bring such constitutional violations into Court, it remains unclear what it is that Maloney actually expected Mr. Cruz to do in the prior 30 years to "bring these constitutional claims forward." During the criminal proceeding, Mr. Cruz was not in a position to raise Maloney's unconstitutional conduct because that conduct was not directed at Cruz himself, but rather at two witnesses, Pedro Jaramillo and his 13-year-old cousin Luis Rodriguez, known as "Danny." There is no clear indication in the record of when Cruz even learned of the coerced and false statements that Maloney placed on Jaramillo and Rodriguez, but even if Cruz learned of it prior to his criminal trial, he still had no reasonable mechanism to bring them forward. *See* Section B above.

        D.      Fourth, even if, solely for sake of argument, there was a mechanism for Cruz's criminal defense counsel to bring forward Defendant Maloney's misconduct earlier and also assuming that counsel knew of Maloney's misconduct, there could have been any number of reasons counsel decided not to do so, including the entire gamut from potential incompetence to rightly fearing that accusing an ASA of misconduct would have been more harmful than helpful to Cruz's criminal case. In any event, whatever the reason for defense counsel not raising Maloney's misconduct earlier (and that is assuming he was, in fact, aware), it is still not a basis to permit Maloney to serve contention interrogatories before the Rules of Civil Procedure and corresponding caselaw permit him to do so.

17.      Maloney makes one additional contention interrogatory argument on pages 8 through 10, asserting that his contention interrogatories are not, in fact, contention interrogatories. Cruz again disagrees. The Court can see for itself that Interrogatories 2, 3, 5, and 9 (as well as 4 and 6, on which Maloney is <u>not</u> moving to compel), ask Cruz to identify his

8

theory of the case and the written and testimonial evidence that he will be relying upon to support his theory. That is precisely a Contention Interrogatory. The case law makes absolutely clear that a Contention Interrogatory does not need to begin, "Is it your contention . . . " in order to constitute a Contention Interrogatory. Cruz specifically made that point in his original general objection for this very reason. *See* Exhibits 3, at 1-3. Here, Defendant Maloney is seeking precisely the type of information that the case law states should wait until the end of discovery.

For all these reasons, Plaintiff Cruz respectfully requests this Court to deny the first portion of Defendant Maloney's Motion.

18. In the final section of his Motion, Defendant Maloney moves to compel Plaintiff's counsel to identify the following protected "work product" information:

(a) what documents counsel relied upon in drafting Plaintiff's complaint (#14),

(b) what information counsel learned from individuals, agents, investigators, or attorneys that counsel relied upon in drafting Plaintiff's complaint (#15), and

(c) the names and addresses of all persons that Cruz or his counsel or his counsel's agents have interviewed regarding the Douglas murder and Meadors attempt murder (as well as the name and address of the *interviewer*, the date of the interview, and all documents used during the interview) (#17).

These are all frivolous requests. All of this material is opinion work product entitled to the highest level of work product protection. Defendant Maloney does not provide a single case that supports his position that this information is not work product. Maloney and his attorneys concede that mental impressions and trial strategy are protected work product, Motion at 11-12, but they omit the entire body of law that an attorney's gathering of evidence is also protected work product.

> The work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." Thus, opinion work product, including an attorney's "interviews, statements, memoranda, correspondence, briefs, [and] mental impressions." receives a heightened degree of protection.
>
> . . .
> The Supreme Court [has] recognized that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," and

9

> therefore "the doctrine protect[s] material prepared by agents for the attorneys as well as those prepared by the attorney for himself." Indeed, the doctrine has been held to protect work performed by those "enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparation for litigation.

*Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73-74 (S.D.N.Y. 2010), *quoting United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998); *Hickman v. Taylor,* 329 U.S. 495, 510, 511 (1947); and *United States v. Nobles,* 422 U.S. 225, 238–39 (1975); *Costabile v. Westchester, New York,* 254 F.R.D. 160, 164 (S.D.N.Y.2008). Therefore, before even looking at Judge Maloney's more precise argument, the suggestion that he is not seeking protectable work product in the first instance is simply wrong. An attorney's gathering of evidence is at the central core of the work product doctrine.

19. When Defendant Maloney and his counsel get to their main argument, it gets even worse. He argues that he is entitled to "what did counsel rely upon" information because the "underlying facts" are not work product. Maloney, however, never identifies the "underlying facts" that he is talking about. Underlying facts that are pertinent to the case are things like: Who were the shooters, what did they look like, what kind of car did they drive, what Detectives were assigned to the investigation, what role did each Detective play, who did they interview, who did not interview, why not, what did the eyewitnesses say, who did Detectives place in a lineup, etc. These are all underlying facts. Now it so happens that underlying facts can also be deemed work product in the context of an attorney's investigation, *see Gucci Am.*, 271 F.R.D. at 573, but they do "not receive the heightened protection afforded opinion work product." *Id*.; see also Fed. R. Civ. P. 26(b)(3)(A)(ii), explaining that fact work product may be ordered produced upon a movant's showing of "substantial need," an argument Defendant Maloney has not made in this instance (and therefore waived). But the information that Plaintiff's counsel relied upon in drafting the Complaint, the people Plaintiff's counsel interviewed (directly or through agents), and the names and addresses of each person that Cruz and his team interviewed or sought to interview do not constitute *the underlying facts* within the meaning of the work product rule. The sole support

that Maloney provides for his interpretation is a single sentence from Judge Cole's opinion in *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015):

> [W]ork product protection, like the deliberative process privilege, only prevents the disclosure of protected documents or communications, not the underlying facts.

*Id.* at 915, *citing Upjohn*. As an initial matter, the *Patrick* case is entirely distinguishable from this Motion because it did not involve a civil defendants' interrogatories seeking information from a civil plaintiff's pre-filing investigation. Rather, it involved a civil plaintiff's document requests to a third-party, the Cook County State's Attorney's Office. One of Judge Cole's primary holdings was that the work product "privilege set forth in Rule 26(b) is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Id.* at 917. Second, there is nothing anywhere in Judge Cole's opinion in *Patrick* or the Supreme Court's holding in *Upjohn* that in any way supports Maloney's bizarre interpretation that the term "underlying facts" includes the documents, individuals, and interviews that plaintiff's counsel "relied upon" in drafting Plaintiff's Complaint. Not only do *Patrick* and *Upjohn* not support that proposition but Cruz's counsel has been unable to find <u>any case</u> that supports that interpretation of a party being entitled to the other party's "underlying facts." Respectfully, the work product portion of Defendant Maloney's motion is frivolous and should be summarily denied.

For all the reasons stated in this Opposition, Plaintiff Cruz respectfully requests this Court to deny Defendant Maloney's Motion to Compel.

Dated:  April 21, 2024                                  Respectfully submitted,
                                                         *Plaintiff Jose Cruz*
                                                         /s/ *Stuart J. Chanen*

Stuart J. Chanen
CHANEN & OLSTEIN
7373 Lincoln Avenue  Suite 100
Lincolnwood, IL 60712
847-469-4669
Stuart@ChanenOlstein.com