**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Jose Cruz, | ) | |
| Plaintiff, | ) | No. 23 cv 4268 |
| v. | ) | |
| | ) | The Honorable Jeremy Daniel |
| Reynaldo Guevara, et al. | ) | The Honorable Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JOSE CRUZ'S MOTION TO COMPEL *MONELL* DEPOSITION
TRANSCRIPTS OF PRIOR 30(b)(6) WITNESSES AND CITY POLICYMAKERS**

Plaintiff Jose Cruz respectfully moves this Court to order Defendants to produce

certain 30(b)(6) and policymaker deposition transcripts responsive to Requests 2 through 7 of

Cruz's May 15, 2024 Document Request (hereafter, the "30(b)(6) Deposition Transcripts," the

"Policymaker Deposition Transcripts," and collectively "Deposition Transcripts").

One of the primary purposes of Cruz's request for Deposition Transcripts is to avoid

having to take such depositions a second time.

Equally importantly, even putting aside the enormous cost-saving in avoiding

duplication of 30(b)(6) and policy-maker depositions, Cruz also seeks these deposition

transcripts because they are *admissible evidence* in support of Cruz's *Monell* claim. *See* Fed.

R. Civ. P. 32(a)(3). Under the heading, "*Use of Depositions at Trial*," and subheading,

"*Deposition of Party, Agent, or Designee*," Federal Rule of Civil Procedure 32(a)(3) makes

admissible at trial "the deposition of anyone who, when deposed, was the [City's] . . . designee

under Rule 30(b)(6)." Fed. R. Civ. P. 32(a)(3). Significantly, Rule 32(a)(3) expressly permits

such deposition transcripts to be used *for any purpose* (*i.e.*, not only for impeachment). *Id.*

Each Deposition Transcript Cruz seeks may be "used to the extent that it is admissible under

the Federal Rules of Evidence [as] if the deponent was present and testifying [live]." Fed. R.

Civ. P. 32(a)(1)(B). The same rule applies equally to the City's officers, directors, and

managing agents, Fed. R. Civ. P. 32(a)(3), which in this case would include the Mayor, Superintendent of Police, and any other City of Chicago policymakers.

Under Rule 32(a)(3), the Deposition Transcripts Cruz now seeks must meet one additional condition: the City had to be present or represented when the . . . deponent was deposed (or, if not present, had reasonable notice of the deposition). Fed. R. Civ. P. 32(a)(1)(A). This condition is easily met. There is little doubt that when the City produced its 30(b)(6) and policymaker witnesses in the cases identified, it has either sent legal counsel to defend the deposition; it had clear notice of any deposition attended by a City-designated Rule 30(b)(6) or policy-making witness; or both. The Deposition Transcripts created with respect to other *Monell* claims are patently discoverable in this case, and Cruz respectfully requests the Court to order the City to produce them.

### Cruz's Motion to Compel Requests 2 & 3

Cruz's Document Request #2 sought: "All 30(b)(6) deposition transcripts produced in any of the following cases (although during the meet and confer, modified to all "*Monell-related* 30(b)(6) deposition transcripts"):

> *Fields v. City of Chicago*, 10 C1168 (N.D. Ill.)
> *Rivera v. Guevara*, 12 C 4428 (N.D. Ill)
> *Montanez v. Guevara*, 17 C 4560 (N.D. Ill.)
> *Serrano v. Guevara*, 17 C 2869 (N.D. Ill.)
> *DeLeon-Reyes v. Guevara,* 18 C 1028 (N.D. Ill)
> *Solache v. Guevara,* No. 18 C 2312 (N.D. Ill.)
> *Almodovar v. Guevara*, No. 18 C 2341 (N.D. Ill.)
> *Maysonet v. Guevara*, 18 C 2342 (N.D. Ill)
> *Bouto v. Guevara*, 19 C 2441 (N.D. Ill.)
> *Negron v. Guevara*, No. 18 C 2701 (N.D. Ill);
> *Prince v. Kato*, No. 18 C 2952 (N.D. Ill.)
> *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill.)
> *Gomez v. Guevara*, 18 C 3335 (N.D. Ill.)
> *Rodriguez v. Guevara*, 18 C 7951 (N.D. Ill.)
> *Velez v. the City of Chicago*, 18 C 8144 (N.D. Ill.)
> *Iglesias v. Guevara*, 19 C 6508 (N.D. Ill.)
> *Johnson v. Guevara*, No. 20 C 4156 (N.D. Ill.)
> *Rodriguez v. Guevara***,** 22 C 6141 (N.D. Ill.)
> *Rivera v. Guevara*, 23 C 1743 (N.D. Ill.)

Request #3 mirrors Request #2, except instead of 30(b)(6) Depositions Transcripts, it seeks Policymaker Deposition Transcripts. More specifically, it seeks the deposition of any (a) Chicago Police Superintendent, (b) Chicago Mayor, or (c) "any other *high-ranking City official*," in relation to the following limited topics:

[1] Detective Guevara,
[2] police misconduct at Area 5 during Guevara's time there, and
[3] the City's knowledge of improper conduct by Guevara or Area 5

officers/detectives. *See* Exhibit 1, at ¶ 3. (During the meet and confer process, "high-ranking" was modified to "policymaking.")

The City *now* asserts that Cruz is not entitled to these Deposition Transcripts, even though the transcripts are themselves admissible pieces of evidence under the Federal Rules. This is a frivolous position. How can evidence that the rules provide are themselves *admissible evidence* not be discoverable? We refer to the City's position "as of *now*" because, as we explain below, the City has already changed its position numerous times during the parties' meet and confers.

In further support of this Motion, Cruz states as follows:

1. On May 15, 2024, Plaintiff Cruz served the document request attached as Exhibit 1.

2. On June 14, 2024, the City served its written objection attached as Exhibit 2. With respect to Requests 2 and 3, the City objected on five grounds:

A. The request is not relevant to the "Douglas homicide" or "Plaintiff's claims in this lawsuit."
B. The words "transcripts *produced in*" are "vague and ambiguous."
C. The request is overbroad and unduly burdensome.
D. The request is disproportionate to the needs of this case, requiring thousands of pages to be produced.
E. The request does not comply with the "reasonable particularity" requirement of Rule 30(b)(6).

3. On July 19, 2024, the parties had a two-hour "meet and confer." Plaintiff was represented by Ariel Olstein; Defendant City of Chicago was represented by Katie M. Barber

and Theresa B. Carney; and the remaining Defendants were represented by Kevin Kirk and Alexis Gamboa. The parties outlined their respective positions, and the City requested an additional week to respond to the issues discussed during the meet and confer.

4.  Then, one week later, on July 26, the parties had a second meet and confer that lasted 55 minutes. This meet and confer covered both the Deposition Transcripts sought in this Motion and also a second issue related to homicide files that has since been resolved between the parties. Cruz was represented at this second meet and confer by Stuart Chanen. The City was represented by Eileen Rosen and Katie Barber. The other Defendants were again represented by Kevin Kirk and Alexis Gamboa. During this meet and confer, Ms. Rosen indicated that the City had no objection to producing the Deposition Transcripts in principle, but that Ms. Barber needed more time to review the transcripts to which Cruz's request applied.

5.  Plaintiff's counsel inquired about the transcripts on July 25 (twice), July 31, August 3, without response. On August 8, 2024, the City sent the letter attached as Exhibit 3, which appears to have been written by ChatGPT, as it is completely disconnected from the conversations that the parties actually had on July 26. Indeed, it appears that the letter was written after the parties' first meet and confer *on July 19*, but not sent until three weeks later, on August 8. Cruz and his attorneys fundamentally deny that anything the City sets forth in that letter was covered by the parties on July 26. Cruz also rejects the City's purported "compromise" set forth in that letter, in which it offers unidentified transcripts from seven of the sixteen cases requested. The parties are clearly at an impasse, and Cruz requests this compel the City's prompt compliance with his May 15 Document Request.

6.  In Objection A on page 3 above, the City asserts that Cruz's requests for *Monell* 30(b)(6) and policymaker depositions are irrelevant to this case because the requested transcripts "lack any relevance to the Douglas homicide investigation or Plaintiff's claims in

this lawsuit." Exhibit 2, at ¶¶ 2 and 3. See also *Id.* (objecting on the ground that the *Monell* deposition transcripts "pertain[] to individuals who are not defendants in this action"). This objection is of course frivolous since Cruz's First Amended Complaint includes a detailed *Monell* claim, Count VI, against the City of Chicago. Dkt.44, at ¶¶ 210-225. Cruz's request for *Monell* Deposition Transcripts is directly relevant to his *Monell* claim in this case. It is completely illogical to assert that requests for *Monell* deposition transcripts from other *Guevara* cases or other cases alleging *Monell* violations are irrelevant to the *Monell* claim that Plaintiff Cruz has brought in this case. While it is true that a *Monell* claim includes a "causation" element in which Plaintiff must prove that the City's failure to train, supervise, or discipline was a moving force behind the individual violations in this case, Plaintiff also must prove two other elements – "widespread practice constituting custom and usage" and "deliberate indifference to that widespread practice." The Deposition Transcripts Cruz seeks in this Motion are clearly relevant to those two prongs of the *Monell* test and clearly fall within Rule 26: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

7.    Another reason that the Transcripts are clearly relevant is that 16 of the 19 cases from which Cruz seeks 30(b)(6) and policymaking Deposition Transcripts are *Guevara* cases. The City responds that transcripts from seven of these 16 Guevara cases is a reasonable "compromise" of Cruz's requests, but the City never identifies how many transcripts that offer confers (it could be ten; it could be one), nor do they explain why the other nine Guevara cases don't offer equally valuable 30(b)(6) Deposition Transcripts.

8.    Equally significantly, in support of the City's position, it does not point to a single case in which a court has denied a party's request for deposition transcripts that are themselves admissible evidence, while in contrast, courts have ordered the production in

"CASE B" of 30(b)(6) transcripts from "CASE A," when CASES A & B are related. *See, e.g.*, *Heredia v. Sunrise Senior Living, LLC*, No. 818CV01974JLSJDE, 2020 WL 6815028, at *6 (C.D. Cal. Nov. 12, 2020) (ordering the production of Rule 30(b)(6) transcripts). *See also*, *e.g.*, *Mylan Pharms. Inc. v. Qualicaps Co., Ltd.*, No. IPR2017-00203, 2017 WL 3668922, at *3 (P.T.A.B. Aug. 23, 2017) (after the parties agreed that a Rule 30(b)(6) transcript from a related case would be produced, the parties fought over whether certain documents from that 30(b)(6) deposition should also be produced; the Court held that they should). Cruz also respectfully asserts that there are likely legions more cases in which a Plaintiff has made a request for prior 30(b)(6) depositions, and Defendants simply complied instead of refusing to produce transcripts that are themselves *admissible in evidence*. Moreover, the three cases that are not Guevara cases – *Fields v. City of Chicago*; *Prince v. Kato*; and *Velez v. City of Chicago* – are also relevant because they involve extensively-developed *Monell* claims, asserting that the City failed to properly train, supervise, and/or discipline Chicago Police Officers engaged in misconduct. That is all that is required to make the 30(b)(6) deposition transcripts from those cases relevant to Cruz's *Monell* claim in this case.

For all these reasons, Cruz respectfully requests this Court to reject the City's false assertion that Cruz is seeking Deposition Transcripts not relevant to this case.

9. Objection B, that the phrase "depositions produced in," was vague, was resolved during the meet and confer process by changing those words to "depositions taken in."

10. Objection C, that the request is "overbroad and unduly burdensome," should be rejected because it is simply not stated with the specificity required by extensive case law. The objection is therefore waived. *See* Fed. R. Civ. P. 34(b)(2)(B)(the responding party must "state with specificity the grounds for objecting to the request, including the reasons"); *Nat'l Van Lines v. First Nat'l Van Lines, Inc.*, No. 22 C 4558, 2023 WL 3602803, at *2 (N.D. Ill.

May 23, 2023) ("It is well-established that [a party's] failure . . . to state its specific objections pursuant to Fed. R. Civ. P.  34(b)(2)(B) in its initial response to [discovery requests] . . . waives a subsequent assertion of [that] objection[] in the absence of good cause."); *Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 WL 5299791, at *4 (N.D. Ill. Nov. 15, 2021)(Cole, M.J.) ("While Rule 34 does not contain express waiver language regarding untimely objections, district courts in the Seventh Circuit have interpreted Rule 34 as containing an implicit waiver provision to parallel Rule 33(b)(4)").

In the oft-cited case of *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2017 WL 5890923 (N.D. Ill. Nov. 29, 2017), Magistrate Judge Cole held that "boilerplate objections" are "tantamount to not making any objection at all" and that such objections "will not do."  Judge Cole held that a party resisting discovery  "must *show specifically* ... how each [request] . . . is overly broad, burdensome, or oppressive."  *Id*. at *2 (internal citations and quotation marks omitted).

Numerous judges in this district have relied on Judge Cole's words from *BankDirect* to require a party to object with specificity.  *See Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 1499908, at *2 (N.D. Ill. May 12, 2022) (Gilbert, M.J.) ("the Court has no difficulty overruling, and does overrule, [defendant's] generalized, kitchen-sink objections"); *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *4 (N.D. Ill. Apr. 17, 2019) (Cummings, M.J.) ("The Court agrees that broad objections to discovery that do not address the specific interrogatory or document request to which they are posed 'are tantamount to not making any objection at all.'  That is especially true when a party claims that a request is unduly burdensome.  Such an objection 'must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly

burdensome' "), *quoting BankDirect* and *Rawat v. Navistar Intern. Corp.* No. 08 C 4305, 2011 WL 3876957, at *8 (N.D. Ill. Sept. 1, 2011) (Ashman, M.J.) (citation omitted). *See also Baxter Int'l. Inc. v. AXA Versicherung*, 320 F.R.D. 158, 166 (N.D. Ill. 2017) (Gilbert, M.J.) (explaining that the objecting party must "specifically demonstrate the burden that the discovery would impose").

Finally, in *Hangzhou Aoshuang E-Com. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735 (N.D. Ill. June 23, 2020), Judge Cole expanded on his holding in *BankDirect*, by explaining that failure to assert one's Rule 34 objections with specificity *waives* any more "meaningful, amplified objection." *Id*. at *2 ("Unexplained, conclusory objections, like "vexatious" or "unduly burdensome," which the defendant has reflexively raised . . . , are tantamount to no objection at all and *constitute a waiver of any meaningful, amplified objection* along those lines that might have been properly raised had there been explanation instead of mere conclusions") (emphasis added).

In addition to being waived, the City's overbreadth and burdensome arguments also fail because there is no substantial burden at all for the City to produce the requested Deposition Transcripts. The City's current lawyers, Rock Fusco & Connelly LLC, represent or previously represented the City of Chicago *in all 16 of the Guevara cases for which Cruz seeks transcripts*. In the non-Guevara cases, *Fields* and *Prince*, Dan Noland, of Burns Noland LLP, represented the City, and in *Velez*, Avi Kamionski of Nathan & Kamionski LLP, represented the City. These law firms undoubtedly have a file on their computers (or in the Cloud) that stores deposition transcripts in the individual cases in which they represented the City. (Indeed, the City itself likely has those transcripts – of Superintendents, Mayors, and designated 30(b)(6) representatives – stored as well.)

Therefore, in order to produce the Requested Transcripts, the City's counsel need

only search their deposition folders in each of the 19 cases to find the 30(b)(6) and Policymaker Deposition Transcripts Cruz seeks. Once found, Adobe permits the transcript to be copied with a single click; Adobe also has a simple method for bates-labeling the new copy with bates numbers to be applied in this case. In other words, it really doesn't matter if the production of documents is *thousands of pages* (as the City asserts on page 2 of its objections, Exhibit 2) or the volume is quite small, perhaps several *hundreds pages*. If, on average, the City produces one 30(b)(6) deposition transcript per case, Cruz's request is for 19 distinct PDF documents, and for "policy-making officials," perhaps another, at most, handful more.[1]

Moreover, the real burden is not on the City to produce the admissible transcripts, but rather on Cruz, who will then have to review each of the transcripts produced to determine: (a) whether they contain evidence that helps him prove *his Monell claim*; and (b) whether he will still need to take any of his own 30(b)(6) depositions on topics important to him that are not covered by the transcripts produced. Cruz's approach – asking for the *Monell* depositions that have already been taken – *actually reduces the City's burden* to review, negotiate, investigate, designate, or defend brand new 30(b)(6) depositions.

11. Objection D, that the request is "disproportionate to the needs of the case," should be rejected for all the reasons stated in paragraphs 6 and 8 above. For the reasons stated in paragraph 6, the objection is not stated with sufficient specificity and is therefore waived. For the reasons stated in paragraph 8, the City's burden to produce these transcripts is, in fact, very slight, and the potential in time-and-cost-savings is, in fact, very great.

---

[1] During the meet and confer, counsel stated that they did not believe that any of the 19 cases expressly identified by Cruz included policymaking depositions, but that they would have to check to be sure. Counsel had apparently not checked that fact between May 15 and June 14 (the date they objected), nor between June 14 and July 19 (the date of the first meet and confer), nor between July 19th and 26th (the date of the second meet and confer). If they have checked since July 26, they have not shared that information with Cruz.

12. Objection E, that the request does not meet the "reasonable particularity" requirement of Rule 30(b)(6) is completely illogical and unsupported, and respectfully, should be rejected. As the City itself makes clear in its objection, the City has already negotiated acceptable 30(b)(6) notices containing "reasonable particularity" in "each" of the 19 cases identified. *See* Exhibit 2, at ¶ 2. The City did so before it *designated* and *produced* its 30(b)(6) deponents *in those cases*. In other words, the City had a central role in controlling the topics discussed in each of its designee depositions. Cruz did not. Therefore, as a matter of pure logic, the City is not harmed by the particularity requirement of Rule 30(b)(6). Equally importantly, the City does not, and we believe, cannot, cite a single case where a party requesting a copy of a 30(b)(6) transcript was required to serve a deposition notice to obtain that transcript, let alone a deposition notice with reasonable particularity.

**<u>Plaintiff's Motion to Compel Requests 4, 5, 6, and 7</u>**

13. Cruz's *Monell* Document Requests 4, 5, 6, and 7 are also straightforward:

4.     (a) All *Monell*-related 30(b)(6) deposition transcripts, and/or (b) all *Monell*-related deposition transcripts of any Chicago Police Superintendent, Chicago Mayor, or other high ranking City official, which were taken in or that refer or relate in any way to <u>*Obrycka v. City of Chicago*, 07 C 2372 (N.D. Ill.)</u>.

5.     (a) All *Monell*-related 30(b)(6) deposition transcripts, and/or (b) all *Monell*-related deposition transcripts of any Chicago Police Superintendent, Chicago Mayor, or other high ranking City official, which refer or relate in any way to <u>(i) the conduct of former Chicago Police Department officer Joseph Miedzianowski, (ii) the anti-gang crimes unit during the years Miedzianowski participated in that unit, and/or (iii) Miedzianowski's, Guevara's, and Halvorsen's agreement and/or conspiracy to frame Juan and Rosendo Hernandez</u>.

6.     (a) All *Monell*-related 30(b)(6) deposition transcripts, and/or (b) all *Monell*-related deposition transcripts of any Chicago Police Superintendent, Chicago Mayor, or other high ranking City official, which refer or relate in any way to <u>Jason Van Dyke's October 20, 2014 shooting of African American teenager Laquan McDonald and/or the cover-up or alleged cover-up of that shooting</u>.

7.     (a) All *Monell*-related 30(b)(6) deposition transcripts, and/or (b) all *Monell* related deposition transcripts of any Chicago Police Superintendent, Chicago Mayor, or other high ranking City official, which refer or relate in any way to <u>Sgt. Ronald</u>

> Watts and/or any local law enforcement investigation into his team's corruption, including putting false cases on citizens and/or the cover up or alleged cover-up of Watts and his team doing so.

Exhibit 1, at ¶¶ 4-7 (emphasis added).

14. The City's objections to these requests are very similar to the City's objections to Requests 2 & 3.

A. The following phrases are vague and ambiguous:
   "*Monell*-related,"
   "high ranking City official,"
   "refer or relate in any way to,"
   "conduct,"
   "anti-gang crimes unit,"
   "that unit,"
   "during the years Miedzianowski participated in [the anti-gang crimes] unit,"
   "agreement and/or conspiracy to frame Juan and Rosendo Hernandez,"
   "cover-up or alleged cover-up,"
   "any local law enforcement investigation into [Watts's] team's corruption,"
   "putting false cases on citizens," and
   "cover up or alleged cover-up of Watts and his team doing so."

B. The requests are "overly broad and unduly burdensome" as to the phrase "refer or relate in any way to."

C. The requests are unlimited in scope, and thus, not proportional to the needs of this case.

D. The request is overly broad, unduly burdensome, and disproportionate to the needs of this case given that it requires the production of deposition testimony that pertains to:

   [4] the *Obrycka v. City of Chicago*, 07 C 2372, matter
   [5} the involvement of Joseph Miedzianowski, the "anti-gang crimes" unit, or Juan or Rosendo Hernandez**.**
   [6] the shooting of Laquan McDonald
   [7] lawsuits involving Ronald Watts

   which [are] both remote in time . . . and subject matter . . . from the Douglas homicide investigation and Plaintiff's claims in this lawsuit.

E. The request lacks any relevance to the facts and issues in this case.

F. The request does not comply with the "reasonable particularity" requirement set forth in Fed. R. Civ. P. 30(b)(6).

Exhibit 2, at ¶¶ 4-7. With only two exceptions, these objections can be rejected for the reasons already stated in detail above. Objections B, C, and E should be rejected for the reasons stated above in paragraphs 6 and 8: (1) they are not sufficiently developed to survive the specificity requirement for objections in this district and are therefore waived; (2) they may also be rejected on their merits because the focus on all of this discovery is Cruz's *Monell* claim, which by definition, is a broad claim requiring all different types of broad discovery. Objection F should be rejected for the reasons stated in paragraph 10 above. This leaves Objections A and D.

15. Objection A, that the terms Cruz uses are vague, ambiguous, and not understood by the City, cannot be taken seriously. The City, who has been defending police misconduct cases for years, including the misconduct identified in cases related to Obryka, Miedzianowski, Laquan McDonald, and Watts, fully understands the requests as written. Moreover, to the extent the City did not initially understand these plain-English requests, Cruz repeatedly explained them to the City during the three hours of meet and confers.

16. Objection D asserts that Requests 4-7 are overly broad, unduly burdensome, and disproportionate to the needs of this case – but unlike every other insufficient objection that the City asserted in its June 14 Objections, here the City actually puts meat on the bones of the Objection (which proves that the City fully understands the "meat-on-the-bones" requirement). The City further asserts in support of this objection that Cruz's request for *Monell* 30(b)(6) and Policymaker Deposition Transcripts related to *Obrycka*, Miedzianowski, Laquan McDonald, and Ronald Watts are "both remote in time . . . and subject matter . . . from the Douglas homicide investigation and Plaintiff's claims in this lawsuit." Exhibit 2, at ¶¶4-7. Cruz disagrees on the merits. There is little doubt that the City will assert in its future summary judgment motion that Cruz cannot meet the requirements of proving a "widespread practice constituting custom and usage" and

"deliberate indifference to" that widespread practice. Meanwhile, the City has no problem during discovery trying to bar plaintiffs from seeking *Monell* discovery over an extensive period of time or in relation to multiple different examples covering multiple unique locations and circumstances. In its simplest terms, it seems completely unreasonable for the City to assert these requests are overbroad and unduly burdensome – but then allow it to argue later on the merits that Plaintiff has failed to prove a widespread practice constituting custom and usage. See *Dickerson v. Rock Island Police Officer Ramirez*, No. 413CV04003 JESJEH, 2015 WL 5297516, at *4 (C.D. Ill. Sept. 10, 2015) ("*Monell* discovery is, by definition, broad and wide-ranging").

For all these reasons, Cruz requests this Court to compel the transcripts responsive to Requests 4-7.

## Cruz Seeks Sanctions

As a general practice, Cruz's counsel does not, as a matter of course, seek discovery sanctions every time they file a motion to compel. They understand that reasonable people can disagree about the proper application of the federal discovery rules. Where, as here, however, the City has both objected in bad faith and negotiated in bad faith, Cruz respectfully requests that he be awarded the fees and costs necessary to bring this Motion.

One example of the City's bad faith is that in its June 14 written Objection, it stated:

> <u>Each</u> of the aforementioned [19] cases involved instances where a 30(b)(6) witness was designated to testify on a specific topic per the Rule 30(b)(6) notices in those specific cases that was negotiated between the parties and limited as to scope and time period.

City Response, Exhibit 2, at ¶ 2 (emphasis added). The City apparently made this assertion to emphasize the purported burdensomeness of this request. In sharp contrast to the City's representation that each of the 19 cases involved a negotiated 30(b)(6) deposition between the parties, the City now asserts that "In some of the cases listed in request number 2, no

Rule 30(b)(6) depositions were taken." Exhibit 3, at 2 n.1. So, in fact, it is not "each;" it is just some, and the Court will note that the City not only omits the names of the cases in which no Rule 30(b)(6) deposition was taken, but it also fails to identify the number of 30(b)(6) deposition transcripts it is offering as a "compromise."

A second example of the City's bad faith is its current assertion that during the parties' second meet and confer on July 26, Cruz's counsel, Mr. Chanen, incorrectly asserted that all of the cases for which it sought 30(b)(6) transcripts were "Guevera cases." This is incorrect on two different levels. First, during the July 19 meet and confer, Mr. Olstein stated that he *believed* that the 19 cases were Guevara cases, and the City's counsel stated they were not. Mr. Olstein said he would need to check. He then did check, and on July 26, Mr. Chanen clarified that 16 of the 19 cases were Guevara cases and that three involved *Monell* claims in other cases. Indeed, during the meet and confer, Mr. Chanen had the chart attached as Exhibit 4 directly in front of him, which he had requested the C&O legal assistant to prepare for the very purpose of answering the City's questions about Guevara and non-Guevara cases and in order to know who had represented the City in those cases. Ms. Barber's suggestion in Exhibit 3 that "on July 26 . . . Plaintiff counsel assert[ed] that all the listed cases in request number 2 are 'Guevara cases' " is simply a false statement; Mr. Chanen made no such statement on that call or any other time.

In addition, given that the sole discussion on July 26 about the Deposition Transcripts was: (a) Ms. Rosen stating that in principle she had no objection to producing the transcripts, but that more time was needed to evaluate the scope of Cruz's request; and (b) a brief discussion about whether there were or were not Policymaker Deposition Transcripts that fell within the requests, Ms. Barber is simply incorrect that Mr. Chanen ever used the words non-sensical or no value at the July 26 meeting. It simply never happened.

Moreover, to the extent Ms. Barber may be conflating statements that Mr. Olstein made on July 19 and Mr. Chanen on July 26, Ms. Barber is intentionally trying to twist out-of-context Mr. Olstein's July 19 statements.  On July 19, Mr. Olstein specifically stated that it was "non-sensical" to object to *Monell* document requests on the ground that the requests "lack any relevance to the Douglas homicide investigation," Exhibit 2, at ¶¶ 1, 3, 5, explaining that *Monell* inherently does not relate solely to the case that is before the Court. Counsel also stated, as discussed above in some detail above, that the City's unsupported boilerplate objections have "zero value" because the courts had set a far higher standard of specificity than "overbroad" and "burdensome."  All of the law in that regard is identified above on pages 7-8.

Finally, the City's attempt to walk back Ms. Rosen's representations on July 26 and mislead the Court about the statements Cruz's counsel made during that meeting (as well as the prior July 19) meeting only further demonstrates the City's bad faith, supporting Cruz's request for sanctions.

Respectfully, Cruz's requests for Monell discovery are narrow, focused, appropriate, and not at all burdensome. On the contrary, they are designed to streamline discovery by allowing the parties to avoid having to re-take 30(b)(6) depositions already taken. For all these reasons, Plaintiff Jose Cruz respectfully requests this Court to grant this Motion, order the City to produce all City of Chicago 30(b)(6) and policymaker deposition transcripts requested in Requests 2 through 7, and to award Cruz his fees and costs in bringing this Motion.

Dated:  August 9, 2024

Respectfully submitted,

*Plaintiff Jose Cruz*

By:     /s/ Stuart J. Chanen
        /s/ Ariel Olstein

Stuart J. Chanen | Ariel Olstein
CHANEN & OLSTEIN
8222 Niles Center Road Suite 100
Skokie, IL  60077
847-469-4669
Stuart@ChanenOlstein.com
Ariel@chanenolstein.com