IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
| | ) | Case No. 23-cv-4268 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Alexakis |
| v. | ) | Magistrate Judge Fuentes |
| | ) | |
| FORMER DETECTIVE REYNALDO GUEVARA, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**OFFICER DEFENDANTS' MOTION TO COMPEL
PLAINTIFF TO PRODUCE VERNON MEADORS INTERVIEW NOTES**

Defendants Stephen Gawrys, Robert Rutherford, Anthony Riccio, Edward Mingey, Anthony Wojcik, Robert Boris, and Geri Lynn Yanow, as Special Representative for Ernest Halvorsen, deceased (collectively, "Officer Defendants"), through their attorneys, The Sotos Law Firm, hereby move this Honorable Court to compel Plaintiff to produce certain notes from interviews with Vernon Meadors, and state:

**INTRODUCTION**

1. As this Court is aware, Plaintiff Jose Cruz ("Cruz") alleges in this lawsuit that the Defendants, eight former Chicago police officers and a former-Assistant State's Attorney and current sitting judge, violated his constitutional rights, leading to his alleged 28-year wrongful imprisonment.[1] Cruz is seeking $87 million in damages.

2. In the early morning hours of October 6, 1993, a shooting occurred near the intersection of North Avenue and Kedzie Avenue in Chicago. During this shooting, Antwane

---

[1] This is despite the fact that, on or about November 16, 1994, Cruz pleaded guilty to two counts of attempted murder in a separate shooting case, *People v. Jose Cruz*, No. 93-CR-1347801, and received a 15-year sentence in the custody of the Illinois Department of Corrections. In other words, Cruz would have been sentenced to 15 years in prison even if none of the events alleged in this lawsuit ever happened.

1

Douglas was killed and Vernon Meadors was wounded. Shortly thereafter, Meadors identified Cruz as one of the shooters. Meadors later testified at Cruz's criminal trial that Cruz was one of the shooters.

3. Meadors passed away in 2020. Up until his death, Meadors insisted that Cruz was one of the shooters, and the evidence in this case shows that Meadors never wavered in that conviction.

4. Nevertheless, Cruz filed the instant lawsuit in which he alleges that the Officer Defendants "coerced and manipulated Meadors' identification of Cruz." (Dkt. 44, Plaintiff's First Amended Complaint, ¶ 68.)

5. On September 13, 2024, counsel for the Officer Defendants deposed Gregory Swygert, an attorney from the Center on Wrongful Convictions ("CWC") who represented Cruz in his successive post-conviction proceedings in Illinois state court. Swygert testified that he met with Meadors on one occasion in approximately 2017, and that Meadors maintained that Cruz was a shooter. Swygert testified that he is unaware of any evidence that Meadors ever recanted his identification of Cruz as a shooter. When counsel asked Swygert why he got an affidavit from other witnesses (Pedro Jaramillo and Ivan Rios) but not Meadors, Swygert testified, in essence, that he only procured affidavits that would help his client's case, and it would not have helped Cruz get out of prison if he had an affidavit from the victim of the shooting swearing under oath that Cruz had shot him.

6. On September 18, 2024, counsel for the Officer Defendants deposed Cruz. Cruz likewise testified that he was unaware of any evidence that Meadors ever recanted his identification of Cruz as a shooter. Cruz further testified that he was unaware of any intimidation

2

or other misconduct perpetrated by the Officer Defendants on Meadors to get him to identify Cruz.

7.  Given that (1) Meadors identified Cruz as a shooter to police in 1993; (2) Meadors testified that Cruz was a shooter at the 1995 criminal trial; (3) there is no evidence that Meadors ever recanted; (4) Cruz and Cruz's lawyer testified that they are unaware of any evidence that Meadors recanted or was improperly pressured into identifying Cruz; and (5) Meadors is now deceased, Officer Defendants want to know what good faith basis Cruz has for alleging that Meadors was coerced and manipulated into falsely identifying Cruz as the shooter.

8.  Cruz is currently in possession of two documents which consist of notes from interviews of Meadors conducted by students at Northwestern University Law School who worked for the CWC. Cruz has refused to produce these interview notes to Defendants on the basis of the work product doctrine. Officer Defendants now respectfully move this Court to compel Cruz to produce these interview notes.

## FACTUAL BACKGROUND

9.  On or about February 2, 2024, Officer Defendants served a subpoena upon the CWC. (Exhibit A, 02/02/2024 Subpoena.) The return date for the subpoena was February 16, 2024. (*Id.*)

10.  The CWC failed to respond to the subpoena or serve any objections to it, and Officer Defendants filed a motion to compel. (Dkt. 134.) This motion to compel was granted by the Court on March 22, 2204, when counsel for the CWC failed to appear at the motion hearing. (Dkt. 139.)

11.  On March 21, 2024, Plaintiff's counsel, for the first time, advised counsel for the Officer Defendants that they sought to conduct a privilege review of the subpoena response from

3

the CWC prior to the documents being produced to Defendants. Despite the lateness of this request, counsel for the Officer Defendants agreed to allow this review.

12. On March 26, 2024, counsel for the CWC confirmed that the CWC had made its entire file available to Plaintiff's counsel, and that the CWC was not redacting or withholding any responsive records. On or about that same day, Plaintiff's counsel agreed to complete their privilege review and produce the CWC documents by March 29, and a privilege log by April 1, 2024. The parties filed a Joint Status Report documenting these developments, and the Court subsequently converted its ruling on the motion to compel against the CWC to a denial without prejudice as moot. (Dkt. 140, 142.)

13. On March 29, 2024, Cruz produced documents from the CWC along with a privilege log. (Exhibit B, 03/29/2024 Privilege Log.) This privilege log reflected that Cruz was withholding eight documents from the CWC production, including the following:

| # | Date | From Author | To Recipient | CC, if applicable | Document Subject | Privilege Asserted | Additional Notes |
|---|------|-------------|--------------|-------------------|------------------|--------------------|-----------------| 
| 1 | 2007-11-10 | Michael Blume | Cruz File | | Notes from Interview of Vernon Meadors | Work Product Summary – Not Verbatim | Eva Lewis also present Wife and 3 daughters present intermittently |
| 6 | 2017-08-03 | Josephine Park | Cruz File | | Meeting with Vernon Meadors | Work Product Memo – Not Verbatim | Greg Swygert and Joline Smith participated in interview |

14. On May 1, 2024, counsel for the Officer Defendants sent Plaintiff's counsel a letter regarding the CWC production. (Exhibit C, 05/01/2024 Letter.) Among other things, Officer Defendants requested that Cruz produce Documents #1 and 6 listed on the privilege log, which were notes from interviews conducted by CWC employees of Vernon Meadors. Officer

4

Defendants advised that it appeared that these documents contained factual information that was not protected by the work product doctrine. Additionally, it was unclear whether the authors of Documents #1 and 6 were even attorneys.

15. On May 8, 2024, Plaintiff's counsel responded to the May 1 letter via email, and reiterated that Cruz would not produce any of the documents on the CWC privilege log on the basis of the work product doctrine. (Exhibit D, May 2024 Email Chain Between Counsel, pp. 2-3.) Counsel for the Officer Defendants attempted to schedule a phone call to discuss the matter, but Plaintiff's counsel responded, "I really don't think there is much to talk about." (*Id*. at pp. 1-2.)

16. On August 12, 2024, the parties finally had a telephonic meet-and-confer regarding the Vernon Meadors interview notes, Documents #1 and 6 on the privilege log. Plaintiff's counsel said he would think about the issue and respond via email. On August 14, 2024, Plaintiff's counsel emailed that Cruz was standing on his original objections to producing the Meadors interview notes. (Exhibit E, August 2024 Email Chain Between Counsel, pp. 2-3.)

17. Officer Defendants now bring the instant motion to compel the production of the Meadors interview notes, Documents #1 and 6 on the privilege log for the CWC production.

## ARGUMENT

18. Cruz asserts that the Vernon Meadors interview notes, Documents #1 and 6 on the privilege log, are protected by the work product doctrine.

19. Federal Rule of Civil Procedure 26(b)(3)(A) states, in relevant part:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

5

(i)     they are otherwise discoverable under Rule 26(b)(1); and

(ii)     the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).

20. Here, Officer Defendants are entitled to the Vernon Meadors interview notes because: (1) they were not prepared in anticipation of litigation or for trial in this matter, but were prepared between six and sixteen years before this case was filed by students working on Cruz's successive post-conviction petition; (2) Officer Defendants have a substantial need for the notes because they likely refute Cruz's allegations that Officer Defendants' coerced Meadors into falsely identifying Cruz as a shooter; (3) Meadors passed away three years before the filing of this case, and Officer Defendants cannot obtain this information or its substantial equivalent by other means; and (4) the information sought is purely factual, and does not contain any attorney mental impressions or work product.

21. "Unlike the attorney-client privilege, the protection of the work product doctrine may be overcome if the party seeking discovery shows 'a substantial need for the materials and an inability to obtain the substantial equivalent of the information without undue hardship.'" *Trustees of Chicago Regional Council of Carpenters Pension Fund v. Drive Construction, Inc.*, No. 19-cv-2065, 2022 WL 2341290, *4 (N.D. Ill. June 29, 2022) (quoting *E.E.O.C. v. Int. Profit Assocs., Inc.*, 206 F.R.D. 215, 221 (N.D. Ill. 2002)). "This is a difficult burden to meet, and is likely to be satisfied only in rare situations, such as those involving witness unavailability." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of America*, No. 00 C 1926, 2000 WL 1898518, *3 (N.D. Ill. 2000) (citations and quotations omitted). Here, there can be no dispute that Meadors is unavailable because he is deceased.

6

22. Additionally, Officer Defendants do not seek attorney mental impressions, but purely factual material. "[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery." *Saunders v. City of Chicago*, No. 12 C 9158, 2015 WL 4765424, *10 (N.D. Ill. Aug. 12, 2015) (quoting *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87-88 (1973)). "Witness interviews primarily contain factual materials, factual information about what witnesses have said and, of course, facts are not protected by the privilege; only the internal deliberations and the work product are protected." (Exhibit F, 12/04/2020 Transcript, 14:17-21, *Fulton v. Foley*, No. 17 C 8696 (N.D. Ill.) (Harjani, J.))

23. Here, Officer Defendants seek witness interview notes, which are primarily factual material. These interview notes were taken 2007 and 2017, sixteen years and six years before the start of the present case, by students working for the Center on Wrongful Convictions. These interview notes were not taken in anticipation of litigation in this case. No litigation was pending against the Officer Defendants at the time, the undersigned counsel had not been retained, and there was no incentive for the Officer Defendants, many of whom were retired, to interview a witness from a 25-year-old, closed murder case.

24. Vernon Meadors passed away in 2020, three years before the filing of this civil case. Again, the Officer Defendants had no incentive to interview Meadors before he passed away. They did not know that Cruz's conviction would be vacated, and that he would later sue them for tens of millions of dollars. The also did not now that Cruz would allege that Meadors, who was rock solid in his identification of Cruz as the shooter, was somehow coerced into falsely identifying Cruz.

25. By the time this civil case was filed, the Officer Defendants had no way to interview Meadors or call him as a witness to refute Cruz's bogus allegations about him. As far as the Officer Defendants know, the CWC's notes from its interviews of Meadors are the only documentation that exists that shows that Meadors maintained his identification of Cruz as the shooter. These interview notes are thus vitally important to this case, and Officer Defendants have no other way to get this information.

26. Officer Defendants only seek the factual material in these notes and not any attorney mental impressions (even though the notes were prepared by students and not attorneys). Officer Defendants are willing to compromise and will accept redacted versions of the notes that eliminate any deliberative or reflective writing and only contain the substance of what Meadors said (*e.g.*, "Meadors said Cruz was the shooter").

27. Officer Defendants have made a showing of substantial need, and they have no other way to get this information from any other discovery tools. Therefore, Officer Defendants respectfully request that this Honorable Court order Cruz to produce the Meadors interview notes, Documents #1 and 6 on the privilege log for the CWC production.

## CONCLUSION

WHEREFORE, Officer Defendants respectfully request that this Honorable Court enter an order compelling Cruz to produce the Vernon Meadors interview notes.

Dated: September 25, 2024            Respectfully submitted,

/s/ Jeffrey C. Grossich
JEFFREY C. GROSSICH, Atty. No. 6316511
*Special Assistant Corporation Counsel for Defendants Officers*

James G. Sotos
Josh M. Engquist
Lisa M. Meador
Alexis M. Gamboa
Jeffrey C. Grossich
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60604
P: (630) 735-3300
jgrossich@jsotoslaw.com

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on September 25, 2024, I electronically filed the foregoing **Officer Defendants' Motion to Compel Plaintiff to Produce Vernon Meadors Interview Notes** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list.

***Attorneys for Plaintiff***
Stuart J. Chanen (Stuart@ChanenOlstein.com)
Ariel Olstein (Ariel@ChanenOlstein.com)
CHANEN & OLSTEIN LLP
8822 Niles Center Rd., Suite 100
Skokie, IL 60077
P: 847-469-4669

Jack Samuel Tenenbaum
Northwestern Pritzker School of Law
375 E. Chicago Ave., Suite 411
Chicago, IL 60611
P: 312-503-4808
s-tenenbaum@law.northwestern.edu

***Attorneys for the City of Chicago***
Eileen E. Rosen (erosen@rfclaw.com)
Andrew J. Grill (agrill@rfclaw.com)
Austin G. Rahe (arahe@rfclaw.com)
Catherine M. Barber (cbarber@rfclaw.com)
Lauren M. Ferrise (lferrise@rfclaw.com)
Theresa B. Carney (tcarney@rfclaw.com)
Rock, Fusco & Connelly
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
P: (312) 494-1000

***Attorneys for Reynaldo Guevara***
Steven B. Borkan (Sborkan@borkanscahill.com)
Timothy P. Scahill (tscahill@borkanscahill.com)
Graham P. Miller (gmiller@borkanscahill.com)
Emily E. Schnidt (eschnidt@borkanscahill.com)
Molly Boekeloo (mboekeloo@borkanscahill.com)
Whitney Hutchinson (whutchinson@borkanscahill.com)
Mischa Itchhaporia (mitchhaporia@borkanscahill.com)
Krystal Gonzalez (kgonzalez@borkanscahill.com)
Andrea F. Checkai (acheckai@borkanscahill.com)
Borkan & Scahill

20 S. Clark Street, Suite 1700
Chicago, IL 60603
P: (312)-580-1030

**<u>Attorneys for Edward Maloney</u>**
William B. Oberts (wboberts@tribler.com)
Kevin C. Kirk (kckirk@tribler.com)
Oberts Galasso Law Group
161 N. Clark Street, Suite 1600
Chicago, IL 60601
P: (312) 741-1024

/s/ Jeffrey C. Grossich
JEFFREY C. GROSSICH, Atty No. 6191975