**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
| | ) | Case No. 23 C 4268 |
| Plaintiff, | ) | |
| | ) | District Judge Georgia N. Alexakis |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In this matter before the magistrate judge on referral (D.E. 49), before the Court is the third-party Cook County State's Attorney's Office's motion to quash a deposition subpoena on the current sitting State's Attorney, Kimberly M. Foxx ("Motion to Quash"; D.E. 223). On review of the Motion to Quash, the opposition brief by the Officer Defendants[1] who wish to conduct the deposition ("Resp."; D.E. 236), and the State's Attorney's reply ("Reply"; D.E. 262),[2] the Court decides this motion within the broad discretion afforded to magistrate judges to manage discovery, *Jones v. City of Elkhorn, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013), and consistent with the Court's goal of promoting a just, speedy and inexpensive determination of this matter. Fed. R. Civ. P. 1.

---

[1] Defendants Anthony Riccio, Robert Rutherford, Robert Boris, Stephen Gawrys, Edward Mingey, Anthony Wojcik, and Geri Lynn Yanow (as estate representative for deceased Defendant Ernest Halvorsen) (collectively, "the Officer Defendants").

[2] Plaintiff filed an unsolicited memorandum in support of the Motion to Quash (D.E. 263), over the Officer Defendants' objection (D.E. 270), but the Court did not consider any aspect of Plaintiff's memorandum in deciding the Motion to Quash.

## BACKGROUND

Plaintiff's lawsuit revolves around his allegations that former Chicago Police Detective Reynaldo Guevara, seven other former police detectives (including one who is deceased), a police sergeant, and an assistant state's attorney wrongfully procured the 1996 murder and attempted murder convictions of Plaintiff in connection with an October 1993 shooting death in which he asserts he had no involvement. First Amended Complaint ("First Am. Cmplt."; D.E. 44), passim. Plaintiff alleges that certain Defendants including Guevara caused a witness to identify Plaintiff falsely as one of the shooters, suppressed exculpatory evidence including purported eyewitness accounts saying that the shooters were of another race than Plaintiff, fabricated police reports, and deliberately failed to investigate the shooting so that the actual shooters could be identified. *Id.* ¶ 3. Plaintiff alleges that as a result of his wrongful conviction, he spent more than 28 years in prison as an innocent person. *Id.* ¶¶ 1-3. The Defendants deny liability. Answers (D.E. 58, 63, 64). Plaintiff's complaint includes a count for state law malicious prosecution, and the elements of that offense include termination of a plaintiff's prosecution in a manner indicative of innocence. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). On July 11, 2022, Plaintiff's conviction was vacated and the charges against him were dropped. First Am. Complt. ¶ 8. The Officer Defendants predict Plaintiff will seek to offer the vacatur of his conviction, and the Illinois court's entry of a "certificate of innocence" in his favor, as evidence of his actual innocence, Resp. at 3, given that the Court of Appeals held relatively recently that certificates of innocence, when issued to a malicious prosecution plaintiff, are relevant to whether the underlying prosecutions of such plaintiffs were terminated in a manner

indicative of innocence. *See Patrick v. City of Chicago*, 974 F.3d 824, 832-33 (7th Cir. 2020).

Moving to quash the Officer Defendants' deposition subpoena upon the sitting State's Attorney, the State's Attorney argues as follows:

> The Defendants seek to depose the sitting State's Attorney, purportedly so she can testify about a short (less than a minute or so) conversation she had with the Plaintiff at an event at Stateville Correctional Center in 2022, shortly before the CCSAO moved to vacate his conviction. It is undisputed that the conversation was non-substantive, and there is absolutely no value in forcing the State's Attorney to appear for a deposition in this matter. Nothing about this conversation, where the State's Attorney told Plaintiff she recognized his name and that his case was under review, is relevant to the outcome of Plaintiff's claims against the Defendants. Defendants have been unable to articulate how this evidence is relevant to any claim or defense in the case. Incredibly, the Defendants have also suggested that they intend to use this short conversation as a wedge to learn the State's Attorney's knowledge and deliberations with respect to the decision to vacate the conviction, evidence clearly protected by the deliberative process privilege …. Defendant Officers seek to take State's Attorney Foxx's deposition to ask her about essentially a one-minute conversation between her and Cruz at Stateville Correctional Center where she told him to "hold on tight" as the CCSAO review of Detective Guevara cases was proceeding but did not make any promises. Information about the conversation can be obtained from other sources as it was in public and reported by the Chicago Tribune.

Motion to Quash at 1-2, 4.

Citing the "apex doctrine," the State's Attorney contends that as the top prosecutor of Cook County, she should not be subjected to a deposition about the Cruz conversation when information about that conversation is available from other witnesses including Cruz. *Id.* at 2. As alternatives to a seven-hour deposition in the event the Motion to Quash is denied, the State's Attorney has offered to provide a sworn affidavit or a proposed 30-minute oral deposition. *Id.* at 2, 10.

In response to the State's Attorney's Motion to Quash, the Officer Defendants assert that the State's Attorney has not established the applicability of the deliberative process privilege or the apex doctrine to *all* of the putative deposition testimony the Officer Defendants wish to obtain, insofar as the State's Attorney has admitted to having a brief conversation with Plaintiff about his incarceration status (and, arguably, about the pendency of his efforts to be exonerated of the 1993 slaying), even as she characterizes that conversation as "non-substantive." Resp. at 5. The Officer Defendants cite court documents from Plaintiff's post-conviction proceedings indicating that Plaintiff characterized the conversation slightly differently than the State's Attorney's current statement (in the Motion to Quash) that she told Plaintiff to "hold tight"; the Officer Defendants say Plaintiff recalled being told by the State's Attorney that he was "coming home." *Id.* at 7. The Court infers from the Officer Defendants' Response that they want to ask the State's Attorney for her thorough recollection of that conversation, however brief, given that the deliberative process privilege generally would not apply to external conversations between members of the State's Attorney's Office (or the State's Attorney herself) and the incarcerated defendant in the underlying criminal case, here the Plaintiff. *See id.* at 12. But the Officer Defendants also want to ask the State's Attorney about much more, including:

- the type of analysis employed during the investigation of Plaintiff's innocence claim by the State's Attorney's Conviction Integrity Unit;

- the policies and procedures followed during that investigation;

- statements made by the State's Attorney or her staff members "to press and third parties";

- factors taken into account in making the final decisions regarding Cruz's case and the granting of the innocence certificate;

- representations made by Plaintiff or his counsel to the State's Attorney's Office during the CIU investigation; and

- any post-decisional statements.

*Id.* The Officer Defendants say deposition questions on the above subject matters would avoid the apex doctrine to the extent that the State's Attorney had unique personal knowledge of them, as the Officer Defendants say she does (she disagrees), as well as the deliberative process privilege to the extent the information is neither truly pre-decisional nor deliberative, as that privilege requires, *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 186 (N.D. Ill. 2019), or to the extent the State's Attorney waived the privilege. Resp. at 14-15.

The Officer Defendants want to establish that the State's Attorney's decisions concerning the vacatur of Plaintiff's murder conviction and the grant of the innocence certificate "were based on factors other than innocence." Resp. at 13. If those events in the history of this case were based on "factors other than innocence," then presumably, according to the Officer Defendants, such facts – if non-privileged or discoverable notwithstanding the privilege – would be relevant to the Officer Defendants' defense against Plaintiff's proposition that his Illinois criminal prosecution was terminated in a manner indicative of innocence. *Id.* More specifically, the Officer Defendants argue that the answer to the question of why the State's Attorney agreed to vacate the murder conviction and not to oppose the innocence certificate petition in state court is "relevant and necessary" for the Officer Defendants' defenses in this case. *Id.* at 4. The Officer Defendants seize upon the State's Attorney having allegedly "admit[ted]" that she "remembers Cruz's name 'from a batch of Detective Guevara cases the CCSAO reviewed,'

which indicates to Defendants that the ultimate decisions surrounding Cruz's case dismissal and COI were made solely on the basis of the CCSAO Guevara review policy, which is both relevant and incredibly important information for Defendants to use in defense of the allegations made against them." *Id.* The Court found this "admission" by the State's Attorney, as quoted by the Officer Defendants (but not by citation), in the State's Attorney's Motion to Quash, which was filed after the Officer Defendants' subpoena upon the State's Attorney and was part of the State's Attorney's argument that under the apex doctrine, she had no unique personal knowledge of Cruz's case other than having recognized his name. Motion to Quash at 4.

The Officer Defendants also call the Court's attention to the State's Attorney's website, which contains a section on the office's conviction review unit at https://www.cookcountystatesattorney.org/conviction-review-unit. Resp. at 5. The site contains a video in which three persons describe their experiences in connection with the vacatur of their criminal convictions. One of them is Plaintiff Cruz. The portion of Cruz's videotaped comments describing his conversation with the State's Attorney is as follows:

> When I was at Stateville Correctional Center, I was, uh, a worker at what they call the theater building, and that's where the majority of the events happened. They told me I couldn't go that day because, you know, Kim Foxx was going to be there so they didn't want a lot of people in there. I talked to my friend, and he was a chaplain. He made it happen where I would be over there for that day. Some way, somehow, by the grace of God, she happened to go by the water fountain. It was hot that day. I approached her and I said, uh, Mrs. Foxx, my name is Jose Cruz, and I been incarcerated this time to this time and I'm innocent. And she said, "Oh, Jose Cruz, we had a meeting about you yesterday, we had a meeting." After the event was over, she was walking out, and I was standing by the door, and she say, "come here," and um, she gave me a hug. She gave me a hug that I had not felt in a long time, since I had lost my mother. And in there, I, she said, "God bless you, you coming home."

https://www.cookcountystatesattorney.org/conviction-review-unit (last visited Oct. 4, 2024).

The Officer Defendants refer to the website segment as a "promotional" video and contend that the State's Attorney has "opened the door" to the Officer Defendants' exploration, at a deposition of the State's Attorney, of her office's "internal reasoning" because members of her office disclosed those deliberations "to the press or other third parties including private conversations with Plaintiff, or boast[ed] about them on their own website." Resp. at 9, 13-14. The Officer Defendants never expressly claim that the State's Attorney "waived" the deliberative process privilege. The Officer Defendants claim that to the extent the States' Attorney's decision-making as to Plaintiff's criminal case and certificate of innocence is protected by the deliberative process privilege and was not waived, they have established a particularized need and are entitled discover it under the law. *Id.* at 14.

## ANALYSIS

The Motion to Quash presents the Court with some complex and difficult questions because the State's Attorney of a county such as this one, in which one of the nation's largest unified court systems handles every criminal case in the Chicago metropolitan area, has a daunting task. That task is a highly important one to the people of Cook County and their public safety, as courts in this district have recognized; discovery from the State's Attorney's Office "is distracting and disruptive and burdensome … it's serious business … there is a real public interest in having them devoted to their mission." *See* Motion to Quash at 5-6, citing *Solache v. City of Chicago*, Nos. 18-cv-2312 (N.D. Ill. July 5, 2023) (D.E. 501 at 58) (Seeger, J.) (unpublished). This Court is cognizant of those concerns, as

well as the legitimate concern that allowing depositions of the top prosecutor in Cook County in federal civil discovery, or of other top state agency officials carrying out their duties, runs a real risk of making these depositions commonplace, more justifiable, or less objectionable in future cases, to the detriment of the public interest, and in derogation of both the apex doctrine and the deliberative process privilege. This case, though, presents a significant factual wrinkle: The State's Attorney admits she had an actual, in-person conversation with Plaintiff about the subject matter of his incarceration and his efforts toward exoneration. The Court considers the Motion to Quash with that unusual factual backdrop in mind.

I. **The Apex Doctrine Does Not Bar Deposition of the State's Attorney About Her Jailhouse Conversation With Plaintiff.**

The "apex doctrine" is little more than a common-law mechanism to limit overly burdensome discovery requests directed at top-level executive officers of a corporation or entity, particularly where the deposition has certain harassing qualities. Courts in this district have analyzed requests to block the depositions of so-called "apex" witnesses under a four-part checklist, protecting high-level executives from being deposed when any of four circumstances exist: (1) the official has "no unique personal knowledge of the matter in dispute"; (2) the information can be garnered from other witnesses or (3) other discovery methods; or (4) sitting for the deposition would impose a hardship in light of the officer's duties. *City of Rockford v. Mallinckrodt ARD, Inc.*, Nos. 17 C 50107, 20 C 50056, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020). The parties dispute the applicability of each of the foregoing factors, and the State's Attorney maintains that because one or more of them weighs against subjecting the sitting State's Attorney to a deposition in this case, the Motion to Quash should be granted.

Ordinarily, the party seeking protection from discovery bears the burden of making a "particular and specific demonstration of fact" to justify blocking a deposition said to run afoul of the apex doctrine. *Id.* Yet the party seeking protection from the apex discovery in *City of Rockford* was *a party* to that litigation, whereas here, the State's Attorney as a third party moves to quash a Rule 45 subpoena. The Motion to Quash fails to invoke the applicable rule, Fed. R. Civ. P. 45(d)(3)(A), but the Court nonetheless must analyze the Motion to Quash within the rubric of that rule. The Rule 45(d)(3)(A) movant's non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013). "Indeed, while parties must accept the burdens of litigation, non-parties have different expectations. As such, courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs" and consider factors including non-party status, the relevance of the discovery sought, the subpoenaed party's need for the documents, the breadth of the request, and the burden imposed on the subpoenaed party. *Id.* Amid this substantial overlap between the apex doctrine and the factors courts consider under Rule 45(d)(3)(A) on a motion to quash, courts generally have held that subpoenaed non-parties who move to quash bear the burden of establishing that the subpoenas should be quashed under Rule 45 for having imposed an undue burden. *See Pacific Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) (analyzing Rule 45 motions to quash by third-party internet service providers under the general rule that "[t]he party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant"); *Cooper v. Rezutko*, No. 3:17-CV-834-PPS-MGG, 2019 WL 927095, at *8 (N.D. Ind. Feb. 26, 2019) (analyzing Rule 45 motion to quash by third-party

state prosecutor by placing the burden on the prosecutor to establish undue burden). The bottom line of the Court's approach to the State's Attorney's Motion to Quash, as with any discovery issue falling within the magistrate judge's management, is that the Court has extremely broad discretion in controlling discovery including the enforceability of Rule 45 subpoenas. *DeLeon-Reyes v. Guevara*, Nos. 18-cv-01028, 18-cv-02312, 2021 WL 3109662, at *7 (N.D. Ill. July 22, 2021), citing *Jones*, 737 F.3d at 1107.

Turning to the apex analysis within the framework of Rule 45(d)(3)(A), the Court assesses the uniqueness of the State's Attorney's information and focuses specifically on the Cruz conversation. The Court understands, from the motion papers considered, that the State's Attorney was not the only person present for her conversation with Cruz, so although she has personal knowledge of the conversation, so do others, and the Officer Defendants presumably could depose those others about it, including Cruz himself. But the Officer Defendants correctly point out, or at least argue by implication, that there is a uniqueness to the very persona of the State's Attorney in connection with the Cruz conversation, insofar as she was the ultimate decisionmaker for the agency. Resp. at 4. The State's Attorney herself notes that "[n]o one carries more responsibility than the elected State's Attorney," at least as to the prosecution of criminal matters in Cook County and the litigation of civil matters involving the county. Motion to Quash at 6. Thus, the Officer Defendants lean heavily into the Cruz conversation with the State's Attorney in opposition to the State's Attorney's argument that being deposed about at least that conversation poses an undue burden and ought to be barred under the apex doctrine. Resp. at 5-7.

10

As to the Cruz conversation, the Court finds that the State's Attorney does not meet her burden to quash the subpoena under Rule 45 and further, the Court agrees with the Officer Defendants that the State's Attorney falls short of making the "particular and specific demonstration of fact" needed to bar her deposition under the apex doctrine. A personal conversation between the top decisionmaker in the prosecutor's office of Cook County and an incarcerated prisoner seeking to gain his freedom and exoneration through legal process before that office strikes the Court as highly unusual. It may have been a chance encounter. It may have been a brief encounter. It may have entailed a non-substantive conversation. But it was a conversation, nonetheless, distinguishing this situation from the more typical apex situation in which the party seeking the deposition of a top executive is saying the executive must have some unique exposure to the case or the allegations, simply by virtue of the executive's position atop the organization. Here, the State's Attorney actually spoke to Plaintiff and addressed, however briefly, his status as an incarcerated person seeking exoneration, telling him that he should "hold tight," by her account, or telling him that she and her staff had met to discuss his case, by Cruz's account. Courts have described the apex doctrine as "not an iron-clad rule," but one that is merely sensitive "to the risk that very valuable executive time would be wasted where the officer has no real information." *Dyson Inc. v. Sharkninja Operating LLC,* No. 14-cv-779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016). Here, the Court cannot conclude that the State's Attorney has "no real information" about her conversation with Cruz without accepting at face value, and compelling the Officer Defendants to accept at face value, her stated assertion in the motion papers.

Looking at the other three apex factors articulated in *City of Rockford* and other cases, the Court concludes that the recollection of the State's Attorney (as top decisionmaker) concerning this conversation is not sufficiently discoverable through other witnesses or other sources, and nor would it be an excessive burden on the State's Attorney to answer questions only on this topic, and for an abbreviated period of time. The Court notes that the State's Attorney herself suggested alternative relief in the form of a 30-minute oral deposition. Authority exists for allowing time-limited depositions of high state officials to explore only those topics which courts have seen as permissible under the apex doctrine. *See DeLeon-Reyes*, 2021 WL 3109662, at *8 (imposing three-hour limit for deposition of former First Assistant State's Attorney about subject matters permitted by the court); *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) ("Plaintiffs may depose Lieutenant Governor for three hours. They may address background issues that are relevant to carrying forward with a meaningful deposition but are otherwise restricted to questioning Stratton to matters concerning the defamation claim pending against her."). The Court is limiting to 60 minutes the deposition of the State's Attorney on the sole subject of the Cruz conversation.

The Officer Defendants would like to use the Cruz conversation as a lever to conduct a far more wide-ranging deposition of the State's Attorney. *See* Resp. at 12. The Court's overall assessment of the apex objection to these broader, process-based topics (as recited on page 12 of the Response) is that generally, the apex objection has merit. The policies and procedures of the State's Attorney's Office and its CIU, the type of analysis employed, and the factors taken into account in innocence investigations or (even in the Cruz investigation) were all obtainable from other sources in the State's Attorney's Office.

A generalized outline of the policies and procedures for the initiation and conduct of post-conviction review investigations is on the State's Attorney's website, https://www.cookcountystatesattorney.org/conviction-review-unit, whose authenticity could be confirmed by stipulation. The Officer Defendants did not seek a Rule 30(b)(6) deposition of the State's Attorney's Office during the discovery period in this matter.[3] Now they want the deposition of the highest-ranking person in the office. Other than the Cruz conversation with the State's Attorney, the remainder of the Officer Defendants' proposed subtopics are not uniquely within the State's Attorney's personal knowledge and could have been obtained from other sources. The State's Attorney has met her burdens under the apex doctrine and Rule 45(d)(3)(A) to avoid being deposed on all of the proposed subtopics except for the conversation with Cruz.

More specifically, the proffered non-privileged deposition subtopics of unspecified statements to the press, unspecified post-decisional statements, and representations Cruz or his representatives made during his efforts at exoneration could have been addressed through other witnesses, had the Officer Defendants acted diligently enough during fact discovery. And as to these first two subtopics, the Officer Defendants do not even offer specifics about what they would explore (other than the Cruz conversation, as to which deposition is being allowed). The Court is barring examination on these latter three topics

---

[3] The Officer Defendants did seek a deposition of the line prosecutor in the Cruz matter, Assistant State's Attorney Carol Rogala, but they were unable to schedule this deposition before the end of the discovery period, and the Court did not allow it after the discovery period. The Officer Defendants proffered that they wanted this deposition to explore the back-office politics of the State's Attorney's Office at the time of the decisions on Cruz's underlying case, and the Court considered those topics too speculative to warrant allowing the deposition outside the discovery period as the Court considered in its discretion what tardy discovery, including a spate of proposed depositions, should and should not be allowed. (D.E. 259, 260.)

under the apex doctrine but is permitting the State's Attorney's deposition on the Cruz conversation notwithstanding the apex doctrine.

II. **The Deliberative Process Privilege Bars the Deposition on the Officer Defendants' Process-Based Questions, Including Why the State's Attorney Dropped Cruz's Prosecution and Did Not Oppose His Certificate of Innocence.**

In addition, the deliberative process privilege bars the State's Attorney's deposition on what the Court roughly labels the "process-based" subtopics that the Officer Defendants seek to explore, namely about why the State's Attorney opted to dismiss Plaintiff's criminal prosecution and not to oppose his petition for a certificate of innocence. The Officer Defendants contend that these are relevant to their proffered defense that the State's Attorney took those actions not because she considered Cruz to be innocent, but for some other unknown or unclear non-innocence reason, i.e., simply because Defendant Guevara had been involved in procuring the original conviction and not because of "the merits of Cruz's allegations." *See* Resp. at 9.[4]

The process-based subtopics are:

- the type of analysis employed during the investigation of Plaintiff's innocence claim by the State's Attorney's Conviction Integrity Unit;

- the policies and procedures followed during that investigation; and

- factors taken into account in making the final decisions regarding Cruz's case and the granting of the innocence certificate.

---

[4] The Officer Defendants appear to assume that the "merits" of Cruz's allegations, i.e., that he is actually innocent but was "framed," and that persons including Defendant Guevara procured false evidence against him, are somehow analytically separable from the nature of Guevara's involvement in Cruz's now-vacated criminal conviction. The Court does not indulge in that assumption.

In Part II, the Court does not analyze the Cruz conversation, which, as an external communication, falls entirely outside the deliberative process privilege. The same goes for what the Court has described as the three other proffered deposition subtopics discussed above: unspecified statements to the press, unspecified post-decisional statements, and representations Cruz or his representatives made during his efforts at exoneration.

## A. The State's Attorney Has Made the *Prima Facie* Case for Applicability of the Deliberative Process Privilege.

As the court in *Rodriguez* explained, the foundations and procedures for deliberative process privilege claims are as follows:

> The federal common law deliberative process privilege protects communications that are part of a government agency's decision-making process so long as those communications are both "pre-decisional" and "deliberative." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege is designed to encourage the "frank discussion of legal and policy matters" related to agency decisions, *id.* at 1389, and to "protect the quality of the flow of ideas within a government agency" by allowing subordinates to give decision-makers their "uninhibited opinions and recommendations," *K.L., L.F. & R.B. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997) (quotations and citations omitted). Although the privilege protects broad-based policy decisions made by government agencies, it also attaches to more individualized decision-making, such as the summary reports and discussions that are part of the process of formulating an official position with respect to internal investigations of police officer conduct. *See Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1017-18 (N.D. Ill. 2016).

> Courts apply a two-part test in evaluating claims of the deliberative process privilege. *Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). First, the court asks whether the party asserting the privilege has shown that the privilege applies to the documents it seeks to protect. *Edgar*, 964 F. Supp. at 1209. In the first step, to make out a *prima facie* case that the privilege should apply, the City must make sure that three things happen:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in

question; and (3) the official must specifically identify and describe the documents.

> *See id.* If the City makes that showing, then in the second step the court asks whether the moving party has shown a particularized need for the withheld information. *Ferrell*, 177 F.R.D. at 428.

*Rodriguez*, 329 F.R.D. at 186. Based on the State's Attorney's Henretty Declaration (D.E. 223-3), the Court has little trouble finding that the State's Attorney has made the three-part *prima facie* showing necessary to clear the low bar of establishing the applicability of the privilege as to why the State's Attorney agreed to vacate Plaintiff's conviction and not to oppose his bid for a certificate of innocence. The Henretty Declaration makes a formal deliberative process privilege claim, after personal consideration of the problem, and it sets forth precise and certain reasons for keeping confidential the State's Attorney's Office's internal deliberations about dismissing Cruz's criminal case and not opposing his certificate of innocence: (1) disclosure of why the State's Attorney made the decisions she did concerning Cruz's criminal prosecution and certificate of innocence would entail disclosure of "communications which occurred prior to and contemporaneously with the CCSAO's decision, such as predecisional policy discussions," including "the internal dialogue about a proposed decision, what positions and recommendations were expressed by those involved and any debate that occurred, and what weight was given to each of the various factors considered, or to any particular piece of evidence, and why"; and (2) such disclosure "would open the process up to outside influence," as "[i]nterested individuals outside of the CCSAO may try to manipulate the process itself in order to achieve a favored outcome." *Id*. Finally, Henretty's declaration sufficiently identifies the information the State's Attorney wishes to withhold: information about the decisional process in Cruz's case. *Id.*

16

The Court must then analyze whether the proposed process-based deposition subtopics are covered by the privilege, and if so, whether the Officer Defendants have made the showing of particularized need to pierce the privilege's protection, particularly on the more central questions of why the State's Attorney agreed to the vacatur and did not oppose the certificate of innocence.

### B. The Process-Based Deposition Subtopics on the State's Attorney's Internal Deliberations Are Covered By the Deliberative Process Privilege.

The Officer Defendants obliquely raise a question about whether what the Court has called the "process-based" deposition subtopics are truly covered by the deliberative process privilege. The parties and the State's Attorney, in the motion briefing, focus mostly on particularized need. But before the Court analyzes particularized need, it must consider the scope of the privilege, and the Officer Defendants point to at least two decisions – both oral rulings from the bench in different cases by different judges – that they say could be read to suggest a scope that would leave some of the subtopics unprotected.

The Officer Defendants argue that in *Fulton v. City of Chicago*, No. 17-cv-08696 (N.D. Ill. Dec. 4, 2020) (D.E. 293) (Harjani, J.) (unpublished) (Resp., Exh. B; "*Fulton* 12/4/2020 Tr.*"), the court "identified several topics … as discoverable," and that the same was true in another unpublished oral ruling, in *Brown v. City of Chicago*, No. 18 C 7604 (N.D. Ill. July 28, 2020) (D.E. 202) (Pallmeyer, J.) (unpublished) (Resp. at 12, Exh. C. ("*Brown* 7/28/20 Tr.").[5] The Court's analysis below includes its review of the transcripts of the *Fulton* and *Brown* courts' rulings, as supplied to the Court by the Officer Defendants.

---

[5] The Court appreciates the thoroughness with which counsel for the State's Attorney and the Officer Defendants have briefed the issues on the Motion to Quash by scouring their files for transcripts of past judicial comments with relevance to those issues. That said, when it comes to past judicial resolutions of disputes about whether the deliberative process privilege allows certain discovery from high government officials or their offices, published and unpublished decisions

### 1. The Policies and Procedures Concerning CIU Investigations and Certificates of Innocence.

The *Fulton* court saw as unprivileged the "general" policies and procedures followed by the State's Attorney "during the reinvestigation by the Conviction Integrity Unit as well as any policies and procedures followed with respect to the Certificate of Innocence." *Fulton* 12/4/2020 Tr. at 16. That is not the same subtopic as the one at issue in this case: "the policies and procedures followed during *that investigation*," which the Officer Defendants define as "the investigation of Plaintiff's innocence claim by the State's Attorney's Conviction Integrity Unit." Resp. at 12 (emphasis added). The *Fulton* court found unprivileged "the general policy and procedures" that were "relevant because it is important to give context to the ultimate decision that was made to allow the jury to understand what policies and procedures exist and how the decision is made by the State's Attorney's Office about those issues." *Fulton* 12/4/2020 Tr. at 16. The court specifically noted that these "general" policies and procedures, "don't necessarily apply to this case." *Id.* By contrast, the Officer Defendants want to ask the State's Attorney what policies and procedures she followed *in this case*, i.e. the Cruz investigation, so it is impossible to read

---

carry different gradations of persuasiveness. *See* Ill. Sup. Ct. R. 23 (classifying certain "non-precedential" unpublished orders as more persuasive than others); Seventh Circuit R. 32.1 (distinguishing published opinions from unpublished orders that are "not treated as precedents"). A detailed written opinion or order published in an official reporter or on LEXIS or Westlaw often will be the product of a greater level of investment of judicial thought or resources than an oral ruling from the bench, but whether an unpublished decision is owed weight or deference is largely an individualized determination based on the claims at issue, the substance of the case, or the "social value" to the judicial system. *See Clark Equip. Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817, 820 (7th Cir. 1992) ("opinions have value to the judicial system" and non-binding judicial reasoning "may be helpful to other courts to the *extent that it is persuasive*") (emphasis added); *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1077 n.6 (N.D. Ill. 2013) ("[w]hether or not a district court case is reported has no impact on its ultimate authority or lack of authority. No district court decision is 'binding' on another district court, and its 'persuasiveness' – the relevant consideration – is determined by the *substance of the case*, not by its place in the Federal Supplement.") (emphasis added).

that topic as anything but an attempt to pry into the State's Attorney's process of decision-making in taking the specific actions she took in this case, and not just to learn what the general policies are. In fact, as we have noted, the general policies are publicly available on the State's Attorney's website, and they may be authenticated by stipulation or by some other means so that the district court in this case might take judicial notice of them to provide the sort of context to which the *Fulton* court referred. The policies and procedures followed during the Cruz investigation and internal deliberations are, unlike the broader, general subtopic referenced in the *Fulton* oral ruling, covered by the deliberative process privilege, as disclosure of them would reveal pre-decisional, deliberative matters squarely within the privilege.

The Officer Defendants' reliance on the unpublished *Brown* oral ruling does not yield a different result. The court in *Brown* allowed a deposition of an Assistant State's Attorney on "CIU policies and procedures when investigating claims of innocence," notwithstanding the deliberative process privilege. *Brown* 7/28/2020 Tr. at 10. Again, the general policies and procedures themselves may not be privileged, but those are not what the Officer Defendants seek here, and this Court finds that delving into how the policies and procedures applied in the Cruz reinvestigation and deliberations is covered by the deliberative process privilege and thus can only be discovered on a showing of particularized need.

### 2. Whether the General Policies and Procedures Were Followed in the State's Attorney's Consideration of the Cruz Matter.

Next, the Court considers the related proffered subtopic of whether the general policies and procedures were followed in Cruz's case. The Officer Defendants contend that the *Fulton* and *Brown* courts held that this subject matter was outside the deliberative

process privilege. The Court disagrees and concludes that this subtopic falls squarely within the deliberative process privilege.

The *Fulton* court's oral ruling specifically stated that the defendants seeking the prosecutor's deposition in that case would not be allowed to "explore the underlying reasons" but stated briefly that they could explore "just a question of whether or not the general policies and procedures were followed in this case, if they even exist. And those are relevant to support the parties' various arguments that there was a process for the reinvestigation into decision and to give context and legitimacy to the ultimate decision made by the State's Attorney's Office so that both sides can argue the facts in their own way for their own reasons." *Fulton* 12/4/2020 Tr. at 17. This Court is not disagreeing with the purported relevancy of this subtopic – whether policies and procedures were followed in the Cruz re-investigation – but rather with the Officer Defendants' idea that this Court ought to find that subject matter outside the privilege. The use of policies and procedures in the State's Attorney's Cruz deliberations, and whether they give "context and legitimacy" to the ultimate decision, are still part of the deliberative process that led to the decision, and the Court does not see their obvious relevancy as trumping their privilege protection. The scope of permissible discovery includes matter relevant to claims or defenses, so long as that matter is nonprivileged. Fed. R. Civ. P. 26(b)(1). Whether the relevance is so critical under the circumstances is a question the Court addresses in the context of whether the Officer Defendants can overcome the privilege based on particularized need, and not of whether the subject matters themselves are covered by the privilege. Moreover, the Court sees the Officer Defendants as having overstated the *Fulton* ruling's persuasiveness on limiting the deliberative process privilege's coverage of how or

to what extent the State's Attorney followed its office policies in the Cruz re-investigation. The *Fulton* court ultimately concluded that the State's Attorney's staff members largely waived the privilege through their public statements, in court and to the press, about their deliberations concerning vacatur, *Fulton* 12/4/2020 Tr. at 13-14, 20, but not concerning deliberations about the certificate of innocence, which they did not discuss publicly. *Id.* at 15; *DeLeon-Reyes*, 2021 WL 3109662, at *5 ("Because the prosecutors publicly discussed the rationale for the CCSAO's decisions to first seek a retrial and then move to dismiss, the Court [in *Fulton*] found waiver on that topic and allowed the defendants to inquire as to the reasons why the CCSAO decided to first retry and then dismiss the plaintiffs' cases.")

The exceedingly brief nature of the *Brown* court's oral ruling on this subject does not change this Court's conclusion in that respect. The *Brown* court allowed deposition of a prosecutor, notwithstanding the deliberative process privilege, on "whether those policies were followed and the like." *Brown* 7/28/2020 Tr. at 10. Again, the Officer Defendants seek to ask whether – and thus necessarily how – those procedures were followed in this case, and to the extent the *Brown* court allowed that discovery, this Court is not allowing it here, for the reasons stated above. A deposition of the State's Attorney on whether or how she did or did not follow established procedures is a one-way excursion ticket down the slippery slope of the office's pre-decisional and deliberative consideration of what to do in Cruz's case, and that slope is clearly privileged.

### 3. The Factors the State's Attorney Took Into Account During the Cruz Investigation.

That takes the Court to the last of the three remaining proffered process-based subtopics for analysis on the Motion to Quash, namely the factors the State's Attorney took into account in making the office's final decisions regarding Cruz's case and the granting

of the innocence certificate. *See* Resp. at 12. The *Fulton* and *Brown* unpublished oral rulings both allowed some form of deposition testimony from current or former Cook County prosecutors on this subject. In *Brown*, the permitted form of deposition testimony was limited, as the court explained it, to "testimony about the general factors considered by the State's Attorney's Office in evaluating *generally* whether to oppose or not oppose a Certificate of Innocence *without consideration of this particular case.*" *Fulton* 12/4/2020 Tr. at 18 (emphasis added). "[T]he *general* factors considered, the Court finds, *in all cases* does not invade the deliberative process privilege …." *Id.* (emphasis added). But again, the "general nature" of the overall factors considered in all cases is *not* what the Officer Defendants seek to explore in a deposition of the Cook County State's Attorney here. To quote the Officer Defendants exactly, this proffered subtopic seeks to discover "factors considered in making the final decisions *regarding Cruz's case and the granting of the COI.*" Resp. at 12 (emphasis added). The *Fulton* court, in its oral ruling, carefully circumscribed the permitted subject matter so as to avoid finding it outside the privilege, even as the privilege was largely waived, but the Officer Defendants conflate that ruling into an unprivileged hole so big they could steer a cruise ship through it. Their phrase "factors considered" specific to the Cruz matter is so vague and undefined as to encompass any number of factual or legal considerations that the members of the State's Attorney's Office may have brought to bear in their deliberations of whether to dismiss the Cruz criminal case or to not oppose his certificate of innocence. The stunning breadth of the subtopic, when applied to the Cruz matter as the Officer Defendants want it applied, invites deposition questions so broad and so central to the State's Attorney's deliberative process as to leave no room to conclude that the subtopic is anything but privileged.

As for *Brown*'s purportedly having found that "factors taken into account" in the deliberation over the defendant in that particular case were not covered by the deliberative process privilege, the Court reads the oral ruling transcript as less than clear that the *Brown* court was allowing anything more than what the *Fulton* court allowed, i.e., an exploration of those factors in a general sense, and not of how they were considered, or which of them were or were not considered, in the case of the individual whose case was at bar. The *Fulton* court stated, after all, in finding unprivileged the general factors not specific to an individual case, that it was largely following the ruling in *Brown* on the deliberative process privilege issues. *Fulton* 12/4/2020 Tr. at 20. The oral ruling itself in *Brown* on the "general factors" question was extremely brief, covering less than a page of transcript. *Brown* 7/28/2020 Tr. at 30. In the same breath as saying the Assistant State's Attorney could be deposed on "factors taken into account," the *Brown* court said that "deliberations and reasoning would not be discoverable," although "it seems to me factors taken into account is discoverable." *Id.* Insofar as "factors taken into account" in a particular case are inseparable from deliberation and reasoning, the Court does not see the *Brown* unpublished oral ruling as sufficient authority upon which to rely in finding that such unspecified "factors" considered by the State's Attorney in an individual case are outside the deliberative process privilege. The Officer Defendants want to depose the State's Attorney about the factors she and her staff considered in Cruz's case, and that subject matter is well within the deliberative process privilege.

**C. The Officer Defendants Have Not Demonstrated a Particularized Need To Overcome the Deliberative Process Privilege As To the State's Attorney's Deliberations in the Cruz Matter.**

Having found that the Officer Defendants' proposed process-based questions of the State's Attorney, including the broader and more central theme of why she agreed to vacate the Cruz conviction and did not oppose his certificate of innocence, are covered by the deliberative process privilege, the Court must move to whether the Officer Defendants have established a particularized need for that information, sufficient to allow discovery of the information despite that privilege. *Rodriguez*, 329 F.R.D. at 186. This Court finds that the Officer Defendants have not established a particularized need that would allow them to question the State's Attorney at a deposition about her office's deliberations on why it ultimately agreed to the vacatur of the Cruz conviction and then did not oppose issuance of his certificate of innocence.

Courts have discussed particularized need to overcome the deliberative process privilege as a multifactorial weighing of the discovering party's need for disclosure against the government's interest in non-disclosure, considering (1) the relevance of the information to the litigation; (2) the availability of other evidence that would serve the same purpose as the deposition sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which the deposition sought would tend to chill future deliberations within government agencies, or would hinder frank and independent discussion about governmental policies and decisions. *DeLeon-Reyes*, 2021 WL 3109662, at *4.

In this case, the Officer Defendants want to pry into the "why" of the State's Attorney's actions under a theory that they were based on some factor other than innocence,

but all the Officer Defendants offer in support of that theory is the bare assertion that the State's Attorney granted relief to Plaintiff based on how her office may have approached other cases involving allegations against Guevara, and thus presumably not on the basis of innocence. Resp. at 9. The Officer Defendants say that (1) the State's Attorney "admit[ted]" to recognizing Cruz's name "from a batch of Detective Guevara cases the CCSAO reviewed" (as the State's Attorney stated in her Motion to Quash), and (2) this statement by the State's Attorney "indicates" to the Officer Defendants that the State's Attorney's decisions in dropping the Cruz criminal case and not opposing his certificate of innocence were driven solely by a "Guevara review policy" and thus not by matters indicative of Plaintiff's innocence. *Id.* at 4.

As cursory and undeveloped as this argument is, *see Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005), the Court reaches its merits and finds it insufficient as a showing of particularized need. The inference the Officer Defendants invite the Court to draw, i.e., that the State's Attorney's decisions in the Cruz matter were driven by a "Guevara review policy" based on the quoted comment in the State's Attorney's Motion to Quash, is one of many inferences that could be drawn from the facts reasonably evident in the record here. The State's Attorney could have weighed multiple considerations, including the gravity of Guevara's alleged conduct in any individual case, the role or predominance of his conduct in the underlying prosecution, the existence of other evidence of Plaintiff's innocence or guilt, how the prosecutors might resolve conflicts in the evidence, how they might determine the viability of an argument that a defendant could be proved guilty beyond a reasonable doubt, or any number of policy considerations concerning when and how the State's Attorney might conclude that the facts demonstrate

actual innocence – or not. These kinds of considerations and decisions lie at the heart of what it means to be a public prosecutor. The prosecutor's role is as the representative of the sovereign, whose interest in a criminal case "is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The Officer Defendants' theory that the State's Attorney's decisions as to Cruz were not indicative of innocence because the State's Attorney had multiple Guevara-related matters before her and therefore must have decided the issue based on some Guevara protocol is insufficient to establish the particularized need required to overcome the deliberative process privilege here, in view of the significant impact such an outcome would have on the most sensitive and mission-critical of internal prosecutorial deliberations, for all the reasons stated above. The law of deliberative process privilege allows an exception for particularized need, which must be more than relevancy to a claim or a defense, or else the exception would swallow the privilege whole, at least in this case.

If parties seeking to defeat the privilege could do so only by asserting that they have reason to know that they might find relevant information, that they believe some unspecified skeleton hides in the agency's closet, or that there must have been some unspecified back-office machinations at work, almost no deliberative and pre-decisional information would be protected by the deliberative process privilege, which the U.S. Supreme Court recently confirmed is a real privilege worthy of respect under law and available to government agencies. *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). Accordingly, if wrongful conviction defendants' generalized need to challenge the "indicative of innocence" prong of plaintiffs' malicious prosecution claims were enough to defeat the deliberative process privilege, that privilege would no

longer meaningfully protect internal agency deliberations in federal civil cases brought in the aftermath of dismissal of charges against plaintiffs and/or the issuance of state certificates of innocence in their favor. Prosecutors would find themselves expending scarce public resources litigating deliberative process privilege objections in virtually every wrongful conviction case in which defendants raised the slightest question about whether a non-innocence factor was a part of the prosecutors' deliberations. A conception of particularized need as broad as the one the Officer Defendants advance here cannot be the law. If it were, a greater intrusion upon the State's Attorney's deliberative process is difficult to imagine. Allowing the Officer Defendants' proposed deposition of the State's Attorney on her office's internal deliberations concerning the Cruz matter unquestionably would have a chilling effect on future deliberations in other cases, as policymakers deliberating agency outcomes would have no assurance that those deliberations would be safe from exploration in a future deposition any time a litigant had so much as an inkling that something about those deliberations might prove that litigant's civil lawsuit allegations or defenses. The Court also must consider the seriousness of the case at bar, and here, that "seriousness" includes the acute gravity of the proposed deposition's adverse effect on the State's ability to have confidential deliberations generally, and in the lengthy string of Guevara cases and other alleged wrongful convictions specifically. These factors weigh strongly against a finding that the deliberative process privilege should yield to the Officer Defendants' particularized need argument.

The Officer Defendants' best case for particularized need is *Evans v. City of Chicago*, 231 F.R.D. 502, 517 (N.D. Ill. 2005), in which the defendants questioned whether the malicious prosecution plaintiff's gubernatorial pardon was indicative of innocence, and

they were allowed to depose the senior counsel to the governor of Illinois to obtain "information and analysis on which the pardon was based to diminish the weight of the pardon." Resp. at 13. In *Evans*, the court found that the defendants had established "a particularized need" for production of withheld materials and information that constituted "the information and analysis on which [the pardon] was based." *Evans*, 231 F.R.D. at 317. But *Evans* did not explain precisely how that "information and analysis" would bear upon the defendants' contention that the plaintiff's pardon was based on some factor other than innocence. Instead, the *Evans* court cited the seriousness of the litigation and the unavailability of the information from other sources, *id.*, and those considerations may well weigh in favor of a showing of particularized need, but those considerations also will exist in many cases. This Court finds that more is required to establish particularized need to pierce the deliberative process privilege, i.e., more than what is argued here: that a wrongful conviction defendant's generalized need to challenge whether termination of a prosecution was done in a manner indicative of innocence simply because the prosecution ended with a dismissal and no challenge to the post-dismissal attempt to obtain a certificate of innocence. Even *Evans* cautioned that the decision "should not be read as an endorsement of the routine or widespread dissemination of materials underlying any and all pardon decisions." 231 F.R.D. at 318.

An important and instructive case not cited by the Officer Defendants is *DeLeon-Reyes*. Though the result of the State's Attorney being deposed arose largely under a privilege waiver theory, *DeLeon-Reyes* provided an apt illustration of a "plus" element: the State's Attorney's assistant prosecutor had stated publicly on the record in state court, in connection with the dismissal of the underlying criminal case, that the office considered

28

the wrongful conviction plaintiff to be plainly guilty, and that the office agreed to the dismissal based on Guevara's severe credibility issues as a witness and lead investigator. *DeLeon-Reyes*, 2021 WL 3109662, at *5. That sort of "plus" factor was lacking in the *Brown* unpublished oral ruling, in which the wrongful conviction defendants seeking discovery from the State's Attorney's office failed to defeat the deliberative process privilege objection to discovery of the key questions at issue here, i.e., the "why" of the State's Attorney decision dismissing the plaintiff's criminal case and not opposing the certificate of innocence. *See Brown* 7/28/2020 Tr. at 24, 28-29 ("I don't know whether the topic of whether the CCSAO determined whether Mr. Brown was factually innocent is something that is appropriate to explore. I do think that that's probably privileged information; and, again, it's something that the jury will ultimately be asked to consider at least tangentially.") The *Brown* unpublished oral ruling does not suggest that the defendants seeking that discovery had anything more than a generalized need to oppose the plaintiff on whether the prosecution was terminated in a manner indicative of innocence, and that is all that the Officer Defendants can muster here. The *Brown* unpublished oral ruling and *DeLeon-Reyes*, when read together, cut against a finding in this case that the Officer Defendants can show a particularized need to overcome the deliberative process privilege and thus to allow discovery from the State's Attorney about why she agreed to the dismissal of Plaintiff's criminal case and why she did not oppose his certificate of innocence.

### D. On the Record Now Before the Court, the State's Attorney Did Not Waive the Deliberative Process Privilege.

The Officer Defendants' argument that the State's Attorney's Office "opened the door" to discovery of its internal deliberations in the Cruz matter by disclosing its internal

reasoning to the press, or by "boasting" about the State's Attorney's conversations with Cruz on the agency's website, Resp. at 14-15, sounds like a waiver argument, even as the Officer Defendants never specifically invoke waiver. The words "opened the door" ordinarily apply to questions of admissibility of evidence at trial. *See Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) ("when one party opens the door to otherwise inadmissible evidence, the opposing party may be given the opportunity to inquire into those matters itself."). The Officer Defendants rightly have cautioned the Court, on this motion, against "conflat[ing] the CCSAO's burden relating to the Motion to Quash with the burden of admissibility of evidence at trial which is irrelevant here." Officer Defendants' Motion to Strike (D.E. 270) ¶ 8. To "open the door" is not to "waive." Waiver generally is a knowing and intelligent relinquishment of a known right or privilege, with the determination dependent in each case upon the background, experience, and conduct of the party said to have waived. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981). Rather than reject the Officer Defendants' "opened the door" argument out of hand as insufficiently developed, *see Weinstein,* 422 F.3d at 477 n.1, the Court in the interest of justice will analyze this argument within the only framework that would make sense, and that is waiver.

The Court finds no waiver of the deliberative process privilege on the facts set forth in the motion papers and otherwise before the Court. The Officer Defendants point to no specific statements by the State's Attorney to reporters or third parties disclosing her internal deliberations in Plaintiff's case. The State's Attorney maintains that she knows of no such disclosures to reporters or other third parties about the internal deliberations in this case. *See* Henretty Declaration ¶ 9 ("I have not been presented with any materials or facts

suggesting that the CCSAO, or any of its current or former staff, have publicly discussed the deliberative process or work production pertaining to the testimony at issue in the Defendants' subpoena."). According to what the State's Attorney and the Officer Defendants have placed in the record on the Motion to Quash, the only external State's Attorney's Office statement reasonably related to the Officer Defendants' waiver argument based on "open[ing] the door" is the conversation the State's Attorney had with Cruz.

The Court has before it two accounts of that conversation, one more extensive (Cruz's version on the State's Attorney's website, which arguably is an adoption of that statement by the State's Attorney) than the other (the version the State's Attorney relates in the Motion to Quash). Assuming the truth of the Cruz video statement for the sake of argument, the closest the conversation came to a waiver of the deliberative process privilege is the State's Attorney's apparent reference to holding a staff meeting about Cruz's case the day before the jailhouse conversation she had with him. But according to what the Court can discern so far, nothing in the record now indicates that the State's Attorney said anything to Cruz, or to any third party, about what was said at that meeting or in any other deliberations in the State's Attorney's Office about Cruz, other than the fact that deliberations occurred or were occurring.

The final outcome of the deliberations, though the State's Attorney had yet to announce it formally, arguably was disclosed to Cruz by the State's Attorney when, according to Cruz, the State's Attorney told him that he was "coming home." The record contains no mention of the conversation disclosing any reasons why the State's Attorney or her office had concluded that Cruz was "coming home." Without even the slightest disclosure of the internal deliberations, the Court cannot consider this conversation to be a

waiver of the deliberative process privilege as to those deliberations or any component part of them, including procedures and policies; whether they were followed or not followed; factors, facts, law or policy considered; or any other aspect of the internal deliberations. Courts analyzing waiver of the deliberative process privilege in this district have said that waiver "should not be lightly inferred," *DeLeon-Reyes*, 2021 WL 3109662, at *5, and they have found waiver only under facts far more indicative of waiver than those in this record. In *DeLeon-Reyes*, the assistant prosecutor publicly declared the plaintiff guilty in open court and said the reasons for dismissing the plaintiff's criminal case therefore did *not* include his innocence. *Id.*; *see also Bahena v. City of Chicago*, No. 17 C 8352, 2018 WL 2905747, at *4 (N.D. Ill. June 11, 2018) (finding that the State's Attorney's office had waived the deliberative process privilege as to a memorandum authored by an Assistant State's Attorney who had testified at a deposition, in detail, as to the memorandum's relevant content). No facts in the record on the Motion to Quash come anywhere close to deliberative process privilege waiver as illustrated in *DeLeon-Reyes* or *Bahena*, and the Court will not infer waiver so lightly.

## CONCLUSION

For the foregoing reasons, the State's Attorney's Motion to Quash is granted in part and denied in part, within the Court's broad discretion to manage discovery, *Jones*, 737 F.3d at 1107, and the Court's attention to the apex doctrine, the proposed deposition's burden on the State's Attorney as a third party, and the State's Attorney's deliberative process privilege objections. The Motion to Quash is denied insofar as the deposition of the State's Attorney may proceed for only 60 minutes and only on the subject matter of her conversation with Plaintiff at Stateville (and any other conversation she may have had with

him), including the foundation for the conversation(s), the statements Cruz made to her, and the statements she made to him, including anything and everything she said to him about whatever deliberations she or her office were having about his criminal case and post-conviction petition. The Motion to Quash is granted in all other respects, and any deposition questions outside the foregoing parameters may be met with an instruction not to answer and/or a motion for protective order.

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**U.S. Magistrate Judge**

**Dated: October 9, 2024**