UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE CRUZ, ) | |
| ) | Case No. 23-cv-4268 |
| Plaintiff, ) | |
| ) | Honorable Judge Alexakis |
| v. ) | Magistrate Judge Fuentes |
| ) | |
| FORMER DETECTIVE REYNALDO ) | |
| GUEVARA, et al, ) | JURY DEMAND |
| ) | |
| Defendants. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL THIRD PARTY WITNESS TO COMPLY WITH DOCUMENT SUBPOENA**

Respondent has simply not come close to establishing that she should not be required to respond in any way to Defendant's narrowly tailored Plaintiff-specific[1] subpoena in this high stakes case. In fact, the overwhelming majority of Respondent's response either misconstrues the nature and import of the information sought by Defendant or advances arguments that have been rejected repeatedly by the Courts in this District and elsewhere. Defendant's Motion should be granted, and Respondent must produce the subpoenaed materials.

**ARGUMENT**

**I. Respondent Either Ignores Or Mischaracterizes The Import Of The Information She Possesses.**

At the outset, Respondent does not dispute much of relevance in her Response. Respondent does not dispute that Respondent possesses extensive, substantive evidence in this case in the form

---

[1] Respondent claims Defendant's subpoena is "vague" as to whether it seeks information unrelated to Plaintiff. There is nothing vague at all about this. While Defendant certainly could have pursued information Respondent had about other so-called "Guevara victims" given that Plaintiff has attempted to interject the experiences of other as part of his putative "pattern and practice" evidence, Defendant elected not to do so. And, during the Local Rule 37.2 communications with Respondent's counsel, Defendant's counsel made this explicitly clear. Simply stated, there is nothing vague about this at all and these arguments appear to be made to attempt to mount a better "burden" argument by feigning confusion about the scope of the subpoena.

1

of communications with (and about) Plaintiff relating to his underlying criminal case and conviction (which of course is the subject of this case). *See* Dckt. No. 282 at 1-12. Respondent does not dispute that she was provided actual documentary evidence relating to this case by Plaintiff in the form of case file materials he himself retained or were retained by his agents. *Id.* Respondent does not dispute that she freely engaged in communications with Plaintiff while he was incarcerated via phone calls, video calls and e-mail correspondence that was monitored by IDOC personnel. *Id.* Respondent does not dispute that she continued communications with Plaintiff after his release from prison and published edited snippets of same on the internet for all the world to see. *Id.* Respondent does not dispute that she interviewed and recorded interviews of third parties relating to Plaintiff's criminal case and conviction. *Id.* Insofar as there was apparently no other relationship between Plaintiff and Respondent other than as a journalist and non-confidential source of information, it must be inferred that all of the materials (communications, witness interviews, documents, etc.) that Respondent has in her possession relating to Plaintiff relate, in some way or another, to his criminal case and the circumstances of his conviction. *Id.*

Instead, Respondent briefly attempts to minimize the importance of the materials she admits she possesses by claiming that Defendant "freely admits" that he only seeks "impeachment" evidence from her and claiming that and that she did not actually witness the murder at issue as a "percipient witness" and, thus, the information she retains is of "marginal relevance." Dckt. No. 282 at 1-2. Respondent also implies that Respondent has not identified as a potential witness in Fed. R. Civ. P. 26(a) disclosures or elsewhere. at 5.

Respondent is wrong on all counts. To the extent Respondent retains communications with Plaintiff relating to his criminal case or circumstances of his conviction, this is not impeachment evidence but substantive evidence. *See* Fed. R. Evid. 801(d)(2)(A); *see also* Sev. Cir. Patt. Jur. Instr. 1.14 ("You may consider statements given by [a party] before trial as evidence of the truth of what he said

2

in the earlier statements, as well as in deciding what weight to give his testimony."). Even if the contrary were true, Defendant has an absolute right to perfect their impeachment of Plaintiff and clear up inconsistencies by showing the jury what really happened. *See Taylor v. City of Chicago*, 2015 WL 6561437, at *2 (N.D. Ill. 2015).

The fact that Respondent did not actually witness Plaintiff committing a murder over 30 years ago does not mean that she has nothing to add to this case. Respondent is, in fact, a percipient witness in this case. Respondent personally engaged in communications with Plaintiff and other relevant third parties and those statements are themselves evidence in this case (substantive evidence in the case of Plaintiff). Indeed, if this were the rubric of discovery, Defendant himself (as well as the other police defendants) would not be "percipient witnesses" either because none of them witnessed the murder but, rather, spoke to and otherwise interacted with Plaintiff and witnesses after the fact. But, of course, that is not the case. The statements of witnesses about events (even after the fact) are highly relevant information in both criminal and civil cases. This case is no different. This is why essentially every case on the matter has held, in some form or another, that parties in civil cases are entitled to discover communications with plaintiff and witnesses by journalists even though in every single one of those cases the journalists did not witness the matters that such persons were speaking to them about. *See Gaines v. Chicago Board of Education*, 2022 WL 1292248, *1 (N.D.Ill. 2022); *Taylor v. City of Chicago*, 2015 WL 6561437, *14 (N.D.Ill. 2015); *Tate v. City of Chicago*, 2020 WL 4437853, *3 (N.D.Ill., 2020); *Mosely v. City of Chicago*, 252 F.R.D. 421, 436 (N.D.Ill. 2008); *Wilson v. O'Brien*, 2009 WL 763785, *9 (N.D.Ill. 2009).

Respondent also claims that, because Defendant already has *some* of her communications with Plaintiff, that Defendant is not entitled to *other communications she also has. See* Dckt. No. 282 at 6-8. This is frankly a borderline nonsensical argument to make. Just because Defendant was able to obtain communications that Respondent and Plaintiff had that were being monitored by IDOC personnel

3

most certainly does not mean that other similar communications made at other times and under different conditions are not relevant. Indeed, the polar opposite is true. If Plaintiff said different things at different times or even characterized relevant topics one way while being monitored and a different way while not, this itself is highly relevant on its face. But regardless, the suggestion that the custodian of relevant information can withhold the totality of the information they retain simply because the seeker has managed to obtain a portion from another source is not a proposition that any court can or should sanction. Indeed, this would turn the rules of discovery on their head. Respondent cites no case supporting this proposition and, to Defendant's knowledge, none exists.

Respondent relies on *Dirickson* to illustrate the scale of weighing benefits of producing information sought and the burdens of compliance. *Dirickson v. Intuitive Surgical*, 2020 U.S. Dist. LEXIS 258590, at *2 (N.D. Ill. Dec. 29, 2020). However, *Dirickson* is distinguishable from this case as Dirickson was a labor and employment dispute between an employee and employer, and the present matter is a Section 1983 civil rights violation dispute against the City of Chicago and former officers. In *Dirickson* this Court was concerned that Defendant's discovery could become an instrument for delay or oppression given the nature of Plaintiff's complaint against their employer. *Id.* at 1. There defendant sought extensive details of plaintiff's employment and two other employers including her entire personnel file, job performance and performance reviews, her disciplinary record any complaints made by her and any settlement agreement. *Id.*

The nature of the documents sought here are not comparable to one's employment files. Rather the nature of the information sought are communications made by Plaintiff to Respondent, regarding the substance of his Complaint against Defendants, which Respondent has already disclosed to the public via online and social media platforms and may also potentially disclose in her upcoming film. Moreover, part of this Court's decision in *Dickinson* to quash Defendant's subpoena was based on the court's simultaneous ruling allowing for further deposition of the Plaintiff. *Id.* at 2. This Court

4

reasoned that the Defendant would yet have an opportunity to explore Plaintiffs claims, without the benefit of the documents sought by subpoena. *Id.* Here, it is yet to be determined whether this Court will grant Defendants leave to depose Respondent. Which adds to reason why the balance weighs in favor of disclosure, particularly pursuant to the balancing elements in *Taylor* discussed in Defendant's opening brief. *Taylor v. City of Chicago*, 2015 WL 6561437, *3 (N.D. Ill., 2015). And, on this point, as set forth by Defendant, Plaintiff already gave wildly untrue discovery answers where he failed to list Respondent as a person he spoke to about his criminal case despite the fact that everyone now agrees that these communications occurred dozens and dozens of times. *See* Dckt. No. 246 at 2-3.

## II. Respondent's Burden Argument Either Relies On Irrelevant Considerations Or Underscores The Discoverability Of The Information At Issue.

Respondent's "burden" argument appears to rely on claims that she would lose "journalistic street cred" if forced to turn over the information she has and also claims that it might take her in excess of 20 hours to compile all of the relevant information she has. Dckt. No. 282 at 7-8, 9-11. Neither of these arguments are a persuasive reason to allow Respondent to withhold the undisputedly relevant information she retains.

First, as set forth in Defendant's opening brief, the burden issue is one which requires an examination of the stakes at issue and the importance of the information at issue in light of this. *See* Dckt. No. 246 at 9-10. Here, the stakes could not be higher for the defendant police officers in this case. Plaintiff has claimed in discovery that he believes he is entitled to a nearly $90 million in compensatory damages which includes tens of millions of dollars in punitive damages against each of the Defendants. *See* Ex. 7 Plaintiff Cruz's Response to Defendant Boris's Second Set of Interrogatories. To this end, Plaintiff and Defendants tell very different stories regarding the circumstances leading up to his conviction in the murder of Antwane Douglas and attempted murder of Vernon Meadors in late 1993. In this regard, the credibility of plaintiff and his supporting witnesses are not only *an* important issue in this case; they are essentially *the most* important issue in this case.

Defendants disclosed Respondent in their 26(a) disclosures as a potential witness, who may have information related to Plaintiff's allegations, subject to deposition and or to be called at trial. *See* Ex. 6 Defendants' Third Supplemental Disclosures. Respondent's attempt to minimize the importance of these areas of inquiry does not hold up to any degree of scrutiny.

Contrary to Respondent's contention, Defendant does not overstate the benefit of compliance. Defendants are fighting a high stakes battle to protect their reputations and their families' financial livelihoods in this case. Perhaps the most important weapon Defendants have in this battle is the ability to poke holes in the story of Plaintiff and those witnesses with information about his allegations against Defendants. The Court in *Mosely* described this exact issue as follow in requiring compliance of a similar subpoena:

> [Plaintiff] will be the central witness in the case, and its outcome may hinge in large measure on the defendants' ability to effectively cross-examine him. A component of that exercise is to point out to the jury statements made that would be inconsistent with [plaintiff's] version of events....The importance of and need for the information sought by the defendants in the instant case are in inverse proportion to the burden imposed on the Respondent. Indeed, the stakes for the individual defendants could scarcely be greater. Not only is there the prospect of a crippling damage award, but their reputations will be ruined—justifiably so if they did what the complaint alleges. *Mosely v. City of Chicago*, 252 F.R.D. 430, 433 (N.D. Ill. Aug 11, 2008).

Simply stated, forcing defendants to fight with one hand tied behind their back because Respondent feels someone *might not* talk to her in the future if she has to disclose materials, which she actually reported in preparation of her film would turn the burden analysis of Rule 45 into a farce. Indeed, such a result would irreparably damage Defendant's right to a fair trial.

Second, as far as the amount of time it might take Respondent compile relevant and responsive materials, Respondent does not explain how or why she chose the number of 20 hours to compile responsive documents relating to Plaintiff. *See* Dckt. No. 282-1. But, even were this estimate true, the fact that Respondent has *so much* responsive information that it might take some time to compile is certainly not a reason for her not to be required to produce any of it. Indeed, the opposite is true. If

having too much responsive information was a reason to provide none, once again, the rules of discovery would be utterly turned on their heads. And, once again, Defendant only seeks materials relating to Plaintiff. It frankly strains the bounds of credulity that a journalist as experienced as Respondent claims she would need to sift through the entirety of her files in order to locate an exceedingly limited subset of information therein. But, regardless, even were this accurate, the stakes and undisputed relevance of this information completely dwarfs any such burden concerns here.

Third, in Respondent's mind, compelling Respondent to disclose her reporting materials would somehow discourage other people from speaking with her in the course of her investigations. *Id.* This contention has been specifically rejected. Here, Plaintiff, the subject of the subpoena, is not a confidential source. He was identified by name in Respondent's online postings for all the world to see and prominently featured several times on her YouTube channel. Under these circumstances, the Court in *Mosely* explained that the Respondent' "journalistic street-cred" argument was entirely "unconvincing," "illogical," and "unpersuasive." *Mosely*, 252 F.R.D. at 431:

> Publication of interviews with *non-confidential* sources is consistent with the expectation—if not the desire—of the interviewee that there be public dissemination. Anyone participating in the interview intuitively understands that. The possibility that at some point in the future a journalist *might* have to make a further disclosure of that which either was already publicly disclosed or could have been had the journalist decided to do so, does not change the essential nature of the understanding the interviewee and the journalist had or impose a risk meaningfully different from that which inhered in the interview. Consequently, it is illogical to argue that future non-confidential interviewees will be deterred from cooperating with [the journalist] because she might have to reveal in the future something she had the absolute right to reveal in the first place. In short, the argument…is unpersuasive. *Id.* (emphasis in original).

It is also inaccurate to say that Ms. Byrne is "being used as a conduit for a law firm to collect information." Dckt. No. 282 at 4. "Journalists alone determine the contours and content of their interviews, unaided and uninfluenced by lawyers in cases still in the womb of time and that may never be born." *Mosely*, 252 F.R.D. at 432-33. "Thus, it a non-sequitur to say that [a journalist] was made the unwilling investigator for the lawyers" when the case has proceeded far into discovery. *Id.* As in *Mosely*, there is no risk of any hit to Respondent's sources because all of the individuals whom Ms. Byrne

7

spoke to have their names publicly disseminated by Respondent already. For the same reasons outlined in *Mosely*, it is also absurd to assert that Respondent is being turned into a "conduit for a law firm to collect information". Ms. Byrne began her investigation years before this civil litigation was ever filed and Defendant properly waited until the end of discovery to obtain the information she might possess.

Finally, to date, Ms. Byrne has not incurred any financial burden in retaining counsel to litigate this matter on her behalf. Dckt. No. 282 at 12.

In sum, Respondent has not come anywhere close to establishing that any minimal burden to Respondent somehow outweighs the importance of this information to this case in order to surmount the heavy burden Respondent bears here to prove Respondent is, in essence, beyond the subpoena power of a federal court in high stakes litigation.

Respondent also fails to provide this Court with any authority supporting the relief she seeks[2]. In fact, much of the authority cited by Respondent provides further reason for this Court to *grant* defendants' Motion. Respondent's reliance on *Bond v. Utreras*, 2006 WL 1806387, *6 (N.D. Ill. 2006) is puzzling on its face insofar as it supports the propriety of Defendant's requests. Moreover, her reliance on the case to support the assertion that Respondent will lose credibility with sources and her reporting and sources would likely be chilled is misplaced. As discussed above there is no reporter's privilege in federal court, and like Mr. Kalven in the *Bond* case, Respondent has been identified as a witness in the instant case. *Id.* at 5-6 and *see* Ex. 6 Defendants' Third Supplemental Disclosures.

Respondent's citation of *Hobley v. Burge*, 223 F.R.D. 499 (N.D.Ill. 2004) is similarly unpersuasive. *Hobley* actually resulted in the production of the plaintiff's statements to the journalist as potential cross examination materials. *Id.* at 504. With respect to the remaining notes of the

---

[2] Respondent's Exhibit B to her Response (Dckt. 282) is a July 13, 2005, minute order granting a motion to quash subpoenas served on non-party journalists, entered in *Fairley v. Andrews*, No. 03 CV 5207 as Dckt. 285. Respondent offers no reporter citation, no substantive analysis of the arguments made therein, nor any analysis why the Court should consider that ruling in its ruling here.

journalist, the Court denied the litigants access to these notes because the movants had not articulated any specific information, they believe was present therein. *Id.* at 504-05. It is beyond credible dispute that Defendant has outlined a veritable laundry list of specific information Respondent retains. Dckt. 246 at 2-6. In this regard, the journalist in *Hobley* had not even written anything attributed to the plaintiff. *See Id.* ("Conroy subsequently wrote two articles concerning Hobley. (Conroy Suppl. Aff. ¶ 5.) According to Conroy, neither of those articles contain any references to his meeting or conversations with Hobley or to any letters that he received from Hobley."); *Id.* ("Until now, Conroy has never publicly mentioned that he spoke to or corresponded with Hobley."). This is the opposite of this case where it is undisputed that Ms. Byrne attributed scores of statements to plaintiff and others in the course of her reporting.

Plaintiff's reliance on *Patterson v. Burge,* 2005 WL 43240 (N.D. Ill. 2005) is defective for similar reasons. Namely, the movant had not established what information they believed the journalist had (or whether the journalist had information at all); it was pure speculation. *Id.* at *2 ("No one is arguing that the interview records do not contain relevant statements by Patterson. Moreover, it is possible that Patterson said something during those interviews that could be used to cross-examine him in the civil suit or be used as an admission. Defendants are simply speculating, however, that the news organizations' non-published materials contain impeachment information or admissions. Defendants have apparently served these subpoenas before questioning Patterson, by deposition or interrogatories, about his statements to the news organizations or his conspiracy theory. Thus, defendants can establish relevance in its broadest and weakest sense."). Obviously such is not the case here insofar as Defendants have provided numerous specific pieces of information retained by Respondent. (Dckt. 246 at 2-6).

Respondent lastly argues those cases cited by Defendant *Mosley, Thayer, Taylor,* and *Wilson* recognize special concerns that factor into a determination of what is reasonable when a party

9

subpoenas a reporter, which is consistent with the *McKevitt* court's direction to consider specific circumstances when determining whether discovery is reasonable. Defendant agrees, and further adds that those considerations, fully discussed above and in Defendant's opening brief weigh in favor of disclosure and compliance.

### III. There Is No Applicable Report's Privilege In This Case Or Applicable First Amendment Concerns.

Respondent finally makes a half-hearted attempt to convince this Court to apply a reporter's privilege in federal court when literally every single court to examine the issue has held to the contrary. Dckt. No. 282 at 9-12. Respondent cites no cases recognizing such privilege and has all but conceded that there is not one. *Id.* Moreover, Respondent fails to argue the question of burden under R. 45 relating to Respondent's protected First Amendment activities. *Id.*

On September 26, 2024, this Court instructed that briefing, and argument on this matter should address the question of burden under R. 45 relating to Respondent's protected First Amendment activities. Dckt. 257. Respondent's failure to cite any authorities in support of any argument under the First Amendment, particularly with the heads up provided by the Court, should amount to waiver of any argument which could have otherwise been raised. Accordingly, defendants stand on the arguments made in their opening brief on this topic and urge this Court to follow all of the precedent and reject application of any reporter's privilege in this case.

## CONCLUSION

WHEREFORE defendant prays this Court compel Respondent to comply with a subpoena for records in the above-captioned case on a date certain prior to the closure of discovery, deny relief sought in Nonparty Respondent Margaret Byrne's Response to Defendant's Motion to Compel (Dckt. 282), and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

10

By: *s/Krystal Gonzalez*

Steven B. Borkan (6193463)
Timothy P. Scahill (6287296)
Emily Schnidt
Krystal Gonzalez
Andrea Checkai
BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030