IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Cruz, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 cv 4268 |
| | ) | |
| v. | ) | Honorable Judge Alexakis |
| | ) | |
| Former Detective Reynaldo Guevara, et al. | ) | Magistrate Judge Fuentes |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO COMPEL SUBSTANTIVE AND COMPLETE INTERROGATORY ANSWERS**

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    A.   Cruz pleaded numerous *Monell* theories and successfully resisted bifurcation. ................ 2

    B.   The City's interrogatories seek the evidence that supports Cruz's *Monell* allegations. ...... 3

    C.   Cruz's answers and the City's meet and confer efforts. ....................................................... 4

RULE 37.2 COMPLIANCE ............................................................................................................ 7

ARGUMENT ................................................................................................................................... 7

    A.   The City's interrogatories are proper inquiries into Cruz's *Monell* claim. ......................... 8

    B.   Cruz's objections to the City's interrogatories are without merit. ................................. 9

    C.   The limited answers Cruz did provide are evasive and deficient. ....................................11

    D.   Cruz's non-responses to the City's interrogatories obstruct the City's defense. ............... 14

CONCLUSION .............................................................................................................................. 16

# CASES

*American Needle, Inc. v. New Orleans*, 2012 WL 4327395 (N.D. Ill., Aug. 17, 2012).................. 9

*Bouto v. Guevara*, 19-cv-2441, 2020 WL 4437669 (N.D. Ill. Aug. 3, 2020) ........................... 9, 10

*Christie v. Royal Caribbean Cruises*, No. 20-22439-Civ-SCOLA/TORRES, 2021 WL 2217494, (S.D. Fla., May 29, 2021) ................................................................................................11

*Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021) ...................................... 12, 13

*Feinberg v. T. Rowe Price Grp.*, Inc., No. 17-cv-00427-JKB, 2019 U.S. Dist. LEXIS 207668 (D. Md. Dec. 3, 2019) ................................................................................................11

*First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978 (7th Cir. 2021) ......................... 4

*Flores v. Guevara*, No. 23 C 1736, 2024 WL 4203080 (N.D. Ill., Sep. 16, 2024) ....................9, 11

*Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 2339947 (N.D. Ill. June 29, 2022) ...................................................................................... 8

*Harleysville Lake States Ins. Co. v. Carl E. Most & Son, Inc.*, 2023 WL 11054567 (S.D. Ind., Nov. 20, 2023)................................................................................................... 10

*Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763, 2009 WL 10695968 (N.D. Ill. April 15, 2009) ................................................................................................................ 8

*Ropak Corp. v. Plastican Inc.*, No. 04 C 5422, 2006 WL 1005406 (N.D. Ill. April 17, 2006)..... 12

*Rumble, Inc. v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2024 WL 33225907 (N.D. Cal., June 28, 2024) ................................................................................................11

*U.S. v. General Motors Corp.*, 2 F.R.D. 528 (N.D. Ill. 1942)....................................................... 8

*United States ex rel. Gill v. CVS Health Corp.,* No. 18 C 6494, 2024 WL 3028958 (N.D. Ill., June 17, 2024) ................................................................................................ 10

*Zingerman v. Freeman Decorating Co.*, No. 02 C 6050, 2003 WL 22057032 (N.D. Ill. Sept. 3, 2003) ................................................................................................ 16

**Rules**

Fed. R. Civ. P. 26(b)................................................................................................................... 8

Fed. R. Civ. P. 33(b)(3) ...............................................................................................................11

Fed. R. Civ. P. 37(a)(3)(B)(iii) .................................................................................................... 8

Fed. R. Civ. P. 37(a)(4) ............................................................................................................... 8

Defendant City of Chicago ("the City") moves this Court under Federal Rule of Civil Procedure 37(a) to compel Plaintiff Jose Cruz to provide complete and substantive answers to the City's interrogatories, and, in support, states:

## INTRODUCTION

In the status report filed by Defendants on May 17, 2024, Defendants informed the Court that they believed an additional six to nine months was necessary to complete non-*Monell* fact discovery. (Dkt. 170, ¶ 3). Plaintiff opposed this request and informed the Court that an additional one or two months after the then June 14 discovery cut-off was all that was necessary to complete all discovery. (Dkt. 174-1, ¶ 3). The Court resolved the dispute, extending the fact discovery cut-off to September 27, 2024, and ordering that all *Monell* written discovery be completed by August 30, 2024. (Dkt. 175). The City timely issued interrogatories to Plaintiff. On August 30, 2024, Cruz provided a response, but to only one interrogatory. (See Ex. 1, Plaintiff's Aug. 30 Resp. to City's First Set of Interrogatories). Plaintiff deemed the rest to be contention interrogatories, and the Court ordered Cruz to respond to those by October 22, 2024, which was extended to October 24, 2024, as mutually agreed by the parties. (Dkt. 286). While Cruz provided his response on October 24, 2024, and despite his repeated insistence throughout the discovery phase of this case in closing all fact discovery expeditiously, Cruz refused to provide the specific information requested. (*See* Ex. 2, Plaintiff's October 24 Resp. to City's First Set of Interrogatories). Instead, Cruz's response dodges most answers, claiming that responsive evidence may be provided in his experts' reports or that the request is "better left for expert discovery." In other instances, Cruz responded with multipage, rambling narratives that do not begin to answer the interrogatories posed. And even where Cruz's answers do include references to facts and/or bates-stamped documents, his answers are still incomplete or evasive. In fact, in Rule 37.2 communications,

Cruz's counsel admitted that determining the evidence Cruz will use in support of his *Monell* is still a work in progress, and that he does not know, nor did he provide, a date by which he would make that determination. Thus, now, at the tail end of discovery, the City has yet to discover what evidence Plaintiff intends to rely on to support his myriad *Monell* theories.

Discovery is about the disclosure—not concealment—of evidence. For the following reasons, Cruz should be ordered to provide thorough answers to the specific interrogatories and disclose the evidence that he is currently aware of that supports his claims *Monell* claim in accordance with his discovery rules obligations and this Court's prior order (Dkt. 175).

## BACKGROUND

**A.    Cruz pleaded numerous *Monell* theories and successfully resisted bifurcation.**

Cruz's operative complaint contains many, broad-sweeping allegations against the City. (*See* Dkt. 44, Plaintiff's First Amended Complaint ("FAC"), generally). For instance, he alleges the City had a policy and practice of detectives keeping "secret files," detectives routinely withholding exculpatory evidence, detectives using psychological and physical coercion, the City maintaining a code of silence, the City failing to discipline officers who routinely engaged in misconduct, and detectives generally fabricating evidence, among other numerous allegations. (*Id.*, ¶¶ 146-175, 210-225). He also alleges the Defendant Officers, among other things, hid or destroyed secret files, withheld exculpatory evidence, coerced witnesses, and fabricated evidence. Essentially, Cruz claims all the misconduct he has alleged on the part of the Defendant Officers was the result of some alleged City policy. And he makes allegations against the City regarding Jon Burge, Ronald Watts, Laquan McDonald, and the civil lawsuits of *Klipfel v. Bentsen*, No. 94 C 6415 (N.D. Ill.), and *Obrycka v. City of Chicago*, 07 C 2372 (N.D. Ill.), all complex, highly publicized cases that bear no resemblance to Cruz's allegations in the underlying case.

2

The City moved to bifurcate Cruz's *Monell* claims earlier in the case. Cruz resisted bifurcation, arguing *Monell* discovery would not be burdensome, and that it would be more efficient to conduct discovery on the *Monell* claim and the claims against the Defendant Officers simultaneously. This Court denied the motion to bifurcate on January 4, 2024. (Dkt. 105).

**B.     The City's interrogatories seek the evidence that supports Cruz's *Monell* allegations.**

Pursuant to this Court's deadline for *Monell* written discovery, the City issued 22 interrogatories to Cruz on July 31, 2024. (*See* Dkt. 175, requiring written discovery *Monell* discovery to be **completed** by 8/30/24). These interrogatories request the legal *Monell* theories Cruz is pursuing, the factual support for each element of those theories, and factual bases for allegations in July 18, 2024 correspondence that Cruz's counsel sent to Defendants' counsel regarding the basis for his request for hundreds of investigative files and Records Division files. (Ex. 3, Rule 37.2 correspondence to Cruz, March 13, 2024, and Ex. 4, Cruz to City, July 18, 2024).

That correspondence was part of negotiations between the parties to determine the extent the years of City files requested by Cruz were relevant and proportional to Cruz's *Monell* claim. Four months after the City asked Cruz to identify the relevancy of the discovery he sought, on July 18, 2024, Cruz stated that he intended to use the files to discover evidence of repeated instances of coerced confessions, manipulation of witnesses, recantations of witnesses, fabricated false alibis, taking notes but not memorializing favorable information to suspects, and several other similar accusations of misconduct. (Ex. 4). After reaching agreement, the City produced the files Cruz requested, totaling over 64,000 pages.

The City issued contention interrogatories to determine the scope and evidentiary bases of Cruz's vaguely stated *Monell* theories. Interrogatory 1 asked Cruz to identify each and every theory of *Monell* liability. (Ex. 1). Succeeding on a *Monell* claim requires a plaintiff to prove (1)

3

the existence of an unconstitutional municipal policy, (2) a direct causal nexus between the alleged policy and the alleged violation of Plaintiff's constitutional rights, and (3) municipal fault, such that the plaintiff must show the municipality knew of and was deliberately indifferent to constitutional violations resulting from its policy. *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986-87 (7th Cir. 2021). Accordingly, in Interrogatories 2-9, and 16-21, the City asked for the factual and evidentiary bases to prove the elements of each theory. (Ex. 2). In Interrogatories 10-15, the City asked Cruz to provide the factual bases, including specific evidence, that supported allegations made in his counsel's July 18, 2024 correspondence.[1]

The City is entitled, now that fact discovery is at an end, to know what specific theories remain and the evidence that Cruz alleges supports them. The interrogatories seek to know how Cruz intends to use the files to support his *Monell* claim, so that the City can defend against it.

C.   **Cruz's answers and the City's meet and confer efforts.**

Cruz initially responded to the interrogatories on August 30, 2024, but only attempted to answer one of the requests. (Ex. 1). In response to the first interrogatory that requested Plaintiff identify the theories of *Monell* liability he intended to pursue, Plaintiff merely cut and paste about 40 paragraphs of his Amended Complaint, in a response that spans approximately ten pages. (*Id.*). For the remaining interrogatories, Cruz responded that contention interrogatories do not require a response until at or near the close of fact discovery and that Cruz would answer the interrogatory on October 3, 2024. (*Id.*). Pursuant to the Court's deadline, Cruz provided a response to subsequent response on October 24, 2024. (Dkt. 286).

Cruz did not amend his response to Interrogatory 1 to properly identify the specific legal theories that he is pursuing now, as opposed to the generalized allegations in his Amended

---

[1] The City is not moving to compel answers to interrogatory number 9 or 22.

4

Complaint. What's more, except for a few requests (*see* responses to Interrogatories 16-18), Cruz did not provide any substantive response identifying evidence in this case as requested. Cruz objected to all interrogatories on the basis that he would not be able to answer until he disclosed his retained experts' reports. He provided non-responsive information in addition to the objections. This information included arguments and citations to case law, but not documents or testimony that support his claims as the City specifically requested.  This is the first time that Cruz stated he could not fully answer contention interrogatories until his expert disclosures, for which this Court has yet to set a deadline. The timing of his responses had been established through extensive communications with the Court, including a status report discussing the contention interrogatories, a consolidated filing regarding extending discovery, and a 90-minute court hearing on September 26, 2024, about the discovery deadline. (Dkt. 231, 239, 240, 260).  Not once did Cruz inform the City or this Court that he did not intend to substantively answer the City's contention interrogatories.  Nor did he mention his intention to defer his substantive responses until he discloses his retained experts or, more generally, during or after expert discovery.  Instead, he waited until the Court's deadline, only to provide the City a non-response.

      The parties first conferred by phone regarding Cruz's interrogatory answers on October 25, 2024.  The City's counsel explained that while Plaintiff may ultimately disclose retained experts, the interrogatories do not call for expert opinions, and that they are derived from his own operative complaint and correspondence. The City also explained that answering now does not foreclose Cruz's ability to supplement his answers once he discloses his experts, but waiting to disclose the information prejudices the City in its defense. Cruz's counsel maintained that Cruz would not answer the City's contention interrogatories any more fully until he disclosed his expert reports.

The parties spoke by phone again on November 1, 2024, more specifically about Cruz's substantive responses to Interrogatories 16-18, the only interrogatories that he cited at least some evidence in the case as requested. In that conversation, Cruz's counsel explained that he misunderstood Interrogatory 16. That interrogatory asked Plaintiff to identify any documents and/or information contained in the investigative files produced in this case that he maintains were not produced to the criminal defendant during the criminal case and to provide the accompanying evidence by bates number. Cruz's counsel explained that, while Cruz answered the interrogatory with a chart of identified cases, his counsel did not appreciate the distinction between document and information, and wanted to make clear that Cruz did not intend to pursue any claim that the investigative files contained documents that were not produced. Instead, Cruz's theory is that, as a matter of policy, detectives either learned of exculpatory information when investigating a case and did not write it down or wrote it down and threw the paper away. This, of course, makes the production of the files superfluous for that purpose because information that is not written down or written down and then thrown away is certainly not discoverable in the files. And defending the theory requires the City to prove a negative, meaning no such exculpatory information existed in the first place in whatever case Cruz identifies. More relevant here, however, is that theory is not specifically pleaded in Cruz's complaint. Instead, Cruz's operative complaint refers more specifically to suppressing exculpatory evidence through the alleged practice of maintaining "secret files," or "clandestine files." (*See* Dkt 44, ¶¶ 158-160, 212, 215).

Cruz's counsel then continued to explain that he does not yet know which files he might use to support his theory that the City had a policy of suppressing exculpatory information. He said that Cruz's legal team has been working on that issue since they received the files from the City but still plans a "deep dive" into those files to assess the evidence. Ex. 5. On the call, Cruz's

counsel provided a hypothetical example where he believes that he might be able to use a witness's testimony from another case to show that some exculpatory information was learned but not disclosed in the subsequent criminal case. He could not, however, identify *one* single case that is evidence of a supposed City practice of concealing exculpatory information.

Cruz's counsel followed up the November 1 call with an email, stating that, with respect to the list of files he identified in Interrogatory 16, "**we do intend to learn whether there was such information learned and/or actions taken** by Area 5 detectives in those cases that were not reduced to writing at all or if casually reduced to writing, was later destroyed, in violation of *Brady*. (*Id*). The homicide files in which **we will do our deep dive** are **primarily** those listed in response to Interrogatory #16, although our *Monell* expert may also be familiar with other examples." *Id.* (emphasis added). According to Cruz, then, this is evidence he plans to figure out at some indetermined time in the future. Cruz's counsel stated that Cruz stands on his responses to Interrogatories 17 and 18.

## RULE 37.2 COMPLIANCE

After those two phone conversations and the exchange of emails, the 37.2 communications did not result in Cruz providing substantive and complete interrogatory responses. Thus, the parties were not able to reach resolution of the dispute.

## ARGUMENT

"The purpose of an interrogatory" has long been "to enable the proposing party to prepare for trial." *U.S. v. General Motors Corp.*, 2 F.R.D. 528, 531 (N.D. Ill. 1942). Indeed, "contemporary thought has concluded that secrecy is not congenial to truth-seeking, and that trial by ambush is incompatible with the just determination of cases on their merits."*Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763, 2009 WL 10695968, at *2 (N.D. Ill. April 15, 2009). As

7

such, a party may seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

A party may "move for an order compelling an answer" if "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). It is the requesting party's burden "to explain why the opposing party's responses are inadequate." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 2339947, at *3 (N.D. Ill. June 29, 2022) (Finnegan, J.)

**A.      The City's interrogatories are proper inquiries into Cruz's *Monell* claim.**

As explained, Cruz pleaded numerous allegations against the City. In fact, Cruz's response to the City's Interrogatory 1 cited at least 40 allegations in his operative complaint that pertain to his *Monell* claim. Apparently, that meant that he has no further detail to his theories since they were pled, nor has he narrowed them based on the available evidence. Certainly, allegations in a complaint are not evidence, and establishing *Monell* liability is a high bar. To address the uncertainty of what actual evidence Cruz claims supports his myriad theories, the City asked in the subsequent interrogatories that Cruz identify **what** alleged policies he claims existed that caused his alleged constitutional violation, **what** the evidence is that demonstrates those policies existed, **how** did the City have notice of the alleged policies, **how** was the City deliberately indifferent to constitutional violations resulted from those policies, and **how** the policies caused the violation of Cruz's constitutional rights. The City further asked **how** the evidence Plaintiff demanded in the case supports those theories. These are the bases on which he claims the City is liable in this case, and so, the City is entitled to this information. *See Flores v. Guevara*, No. 23 C 1736, 2024 WL 4203080, at *2 (N.D. Ill., Sep. 16, 2024) ("The basic idea of contention

8

interrogatories is to require a party to commit to a position and to give support for that position"); *Bouto v. Guevara*, 19-cv-2441, 2020 WL 4437669 (N.D. Ill. Aug. 3, 2020) ("the entire purpose of interrogatories is to get opposing parties to identify a specific subset of evidentiary support for their claims and defenses").

**B.      Cruz's objections to the City's interrogatories are without merit.**

Cruz is wrong to defer his discovery obligations to his retained experts. The interrogatories do not call for expert opinions. To the contrary, they merely ask Cruz to provide the evidentiary basis for his claims against the City. Cruz has not demonstrated why expert analysis is necessary to answer the requests. To be sure, they do not call for specialized knowledge, technical skills, or calculations. Rather, the requests merely target Cruz's allegations in his complaint and the evidentiary value of the discovery he sought in the case. At this late stage in the case, Cruz should answer those requests. *American Needle, Inc. v. New Orleans*, 2012 WL 4327395, at *2-4 (N.D. Ill., Aug. 17, 2012) (granting motion to compel after finding defendants failed to explain why interrogatories required expert analysis and that defendants could supplement their answers with the expert reports).

By deferring to his experts, Cruz is essentially asserting that he does not have an evidentiary basis to support his claims until his expert decides what the basis should be. His counsel seemed to acknowledge that fact during Rule 37.2 communications by failing to identify any specific case and the supporting evidence to show that detectives withheld exculpatory evidence as a matter of City policy. Yet, according to his operative complaint, Cruz has already decided that the City allegedly had in place *numerous* unconstitutional policies that directly caused the violation of his constitutional rights. Cruz must have some evidentiary basis to assert those allegations against the City otherwise he would have violated Rule 11. Fed. R. Civ. P. 11(b)(3). If Cruz has a good-faith

9

basis to advance his allegations, then the City is entitled to discover what information he possesses to support them. *See Bouto v. Guevara*, 2020 WL 4437669, at *2 (stating the court was "perplexed" by the argument that defendants are not entitled to "a sworn accounting from Plaintiff identifying the specific subset of evidentiary support that Plaintiff had at the time he filed his Complaint").

Courts that have addressed this issue have determined that, even if a plaintiff intends to support his claims with retained experts, that is not a basis for failing to answer properly issued interrogatories. *See United States ex rel. Gill v. CVS Health Corp.,* No. 18 C 6494, 2024 WL 3028958, at *9 (N.D. Ill., June 17, 2024) (concluding that plaintiff's request to defer answering interrogatories until expert discovery was without merit, as plaintiff's theories "may not be crystalized in amber immune from investigation or analysis until some expert opines…" and "expert discovery does not mark the appropriate beginning for extensive analysis of what the Complaint has solemnly charged"); *Harleysville Lake States Ins. Co. v. Carl E. Most & Son, Inc.*, No. 1:22-cv-01822-JMS-CSW, 2023 WL 11054567, at *4-5 (S.D. Ind., Nov. 20, 2023) (concluding the answering party should respond to the interrogatory based on known information now, and supplement if new information is gleaned in expert discovery); *see also Rumble, Inc. v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2024 WL 33225907, at *1 (N.D. Cal., June 28, 2024) (reasoning contention interrogatories that seek fact, not how an expert would construe those facts, are not improper during fact discovery); *Christie v. Royal Caribbean Cruises*, No. 20-22439-Civ-SCOLA/TORRES, 2021 WL 2217494, at *1-2 (S.D. Fla., May 29, 2021) (a party cannot sit back and wait "to see what happens after while the fact discovery period ends); *Feinberg v. T. Rowe Price Grp., Inc.,* No. 17-cv-00427-JKB, 2019 U.S. Dist. LEXIS 207668, at *14-15 (D. Md. Dec. 3, 2019) (finding with fact discovery closed, defendants should not have to wait any longer to explore the specific factual basis underlying the allegations) (attached as Ex. 6).

If Cruz's retained experts identify additional evidence to support his claims, Cruz can simply supplement his responses, which is his obligation under Rule 26(e). Ex. 7, *Iglesias v. Guevara*, 19-cv-06508, Dkt. 174, at *3 ("Plaintiff may be correct that supplementation could be expected after oral discovery is complete, but that does not release him from his duty to respond now with actual facts adduced thus far, not merely a narrative theory.").

### C. The limited answers Cruz did provide are evasive and deficient.

Interrogatory 1: This interrogatory asks Cruz to identify the *Monell* theories he intends to pursue, Cruz merely regurgitated about 40 allegations in his complaint. Yet, interrogatories must "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The last thing one should be incorporating by reference is one's Complaint;" allegations in a complaint are not evidence. *Flores*, 2024 WL 4203080, at *3. To the contrary, "[a]n interrogatory answer should stand on its own, be complete, and not refer to pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without a cross-checking comparison of answers." *Ropak Corp. v. Plastican Inc.*, No. 04 C 5422, 2006 WL 1005406, at *4 (N.D. Ill. April 17, 2006).

Interrogatories 2-3: These interrogatories ask Plaintiff to identify the factual basis and evidence upon which he will rely to establish how each theory identified in response to Interrogatory 1 amounts to a "policy" pursuant to *Monell* and why each policy is unconstitutional. Cruz should have responded to Interrogatory 2 by identifying evidence of either (1) an express policy that caused a constitutional deprivation; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Instead, Cruz responded with a single-spaced, five-page set of

generalizations without a single citation to any specific document or testimony. The only "specific example" identified in this response are his own allegations of misconduct and accusations about Jon Burge. Cruz's lengthy narrative that simply rehashes the allegations in his complaint is not an appropriate shortcut to answering the interrogatory. The City should not have to hunt for the answer in a sprawling litany of allegations purposely asserting broad generalizations. Cruz provided no substance to Interrogatory 3.

Interrogatories 4-6: These interrogatories seek to learn what evidence supports the causation or deliberative indifference elements of his *Monell* theories. For instance, Interrogatory 4 asked Cruz to identify what evidence demonstrates the City was on notice of that any of the alleged policies existed. Cruz responded by merely referring to his non-responsive answer in number 3 and adding reference to Jackie Wilson's allegations against Jon Burge, and the City's answers to request for admission. It is not clear what "policy" that evidence is referring to, nor could it possibly account for *all* the policies Cruz identifies in Interrogatory 1. Interrogatory 5 merely refers to Interrogatory 3. And Interrogatory 6 includes a long legal objection, but no substantive evidence. In all, Cruz refused to answer interrogatories about what evidence demonstrates **how** such an alleged policy was the "moving force" behind his alleged constitutional violations or **how** the City had notice of the alleged deficiency to establish municipal fault. These are "indispensable prerequisites" to Cruz's *Monell* claim. *Dean*, 18 F.4th at 236 (7th Cir. 2021).

Interrogatories 7-8: These requests pertain to Cruz's allegations regarding CPD's disciplinary system. Cruz provides a long objection, but no substantive answer, arguing he has a different view of his evidentiary burden. That is not a basis to decline to answer.

Interrogatories 10-15: These interrogatories seek clarification regarding how Cruz intends to use the 64,000 pages of documents the City produced in response to his request, based on his

correspondence explaining how he believed such evidence was relevant. Cruz responded with a diatribe as to why his assertions in his counsel's letter should not be considered "contentions," and calling it a "cute trick." This is non-responsive. If Cruz does not intend to use the files to support the theories identified in his counsel's letter, then he can say that. Otherwise, the City should know how, in Cruz's view, the 64,000 pages of documents provide evidence of its liability.

Interrogatories 16-18: While he included large ranges of documents in response to Interrogatory 16, he did not identify those documents with any particularity, much less explain how those documents supported his contention. In fact, Interrogatory 16 asks Plaintiff to identify the investigative files produced in the case where he contends information contained in the file was not produced to the criminal defendant and/or criminal defense attorney "and the accompanied evidence by bates number." Instead, Cruz responded with a chart that lists a series of individuals, some with corresponding bates ranges, but nothing else. Cruz failed to include any reference to actual evidence that he claims was not produced, much less the evidence to support that contention. Making matters worse, the bates ranges for the documents are nonsensical. For instance, next to the name "Johnny Flores," he lists a bates range of over 3,500 pages of documents, which include 88 files unrelated to murder for which Johnny Flores was convicted.

Similarly, Interrogatory 17 also asked Plaintiff to further identify information pertaining to his *Brady* theory and to identify any "secret files" as pleaded in paragraph 212 of his operative complaint, yet Cruz merely refers back to his previous answer to Interrogatory 16 (the chart discussed above) and makes no effort to identify any "secret files" in his response. This is particularly confusing because his response to Interrogatory 1, includes allegations about "secret files," and "clandestine files," and, here he cannot identify one.

Further, Interrogatory 18 asked Plaintiff to identify the files that contain evidence of purportedly coerced or manipulated eyewitness identifications or witness statements. Cruz responded by listing numerous bates ranges (which correspond to the bates ranges listed in the chart in response to Interrogatory 16) and a list of witnesses. He did not explain how the documents support his alleged contentions, nor did he explain what the testimony of the listed witnesses will be. In fact, like his responses to Interrogatories 16 and 17, Cruz included bates ranges that span thousands of pages without any explanation as to whether the documents referenced even included an eyewitness identification or statement at all, much less identify evidence to show that it was coerced and/or manipulated in accordance with his allegations.

What's more, Cruz never amended his Rule 26(a) disclosures to include 20 witnesses he lists in his response to Interrogatory 18 as having relevant information to his *Monell* claim. Thus, not only has Cruz failed to provide complete and thorough answers to the interrogatories, but he has now identified, for the first time at the end of discovery, 20 new witnesses in support of *Monell*.

<u>Interrogatories 19-20:</u>  Cruz did not answer these interrogatories at all, and they appear to be omitted from the document. *Compare* Ex. 1 with Ex. 2, showing Interrogatories 19 and 20.

<u>Interrogatory 21:</u>  This interrogatory seeks information related to Cruz's allegations concerning a purported "code of silence." Even though the City requested Cruz identify specific documents and/or testimony, Cruz merely responded by referring to his long narrative in response to Interrogatory 2, which, as explained, is a non-response.

**D.** **Cruz's non-responses to the City's interrogatories obstruct the City's defense.**

Without complete answers to its discovery, the City cannot know what it is defending against. This unfairly prohibits it from efficiently and effectively developing its defense. Cruz alleged numerous City unconstitutional policies, all of which are wide sweeping and touch on

14

every aspect of misconduct he alleges in this case. He makes allegations that span from Jon Burge to Laquan McDonald. Thousands of pages of documents have been produced in this case, and Plaintiff has been (or at least should have been) working on and developing his theories since he initiated this case nearly a year and half ago. It is even longer than that, considering the time it took him to develop and litigate his post-conviction proceeding. The City, however, does not yet know what *evidence* Cruz asserts supports his *Monell* claim.

The notion that Cruz's *Monell* theories and supporting evidence are *still* a work in progress should not be tolerated. Not only did Cruz object to bifurcation, but he objected at every turn when Defendants stated they needed more time. In the initial status report, Cruz advocated for fact discovery to end in March 2024, when Defendants stated they needed until October 15, 2024 to complete non-*Monell* discovery only. (Dkt. 42). Cruz suggested Defendants were not moving fast enough in the January 16, 2024 status report. (Dkt. 109). He made similar assertions on May 9, 2024, and again on September 16, 2024 (Dkt. 164 and 227). Cruz insisted fact discovery close by June 2024, and rushed Defendants to schedule several depositions in Florida. (Dkt. 164). He then objected when Defendants sought to extend the deadline in September 2024. (Dkt. 240). And, even as of last week, when Defendants referenced taking the deposition of Carol Rogala considering the Foxx deposition in the status report, Plaintiff, again, stated he would object. (Dkt. 300). Instead, the parties spent time litigating Plaintiff's motions regarding Cruz's demand for a Rule 30(b)(6) witness (Dkt. 120), third-party officers' complaint register files (Dkt. 117), and Rule 30(b)(6) transcripts (Dkt. 195). Despite having success in some of those motions, Cruz does not reference any of that evidence in response to the City's interrogatories. Ex.1-2.

Cruz kicked the can too far down the road. Waiting until he discloses expert reports, or at some unidentified time during expert discovery, to answer the City's interrogatories leaves the City

15

only a short window to both evaluate Cruz's evidence and defend against it. Most problematically, this would occur after fact-discovery has already *closed*. "[T]he goal of discovery . . . is to enable both sides to make effective preparation for trial" and avoid "unfair surprise." *Zingerman v. Freeman Decorating Co.*, No. 02 C 6050, 2003 WL 22057032, at *4 (N.D. Ill. Sept. 3, 2003). The City is thus entitled to know now what exactly Cruz contends subjects it to liability to identify its own witnesses and documents in defense. Accordingly, this Court should order:

- Cruz to clearly and completely answer the interrogatories within 14 days with only the information sought and refrain from circular references within his answers and extend the time for which the City can rebut any evidence Cruz identifies including but not limited to supplementing its Rule 26(a) disclosures, additional document production and oral discovery.
- If Cruz cannot identify evidence responsive to the City's requests, he must say so. If the evidence is circumstantial, he should explain the circumstances.
- Failure to comply with this Court's order may result in sanctions enumerated under Federal Rule of Civil Procedure 37(b)(2)(A) and 37(c)(1).

## CONCLUSION

For these reasons, the City asks this Court to grant their motion to compel Cruz under Rule 37(a) to provide proper interrogatory answers, and for any other appropriate relief.

Dated: November 4, 2024      Respectfully submitted,

*/s/ Catherine M. Barber*
*Special Assistant Corporation Counsel*
*for Defendant City of Chicago*

Eileen E. Rosen
Catherine M. Barber
Austin G. Rahe
Theresa B. Carney
Lauren M. Ferrise
ROCK FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Floor
Chicago, IL 60606
(312) 494-1000
cbarber@rfclaw.com

16