**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOSE CRUZ

           Plaintiff,

    v.

FORMER DETECTIVE REYNALDO
GUEVARA, ET AL.

         Defendants.

No. 23 CV 4268

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Cruz alleges that owing to egregious misconduct of several defendants, including former Chicago Police Detective Reynaldo Guevara, he was convicted and imprisoned for nearly 29 years for a murder and attempted murder he did not commit. One defendant Cruz has named is Edward Maloney, a former Cook County assistant state's attorney ("ASA"). Maloney has moved to dismiss Cruz's complaint against him, arguing, among other grounds, that he is entitled to absolute immunity for acts he took as a prosecutor. [66] For the reasons set forth next, the Court denies Maloney's motion in part and grants it in part.

## I.  Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the section that follows), but it need not accept

legal conclusions or "threadbare recitals" supported by "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Factual Background

Cruz brings claims against 10 defendants: eight former Chicago police officers, including Detective Guevara; the City of Chicago; and Maloney. [44][1] Led by Guevara, Cruz maintains that the eight officer-defendants "framed" him for the October 6, 1993 murder of Antwane Alfonso Douglas and attempted murder of Vernon Jay Meadors—by, among other things, "manipulating and pressuring a witness to falsely identify Cruz as one of the shooters; suppressing exculpatory evidence, including eyewitness statements that the shooters, unlike Cruz, were Black; fabricating false police reports; and purposefully failing to investigate the shooting and identify the actual perpetrators." *Id.* ¶¶ 3, 22. Cruz claims that ASA Maloney "personally participated in the misconduct," *id.* ¶ 21, in a few different ways.

### A.    Allegations Regarding False Police Report

First, Cruz alleges that Maloney had a direct hand in creating a false statement from eyewitness Pedro Jaramillo. *Id.* ¶¶ 28, 30–31. Immediately after the shooting, Jaramillo told officers that the perpetrators were Black, whereas Cruz is "a Hispanic male of light brown complexion." *Id.* ¶¶ 32, 36, 70. Jaramillo's initial statements notwithstanding, "Guevara visited Jaramillo at least three times during the investigation and showed him photo arrays of only Hispanic men." *Id.* ¶ 70.

---

[1] The operative complaint at this juncture is the first amended complaint. [44]. Cruz has named Attorney Geri Lynn Yanow as a defendant, but only in Yanow's capacity as the special representative of deceased Chicago police officer Ernest Halvorsen.

During those meetings, Guevara grew "furious" with Jaramillo when Jaramillo refused to identify Cruz as the shooter and used "psychological pressure and anger" to such a degree that Jaramillo came "to fear him." *Id.* ¶ 71. According to Cruz, "the Officer Defendants and, on information and belief, ASA Maloney, were all aware of Guevara's intimidation and harassment of Jaramillo." *Id.* ¶ 77. But despite Guevara's repeated interactions with Jaramillo and despite the other officers' and Maloney's knowledge of those interactions, "[t]here are no police reports in the police file documenting any of Guevara's interactions with Jaramillo." *Id.* ¶ 74.

On October 9, 1993, some of the officer-defendants had Jaramillo view a live line-up consisting of only Hispanic men, including Cruz. *Id.* ¶¶ 57–61, 78. Jaramillo did not pick Cruz out of that line-up. *Id.* ¶ 79. Three hours later, Maloney and one of the officer-defendants, Anthony Wojcik, took a statement from Jaramillo. *Id.* ¶ 81. Cruz goes on to allege:

> Despite Jaramillo's repeated descriptions of the shooters as Black, and his statement to the police at the scene that the shooter who had exited the front passenger seat of the perpetrators' car was a Black male, Jaramillo's Statement states: "***Witness Jaramillo describes the shooter as male ~~of unknown~~ olive complexed Hispanic or light skinned Black***." The words "of unknown" are crossed out in Jaramillo's Statement, as depicted here.

*Id.* ¶ 83 (emphasis and strike-out in original).

According to Cruz, Jaramillo never described the shooter to the police as an "olive complexed Hispanic or light skinned Black." *Id.* ¶ 84. And although the written statement was in English, "Jaramillo … cannot read, write, speak, or understand English beyond what is necessary to help run a gas station." *Id.* ¶ 82. To this day,

3

Jaramillo "firmly denie[s] making any such statement to the police" and believes the statement is "false." *Id.* ¶ 85. Most specifically, Cruz alleges: "Maloney wrote Jaramillo's Statement, including the false statement that the shooter was an "olive complexed Hispanic or light skinned Black." *Id.* ¶ 87.

According to Cruz, Maloney and his co-defendants were motivated to generate this false statement because they were all "concerned that Jaramillo would be called as a defense witness to testify that the shooters, unlike Cruz, were Black, which would undermine their effort to frame Cruz for the shooting and possibly also expose their misconduct throughout the homicide investigation." *Id.* ¶ 88. Moreover, Jaramillo's statement—fabricated, as Cruz contends, with Maloney's participation— had the intended effect:

> Cruz's defense counsel at his 1996 trial did not call Jaramillo … to testify because, on information and belief, he knew [Jaramillo] could easily be impeached and discredited through the police reports and police testimony. After all, no reasonable defense counsel—in the trial of a Hispanic defendant— would risk calling a witness who purportedly told the police he saw "a light skinned Black or olive-skinned Hispanic" commit the shooting.

*Id.* ¶ 101.

## B. Allegations Regarding Investigation of Cruz's Alibi

Cruz also maintains that defendants, including Maloney, "purposefully failed to investigate" his alibi to avoid unearthing evidence that could exculpate Cruz and expose their own misconduct and, as part of that failure, fabricated a statement from another individual, Danny Rodriguez. *E.g.*, *id.* ¶¶ 107–08.

Cruz told officers that at the time of the shooting he was sleeping in the basement of his aunt's home, where he was then living, and that two witnesses (his

aunt and a 24-year-old cousin) could corroborate him on that point. *Id.* ¶¶ 103–05. The officers, however, never contacted Cruz's aunt and never took a signed statement from the 24-year-old cousin. *Id.* ¶ 106. Cruz's complaint goes on to allege that one officer, along with Maloney, ended up taking a statement from a witness who, according to Cruz, was unable to speak to his whereabouts. *Id.* Cruz has alleged:

> Instead, on October 9, 1993, at 11:25 p.m., inside an interrogation room at Area 5, without a youth officer or parent present, ASA Maloney and Detective [Anthony] Riccio took a singular signed statement from Danny [Rodriguez], Cruz's 13-year-old cousin, even though Cruz had already told the police that Danny could not corroborate his alibi because he was asleep when Cruz had arrived at the house on the night of the shooting.

*Id.* Cruz further alleges that "Maloney and/or Detective Riccio fabricated in whole in or in part" Rodriguez's statement and that the statement includes information that "Maloney and/or Detective Riccio manipulated [Rodriguez] into saying." *Id.* ¶ 107.

Cruz's complaint does not relay the contents of Rodriguez's statement. Nor does it allege what precisely in the statement is false. But it is plain from the statement itself—which Maloney appended to a memorandum of law, *see* [67] at Ex. 3—that Rodriguez did not corroborate Cruz's alibi. According to Rodriguez's statement, Cruz was absent from his aunt's home between approximately 10 p.m. and 4 a.m., the window during which the shooting occurred. *Id.* Rodriguez told Maloney and Riccio that he (Rodriguez) saw Cruz leave the aunt's home at 10 p.m. and that when Cruz returned at 4 a.m., it was Rodriguez who opened the door for Cruz to let him back in. *Id.*

## C.      Allegations Regarding the "Unduly Suggestive" Line-Up

Cruz further maintains that officer-defendants Riccio, Anthony Wojcik, and Stephen Gawrys "in conspiracy with the other Individual Defendants, employed unduly suggestive procedures" in a live line-up to optimize the chances that witnesses would identify Cruz as the shooter. *Id.* ¶ 59. As set forth in the opening paragraph of Cruz's complaint, the term "Individual Defendants" encompasses Maloney. [44] at 1.

During the lineup, Cruz alone was made to sit atop a yellow phone book, which, Cruz maintains, made him stand out "from the fillers." *Id.* ¶ 59. Jaramillo and Meadors were both presented with this lineup, and although Jaramillo did not select Cruz from it, Meadors did. *Id.* ¶¶ 57-68, 79.

## III.    Analysis

Based on the above allegations, Cruz has brought the following claims under 42 U.S.C. § 1983 against Maloney: violating Cruz's right to due process through the fabrication of evidence used at trial (Count I); violating Cruz's constitutional rights by withholding exculpatory evidence (Count II); malicious prosecution and unlawful detention (Count III); conspiring to deprive Cruz of his constitutional rights (Count IV); and failure to intervene (Count V).[2] Cruz also brings state law claims against Maloney for malicious prosecution (Count VII), intentional infliction of emotional distress (Count VIII), and conspiracy (Count IX).[3]

---

[2] Cruz also brings Count IV under 42 U.S.C. § 1985 and Count V under 42 U.S.C. § 1986.

[3] Cruz has voluntarily dismissed a claim of willful and wanton conduct against Maloney, Count X in the first amended complaint. [94] at 23, n.5.

In moving to dismiss all claims against him, Maloney makes one argument regarding absolute prosecutorial immunity that, if successful, would apply across-the-board. Maloney then makes additional, alternative arguments as to why Counts I, II, III, V, and VII should be dismissed. The Court discusses each of his arguments in turn.

## A. Whether Maloney Is Entitled to Absolute Immunity

A prosecutor is immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties. *See Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). "Whether or not an action falls within the scope of his prosecutorial duties depends upon its function." *See Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Van de Kamp v. Goldstein,* 555 U.S. 335, 342–43 (2009)). "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Id.* (citing *Imbler,* 424 U.S. at 430, 431 n.33). "There exists a 'difference between [his] advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial ... and [his] detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'" *Id.* (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)) (alterations in original). "Actions and decisions made in accordance with the latter set of responsibilities entitle [a prosecutor] only to the qualified immunity granted to the police and other members of the prosecution team who share those duties." *Id.* (citation omitted). "Determining whether a prosecutor acted in his judicial capacity or as an investigator requires the

Court to examine his specific actions." *See Ezell v. City of Chicago*, No. 18 C 1049, 2024 WL 278829, at *11 (N.D. Ill. Jan. 24, 2024) (citations omitted).

Here, Cruz has alleged that Maloney violated his constitutional rights by, among other things, fabricating statements from Jaramillo and Rodriguez. Accepting Cruz's allegations as true, "a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity." *See Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012); *see also Velez v. City of Chicago*, No. 1:18-CV-08144, 2023 WL 6388231, at *18 (N.D. Ill. Sept. 30, 2023) (denying prosecutor's motion for summary judgment on absolute immunity grounds where prosecutor "did not just analyze evidence and memorialize the statement in her prosecutorial function, but instead allegedly fabricated the Izquierdo Statement"); *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1051 (N.D. Ill. 2016) (denying absolute immunity because "there are facts from which a jury could infer that the ASAs participated in coercive interrogations, that they fabricated the confessions, and that they reduced the confessions to writing so the codefendants could sign them").

In support of his absolute-immunity position, Maloney cites *Kitchen v. Burge*, 781 F. Supp. 2d 721 (N.D. Ill. 2011), and *Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009). But those cases do not hold differently. In *Kitchen*, the plaintiff made no allegation that the prosecutor had participated in the fabrication of evidence; instead, the prosecutor was "alleged only to have taken [plaintiff's] statement." 781 F. Supp. 2d at 731. And in *Andrews*, the district court emphasized that there was no plausible

8

allegation that the prosecutor who took the relevant statement did anything other than "see and hear the defendant give the statement." 660 F. Supp. 2d at 878. *See also id.* at n.9 ("No case was cited …, or found, in which a prosecutor was found liable for participating in the formal recordation of a confession without a plausible allegation that the prosecutor knew or should have known that the confession was coerced by police outside his or her presence.").

Here, by contrast, Cruz alleges that Maloney did not just record witnesses' statements or evaluate those statements to determine what charges they might support. Instead, Cruz alleges that Maloney personally "fabricate[d]" the statements, *id.* ¶¶ 87–88, 107, actions that are not "within the proper role of an advocate for the State." *Andrews*, 660 F. Supp. 2d at 878. Maloney may not agree with the substance of those allegations, but that does not change what Cruz has pled. Maloney is therefore not entitled to absolute immunity.

Maloney counters that he "took the statements of [Jaramillo and Rodriguez]" only after Meadors had identified Cruz as the shooter, at which point law enforcement had probable cause to arrest Cruz. [67] at 12–13. As a result, Maloney contends, his subsequent actions were undertaken "in his capacity as a prosecutor" and they are therefore entitled to absolute immunity. *Id.* But even assuming probable cause existed after Meadors' identification of Cruz (a point that Cruz disputes), "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards." *See Buckley,* 509 U.S. at 274 n.5. "A prosecutor may not shield his investigative work with the aegis of absolute immunity

merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial." *Id.* at 276. *Accord Ezell*, 2024 WL 278829, at *13.

The Court also notes that Cruz alleges Maloney played some role in the investigation before Meadors' identification of Cruz from the live lineup—namely, by conspiring with the officer defendants to engineer that purportedly tainted lineup. [44] ¶ 59. As the Court explains next, however, this allegation has been insufficiently plead. That allegation therefore does not factor into the Court's conclusion that Maloney is not entitled to absolute immunity given his alleged role in generating fabricated statements.

### B. Whether Count I Should Be Dismissed Because the Fabricated Evidence Was Never Used at Trial

In the alternative, Maloney argues that Count I should be dismissed because (1) he never "coerced and/or manipulated the identification of [Cruz] by victim Meadors" and (2) Jaramillo and Rodriguez did not testify at Cruz's trial nor were their purportedly false statements admitted as evidence at that trial. [67] at 14–15. Maloney thus maintains that he cannot be the proximate cause of Cruz's wrongful conviction. *Id.* at 15.

In response to Maloney's first argument, the Court again observes that it must accept Cruz's allegations as true. In this instance, that obligation means accepting as true Cruz's averment that all the Individual Defendants—i.e., Maloney as well— acted "in conspiracy with" officer-defendants Wojcik, Riccio, and Gawrys and "employed unduly suggestive procedures during the live lineup" from which Meadors

identified Cruz as the shooter. *Id.* ¶ 59. So Maloney's attempt to dismiss Count I by denying the substance of this allegation does not get him very far.

But Maloney is on stronger footing in describing the lineup-related allegation as "wholly conclusory and not entitled to the presumption of truth." [99] at 2. Other than Paragraph 59's reference to "the other Individual Defendants" acting "in conspiracy with" officer-defendants Wojcik, Riccio, and Gawrys, Cruz's complaint makes no other allegation about any role Maloney played in the live lineup. For example, the complaint does not allege that Maloney assembled, or aided the assembly of, the lineup, by selecting fillers, proposing that Cruz sit on a phone book, or instructing Cruz to sit on the phone book. The complaint does not even allege that Maloney was present when the lineup was administered. Instead, the complaint credits CPD's detectives with each those actions. *See* [44] ¶¶ 60–62, 78.

When considering a Rule 12(b)(6) motion to dismiss, the Court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court, however, "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). *See also Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Instead, "the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In the Court's estimation, Cruz's allegation that Maloney's involvement in the live lineup—limited as it is to a barebones

allegation that Maloney conspired with eight other defendants to "employ" the lineup's "unduly suggestive procedures"—does not meet this standard. [44] ¶ 59.[4]

That leaves for discussion Maloney's argument that Count I should be dismissed because the two fabricated statements that he, according to Cruz, personally helped generate—one from Jaramillo and one from Rodriguez—were not used at Cruz's trial. Cruz argues that he does not need to "plead that the fabricated evidence was actually used against him at his trial" in order for Count I to proceed. [94] at 16. The Court is not persuaded by Cruz's position.

Cruz has alleged a violation of his due process rights under the Fourteenth Amendment. [1] ¶¶ 176–82. A due process evidence-fabrication claim requires him to prove that Maloney "manufactured false evidence against him, which was later used to deprive him of his liberty in some way." *See Moran v. Calumet City*, 54 F.4th 483, 498 (7th Cir. 2022) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)) (cleaned up). *Moran* continues: "The fabricated evidence must be material, which means 'there is a reasonable likelihood the evidence affected the judgment of the jury.'" *Id.* (quoting *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020)).

Although it may be possible for evidence to satisfy a due process claim's materiality requirement without the evidence having been introduced at trial, the Seventh Circuit has strongly implied otherwise. *See Blackmon v. City of Chicago*, 700

---

[4] Cruz appends documents to his response to Maloney's motion to dismiss reflecting, among other things, that Maloney interviewed Meadors before Meadors identified Cruz in the lineup. [94] at 6. Even assuming the Court can consider this supplemental information on a motion to dismiss, it demonstrates only that Maloney interviewed Meadors, not that Maloney knew Guevara and other officer-defendants were in the process of "coerc[ing] and pressur[ing] Meadors' false identification of Cruz." [44] ¶ 185.

F. Supp. 3d 617, 637 (N.D. Ill. 2023) (citing *Moran* and *Patrick*). In *Moran*, the Seventh Circuit "agree[d] with the district court that the allegedly fabricated evidence was not material," because it "was not introduced at the trial" and therefore "could not have influenced the jury's verdict." 54 F4th at 499. Likewise, *Moran* dismissed the plaintiff's argument that an altered police report supported his due process claim, writing that "the content of the police report is irrelevant because Moran offers no evidence that the report was introduced into evidence at trial." *Id.* at n.8. *See also Patrick*, 974 F.3d at 834 ("If fabricated evidence is ... *used at trial to obtain a conviction*, the accused may have suffered a violation of his due-process right to a fair trial.") (emphasis added) (citation omitted).[5]

By comparison, a plaintiff may state an actionable evidence-fabrication claim under the Fourth Amendment without alleging that the falsified evidence was presented at trial. *See Bouto v. Guevara*, No. 19-CV-02441, 2024 WL 4346561, at *4 (N.D. Ill. Sept. 30, 2024). In that scenario, the claim would be "based on pre-trial detention resulting from the use of fabricated evidence to secure an indictment." *Id.* (citing *Fields*, 672 F.3d at 510). The different requirements are premised on the different constitutional rights at issue. In more recently "clarif[ying] the contours of constitutional claims based on allegations of evidence fabrication," the Seventh Circuit has explained that although "[a] claim for false arrest or pretrial detention

---

[5] The Court recognizes that other district courts have concluded that "a criminal defendant's due process rights are violated when fabricated evidence is used to convince a criminal defendant to enter a guilty plea." *Mendoza v. City of Chicago*, No. 23-CV-2441, 2024 WL 1521450, at *2 (N.D. Ill. Apr. 8, 2024). But there is no guilty plea here.

based on fabricated evidence sounds in the Fourth Amendment right to be free from seizure without probable cause," "[i]f fabricated evidence is later used at trial to obtain a conviction, the accused may have suffered a violation of his due-process right to a fair trial." *Patrick*, 974 F.3d at 834. *See also Lewis v. City of Chicago*, 914 F.3d 472, 479–80 (7th Cir. 2019) ("a claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful *conviction* based on fabricated evidence").

Here, the Court does not understand Cruz's complaint to articulate a Fourth Amendment evidence-fabrication claim. The caption of Cruz's Count I references only a "violation of due process" related to the "fabrication of evidence used at trial." [44] at 44. And within Count I, Cruz cites only the Due Process Clause of the Fourteenth Amendment and his right to a fair trial as the source of his constitutional deprivation. *Id.* ¶ 180. The sole reference in Cruz's entire amended complaint to the Fourth Amendment is in connection with Count III, where he makes a federal malicious prosecution and unlawful detention claim. *Id.* ¶¶ 190–94. In the malicious prosecution context, references to the Fourth Amendment and a corresponding seizure make sense, and therefore cannot be understood as a misplaced reference to the Fourth Amendment in connection with an evidence-fabrication claim. *See infra* at Section III.D; *see also Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022) (to prove a federal malicious prosecution claim under the Fourth Amendment, a plaintiff must prove that the malicious prosecution resulted in his seizure)). Where Cruz has clearly and expressly alleged an evidence-fabrication claim only under the Fourteenth

Amendment's Due Process Clause and its guarantee of a fair trial, the Court is reluctant to scrape from his complaint a Fourth Amendment evidence-fabrication claim as well.

For this reason, the Court finds Cruz's reliance on *Fields v. Wharrie*, 740 F.3d 1107, 1112 (7th Cir. 2014), unpersuasive. Cruz cites *Fields* for the proposition that "the fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him." [94] at 16. But here, Cruz has not alleged that the fabrication of evidence is tied to an injury before trial; he has specifically claimed that the fabrication of evidence injured his right to a fair trial guaranteed under the Fourteenth Amendment's Due Process Clause. [44] ¶ 180. Cruz's reliance on *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017), is similarly unsuccessful. *Avery* stated that a "due-process violation wasn't complete until the [fabricated evidence] was introduced at Avery's trial, resulting in his conviction." *Id.* at 442; *see also id.* ("After all, it was the admission of the false confession that made Avery's trial unfair."). Cruz does not grapple with that language. In any case, these cases (and others Cruz cites) pre-date *Lewis* and *Patrick* and the Seventh Circuit's clarification of the constitutional boundaries of evidence-fabrication claims therein.

In short, where the purportedly fabricated statements from Jaramillo and Rodriguez could not have been material to the jury's judgment because they were never introduced at Cruz's trial, and where Cruz has insufficiently plead that Maloney played a role in Meadors' false selection of Cruz from a tainted line-up, Count I is dismissed.

### C. Whether Cruz Has Failed To State a Claim Alleging a *Brady* Violation (Count II)

In Count II, Cruz alleges that all the individual defendants, including Maloney, violated his right to a fair trial, under the Fourteenth Amendment's Due Process Clause, by withholding the following exculpatory evidence: (1) evidence of the systemic police misconduct occurring at Area 5 at the time of the investigation at issue, (2) evidence that defendants coerced and pressured Meadors' false identification of Cruz, and (3) evidence that defendants attempted to coerce Jaramillo into falsely identifying Cruz. [44] ¶¶ 183–89. Having lost his argument that absolute immunity shields him from this claim, Maloney seeks Count II's dismissal on alternative grounds. Maloney argues that (1) Cruz has not alleged Maloney knew of the systemic police misconduct; (2) Cruz has not alleged Maloney knew of officers' efforts to coerce Meadors into falsely identifying Cruz as the shooter; and (3) Cruz's own complaint establishes that he received exculpatory evidence concerning Jaramillo. [67] at 16–17.

The Court starts with the second of Maloney's three arguments. For the same reasons articulated above, Cruz has not sufficiently alleged that Maloney knew the officer-defendants coerced Meadors and/or presented Meadors with a tainted live lineup from which Meadors falsely identified Cruz as the shooter. Maloney does not feature in this portion of the complaint. *See generally* [44] ¶¶ 44–68. The only allegation that mentions him—and even then, only through reference to all "Individual Defendants"—is the same allegation in Paragraph 59 that, as already

explained, is too barebones to state a claim against Maloney for the Meadors-related events.

With respect to Maloney's first argument, Cruz clearly has alleged that Maloney participated in the alleged misconduct at Area 5, *id.* ¶ 21, most specifically, through the fabrication of statements from Jaramillo and Rodriguez. If Maloney participated in the misconduct, he necessarily was aware of it. And with respect to Maloney's third argument, even assuming that Cruz received police reports in which Jaramillo identified the shooter as Black, *see* [67] at 16, Maloney does not suggest that he (or anyone else) tendered documents to Cruz reflecting Guevara's coercion of Jaramillo, of which—critically—Cruz alleges that Maloney was aware, *see* [44] ¶¶ 69–77. Those documents would have constituted *Brady* material as well. *See Avery*, 847 F.3d at 439 ("Armed with the *Brady* disclosure, the accused can impeach the coerced testimony by pointing to the tactics the officers used to extract it, and the jury has a fair opportunity to find the truth.").

On these bases, Count II survives Maloney's motion to dismiss.

### D. Whether the Existence of Probable Cause Warrants Dismissal of Cruz's Malicious Prosecution Claims (Counts III and VII)

Cruz has brought a malicious prosecution and unlawful detention claim under § 1983, arguing that Maloney violated his rights under the Fourth and Fourteenth Amendments, as well as a malicious prosecution claim under Illinois law. [44] ¶ 190–94, 226–29. Maloney argues that these claims cannot survive where "probable cause to arrest [Cruz] existed prior to Maloney's involvement in this case." [67] at 13.

Both a Fourth Amendment malicious prosecution claim and the Illinois tort of malicious prosecution require a plaintiff to establish an absence of probable cause for the proceeding. *See Stinson v. City of Chicago*, No. 21 CV 3347, 2024 WL 4466371, at *4 (N.D. Ill. Oct. 10, 2024) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996), and *Thompson*, 596 U.S. at 43–44). "[T]he independent existence of probable cause defeats any Fourth Amendment malicious prosecution claim." *See Kelley-Lomax v. City of Chicago*, No. 20 CV 04595, 2024 WL 4278118, at *6 (N.D. Ill. Sept. 24, 2024) (citing *Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015)).

Here, Cruz has clearly alleged that probable cause did not exist for his arrest. At the same time, he does not dispute that Meadors' identification of him as the shooter—had it been obtained in a non-coercive, non-manipulative manner—would have supplied probable cause for his arrest. "A single eyewitness identification of a suspect is sufficient to create probable cause, even if the identification is questionable or police doubt its accuracy." *See Brown v. City of Chicago*, 709 F. Supp. 3d 558, 570 (N.D. Ill. 2023) (citing *Moran*, 54 F.4th at 499–500, and *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019)). Moreover, as the Court already has explained, Cruz has not adequately alleged that Maloney knew of officers' efforts "to manipulate and coerce Meadors's identification of Cruz." [94] at 12. As a result, in his response to Maloney's motion to dismiss, Cruz cannot credibly contend, that "as Maloney very well knew, there never was probable cause to arrest Cruz." *Id.* If Maloney had no

reason to suspect that Meadors' identification of Cruz was suspect, Maloney also had no reason to suspect probable cause did not exist for Cruz's arrest.[6]

To be sure, Cruz's malicious prosecution claims allege a constitutional harm stemming not just from his arrest, but also from the continuation and perpetuation of judicial proceedings against him without any probable cause. [44] ¶ 191; *see also id.* ¶ 192 (contending that Cruz was "subjected improperly to judicial proceedings for which there was no probable cause"); ¶ 227 ("The Individual Defendants … initiated a malicious prosecution without probable cause against Cruz, and continued that prosecution without probable cause."). But to state a Fourth Amendment malicious prosecution claim, plaintiff must establish an improper seizure—i.e., a seizure wholly unsupported by probable cause. *See Thompson*, 596 U.S. at 43. Thus, even assuming Jaramillo's and Rodriguez's fabricated statements (which were obtained after Meadors' identification of Cruz, *see* [44] ¶¶ 57, 81, 106) were used to secure the subsequent indictment against Cruz, Cruz's allegations that Maloney had a direct hand in generating those statements does not rescue his malicious prosecution claims. From Maloney's perspective, there still would have been probable cause to proceed based on Meadors' identification. *See Wade*, 783 F.3d at 1087 (holding that "[p]robable cause is a complete bar to a malicious prosecution claim," notwithstanding evidence that grand jury indictment was based in part on false information); *Kelley-*

---

[6] Cruz appends documents to his response that he argues reflect that "Maloney did not approve the charges against Cruz" until after Jaramillo's and Rodriguez's statements. [94] at 16–17. Even assuming the Court can consider these documents in resolving Maloney's motion, and even assuming Cruz has accurately reflected their contents, Maloney's decision not to approve charges until after additional evidence does not mean probable cause did not exist based on Meadors' identification alone (at least as far as Maloney knew).

*Lomax*, 2024 WL 4278118, at *6; *Brown*, 709 F. Supp. 3d at 570 (in the context of awarding summary judgment to defendants on a malicious prosecution claim, explaining that "when some evidence is fabricated, there still may be probable cause if the untainted evidence is sufficient to support probable cause").

That leaves for consideration Cruz's malicious prosecution claim under the Fourteenth Amendment. Where an adequate state-law remedy exists for malicious prosecution (as is the case with Illinois), courts have explained that a malicious prosecution claim based on the Fourteenth Amendment's Due Process Clause almost certainly cannot proceed. *See, e.g.*, *Hernandez v. Guevara*, No. 23 CV 15375, 2024 WL 4299046, at *11 (N.D. Ill. Sept. 26, 2024); *Sneed v. Vill. of Lynwood*, No. 22-CV-00266, 2022 WL 5116464, at *3 (N.D. Ill. Oct. 4, 2022) (citing *Thompson*, 596 U.S. at 43 n.2). At the same time, some Seventh Circuit cases appear to exempt from this rule cases— like this one—involving defendants who fabricated evidence or otherwise corrupted the trial process. *See, e.g.*, *Armstrong v. Daily,* 786 F.3d 529, 541 (7th Cir. 2015) ("No court has accepted the defendants' argument that the [*Parratt v. Taylor*, 451 U.S. 527, 544 (1981)] analysis applies when the plaintiff is alleging that wrongful conduct corrupted fair fact-finding in the criminal justice system."); *Avery,* 847 F.3d at 441 ("The availability of a state-law remedy for malicious prosecution doesn't defeat a federal due-process claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction.").

Assuming without deciding that Cruz can bring a malicious prosecution claim under the Fourteenth Amendment given his evidence-fabrication allegations against

Maloney, Cruz's claim ultimately proves no more viable under this constitutional provision than it did under the Fourth Amendment. To state a malicious prosecution claim under the Fourteenth Amendment, "a plaintiff must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *See Welton v. Anderson*, 770 F.3d 670, 673–74 (7th Cir. 2014) (citing *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996); *Smith v. Mull*, No. 4:22-cv-00036-SEB-KMB, 2023 WL 2587312, at *5 (S.D. Ind. Mar. 21, 2023). As already explained, at a minimum, Cruz cannot satisfy the elements of an Illinois cause of action for malicious prosecution because he has not sufficiently alleged that Maloney knew probable cause did not exist for Cruz's arrest. So a Fourteenth Amendment version of his malicious prosecution cannot proceed.

For these reasons, Cruz's federal and state malicious prosecution claims against Maloney (Counts III and IV) are dismissed.

### E. Whether Maloney Is Entitled to Qualified Immunity on Counts I, II, and V

Finally, Maloney argues that he is entitled to qualified immunity on Counts I, II, and V. Because Count I is no longer in the picture, the Court only addresses Maloney's qualified immunity arguments with respect to Counts II and V.

With respect to Count II (Cruz's *Brady* claim), Maloney argues that he had no clearly established duty to disclose evidence reflecting efforts to extract fabricated statements from Jaramillo and systemic police misconduct at Area 5. [67] at 17–20; [99] at 14–15. He cites no cases in support of this remarkable proposition. Of course,

21

*Brady v. Maryland*, 373 U.S. 83 (1963), was decided 30 years before the underlying conduct in this case, and since then, courts have routinely found that qualified immunity does not protect government officials who destroyed or suppressed exculpatory evidence, including "evidence of systemic torture and abuse" by the police. *See, e.g.*, *Smith v. Burge*, 222 F. Supp. 3d 669, 683 (N.D. Ill. 2016); *Kitchen v. Burge*, No. 10 C 4093, 2012 WL 346450, at *4 (N.D. Ill. Feb. 1, 2012) (collecting cases).

With respect to Count V (Cruz's failure to intervene claim), that count must be dismissed. Where Cruz alleges that Maloney personally engaged in misconduct, his intervention claim lacks merit because Maloney cannot fail to intervene in his own conduct. *Velez*, 2023 WL 6388231, at *18. Where Cruz alleges that Maloney failed to intervene in the misconduct of officer-defendants, it was "not clearly established in 1993 … that prosecutors acting as investigators had a duty to intervene when their fellow officers committed constitutional wrongs." *See Bouto*, 2024 WL 4346561, at *11 (internal citation omitted); *Abrego v. Guevara*, No. 23-CV-1740, 2024 WL 3566679, at *11 (N.D. Ill. July 29, 2024) (prosecutor's duty to intervene not clearly established in 1999); *Ezell*, 2024 WL 278829, at *14 ("True, *Whitlock v. Brueggemann* established that a prosecutor acting as an investigator would be held to the same standard as a police officer. But this decision came out in 2012, so it had no impact on the notice available to prosecutors in 1995.").

In short, Maloney is entitled to qualified immunity on Count V, but not on Count II.

22

## IV.   Conclusion

For the reasons set forth above, defendant Maloney's motion to dismiss is granted in part and denied in part. [66]. Counts I, III, and VII are dismissed without prejudice, Count V is dismissed with prejudice, and Counts II, IV, VIII, and IX survive Maloney's motion to dismiss. Count X is dismissed without prejudice based on Cruz's voluntary dismissal.

On or before December 12, 2024, Cruz may file a second amended complaint to cure the deficiencies associated with Counts I, III, and VII described in this opinion.

_____

Georgia N. Alexakis
United States District Judge

Date: 11/12/24