UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE CRUZ, | ) |
|     Plaintiff, | ) Case No. 23 C 4268 |
| v. | ) District Judge Georgia N. Alexakis |
| REYNALDO GUEVARA, et al., | ) Magistrate Judge Gabriel A. Fuentes |
|     Defendants. | ) |

## ORDER

In this matter before the magistrate judge on referral for discovery supervision (D.E. 49), the Court is considering the motion by all Defendants ("Motion to Re-Depose"; D.E. 288) to re-depose Plaintiff Jose Cruz for an additional 90 minutes so that they may explore 13 questions that Cruz did not answer at his September 18, 2024, deposition at the instruction of his attorneys. The Court has considered Cruz's response ("Resp."; D.E. 294) and Defendants' reply ("Reply"; D.E. 299). The Court considers the Motion to Re-Depose within its broad discretion to manage discovery, *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013), with the goal of promoting the just, speedy and inexpensive resolution of the matter. Fed. R. Civ. P. 1.

## BACKGROUND

Plaintiff alleges multiple tort claims arising from his now-vacated 1996 murder conviction in Illinois state court, and the disagreement between Plaintiff and Defendants on the Motion to Re-Depose revolves largely around whether Plaintiff waived his attorney-client relationship with his counsel, Fred Cohn, in the underlying criminal case. Plaintiff asserted an ineffective assistance claim against Cohn in state-court postconviction proceedings that ultimately led to his conviction being vacated, and Defendants ask the Court to find that as a result, Plaintiff broadly waived his

attorney-client privilege with Cohn per the doctrine of subject-matter waiver, which prohibits parties from using the privilege as a sword and shield by selectively disclosing some communications on a particular subject matter to prove a point, while asserting privilege as to other communications on the same subject matter to block the adverse party from disproving that point. *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 715 (N.D. Ill. 2015).

As for Plaintiff's purported use of his communications with Cohn as a sword, the First Amended Complaint ("FAC"; D.E. 44) alleges that the misconduct of certain Defendants included coercing witnesses Jaramillo and Meadors to identify Plaintiff falsely as the shooter in the murder, and to suppress statements that Plaintiff asserts Jaramillo and Rios made to police identifying the shooter as Black, whereas Plaintiff is not Black. FAC ¶ 42. The FAC contains the following allegation relating to Plaintiff's trial counsel:

> Unfortunately, the Officer Defendants' malicious efforts to discredit Jaramillo and Rios through, among other things, the above-described false police reports were successful. Cruz's defense counsel at his 1996 trial did not call Jaramillo or Rios to testify because, on information and belief, he knew they could easily be impeached and discredited through the police reports and police testimony. After all, no reasonable defense counsel—in the trial of a Hispanic defendant—would risk calling a witness who purportedly told the police he saw "a light skinned Black or olive-skinned Hispanic" commit the shooting, certainly not without the benefit of having the Guevara-related misconduct evidence, which was uncovered decades later.

*Id.* ¶ 101. The FAC also asserts that Plaintiff had several alibi witnesses who would have helped him establish that he was in his aunt's basement at the time of the murder, but then as a part of certain of the Defendants' misconduct, the alibi witnesses were not adequately investigated. *Id.* ¶¶ 103-106. The FAC contains an actual innocence claim by Plaintiff. *Id.* ¶ 191. In addition, although the FAC contains no mention of it, Plaintiff referred at his deposition to misconduct by unnamed officers, involving an evidence-planting claim concerning: (1) a gang "constitution" he said was planted on his person, (2) a photo of him flashing a gang sign; he says this was planted

in his aunt's basement, and (3) an alleged illegal search of his aunt's house, leading to the seizure of the photo. Motion to Re-Depose at 9-10.

Defendants asked Plaintiff, at his deposition, several questions directed at why Cohn did not call Jaramillo and Rios as trial witnesses, why Cohn did not call the alibi witnesses at trial, and why Plaintiff did not make his illegal-search and evidence-planting allegations in the FAC (and not until his deposition); Defendants assert that "Cruz cannot hide behind the attorney-client privilege and refuse to answer such questions." *Id.* at 8. At the deposition, Plaintiff was instructed not to answer the following questions which Defendants now want the Court to allow them to re-ask, at a resumed deposition:

1) At any point during your criminal trial did you mention to [Fred Cohn] that [a police] search [of your Aunt's home and your bedroom] had taken place?

2) Did you say anything to [Fred Cohn] during your trial that [Dep. Exh. 7 – the Latin Kings Constitution] was not on your person at the time of your arrest?

3) So when this [Exhibit 8 – photo of you flashing gang sign] was presented [as an exhibit] at your criminal trial, did you say to [Fred Cohn] how did the police get that?

4) Did you ever tell [your post-conviction attorney Greg Swygert] that the police performed an illegal search of your aunt's house?

5) At any time did you say to Greg Swygert that this Latin King constitution was either manufactured or planted on you?

6) Why are th[e] allegations [that police in some way illegally obtained this picture of you and that police in some way manufactured or planted this Latin Kings constitution] not in your Complaint [in this case]?

7) Do you know why [your aunt Ada Pacheco, an alibi witness] did not testify at [your criminal] trial?

8) Did you tell Fred Cohn that you had family members who could testify to your alibi?

9) Did you have any conversations with - I know I'm going to get an objection, but did you have any conversations with Fred Cohn about the fact that Pedro Jaramillo had identified the shooters as black?

3

10) So prior to your December 1995 criminal trial, did you discuss with your attorney, Fred Cohn, the fact that Ivan Rios had told police officers that the shooters were black?

11) During your original criminal case; meaning, prior to your December 1995 trial, did you ever [speak with Fred Cohn about] try[ing] to get Luis to come in – Luis Tartabu to come into court and testify?

12) Why did you personally not have communications with any of those five family members I mentioned about testifying at trial?

13) Have you changed the glasses you are wearing? A. Yes, sir. Q. Okay. Why is that?[1]

The Court strained to find privileged communications (with Cohn) that Plaintiff relied on, asserted, or disclosed in the FAC and could find none, except possibly for the line in the FAC alleging, "on information and belief," that Cohn did not call Jaramillo and Rios as trial witnesses because "he knew they could easily be impeached and discredited through the police reports and police testimony." FAC ¶ 101. But if the "information" about Cohn's reasons for not calling Jaramillo and Rios came to Plaintiff from a specific privileged communication from Cohn, the FAC does not say so. The FAC says nothing about Cohn not calling the family member alibi witnesses at the trial. The FAC says nothing about anyone planting the gang "constitution" on Plaintiff's person or planting the gang sign photo in his aunt's basement during an illegal search, and Defendants state that Plaintiff's deposition was the first time Plaintiff made those allegations. Motion to Re-Depose at 2.

Defendants argue that Plaintiff generally and completely waived any privilege as to his communications with Cohn by asserting ineffective assistance claims against him during the

---

[1] The list of questions on which Plaintiff was instructed not to answer is drawn from Plaintiff's response. Resp. at 6. Defendants have paraphrased them in requesting that they be allowed to re-depose Plaintiff about them and to ask follow-up questions. Motion to Re-Depose at 2. The Court has listed and numbered them here for the sake of clarity. Notably, Plaintiff explained the instruction not to answer concerning the glasses (Question 13), Resp. at 8 n.1, and Defendants appear to have abandoned their effort to spend time questioning Plaintiff about why he changed glasses during the deposition, Reply, passim, an issue that appears to the Court to have nothing to do with any of the disputed issues in the case.

4

Illinois postconviction proceedings. *Id*. at 6-7. But the core of the Motion to Re-Depose argues that a party in litigation may not disclose portions of privileged communications with an attorney to gain a tactical advantage in the litigation (i.e., the sword) and then shield from disclosure other privileged communications on the same subject matter when the adversary seeks to discovery them to defend against the sword. *Id.* at 7, citing *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 39. Defendants have characterized this sort of waiver as "subject matter" waiver. Motion to Re-Depose at 8. That led to a back and forth with Plaintiff, in the briefing, about just what it was that Plaintiff alleged against Cohn by way of incompetence at the trial, and also to Defendants' asking Plaintiff various deposition questions seeking to exhaust him or nail him down on how Cohn had been constitutionally ineffective. *See* Resp. at 7-8; Reply at 2-5, 7-9. And that led to arguments and counterarguments about (1) Plaintiff placing at issue various arguments that Plaintiff said do not relate to the same issues as those Defendants now want to explore at a second deposition, Resp. at 7-8, and (2) whether Defendants should have an opportunity to discover and defend certain allegations without being blocked by Plaintiff's privilege assertions. *See* Reply at 3, 8 ("Cruz has thus placed his underlying criminal case, criminal trial, and his criminal [defense] attorney's trial strategy squarely at issue in this case …. Cruz has alleged his reason for why Cohn did not call Jaramillo and Rios (presumably because of information recorded in the police reports that, among other things, Jaramillo later said the shooter was Hispanic and Rios tried to intimidate Meadors), and Defendants are not permitted to test it."). More specifically, as to Cohn's not calling Jaramillo and Rios at trial, Defendants argue that:

> By putting this allegation [that Cohn did not call them because their testimony would be unfavorable because of the statements they made to police, unfavorable to Cruz] in his Amended Complaint, Cruz has put his communications with Cohn and Cohn's trial strategy at issue. Cruz is disclosing what he believes to be favorable privileged information (i.e., that Cohn did not call Jaramillo and Rios because of the Defendants' alleged misconduct) while withholding unfavorable

5

>     privileged information (other reasons why Cohn did not call Jaramillo or Rios). Defendants contend, with good reason, that Cohn did not call Jaramillo and Rios to testify, not because of what is recorded in the police reports, but because Cohn failed to investigate and did not interview them.

Reply at 7-8.

## ANALYSIS

Both parties cite to *Patrick* for their subject-matter waiver or "sword and shield" arguments, in which that court discussed explicit waiver and waiver by implication or "subject-matter waiver."

>     Waiver can also occur by implication, which occurs when a party takes a position in litigation that makes it unfair to protect that party's privileged communications. The implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process. The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword.
>
>     In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege. Courts that have imposed waivers under the fairness principle have tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question. Only those documents or portions of documents relating to the claim asserted by the client should be disclosed.

*Patrick*, 154 F. Supp. 3d at 711-12 (citations omitted). The court in *McCullough v. Hanley*, No. 17 CV 50116, 2019 WL 3776962 (N.D. Ill. Aug. 12, 2019), delved further into when a party's injection of an issue into the litigation renders unfair that party's invocation of the attorney-client privilege to block discovery and defense on that issue. Subject-matter waiver addresses unfairness in "'those unusual situations in which fairness requires a further disclosure of related, protected information in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary ... Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and

6

unfair manner.'" *Id.* at *11, citing Fed. R. Evid. 502, Advisory Committee Notes. The *McCullough* court reasoned that per the Advisory Committee Notes and Rule 502(a), if a party discloses and uses the privileged communications in a misleading way, then *other* undisclosed, privileged communications on the same subject matter become discoverable to avoid unfairness. *Id.* at *12. "[T]he use of the disclosed communication is critical to the fairness inquiry …. Communications and information must be used to be considered." *Id.*

The Court struggled here to develop a workable theory of how Plaintiff has actually used privileged communications with Cohn to establish a point or influence the decisionmaker in the litigation. *See id.* ("[T]he critical inquiry is whether protected information has been . . . disclosed to a decisionmaker in an effort to influence a decision.") (citation omitted). Paragraph 101 of the FAC appears to make an assertion (i.e., that Cohn did not call Jaramillo and Rios because police coercion of their statements rendered them poor defense witnesses) that arguably may be proved only through disclosure of a privileged communication, and as Defendants explored the basis for Paragraph 101 at Plaintiff's deposition on September 18, Plaintiff, through his attorneys, deliberately did *not* disclose what Cohn told him about why Jaramillo and Rios were not called as witnesses. Presented with an opportunity to offer proof of the allegations Plaintiff made in Paragraph 101, Plaintiff declined, standing on the privilege instead. The content of any actual communication between Cohn and Plaintiff about why Jaramillo and Rios were not called is at this point unknown, but this means that Plaintiff so far has *not* used his privileged communications with Cohn as a sword to prove his assertion that Defendants are to blame for Jaramillo and Rios not appearing at the criminal trial as defense witnesses. Plaintiff has not used his privileged communications with Cohn to "influence the decisionmaker while denying its adversary access to

7

privileged materials potentially capable of rebutting the assertion," and in that situation, subject-matter waiver does not apply because "unfairness is lacking." *Id.*

In addition, the *McCullough* court found no unfairness and no subject matter waiver even when the plaintiff in that case disclosed his former counsel's privileged communications in response to the defendants' deposition questions:

> McCullough may have unsheathed the communications by allowing them to be disclosed in the depositions, but he has not wielded the communications in litigation to unfairly influence a decisionmaker …. Defendants are attempting to use the disclosure of the privileged information in response to their own deposition questions as the thin end of a wedge to gain access to undisclosed information to which the privilege was not waived.

*Id.* at *13; *see also id.* at *8 ("[Rule 502] carefully distinguishes between the concepts of waiver and disclosure. Waiver and disclosure are not synonymous. Disclosure alone does not result in waiver.") (internal quotations omitted). Plaintiff's following his counsel's instructions not to answer Defendants' questions about his communications with Cohn as to why Jaramillo and Rios were not called make the instant case even less persuasive than *McCullough* on subject-matter waiver if the Court follows *McCullough*, as this Court is doing.

Finally, the *McCullough* court noted the result of the privilege dispute in *Patrick*, namely that *Patrick* declined to extend the subject-matter waiver because the party invoking the privilege was not seeking to use the disclosed communication. *Id.*, citing *Patrick*, 154 F. Supp. 3d at 716. If the *McCullough* plaintiff did not use, for a tactical advantage, the privileged communication he disclosed as his deposition, here, then neither did Plaintiff use his privileged communications with Cohn as a sword when all he alleged in his pleading about them was that "on information and belief," FAC ¶ 101, Cohn did not call Jaramillo or Rios at trial because they would be impeached with their allegedly false, coerced statements to police. Then, at the deposition, Plaintiff did not disclose the privileged communications at all when Defendants asked him questions about his

8

basis for alleging in the FAC that Cohn did not call Jaramillo and Rios for that reason. The Court can find no waiver by implication or subject-matter waiver in this case with respect to Plaintiff's privileged communications with Cohn about why Cohn did not call Jaramillo and Rios.

The other matters Defendants want to raise in a re-deposition of Plaintiff came up not in the FAC, or at least not squarely there, but largely during Plaintiff's recent deposition testimony only, and in view of *McCullough*, they make an even less persuasive case for subject matter waiver. These subject matters include why Cohn did not call Plaintiff's family member alibi witnesses (the claim in the FAC is different, i.e., that various of the Defendants failed to investigate that alibi or its reliability, FAC ¶¶ 103-06), and Plaintiff's claims at his deposition (and not in the FAC) about evidence being planted on him (the gang "constitution") and planted in his aunt's basement (the gang sign photo) during an allegedly illegal search. The fact that Defendants could and did inquire into those issues at Plaintiff's September 2024 deposition, or that those issues came up during Plaintiff's responses to their deposition questions, do not sufficiently place those matters at issue in the case so as to trigger subject-matter waiver. *See McCullough*, 2019 WL 3776962, at *13 ("Defendants are attempting to use the disclosure of the privileged information in response to their own deposition questions as the thin end of a wedge to gain access to undisclosed information to which the privilege was not waived."). Again, the key inquiry is whether Plaintiff is attempting to use the information to influence the decisionmaker, particularly in a misleading way, and Defendants have failed to make that showing here. The Court does not see fairness under the circumstances as requiring anything close to the broad privilege waiver Defendants seek, or to the asserted waiver of some of Plaintiff's communications with still more of his attorneys, including postconviction counsel Greg Swygert and even his *current* counsel, in this litigation, about why some of Plaintiff's assertions in his deposition were not included in the FAC. The Court is

9

exercising its discretion in discovery management to find that such waiver did not occur and to decline to order Plaintiff's deposition to be re-opened on Defendants' requested topics.

## CONCLUSION

For the foregoing reasons, the Motion to Re-Depose is denied.

**SO ORDERED.**

                                              **ENTER:**

                                              **GABRIEL A. FUENTES**
                                              **United States Magistrate Judge**

**DATED:  November 22, 2024**