**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jose Cruz | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.    23 cv 4268 |
| v. | ) | |
| | ) | The Honorable Georgia N. Alexakis |
| Reynaldo Guevara, et al. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MALONEY'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS MOTION FOR SUMMARY JUDGMENT**

i

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………1

LEGAL STANDARD………………………………………………………………………2

STATEMENT OF FACTS………………………………………………………………...3

Argument……………………………………………………………………………………7

    I.    ASA MALONEY DID NOT FABRICATE EVIDENCE IN VIOLATION OF THE FOURTH AMENDMENT AND IS IN ENTITLED TO JUDGMENT ON COUNT IB……………………………………………………………………7

        a.    THE ALLEGED PARTIALLY FABRICATED STATEMENTS OF JARAMILLO AND RODRIGUEZ DID NOT BRING ABOUT PLAINTIFF'S INDICTMENT…………………………………………………….8

        b.    MEADOR'S IDENTIFIED PLAINTIFF AS THE SHOOTER ON THREE SEPARATE OCCASIONS WITHOUT ASA MALONEY'S INVOLVMENT, TESTIFIED PLAINTIFF WAS THE SHOOTER AND NEVER WAIVERED EVEN 24 YEARS LATER WHEN HE TOLD PLAINITFF'S COUNSEL THAT PLAINITFF WAS THE SHOOTER…………………………………………9

        c.    PLAINTIFF LACKS STANDING TO BRING ANY CLAIMS REGARDING HIS PRETRIAL DETENTION BECAUSE HE WAS LAWFULLY IN CUSTODY ON A DIFFERENT ATTEMPT MURDER TO WHICH HE ULTIMATELY PLED GUILTY…………………………………………10

        d.    ASA MALONEY IS ENTITLED TO QUALIFIED IMMUNITY REGARDING MEMORALIZING TRANSLATED STATEMENTS OF WITNESSES………………………………………………………….11

    II.    PROBABLE CAUSE EXISTED TO CHARGE PLAINTIFF PROVIDING AN ABSOLUTE DEFENSE TO PLAINTIFF'S CLAIMS OF MALICIOUS PROSECTUION AND UNLAWFUL DETENION IN COUNT III AND STATE LAW CLAIM OF MALICIOUS PROSECUTION………………………………13

        a.    VERNON MEADORS' IDENTIFICATION OF PLAINTIFF AS THE SHOOTER ESTABLISHES PROBABLE CAUSE TO ARREST AND CHARGE PLAINTIFF…………………………………………………...13

        b.    PLAINTIFF'S INDICTMENT BY A COOK COUNTY GRAND JURY IS PRIMA FACIE EVIDENCE OF PROBABLE CAUSE……………………...15

    III.    PLAINTIFF'S BRADY VIOLATION CLAIMS FAIL AGAINST ASA MALONEY……………………………………………………………………16

a. EVIDENCE OF ALLEGED MISCONDUCT AND/OR FABRICATION OF EVIDENCE REGARDING JARAMILLO COULD HAVE BEEN DISCOVERED THROUGH DUE DILIGENCE……………………………16

b. EVIDENCE OF ALLEGED MISCONDUCT AND/OR FABRICATION REGARDING RODRIGUEZ'S STATEMENT COULD HAVE BEEN DISCOVERED THROUGH DUE DILIGENCE……………………..………17

c. ASA MALONEY'S MISSING FELONY REVIEW FOLDER FOR OCTOBER 8, 1993, CANNOT FORM A BASIS FOR ANY BRADY OR OTHER CONSTITUTIONAL VIOLATION AGAINST HIM………...……17

d. ASA MALONEY LACKED KNOWLEDGE OF ANY ALLEGED MISCONDCUT BY OFFICERS AT AREA 5, INCLUDING GUEVARA….18

e. ASA MALONEY LACKS KNOWLEDGE OR ANY ALLEGED INVOLVMENT REGARDING THE OFFICERS PURPORTING TO HAVE FOUND THE ALMIGHTY LATIN KINGS CONSTITUION AND PHOTO OF PLAINTIFF MAKING A LATIN KINGS GANG SIGN ON PLAINTIFF'S PERSON AT THE TIME OF HIS ARREST………...………19

IV. THERE IS NO EVIDENCE ASA MALONEY PARTICPATED IN ANY ALLEGED CONSPIRACY…………………………………………………..20

V. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN ASA MALONEY'S FAVOR ON PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS…………………………………22

CONCLUSION……………………………………………………………………………………….22

## <u>STATEMENT OF AUTHROITIES</u>

| Case Citation | Page |
|---|---|
| *Andersen v. Glenview*, 17 CV 5761, 2019 WL 4261186 (ND. Ill. 2019) | 22 |
| *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). | 3 |
| *Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015). | 21 |
| *Boss v. Pierce, 263 F.3d 734 (7th Cir. 2001).* | 17 |
| *Bouto v. Guevara, No. 19-CV-02441, 2024 WL 4346561 (N.D. Ill. Sept. 30, 2024)* | 8 |
| *Braun v. Vill. of Palatine*, 56 F.4th 542 (7th Cir. 2022) | 13, 15 |
| *Brown v. City of Chicago*, 709 F. Supp. 3d 558 (N.D. Ill. 2023) | 14 |
| *Bridewell v. Eberle ,* 730 F.3d 672 (7th Cir. 2013) | 10 |
| *Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2008). | 16 |
| *Celafu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000) | 20 |
| *Celotex Corp v. Catrett*, 477 U.S. 317 (1986) | 2 |
| *Coleman v. City of Chicago*, No. 17-CV-08696, 2025 WL 2410325 (N.D. Ill. 2025) | 15 |
| *Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019)). | 14 |
| *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012). | 13 |
| *Holloway v. City of Milwaukee*, 43 F.4th 760 (7th Cir. 2022). | 16 |
| *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007)). | 14 |
| *Indeck N. Am. Power Fund, L.P.v. Norweb PLC*, 316 Ill. App. 3d 416 (2000) | 20 |
| *Lee v. Harris,* 127 F.4th 666, 672 (7th Cir. 2025) | 15 |
| *Illinois v. Gates*, 462 U.S. 213 (1983) | 14 |
| *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). | 10 |
| *Manuel v. City of Joliet, Ill.,* 580 U.S. 357 (2017) | 10 |
| *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). | 3 |
| *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102 (1999). | 21 |
| *Minix v. Canarecci,* 597 F.3d 824 (7th Cir. 2010) | 9 |
| *Mullenix v. Luna*, 577 U.S. 7 (2015) | 12 |
| *Patrick v. City of Chicago* 2023 WL 5622075 (7th Cir. 2023) | 10 |
| *Pearson v Callahan*, 555 U.S. 223 (2009) | 11 |
| *Public Finance Corp v. Davis*, 66 Ill.2d 85 (1976). | 22 |
| *Ramos v. City of Chicago*, 716 F.3d 1013 (7th Cir. 2013). | 10 |
| *Saucier v Katz*, 533 U.S. 194 (2001). | 11 |
| *Stinson v. City of Chicago*, No. 21 CV 3347, 2024 WL 4466371 (N.D. Ill. 2024) | 13 |
| *Strickler v Green*, 527 U.S. 263, 280 (1999) | 16 |
| *Swick v. Liautaud*, 169 Ill. 2d 504 (1996) | 13 |
| *Turner v. Hirschbach Motor Lines*, 854 F.3d 926 (7th Cir. 2017). | 21 |
| *Walker v. City of Chicago*, 596 F. Supp. 3d 1064 (N.D. Ill. 2022). | 12 |
| *U.S. v. Roberts*, 534 F.3d 560 (7th Cir. 2008) | 18 |

NOW COMES Defendant, former Assistant State's Attorney and current Cook County Associate Judge, Edward Maloney (ASA Maloney) by and through his counsel, Oberts Galasso Law Group,  and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Honorable Court for summary judgment. In support of his motion, Defendant submits the following memorandum.

## **INTRODUCTION**

This Court was required to take the allegations contained within Plaintiff's complaints as true for purposes of motions to dismiss. Plaintiff repeatedly amended his complaint in an effort to survive ASA Maloney's motions to dismiss.  Now is the time to view the evidence, not the complaint allegations.  The evidence demonstrates Meadors identified Plaintiff as the shooter during two different photo arrays and one lineup without Maloney's involvement. Meadors testified emphatically at trial that Plaintiff was the shooter and never waivered in his identification of Plaintiff as the shooter even after Plaintiff's attorney went to meet with him over 24 years later. Any allegation that Maloney pressured Meadors to identify Plaintiff as the shooter is simply that, an unsupported complaint allegation, contrary to Meadors testimony.

Plaintiff's allegation that ASA Maloney fabricated part of Pedro Jaramillo's handwritten statement is also not supported by Jaramillo's own testimony.  Yes, Jaramillo denies describing the shooter as "olive-complexed Hispanic or light skinned black"; however, Jaramillo does not allege any wrongdoing by ASA Maloney. Neither Plaintiff nor Jaramillo allege any wrongdoing by Detective Soto Maher. It is impossible for ASA Maloney to have fabricated Jaramillo's statement when he simply transcribing the English version of what Detective Soto Maher told him after Detective Soto translated Jaramillo's statements from Spanish and both Detective Soto and Jaramillo signed the statement after it was translated by Detective Soto to Jaramillo.

1

Jaramillo and Rodriguez's statements were not introduced at trial and never used against Plaintiff. Plaintiff's defense counsel Fred Cohen did not speak with Jaramillo or Rodriguez before trial. Neither the State nor Cruz called Jaramillo or Rodriguez to testify at trial.

Plaintiff's allegations against ASA Maloney are not supported by the evidence.

ASA Maloney seeks judgment on the following causes of action remaining against him in Plaintiff's Second Amended Complaint[1]:

- Count IB- Fabrication of Evidence in violation of the Fourth Amendment under 42 U.S.C. §1983,
- Count II - Brady Violation- Withholding of Exculpatory Evidence under 42 U.S.C. §1983,
- Count III - Malicious Prosecution and Unlawful Detention under 42 U.S.C. §1983,
- Count IV - Conspiracy to Deprive Cruz of his Constitutional Rights under 42 U.S.C. §1983,
- Count VII - State Claim for Malicious Prosecution,
- Count VIII - State Claim of Intentional Infliction of Emotional Distress, and
- Count IX - State Claim of Conspiracy.

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed.R.Civ.P.56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to

---

[1] The Court previously dismissed Count IA (Fabrication of Evidence under the 14th Amendment under 42 U.S.C. §1983) against Maloney with prejudice and Count V (Failure to Intervene under 42 U.S.C. §1983) against Maloney with prejudice. Dkt. #309 and 396. Plaintiff voluntarily dismissed Count X (Willful and Wanton Conduct) against Maloney. Dkt. #92, pg. 23.

support the non-moving party's case." *Id*. at 325. Once the movant meets this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "by affidavits or as otherwise provided for in Rule 56, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

<u>**STATEMENT OF FACTS**</u>

On October 6, 1993, Pedro Jaramillo was working the 10 p.m. to 6 a.m. shift at the gas station located at the corner of North Ave and Kedzie Ave in Chicago IL. (SOF ¶7). Vernon Meadors was at the bus stop located at North Ave near the gas station waiting for the bus. (SOF ¶8). The gas station was open 24 hours and was well-lit. *Id*. While Meadors waited for the bus, a young black man later identified as Antwane Douglas pulled up in an old car and asked Meadors if he knew somewhere he could get a jump for his car. (SOF ¶9) Meadors told Douglas to check with the attendant and Douglas began to walk toward the gas station. *Id*. Douglas asked the gas station attendant, Jaramillo, for jumper cables and Jaramillo told Douglas he could not open the doors to the gas station. *Id*. As Douglas was walking away, a car pulled into the gas station and stopped approximately 10-15 feet from Meadors. (SOF ¶10) Meadors observed that car was occupied by four people and Meadors' attention was drawn to the front seat passenger. *Id*. Meadors identified Plaintiff Jose Cruz as the front seat passenger in open court on the record.

3

(SOF ¶ 11). Meadors testified that nothing obstructed his view of Jose Cruz's face and fluorescent type lights illuminated Jose Cruz's face. *Id*. Meadors testified that he did not get a get a clear look at the other three occupants of the car besides Cruz and testified "Well, I saw them, but yet I didn't see them, because things started going pretty quick at that point, you know." *Id*.

Jaramillo was inside the gas station, inside the internal bullet proof glass encased register area counting money when the car pulled into the gas station. (SOF ¶12). Jaramillo looked up at the car before returning to counting money. *Id*. The car pulled into the gas station beyond the canopy overhanging the pumps. *Id*. The car was approximately 80 feet away from Jaramillo who was inside the store. *Id*. After Jaramillo heard shots, he turned towards the shots and observed the shooter for a matter of seconds, then ducked, grabbed the phone, and called 911. *Id*. Jaramillo observed the shooter standing in the darkness from 80 feet away. *Id*. The shooter was wearing black and Jaramillo did not see the individual's face and could not determine the individual's gender. *Id*.

Meadors overheard the shooter, who he later identified as Jose Cruz, ask Douglas what gang he was from and Douglas responded that he was a Vice Lord. (SOF ¶13). Meadors then observed Cruz and the other occupants exit the vehicle and Douglas began to run. *Id*. Meadors observed Jose Cruz and the other occupants bring out their weapons and start firing at Douglas. *Id*. Meadors observed Douglas flee into the street and Meadors dove to the ground after Cruz and the others began to fire their guns. (SOF ¶14) Meadors heard at least 30 bullets being shot, heard someone yell "witness," and Meadors was shot in the arm. *Id*. Meadors heard the guns "click" and heard the car drive off. *Id*. Meadors went to the gas station after Cruz and the other offenders fled the scene but was not allowed inside by Jaramillo; however, Jaramillo advised Meadors that

4

he called the police. (SOF ¶15). Police and an ambulance arrived on scene about a minute and a half later. *Id*.

Meadors testified to speaking with detectives as the hospital where he described the shooter as a male Hispanic about 5' 4", 145-150 pounds. (SOF ¶16). Jaramillo spoke with police inside the gas station after the shooting and described the shooter as a black race person dressed in all black. (SOF ¶28).

Meadors was released from the hospital later that day and returned home. *Id*. On the evening of October 6, 1993, detectives from the Chicago Police Department came to his residence and showed Meadors around 20 to 25 photos of Hispanic males. (SOF ¶17). Meadors testified that he recognized the shooter Jose Cruz in the stack of photos but did not tell the police because he did not want to jeopardize his family and was worried about his family living in the neighborhood with Latin Kings. *Id*.

On October 7, 1993, the Chicago Tribune Metro page ran a story about the shooting. (SOF ¶18) The story described Meadors as "40, of the 1300 block of North Kedzie Ave." and identified the source of the information as Sgt. Frank Cappitelli of Grand Central Area Violence Crimes. *Id*.

On October 8, 1993, Detective Tony Wojcik visited Meadors at his home and left his card. (SOF ¶20). After Detective Wojcik stopped by, Meadors talked it over with his family and decided to come forward and tell the police who the shooter was, and Meadors' father contacted the Chicago Police Department. *Id*. Detective Wojcik returned to Meadors residence and once his family returned home they were moved to safety and Meadors went to CPD Area 5. *Id*. Meadors told Detective Wojcik that he observed the shooter in the original stack of photos showed to him by other police officer on the evening of October 6, 1993. *Id*.

5

While at Area 5, police had Meadors review a book containing thousands of photos and Meadors identified one of the photos of Cruz as the shooter. (SOF ¶21). Police then had Meadors review the same group of 20 to 25 photos he was shown on October 6, 1993, and picked out the photo of Jose Cruz he previously recognized as the shooter. *Id*. The two photos were different photos of Jose Cruz. *Id*. After Jose Cruz was identified by Meadors as one of the shooters, he was arrested and brought to Area 5. (SOF ¶22). On October 9, 1993, Meadors returned to Area 5 and viewed a lineup where he again identified Jose Cruz as the shooter. (SOF ¶26). ASA Maloney was not present and did not participate in the three identification procedures by which Meadors identified Cruz as the shooter. (SOF ¶ 4, 17, 21, and 26).

Edward Maloney was an Assistant State's Attorney and was assigned to the Cook County State's Attorney's Office Felony Review Unit in October 1993. (SOF ¶1). Felony Review ASAs review evidence developed by police for potential felony charges and take statements from suspects or witnesses. *Id*. On October 9, 1993, at approximately 8:45 p.m., ASA Maloney transcribed the handwritten statement of Pedro Jaramillo in the presence of Detective Wojcik at Area 5 with Detective Maria Soto Maher ("Detective Soto Maher") acting as the translator. (SOF ¶35). Jaramillo does not speak English and ASA Maloney does not speak Spanish. (SOF ¶7 and 36). On October 9, 1993 at approximately 11:25 p.m., ASA Maloney transcribed the handwritten statement of Luis "Danny" Rodriguez in the presence of Detective Riccio at Area 5. (SOF ¶39). Plaintiff alleges part of a sentence describing the shooter contained within Jaramillo's handwritten statement was fabricated by Maloney.

ASA Maloney, in consultation with his trial supervisor ASA Bilyk, approved the filing of criminal complaints against Plaintiff on or about October 10, 1993. (SOF ¶40). On October 27, 1993, a Cook County Grand Jury returned a true bill of indictment against Jose Cruz for the

6

murder of Antwane Douglas and attempt murder of Vernon Meadors. (SOF ¶42). The handwritten statements of Jaramillo and Rodriguez were not presented to the grand jury for consideration or referenced in testimony. *Id*.

In December 1995, Plaintiff was tried by a jury in the Circuit Court of Cook County for the murder of Antwane Douglas and attempt Murder of Antwane Douglas. (SOF ¶45). Plaintiff was represented by Fred Cohen on the Douglas murder case and on a separate attempt murder case that occurred on or about May 26, 1993. (SOF ¶43, 44).

Jaramillo and Rodriguez did not testify at trial and their statements were never offered as evidence. (SOF ¶46). Vernon Meadors did testify at trial to the events described above and his identification of Plaintiff as the shooter. (SOF ¶8-21, 26). Vernon Meadors maintained that Jose Cruz was the shooter and told Cruz's attorney, Greg Swygert, that Cruz was the shooter approximately 24 years later when Swygert went to interview Meadors at his home. (SOF ¶27). Meadors never recanted his trial testimony and is now deceased. (SOF ¶ 27). Plaintiff was convicted and sentenced to 60 years in the Illinois Department of Corrections. (SOF ¶47). At the time of his conviction for the Douglas murder, Plaintiff had already pled guilty and was serving a 15-year sentence for the May 26, 1993 attempt murder. (SOF ¶47).

## **ARGUMENT**

**I.      ASA MALONEY DID NOT FABRICATE EVIDENCE IN VIOLATION OF THE FOURTH AMENDMENT AND IS IN ENTITLED TO JUDGMENT ON COUNT IB.**

**A.      THE ALLEGED PARTIALLY FABRICATED STATEMENTS OF JARAMILLO AND RODRIGUEZ DID NOT BRING ABOUT PLAINTIFF'S INDICTMENT.**

The Court previously dismissed Plaintiff's fabrication of evidence claims under the Fourteenth Amendment against ASA Maloney with prejudice as Jaramillo and Rodriguez

statements were never introduced or admitted at trial and could not have been material to the jury's judgment. Dkt. #395. The Court did note that a plaintiff may bring a fabrication of evidence claim under the Fourth Amendment in certain instances in which the allegedly fabricated evidence was not presented at trial. Dkt. #309, pg. 13 (citing to *Bouto v. Guevara*, No. 19-CV-02441, 2024 WL 4346561, at *4 (N.D. Ill. Sept. 30, 2024). In such instances, the claim would be "based on pre-trial detention resulting from the use of fabricated evidence to secure an indictment." *Id*. (citing to *Bouto* 2024 WL 4346561, at *4; and *Fields v Wharrie*, 672 F.3d 1107)( "[T]he fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him.") Plaintiff's Fourth Amendment fabrication of evidence claim is fatally flawed for the same reasons his Fourteenth Amended fabrication of evidence claim failed, the allegedly partially fabricated statements of Jaramillo and Rodriguez were not used to secure an indictment.

Under Illinois law, individuals can only be charged with a felony by way of an indictment by a Grand Jury or by an information after a finding of probable cause after a preliminary hearing by a judge. 725 ILCS 5/111-2. While police reports or news accounts may colloquially refer to a Felony Review ASA as "approving" charges against a criminal suspect, under Illinois law only a Grand Jury or Judge can approve charges against an individual by way of Indictment of individual. *Id*. Here, ASA Maloney, in consultation with his trial supervisor ASA Bilyk, approved the filing of criminal complaints for preliminary review against Plaintiff on or about October 10, 1993. (SOF ¶40). ASA Maloney was not involved in any formal criminal proceedings against Plaintiff, either as a prosecutor or a witness. (SOF ¶5).

On October 27, 1993, a Cook County Grand Jury returned a true bill of indictment against Jose Cruz for the murder of Antwan Douglas and attempt murder of Vernon Meadors,

8

formally charging Plaintiff. (SOF ¶42).

Furthermore, ASA Maloney did not have any involvement in securing the indictment against Plaintiff.

**B. MEADOR'S IDENTIFIED PLAINTIFF AS THE SHOOTER ON THREE SEPARATE OCCASIONS WITHOUT ASA MALONEY'S INVOLVMENT, TESTIFIED PLAINTIFF WAS THE SHOOTER AND NEVER WAIVERED EVEN 24 YEARS LATER WHEN HE TOLD PLAINITFF'S COUNSEL THAT PLAINITFF WAS THE SHOOTER.**

Moreover, any allegation that Plaintiff's indictment was brought about due to alleged misconduct and/or fabrication of evidence by ASA Maloney surrounding Meadors' three separate identifications of Plaintiff as the shooter fails because ASA Maloney was not present when Meadors identified Plaintiff as the shooter. Meadors repeatedly identified Plaintiff as the shooter before ASA Maloney was even called to the police station. Meadors also testified in court that Plaintiff was the shooter and told Plaintiff's attorney 24 years later that Plaintiff was the shooter. Meadors never claimed any wrongdoing by ASA Maloney.

"[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). There is no evidence ASA Maloney played any role in or possessed any knowledge of any alleged misconduct and/or fabrication of evidence nor is there any evidence of alleged misconduct or fabrication of evidence as to Meador's identifications, testimony and statements to Plaintiff's counsel 24 years later. Plaintiff cannot assert any claims under §1983 against ASA Maloney with regarding Meador's repeated identification of Plaintiff, sworn testimony and reaffirmation to Plaintiff's counsel.

9

C. **PLAINTIFF LACKS STANDING TO BRING ANY CLAIMS REGARDING HIS PRETRIAL DETENTION BECAUSE HE WAS LAWFULLY IN CUSTODY ON A DIFFERENT ATTEMPT MURDER TO WHICH HE ULTIMATELY PLED GUILTY.**

On October 9, 1993 when Plaintiff was arrested for the Douglas murder, he was on bond for a charge of Attempt Murder that occurred on or about May 26, 1993 in *People of the State of Illinois vs Jose Cruz* 93CR1347801. (SOF ¶43). On November 16, 1994, Plaintiff pled guilty to two counts of Attempt Murder in 93CR1347801 and sentenced to a term of 15 years in the Illinois Department of Corrections. *Id*. Plaintiff was credited for his time served in custody from May 25, 1993, to July 7, 1993, and October 9, 1993, to November 11, 1994. Plaintiff was convicted of the Douglas murder under 93CR25151 on December 15, 1995. (SOF ¶ 45). The entire time Plaintiff spent in pre-trial custody was credited to a lawful sentence for his separate Attempt Murder case.

Plaintiff cannot claim damages for time spent in custody, if that time was credited to a valid and lawful sentence. *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013); *Ramos v. City of Chicago*, 716 F.3d 1013, 1020 (7th Cir. 2013). Because the time Plaintiff spent in custody pretrial was allotted to a lawful sentence, Plaintiff cannot "seek damages related to [his] detention and therefore to this extent has no injury that a favorable decision by a federal court may address" *Patrick v. City of Chicago* 2023 WL 5622075, at *4 (7th Cir. 2023)(quoting *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017). Without a redressable injury, Plaintiff does not have Article III standing to pursue this claim. *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff's claims regarding pre-trial detention are governed under the Fourth Amendment. *Manuel v. City of Joliet, Ill.,* 580 U.S. 357, 366 (2017). Given that the entire time of Plaintiff's pretrial incarceration was credited to or part of a lawful sentence for a wholly separate offense, Plaintiff lacks standing to bring claims regarding his pre-trial detention. As such, this

10

Court lack standing to address said claims and should dismiss Plaintiff's claims under the 4th

Amendment.

### D.     ASA MALONEY IS ENTITLED TO QUALIFIED IMMUNITY REGARDING MEMORALIZING TRANSLATED STATEMENTS OF WITNESSES.

The qualified immunity doctrine "protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Pearson v Callahan,* 555 U.S. 223, 231

(2009) (internal quotations omitted). In assessing whether a state actor is entitled to qualified

immunity, courts undertake a two-part inquiry. *Saucier v Katz*, 533 U.S. 194, 200 (2001). First,

courts consider whether the facts alleged set forth a violation of a constitutional right. *Id.* at 201.

Second, courts consider whether the right was clearly established at the time of the alleged

misconduct. *Id.* Courts have discretion to decide which of these two prongs "should be addressed

first in light of the circumstances in the particular case at hand." *Id*.

ASA Maloney is alleged to have fabricated a portion of the handwritten statement of

Pedro Jaramillo that described the shooter as "olive-complexed Hispanic or light skinned black"

Dkt. 327 ¶62. Pedro Jaramillo does not speak English. (SOF ¶1). ASA Maloney utilized

Detective Maria Soto Maher (Detective Soto), a native Spanish speaker, to translate between

English and Spanish during the taking of Pedro Jaramillo's handwritten statement. (SOF ¶35, 36)

In order to take Jaramillo's statement, ASA Maloney would have asked questions in English,

Detective Soto translated those questions to Jaramillo into Spanish, Jaramillo responded in

Spanish, and Detective Soto translated Jaramillo' responses from Spanish to English. (SOF ¶36).

ASA Maloney did not speak Spanish and would have no way to know if the translation was

accurate. *Id*. Detective Soto Maher did not tell the state's attorney that Pedro Jaramillo told her

the shooter was "black". (SOF ¶37). Jaramillo's handwritten statement is an accurate summary

11

of what Detective Soto translated to ASA Maloney during the interview with Jaramillo. (SOF ¶36).

First and foremost, there is no evidence that ASA Maloney knew, as Plaintiff alleges, that Jaramillo did not describe the shooter as "olive-complexed Hispanic or light skinned black." ASA Maloney and Jaramillo do not speak the same language and Jaramillo's handwritten statement is an accurate summary of what Detective Soto translated to ASA Maloney during the interview with Jaramillo. (SOF ¶36). The handwritten statement was also signed by Jaramillo after Detective Soto Maher translated the English version contained on the paper to Spanish during the review of the statement with Jaramillo. (SOF ¶36, 37).

To prove an evidence fabrication claim, there must be evidence that defendants created evidence they knew to be false. *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1072 (N.D. Ill. 2022). Without the ability to communicate in the same language, there is no basis to assert that ASA Maloney knew that statement did not accurately reflect what Jaramillo told Detective Soto. This alone justifies granting ASA Maloney summary judgment on Plaintiff's evidence fabrication claim related to Jaramillo's statement.

Moreover, there is no clearly established right, presently nor back in 1993, that prosecutors use any particular translator to take statements from witnesses who do not speak English or follow any particular translation procedure to ensure that handwritten statements are accurately memorized from the witness native tongue into English. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The procedures utilized by ASA Maloney and Detective Soto were reasonable and did not violate the law as it stood in 1993 or at any time. ASA Maloney did not violate any clearly established right by using a police officer as an English to Spanish translator nor is there

12

any contention that the use of Detective Soto as the translator violated Plaintiff's constitutional rights. ASA Maloney is entitled to qualified immunity on Plaintiff's fabrication claims regarding Jaramillo's statement.

**II.     PROBABLE CAUSE EXISTED TO CHARGE PLAINTIFF PROVIDING AN ABSOLUTE DEFENSE TO PLAINTIFF'S CLAIMS OF MALICIOUS PROSECTUION AND UNLAWFUL DETENION IN COUNT III AND STATE LAW CLAIM OF MALICIOUS PROSECUTION.**

**A.     VERNON MEADORS' IDENTIFICATION OF PLAINTIFF AS THE SHOOTER ESTABLISHES PROBABLE CAUSE TO ARREST AND CHARGE PLAINTIFF.**

Both a Fourth Amendment malicious prosecution claim, and the Illinois tort of malicious prosecution require a plaintiff to establish an absence of probable cause for the proceeding. See *Stinson v. City of Chicago*, No. 21 CV 3347, 2024 WL 4466371, at *4 (N.D. Ill. Oct. 10, 2024) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996), and *Thompson v Clark*, 596 U.S. 36, 43–44 (2022). "[T]he independent existence of probable cause defeats any Fourth Amendment malicious prosecution claim." See *Kelley-Lomax v. City of Chicago*, No. 20 CV 04595, 2024 WL 4278118, at *6 (N.D. Ill. Sept. 24, 2024) (citing *Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015)). Moreover, the existence of independent probable cause sufficient to secure an indictment defeatS Plaintiff's fabrication of evidence claim under the 4th Amendment. *Bouto v. Guevara*, No. 19-CV-02441, 2024 WL 4346561, at *4 (N.D. Ill. Sept. 30, 2024) (citing *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012).

Probable cause exists whenever the facts and circumstances that are known to an official reasonably support a belief that the individual has committed, is committing, or is about to commit a crime. *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (quoting *Holmes*

13

*v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007)). A finding of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

"A single eyewitness identification of a suspect is sufficient to create probable cause, even if the identification is questionable or police doubt its accuracy." See *Brown v. City of Chicago*, 709 F. Supp. 3d 558, 570 (N.D. Ill. 2023) (citing *Moran v Calumet City*, 54 F.4th 483 499–500 (7th Cir. 2022), and *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019)). Plaintiff was identified by Vernon Meadors as the shooter in two separate photo arrays and a live line up. (SOF ¶21, 26). Each of Meador's three identifications of Plaintiff on its own is sufficient to establish probable cause. Vernon Meadors testified to the facts and circumstances surrounding his identifications at Plaintiff's criminal trial, identified Plaintiff in open court, and was cross-examined by Plaintiff's criminal defense attorney regarding his identification. (SOF ¶26). Meadors also maintained his identification of Plaintiff as the shooter 24 years later to Plaintiff's attorney, even after the wake of allegations against Guevara surfaced years prior and never alleged any wrongdoing. (SOF ¶27).

ASA Maloney was not even present for any of the three identification procedures utilized by police that identified Plaintiff as one of the shooters and did not play any role in the Meador's identification of Plaintiff. (SOF ¶4). Plaintiff may assert that these identification procedures were flawed in some way or inappropriately suggestive, but there is no basis to assert ASA Maloney knew of any issues with said identifications. *Id*. Furthermore, Meador's was cross-examined by Plaintiff's criminal defense attorney regarding his identification and never recanted. The existence of probable cause is dependent upon what each defendant knew. There is no evidence of any unconstitutional conduct related to Meador's identification of Plaintiff as the shooter and

14

there is also no evidence ASA Maloney knew of any alleged issues or unconstitutional conduct regarding Meadors' identifications of Plaintiff. *Coleman v. City of Chicago*, No. 17-CV-08696, 2025 WL 2410325, at *53 (N.D. Ill. Aug. 20, 2025)(Citing to *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022).

Moreover, additional facts support the determination of probable cause. Plaintiff admits to being at a bar near the intersection of North Ave and Kedzie Ave (same intersection of the murder) on the night of the murder, although he claims he left at 11:45pm. (SOF ¶50). Plaintiff presented no alibi witnesses, in this case or his criminal case, to support his whereabouts on the night of the murder. *Id*. Additionally, at the time of his arrest, Plaintiff had already been accused of discharging a firearm in Humboldt Park, a crime he later pled guilty too. (SOF ¶43, 52). While not evidence of this crime, it is reasonable to consider the violent character of a suspect in evaluating probable cause, particularly when the two incidents occurred on opposite ends of the same park.

As such, from ASA Maloney's perspective probable cause existed for the arrest and charging of Plaintiff. *Id*. Probable cause defeats Plaintiff's malicious prosecution and unlawful detention claims and supports judgement in ASA Maloney's favor as to Counts IB, III and VII.

**B.    PLAINTIFF'S INDICTMENT BY A COOK COUNTY GRAND JURY IS PRIMA FACIE EVIDENCE OF PROBABLE CAUSE**

Under Illinois Law a grand jury "indictment is prima facie evidence of probable cause." *Lee v. Harris*, 127 F.4th 666, 672 (7th Cir. 2025). To overcome this presumption, a plaintiff must advance "evidence that law enforcement obtained the indictment through improper or fraudulent means." *Id*. In other words, he must show "defendants knew they lacked probable cause to arrest him." *Id*. Plaintiff was indicted by the Cook County Grand Jury on October 27, 1993.

15

(SOF ¶42). ASA William Fahy sought the true bill of indictment against Jose Cruz and called Detective Wojcik as the only witness. *Id.* ASA Maloney was not involved in securing the indictment against Plaintiff, nor involved in Vernon Meadors' identification of Plaintiff as the shooter that constituted the probable cause to charge Plaintiff upon which the indictment was based. Plaintiff's indictment is additional prima facie evidence of probable cause to charge Plaintiff.

### III.  PLAINTIFF'S *BRADY* VIOLATION CLAIMS FAIL AGAINST ASA MALONEY.

To support his *Brady* claim, Plaintiff must prove three elements: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or because it was impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning that if it had been disclosed, there is a reasonable probability the proceeding would have resolved differently. *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir. 2008). Evidence that was otherwise available to the defendant through the exercise of reasonable diligence is not suppressed and thus cannot form the basis for a *Brady* claim. *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001); *Holloway v. City of Milwaukee*, 43 F.4th 760, 768 (7th Cir. 2022). Evidence is "material" "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Carvajal,* 542, F.3d at 567 (citing to *Strickler v Green*, 527 U.S. 263, 280 (1999).

> #### A.  EVIDENCE OF ALLEGED MISCONDUCT AND/OR FABRICATION OF EVIDENCE REGARDING JARAMILLO COULD HAVE BEEN DISCOVERED THROUGH DUE DILIGENCE

Plaintiff was represented by attorney Fred Cohen (deceased) through trial on the Douglas murder. (SOF ¶44). Despite Jaramillo being one of two eyewitnesses to the murder AND Jaramillo's documented description of the offender changing from black to "olive-complexed Hispanic or light skinned black," Fred Cohen did not speak with Pedro Jaramillo. *Id.* Reasonable

16

diligence by defense counsel would have made the allegedly false information regarding Jaramillo's description of the offender in his handwritten statement and the alleged misconduct by Detective Guevara known to Plaintiff's defense counsel. Since this information could reasonably have been discovered through reasonable diligence, it cannot be said to be suppressed or used to support a *Brady* claim. *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). Plaintiff's attempt to recast this blatant ineffective assistance of counsel as a *Brady* violation should be rejected.

**B. EVIDENCE OF ALLEGED MISCONDUCT AND/OR FABRICATION REGARDING RODRIGUEZ'S STATEMENT COULD HAVE BEEN DISCOVERED THROUGH DUE DILIGENCE**

Similarly, Fred Cohen did not speak with Rodriguez regarding his allegedly partially fabricated statement. (SOF ¶44). Rodriguez was Plaintiff's cousin and lived at 3334 W. Beach (where Cruz resided and allegedly was at time of the murder) from at least 1993 to present. (SOF ¶38). Reasonable diligence by defense counsel would have made the allegedly false information regarding Plaintiff's whereabouts on the night of the murder known to defense counsel. Since this information could reasonably have been discovered through reasonable diligence, it cannot be said to be suppressed or used to support a *Brady* claim. *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). Plaintiff attempts to recast this blatant ineffective assistance of counsel as a Brady violation should also be rejected.

**C. ASA MALONEY'S MISSING FELONY REVIEW FOLDER FOR OCTOBER 8, 1993, CANNOT FORM A BASIS FOR ANY BRADY OR OTHER CONSTITUTIONAL VIOLATION AGAINST HIM.**

Plaintiff contends "Maloney either intentionally did not contemporaneously document his interactions with the Officer Defendants and his interview with Meadors on October 8, in violation of the CCSAO's policies, or he destroyed the documents, also in violation of the

17

CCSAO's policies, as well as in violation of Cruz's constitutional rights." Dkt. #327, ¶65. First and foremost, there is no evidence that Meadors informed ASA Maloney of any exculpatory evidence or anything contrary to his later unreacted trial testimony on October 8, 1993. *U.S. v. Roberts*, 534 F.3d 560, 572 (7th Cir. 2008) (plaintiff must provide some evidence other than mere speculation or conjecture that evidence was exculpatory and suppressed by the Government). As such, there is no evidence that any "material" information learned during any conversation between Meadors and ASA Maloney on October 8 was suppressed to support a *Brady* claim or anything that contradicts the accounts detailed in CPD reports. In fact, we know there was no exculpatory information provided by Meadors because he testified Plaintiff was the shooter at trial and confirmed his identification to Plaintiff's attorney over 17 years later.

Additionally, as an Assistant State's Attorney with the Felony Review Unit in October 1993, ASA Maloney documented activities taken while reviewing cases in a felony review folder. (SOF ¶41) At the conclusion of his shift, ASA Maloney would turn in his felony review folder to the Felony Review Office at 26th and California to the possession, custody, and control of the Cook County State's Attorney's Office. *Id*. As such, ASA Maloney would have relinquished custody and control over his October 8, 1993 Felony Review folder to the Cook County State's Attorney's Office over three decades ago and cannot be expected to know what happened to his folder decades later. There is no signed verification, affidavit, testimony or otherwise by the Cook County State's Attorney's Office record keeper that the October 8th Felony Review folder was never prepared or never existed.

### D. ASA MALONEY LACKED KNOWLEDGE OF ANY ALLEGED MISCONDCUT BY OFFICERS AT AREA 5, INCLUDING GUEVARA

During his entire career as an ASA, ASA Maloney is not aware of any instances in which an officer and detective manipulated a false witness identification or fabricated evidence. (SOF

18

¶6) ASA Maloney is not aware of any instance in which an officer or detective withheld and/or destroyed any exculpatory evidence in any case in which he was involved. *Id*. ASA Maloney has no memory of ever meeting or speaking with Detectives Guevara or Halvorson and no documents produced demonstrate they had any interaction. (SOF ¶49). There is no evidence ASA Maloney knew of any alleged systematic police misconduct at CPD Area 5 in October 1993. Moreover, Plaintiff cannot establish that ASA Maloney authored any police reports or knew of any false or altered information allegedly contained therein. ASA Maloney did not even participate in any of the three identification procedures by which Meadors identified Plaintiff as the shooter or any alleged misconduct related thereto.

An individual cannot be liable for suppressing information that they themselves have no knowledge of in the first place. ASA Maloney lacks any personal involvement upon which §1983 liability can be based for alleged *Brady* violations for the alleged suppression of information regarding systematic misconduct at Area 5, allegedly fabricated or altered police reports, or any alleged misconduct related to Meadors three identifications of Plaintiff as the shooter.

E.    **ASA MALONEY LACKS KNOWLEDGE OR ANY ALLEGED INVOLVMENT REGARDING THE OFFICERS PURPORTING TO HAVE FOUND THE ALMIGHTY LATIN KINGS CONSTITUTION AND PHOTO OF PLAINTIFF MAKING A LATIN KINGS GANG SIGN ON PLAINTIFF'S PERSON AT THE TIME OF HIS ARREST.**

Plaintiff denies possessing the "Chapter Constitution of the Almighty Latin Kings" or photo of him representing a Latin Kings gang sign with his hand when arrested. (SOF ¶24). Plaintiff alleges police officers searched his home and located the photo of him representing a Latin Kings gang sign with his hand. *Id*. First and foremost, this cannot be the basis of a *Brady* claim because, if true, Plaintiff knew these items were not on his person at the time of his arrest

19

and that any police reports or testimony to the contrary was false. As such, this information was not "suppressed," a necessary element for any *Brady* claim.  Additionally, Plaintiff has not established ASA Maloney had any knowledge of this alleged fabrication in claiming these items were found on Plaintiff's person. Nor is it a reasonable assumption that officers informed ASA Maloney that they conducted an illegal and warrantless search of Plaintiff's home to obtain these items, as Plaintiff now claims.  Lacking any personal involvement, Plaintiff cannot establish a *Brady* claim, or any other Constitutional claim, regarding these two pieces of evidence against ASA Maloney.

## IV.    THERE IS NO EVIDENCE ASA MALONEY PARTICPATED IN ANY ALLEGED CONSPIRACY.

Conspiracy is not an independent basis of liability in §1983 actions. *Celafu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). As such, if a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails. *Id*. Civil conspiracy under Illinois law, much like a §1983 conspiracy claim, is not an independent tort. *Coleman v. City of Chicago*, No. 17-CV-08696, 2025 WL 2410325, at \*31 (N.D. Ill. Aug. 20, 2025)(Citing to *Indeck N. Am. Power Fund, L.P.v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000) ("Where, as here, a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails") Plaintiff fails to establish any constitutional violation or independent tort against ASA Maloney, thereby dooming any alleged conspiracy claim against him.

Moreover, even if Plaintiff survives summary judgment on one of his constitutional claims, he has failed to establish any evidence of an alleged conspiracy. To establish conspiracy liability in a § 1983 claim, Plaintiff must show evidence that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually

20

depriving him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Similarly, civil conspiracy under Illinois law requires an agreement and a tortious act committed in furtherance of that agreement. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). An agreement is a "necessary and important" element of this cause of action, and "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017).

There is no evidence that ASA Maloney entered into an agreement with any other defendant to violate Plaintiff's constitutional rights. Plaintiff's allegation that ASA Maloney learned of Defendant Officers' alleged plan to frame him for a murder upon arrival at Area 5 and "Maloney, most likely because he was pressured by one or more of the Officer Defendants, went along with this plan and conspiracy" is baseless and without any evidentiary support. Dkt. # 327, ¶63.

There is no evidence of such an agreement between Defendant Officers and ASA Maloney. Plaintiff's allegations are not evidence. At this stage, Plaintiff must provide evidence, not allegations, to support his claims. There is no evidence to support ASA Maloney disregarded his ethical duties as an ASA and an attorney and, within a moment's notice of meeting Defendant Officers for the first time, agreed to a plan to conspire to frame Plaintiff for murder, agreed to take certain overt acts in furtherance of said conspiracy and did take such overt acts allegedly agreed to at the time of said meeting with Defendant Officers. This Court should grant summary judgment in ASA Maloney's favor on Plaintiff's federal and state conspiracy claims contained in Counts IV and IX.

21

## V. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN ASA MALONEY'S FAVOR ON PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

A cause of action for Intentional Infliction of Emotional Distress ("IIED") must be premised on conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency. *Public Finance Corp v. Davis*, 66 Ill.2d 85, 90 (1976). Plaintiff charges were supported by probable cause based on Meadors' repeated identifications of Plaintiff as the shooter. A grand jury indicted Plaintiff on the charges. Pursuing criminal charges against an individual supported by probable cause and a grand jury indictment does not constitute IIED. *Larsen v. Elk Grove*, 433 Fed. Appx. 470, 474 (7th Cir. 2011) (arrest supported by probable cause could not be extreme and outrageous); *Andersen v. Glenview*, 17 CV 5761, 2019 WL 4261186, *6 (ND. Ill. 2019) ("Lawfully pursuing criminal charges falls short" of IIED). This Court should grant summary judgment as to Plaintiff's IIED claim contained in Count VIII.

### CONCLUSION

Defendant ASA Maloney respectfully requests this Honorable Court grant summary judgment in his favor and against Plaintiff on all counts and award costs and all further relief so wrongfully incurred.

<div style="margin-left:50%">

Respectfully submitted,

s/ William B. Oberts
Special State's Attorney for Defendant former ASA
and current Associate Judge Edward Maloney

</div>

William B. Oberts
Kevin C. Kirk,
Oberts Galasso Law Group
181 W. Madison, Suite 4700
Chicago, IL 60602
wboberts@obertsgalasso.com
kckirk@obertsgalasso.com
docket@obertsgalasso.com