# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
| | ) | Case No. 23-cv-4268 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Alexakis |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, ANTHONY WOJCIK, | ) | |
| ROBERT RUTHERFORD, ANTHONY RICCIO, | ) | JURY DEMAND |
| ROBERT BORIS, STEPHEN GAWRYS, | ) | |
| EDWARD MINGEY, GERI LYNN YANOW, | ) | |
| as the Special Representative for the Estate of | ) | |
| ERNEST HALVORSEN, Deceased, EDWARD | ) | |
| MALONEY, and THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>OFFICER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Date: January 5, 2026

Respectfully submitted,

<u>/s/ Lisa M. Meador</u>
LISA M. MEADOR, Attorney No.6270259
*One of the Attorneys for Defendants*
*Wojcik, Rutherford, Riccio, Boris, Gawrys,*
*Mingey, and Yanow, special representative*
*for the Estate of Halvorsen*

James G. Sotos
Josh. M. Engquist
Lisa M. Meador
Jeffrey C. Grossich
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
lmeador@sotoslaw.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD............................................................................................................3

ARGUMENT .......................................................................................................................3

I. Vernon Meadors's Identifications Provided Ample Probable Cause to Defeat the State and Federal Malicious Prosecution and Federal Unlawful Detention Claims .................3

    A. The GOCR was not altered .................................................................5

    B. Meadors's hospital statement was not fabricated .................................................5

    C. Movants did not coerce Meadors's identifications of Cruz .................................6

    D. Probable Cause was not dissipated by "tainted identification procedures:..........6

II. Alternatively, Arguable Probable Cause Entitles Movants to Qualified Immunity on Federal Malicious Prosecution and Unlawful Detention Claims .....................................7

III. Movants Did not Proximately Cause Cruz's Prosecution....................................................8

IV. Cruz's Fourteenth Amendment Due Process Evidence Fabrication Claim Fails .............9

    A. The GOCR was not fabricated and, in any event, it was not used at trial ............9

    B. There is no evidence that any Movant coerced Meadors to identify Cruz .........10

    C. The Latin King photo and Constitution do not support Cruz's fabrication claim..........................................................................................................11

        1. The photograph was not fabricated and its admission was unchallenged….12

        2. The Latin King Constitution was not material and unchallenged as evidence ..............................................................................................13

    D. Other allegedly fabricated police reports and statements were not used at trial ..............................................................................................14

ii

**TABLE OF CONTENTS**
**-CONTINUED-**

V.      Cruz's Suggestive Identification Claim is Foreclosed as a Matter of Law and Alternatively, by Qualified Immunity...............................................................15

VI.     Movants are Entitled to Summary Judgment on Cruz's *Brady* Claim(Count II) ...........17

        A.      Evidence of Movants' misconduct in this and other Area 5 investigations........18

        B.      Assertedly exculpatory statements of witnesses and related police reports .......18

        C.      The suppression of the allegedly illegal seizure of Cruz's Latin King Photo ....19

VII.    Summary Judgment is Warranted on Cruz's Failure to Intervene Claim (Count V)......21

VIII.   Cruz's Federal (Count IV) and State (Count VIII) Conspiracy Claims Also Fail..........22

        A.      Absence of underlying tort violations necessitates dismissal of conspiracy claims ...................................................................................................................22

        B.      There is no evidence to support Cruz's conspiracy claims................................22

        C.      Cruz's §1985 federal conspiracy claim lacks evidence of racial animus ...........23

IX.     Insufficient Evidence Exists of Personal Involvement for Certain Movants..................23

X.      Summary Judgment is Warranted on Cruz's IIED Claim (Count IX)...........................25

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page**

*Abbott v. Sangamon Cnty, Ill.*, 705 F.3d 706 (7th Cir. 2013) ........................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................21

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) ...........................................18

*Beck v. Ohio*, 379 U.S. 89 (1964) ...............................................................................3

*Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015).................................................22

*Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025) ..........................................2, 11, 15, 17

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................... *passim*

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ...................... *passim*

*Burritt v. Ditlefsen*, 807 F.3d 239 (7th Cir. 2015) ........................................................7, 8

*Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972)..................................................................21

*Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2008) ...............................................20

*Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769 (N.D. Ill. 2015) ...................................22

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) ........................................................8, 24

*Coleman v. Alabama*, 399 U.S. 1 (1970) ..................................................................16

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019).................................. *passim*

*Cooney v. Casaday*, 746 F. Supp. 2d 973 (N.D. Ill. 2010) .........................................25

*Cnty. of Los Angeles v. Mendez*, 581 U.S. 420 (2017) ...............................................8

*de Lima Silva v. Wisconsin Dep't of Corrections*, 917 F.3d 546 (7th Cir. 2019).........................24

*Doe v. Bobbitt,* 881 F.2d 510 (7th Cir. 1989) ...............................................................7

*Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *10 (N.D. Ill. Feb. 6, 2014)......21

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) .......................................................15

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ...................................... 24-25

**TABLE OF AUTHORITIES**
**-CONTINUED-**

**Cases:**                                                                                                              **Page**

*Grayson v. City of Aurora*, 157 F. Supp. 3d. 725 (N.D. Ill. 2016) ...............................................23

*Green v. Benden,* 281 F.3d 661 (7th Cir. 2002)..........................................................................23

*Gunville v. Webster*, 583 F.3d 979 (7th Cir. 2009).....................................................................20

*Humphrey v. Staszak*, 148 F.3d 719 (7th Cir. 1998).....................................................................8

*Iglesias v. Guevara*, No. 19-cv-06508, 2025 WL 3171611 (N.D. Ill. Nov. 13, 2025).................17

*Johnson v. Guevara*, No. 20 C 4156, 2025 WL 903813 (N.D. Ill. Mar. 24, 2025)................10, 17

*Johnson v. Meade*, No. 22 CV 6931, 2025 WL 564305 (N.D. Ill. Feb. 20, 2025).........................7

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) .................................................................18

*Jones v. York*, 34 F.4th 550 (7th Cir. 2022)..................................................................................12

*Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009) .........................................................................24

*Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .................................8

*Lozman v. Putnam*, 379 Ill. App. 3d 807 (1st Dist. 2008) ............................................................23

*Majeske v. Fraternal Order of Police Local Lodge No. 7*, 94 F.3d 307 (7th Cir. 1996)...............23

*Munson v. Gaetz*, 673 F.3d 630 (7th Cir. 2012) ...........................................................................23

*Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017)...........................................................................3

*McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102 (1999) ...........................................22

*McDaniel v. Polley*, 847 F.3d 887 (7th Cir. 2017) ..........................................................................5

*Monell v. N.Y. City of Department of Social Services,* 436 U.S. 658 (1978) ...............................21

*Moorer v. City of Chicago*, 92 F.4th 715 (7th Cir. 2024)................................................................6

*Moorer v. Valkner*, No. 18 CV 3796, 2021 WL 5998533 (N.D. Ill. Dec. 20, 2021)....................16

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) ....................................................4, 9, 13, 17

*Munson v. Gaetz*, 673 F.3d 630 (7th Cir. 2012) ...........................................................................23

### TABLE OF AUTHORITIES
### -CONTINUED-

**Cases:**                                        **Page**

*Mustafa v. City of Chicago*, 442 F.3d 544 (7th Cir. 2006) ...........................................3

*Mwangangi v. Nielsen*, 48 F.4th 816 (7th Cir. 2022) ....................................................21

*Neil v. Biggers*, 409 U.S. 188 (1972)............................................................................17

*Paroline v. U.S.*, 572 U.S. 434 (2014) ...........................................................................8

*Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020)....................................... *passim*

*People v. Turner*, 240 Ill. App. 3d 340 (1st Dist. 1992). ................................................4

*Pepper v. Vill. of Oak Park*, 430 F.3d 805 (7th Cir. 2005)...........................................23

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) .................................................11

*Qian v. Kautz,* 168 F.3d 949 (7th Cir. 1999) .............................................................. 3-4

*Saunders-El v. Rohde* 778 F.3d 556 (7th Cir. 2015)......................................................18

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008). ...........................................................22

*Stinson v. City of Chicago*, No. 21 CV 3347, 2024 WL 4466371 (N.D. Ill. Oct. 10, 2024) ...........3

*Swanigan v. City of Chicago*, 881 F.3d 577 (7th Cir. 2018)..........................................16

*Swearingen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852 (7th Cir. 2010) ...............................25

*Tangall v. Stuckey*, 135 F.3d 510 (7th Cir. 1998).........................................................7

*Thayer v. Chiczewski*, 705 F.3d 237 (7th Cir. 2012) ....................................................3

*Turner v. Hirschbach Motor Lines*, 854 F.3d 926 (7th Cir. 2017) ................................22

*United States v. Funches*, 84 F.3d 249 (7th Cir. 1996)..................................................16

*Vega v. Tekoh,* 597 U.S. 134 (2022)..............................................................................15

*Velez v. City of Chicago*, No. 1:18-cv-08144, 2023 WL 6388231 (N.D. Ill. Sept. 30, 2023) .........5

*Wade v. Collier*, 783 F.3d 1081 (7th Cir. 2015) .......................................................3, 4

## TABLE OF AUTHORITIES
## -CONTINUED-

**Cases:**                                                                                     **Page**

*Washington v. City*, 98 F.4th 860 (7th Cir. 2024)..........................................................................11

*Whitlock v. Brown*, 596 F.3d 406 (7th Cir. 2010)........................................................................ 7-8

*Williams v. Martinez*, No. 22-CV-06602, 2023 WL 6141494 (N.D. Ill. Sept. 20, 2023)................3

*Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003) ............................................................................23

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)..........................................................................21

*Young v. City of Chicago*, 987 F.3d 641 (7th Cir. 2021) ..................................................................3

**Statutes:**                                                                                  **Page**

42 U.S.C. § 1983................................................................................................................. *passim*

42 U.S.C. § 1985.................................................................................................................2, 22, 23

FRE 801 ..............................................................................................................................19

Defendants Anthony Wojcik, Robert Rutherford, Anthony Riccio, Robert Boris, Stephen Gawrys, Edward Mingey, and Geri Lynn Yanow, as Special Representative of the Estate of Ernest Halvorsen (deceased) (collectively, "Officer Defendants" or "Movants"), by counsel, submit this Memorandum of Law in Support of their Motion for Summary Judgment, and state:

## INTRODUCTION

Plaintiff Jose Cruz was arrested in 1993 and convicted in 1995 for a brazen murder and attempted murder committed on Chicago's North Side, based primarily on the identification of Vernon Meadors—the surviving victim. Meadors identified Cruz as one of a group of men who opened fire on Antwane Douglas after determining he belonged to a rival gang, and who then shot Meadors because he witnessed the shooting. Meadors's trial testimony secured Cruz's conviction.

Cruz's conviction withstood decades of judicial scrutiny. Notably, his direct appeal and initial post-conviction petitions made no accusations of police of misconduct in obtaining Meadors's identification. That claim was invented a quarter-century after Cruz's conviction—first surfacing in a 2018 successive post-conviction petition filed by Northwestern University's Center on Wrongful Convictions (CWC). But that petition was never adjudicated on the merits; rather the Cook County State's Attorney's Office (CCSAO) unceremoniously dropped its opposition to Cruz's successive post-conviction petition in 2022, and Cruz's conviction was then vacated.

Cruz cites that vacatur to launch this federal civil-rights suit, reviving and expanding the same unsupported theories advanced by the CWC. Cruz sues the City of Chicago, former police detective Guevara, and former Cook County Assistant State's Attorney (ASA) Edward Maloney. Cruz also sues Movants here—former detectives Wojcik, Rutherford, Riccio, Boris, Gawrys, Mingey, and Halvorsen ("Movants" or "Officer Defendants")—for fabricating evidence in violation of due process (Count IA) and the Fourth Amendment (Count IB), withholding

1

exculpatory evidence (Count II), federal malicious prosecution and unlawful detention (Count III), federal conspiracy (Count IV), and federal failure to intervene (Count V), along with state law claims for malicious prosecution (Count VII), intentional infliction of emotional distress (IIED) (Count VIII), and conspiracy (Count IX). (*See*, Dkt. 327, Second Amended Complaint ("SAC")).

Cruz's claims against Movants are that they coerced Meadors, maliciously prosecuted Cruz, and withheld and fabricated material evidence. Initially, and critically, there is no evidence that Movants, or anyone, coerced Meadors to identify Cruz. Meadors consistently identified Cruz as the shooter, never recanted his identification, and confirmed that he independently identified Cruz because he was certain that Cruz was the shooter. Meadors's identification provided ample probable cause and defeats Cruz's federal and state malicious prosecution and unlawful detention claims. Alternatively, Movants were not the proximate cause of Cruz's prosecution, and the presence of arguable probable cause entitles Movants to qualified immunity on those claims. Similarly, there is no evidence that Movants concealed any exculpatory evidence.

The due process fabrication of evidence claim fails because the allegedly fabricated evidence was either not used at trial and/or was not material to Cruz's conviction. And to the extent Cruz raises a suggestive identification claim, it is not only foreclosed by *Blackmon v. Jones*, 132 F.4th 522, 524–25 (7th Cir. 2025), but also there is no evidence that any identifications were suggestive or unreliable. Alternatively, Movants are entitled to qualified immunity on that claim.

Finally, the existence of probable cause and absence of a valid due process claims require summary judgment in Movants' favor on Cruz's derivative claims for federal conspiracy and failure to intervene (Count V), as well as the derivative state law IIED and conspiracy claims. And to the extent Cruz alleges a § 1985 federal conspiracy claim, it is unsupported by any evidence of racial animus. Moreover, certain Movants are entitled to dismissal because there is insufficient

evidence of their personal involvement in the alleged misconduct. In short, Cruz has failed to marshal evidence to support his claims, and Movants are entitled to summary judgment on all counts. Movants incorporate their Local Rule 56.1 Statement of Uncontested Material Facts herein.

## LEGAL STANDARD

Individual Defendants adopt the legal standards set forth in co-Defendant Guevara's memorandum of law in support of summary judgment.

## ARGUMENT

**I.      Vernon Meadors's Identifications Provided Ample Probable Cause to Defeat the State and Federal Malicious Prosecution and Federal Unlawful Detention Claims.**

"Both a Fourth Amendment malicious prosecution claim and the Illinois tort of malicious prosecution require a plaintiff to establish an absence of probable cause for the proceeding." (Dkt. 309, 11/12/2024 Order, p. 18) (citing *Stinson v. City of Chicago*, No. 21 CV 3347, 2024 WL 4466371, at *4 (N.D. Ill. Oct. 10, 2024). And probable cause also defeats § 1983 unlawful pretrial detention claims. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

Probable cause is evaluated at the time the legal process is initiated. *See Williams v. Martinez*, No. 22-cv-06602, 2023 WL 6141494, at *4 (N.D. Ill. Sept. 20, 2023) (citing *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368 (2017)). "This is an objective inquiry; [the court] do[es] not consider the subjective motivations of the officer." *Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012)).

Probable cause is a low bar. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (citations omitted). It exists when an officer is aware of facts and circumstances "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). It "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Qian v. Kautz,* 168 F.3d

3

949, 953 (7th Cir. 1999). A grand jury indictment is prima facie evidence of probable cause which can only be rebutted through proof that police secured it through improper or fraudulent means, and plaintiff must show that defendants knew they lacked probable cause. *Wade*, 783 F.3d at 1085.

The Seventh Circuit and this Court have expressly held that a single identification, even if questionable or the officers subjectively doubt it, establishes probable cause. *E.g., Moran v. Calumet City*, 54 F.4th 483, 499–500 (7th Cir. 2022); (Dkt. 309, 11/12/2024 Order, p. 18). And Illinois law presumes that an identification provided by a crime victim is inherently reliable. *People v. Turner*, 240 Ill. App. 3d 340, 357–58 (1st Dist. 1992).

Neither the presumption of reliability nor indictment-based probable cause is rebutted here, given Meadors's objectivity, certainty, and opportunity to observe Cruz, and the lack of evidence that the indictment was procured through impropriety or fraud. Meadors was both a victim and eyewitness—perfectly positioned just feet away to identify the person he "very clearly" saw talking to the murder victim, directly under a light for several seconds before he emerged from the car and opened fire first on Douglas, (SOF ¶¶ 10-12), before shooting Meadors. (*Id*. at ¶¶ 12, 14-15.)

At the hospital, Meadors described the shooter as a mustachioed Hispanic male, about 26, 5'4", 150 lbs., chubby, wearing a black zippered leather jacket and flat hunter's hat. (SOF ¶ 24.) This description resembled Cruz, who was described in his arrest report and lineup photo as a mustachioed Hispanic male, 24, 5'7", 185 lbs. (*See* lineup photo, p. 19, supra; SOF ¶ 46.) Meadors positively identified Cruz as the shooter from a book containing hundreds of photos of known Latin Kings, and in a live lineup before charging. (SOF ¶¶ 36-41, 71-76.) He testified at trial that Cruz was the shooter he saw that night. (*Id*. at ¶ 103.) Meadors had no grudge against Cruz.

4

Meadors's unbiased identifications foreclose the probable cause-based claims. *See Velez v. City of Chicago*, No. 1:18-cv-08144, 2023 WL 6388231, at \*14 (N.D. Ill. Sept. 30, 2023) (granting summary judgment on unlawful detention and malicious prosecution claims based on photo identification). To undermine Meadors's identifications, Cruz alleges: (A) Wojick altered a General Offense Case Report (GOCR) to change the shooter's race; (B) Dets. Boris, Rutherford, and McDonald fabricated Meadors's description of the offender at the hospital; (C) Defendants coerced Meadors to falsely identify Cruz; and (D) the identification procedures tainted Meadors's identification. Each of these sensational allegations are meritless and belied by the record.

## A. The GOCR was not altered.

Cruz alleges that Det. Wojcik altered Officers Odegard and Fleming's GOCR, changing Meadors's original description of the front-seat passenger shooter from Black to Hispanic. (Dkt 327, SAC, ¶ 29.) But Cruz has mustered no evidence that Meadors ever described the shooter's race as "Black" or that Wojcik ever altered the GOCR. (SOF ¶ 149-150.) Cruz retained handwriting analysis and ink dot testing experts to support this allegation, but never disclosed any expert opinion or other evidence to suggest that the GOCR was ever altered. (*Id.* at ¶ 150.)

## B. Meadors's hospital statement was not fabricated.

Cruz likewise alleges that Dets. Boris and Rutherford fabricated Meadors's October 6 hospital statement by falsely reporting that Meadors described the shooter as Hispanic, 5'4", 145-160 lbs., chubby, with a little mustache. (Dkt. 327, ¶¶ 39, 40; SOF ¶ 24.) Yet again, Cruz has no evidence in support. When asked what description he remembered giving at the hospital, Meadors testified, "About five-four, 145, 150 pounds, …Male…Hispanic…kind of chubby…[with] a thin mustache." (SOF ¶ 104.) Cruz has no evidence that Meadors's description was fabricated.

5

### C. Movants did not coerce Meadors's identifications of Cruz.

Cruz alleges police coerced Meadors's identification by leaking his name and residential block to the *Chicago Tribune*, thereby exposing him to retaliation from the Latin Kings. (Dkt. 327, SAC, ¶¶ 48, 57.) Cruz contends officers then exploited Meadors's resulting fear by offering him protection only if he agreed to identify Cruz as the shooter. (*Id*. at ¶¶ 47, 53.) Cruz has no evidence to support this baseless speculation. It is also undermined by Meadors's own trial testimony that he was "frightened to death" before his name and address even appeared in the *Tribune* because he knew he lived in a Latin King neighborhood. (SOF ¶¶ 24, 28-29, 33-34.)

Meadors consistently explained that fear alone drove his reluctance to identify Cruz—first due to his residence in a Latin King-controlled neighborhood, then heightened by the *Tribune* article, and ultimately intensified by a direct threat on his life. (SOF ¶ 28-34.) And Cruz offers nothing to support his speculative "false flag" theory that police manufactured Meadors's fear to manipulate him into identifying Cruz. In fact, Meadors was asked at trial, "Did anyone at any time tell you who to pick out?" and Meadors answered, "No, no." (*Id*. at ¶ 108.)

### D. Probable Cause was not dissipated by "tainted identification procedures."

Finally, Cruz's Fourth Amendment claim (Count IB) alleges that "tainted identification procedures" caused his false identification. (Dkt. 327, SAC, ¶ 199(b).) But the threshold that would preclude police from relying on a victim's identification to establish probable cause is very high. Specifically, because "an identification by even one eyewitness who lacks an apparent grudge against the accused person is sufficient to demonstrate probable cause," Cruz can only prevail by demonstrating that Meadors's identifications were so unreliable that "defendants knew they lacked probable cause…" *See Moorer v. City of Chicago*, 92 F.4th 715, 721 (7th Cir. 2024).

Here, Cruz has no evidence that any Movant coached, manipulated, or coerced Meadors

6

during the photo array, photo book review, or live lineup—each independently sufficient to create probable cause. *See McDaniel v. Polley*, 847 F.3d 887, 895, n.5 (7th Cir. 2017) (single photo array identification, even if tentative, can establish probable cause). The record is uniform: Meadors consistently identified a Hispanic male—Cruz—as the shooter. (SOF ¶¶ 10, 24, 30-34, 36-38, 39-41, 103-104, 107-109.) Accordingly, Movants are entitled to summary judgment on Cruz's federal Fourth Amendment unlawful detention claim, as well as his federal and state malicious prosecution claims (Counts IB, III, and VII).

## II.     Alternatively, Arguable Probable Cause Entitles Movants to Qualified Immunity on the Federal Malicious Prosecution and Unlawful Detention Claims.

Qualified immunity protects "public officials performing discretionary functions against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Tangall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998) (emphasis removed) (quoting *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir. 1989)). "It gives public officials breathing room to make reasonable but mistaken judgments about open legal questions." *Abbott v. Sangamon Cnty, Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) (quotations omitted). Though an affirmative defense, "[o]nce a defendant raises the defense of qualified immunity, the plaintiff bears the burden of defeating it either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott*, 705 F.3d at 723–24.

Qualified immunity bars "wrongful detention, and malicious prosecution claims … if the officer had arguable probable cause to arrest." *Johnson v. Meade*, No. 22 CV 6931, 2025 WL 564305, at *9 (N.D. Ill. Feb. 20, 2025) (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) "Qualified immunity tolerates reasonable mistakes regarding probable cause" (*Whitlock v.*

7

*Brown*, 596 F.3d 406, 413 (7th Cir. 2010)) and it applies "if a reasonable officer could have mistakenly believed that probable cause existed." *Burritt*, 807 F.3d at 250 (quotations omitted). "Arguable probable cause exists when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (emphasis in original) (quotations omitted).

Meadors's multiple identifications of Cruz provided arguable probable cause to charge Cruz. Cruz cannot identify clearly established law that informed Movants that Meadors's identifications of Cruz failed to establish probable cause. Movants are thus entitled to qualified immunity on Cruz's federal malicious prosecution and unlawful detention claims (Count III).

### III. Movants Did not Proximately Cause Cruz's Prosecution.

Section 1983 "creates a species of tort liability," and the "common law of torts" informs the elements necessary for recovery. *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 431 (2017) (quotations omitted). Proximate causation is a core element (*see id.*) that requires a "direct relation between the injury asserted and the injurious conduct alleged." *Mendez*, 581 U.S. at 431 (quoting *Paroline v. U.S.*, 572 U.S. 434, 444–45 (2014)). "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Because "the State's Attorney, not the police, prosecutes a criminal action," the chain of causation stemming from a wrongful arrest is broken by an indictment, absent evidence of pressure, influence, or knowing misstatements by police. *See, e.g.*, *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017).

Here, the causal chain was severed when ASA Maloney elected to charge Cruz. (SOF ¶ 86.) Importantly, Maloney interviewed Cruz, Meadors, Jaramillo, Rodriguez, and McClaren,

8

which allowed him to independently evaluate and assess credibility. (*Id*. at ¶¶ ¶¶ 42-43, 68-70, 78-81, 82-84, 86.) Maloney approved charges based on his interview of Cruz who claimed he was home at the time of the shooting, his interviews of McClaren and Rodriguez which refuted that alibi, as well as Meadors's identification. (*Id*. at ¶ 86.) There is no evidence that Movants misled or pressured prosecutors into charging Cruz. As such, Cruz's claims in Counts III and VII fail as a matter of law.

### IV. Cruz's Fourteenth Amendment Due Process Evidence Fabrication Claim Fails.

To prevail on his due process evidence fabrication claim (Count IA), Cruz must establish four elements: (1) Defendants knowingly fabricated evidence; (2) the fabricated evidence was used against him at trial; (3) the evidence was material; and (4) damages. *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1156–57 (N.D. Ill. 2022). To establish fabrication, a plaintiff must clear a "high bar" by proving that the defendant "knew—with certainty [that the information a witness provided] was false." *Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019). And evidence is "material" only if there is a reasonable likelihood that it affected the trial's outcome. *Moran*, 54 F.4th at 498–99. Finally, a plaintiff must show that the purportedly fabricated evidence was itself against the Defendant at *trial* to support a due process. *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). *See also Brown*, 633 F. Supp. 3d at 1159–60.

#### A. The GOCR was not fabricated and, in any event, it was not used at trial.

As described above (Sec. 1(A) & (B) supra), there is no evidence—none—that Meadors ever described the shooter's race as Black rather than Hispanic, or that the GOCR or any other report was altered or fabricated to conceal that description. To the contrary, all records, witness testimony, and Cruz's own admissions uniformly demonstrate that Meadors always identified the shooter as a Hispanic male. (SOF ¶¶ 10, 24, 30-34, 36-38, 39-41, 103-104, 107-109.) Cruz's

9

fabrication theory rests entirely on conjecture. *See Johnson v. Guevara*, No. 20 C 4156, 2025 WL 903813, at *19 (N.D. Ill. March 24, 2025) (holding that fabrication claim based on pure speculation cannot proceed).

Even if Cruz could raise a fact question as to whether the GOCR was altered, it was never introduced or used against him at his criminal trial (SOF ¶ 119)—dooming the claim as a matter of law. *See Patrick*, 974 F.3d at 835.

### B. There is no evidence that any Movant coerced Meadors to falsely identify Cruz.

At Area 5 on October 8, 1993, Meadors first identified Cruz from an album containing hundreds of photos of Latin Kings, after which he selected Cruz's photo from the stack of photos he was first showed at his home on October 6th. Meadors then identified Cruz for a third time at a live lineup on October 9. (*Id*. at ¶¶ 36-37, 39-40, 71-76.) At trial, Meadors confirmed each of these identifications and identified Cruz in open court as the shooter. (*Id*. at ¶¶ 103-109.) Meadors expressly denied that anyone coerced him, remained steadfast that Cruz was the shooter, and confirmed he would never forget Cruz's face. (*Id*. at ¶¶ 12, 108, 133-136, 149.)

As described above (Sec. 1(C) supra), Cruz uncovered not a shred of evidence to support his speculation that Movants used the *Chicago Tribune* to coerce Meador's identification of Cruz by conditioning protection from the Latin Kings on his cooperation. (Dkt. 327, SAC, ¶¶ 47, 48, 53, 57.) No one, including Meadors himself, ever testified or otherwise suggested that Meadors's identification of Cruz as the shooter resulted from pressure, coercion, or fabrication by any officer, and Cruz admits he has no evidence to the contrary. (SOF ¶¶ 133-136, 149.) Indeed, Meadors unequivocally denied that anyone told him who to pick out. (SOF ¶ 115.)

Meadors further explained, without contradiction, that his initial reluctance stemmed from fear of gang retaliation. (SOF¶ 28, 38.) Despite escalating fears arising from living in a Latin King-

controlled neighborhood, the *Tribune* article, and a direct threat to his wife and family, Meadors ultimately came forward because, as he testified, "this man shot me and I watched him kill someone, he needed to be off the street before he done it again." (SOF¶ 28, 33-34, 38, 105-106.) No evidence suggests otherwise and there is no evidence that the witness protection provided to Meadors was conditioned on his cooperation.

Even if Cruz could raise a factual dispute as to the source of the *Chicago Tribune's* reference to his identifying information and whether it prompted Meadors's testimony, his fabrication claim still fails because he cannot show that any Movant "knew—with certainty—" that Meadors's identification of Cruz "was false." *Coleman v. City of Peoria*, 925 F.3d at 344; *see also Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) (affirming summary judgment where plaintiff alleged officer coerced witness to cooperate in shooting investigation).

Finally, the circumstances of Meadors's identification of Plaintiff were known to the prosecution and the choice to introduce his testimony was made by them. (SOF at ¶¶ 97.) Indeed, the trial prosecutor specifically testified that prior to trial he interviewed Meadors, placed weight on his identification of Cruz, and assessed Meadors as a "very credible" witness. (*Id*.) As explicitly addressed in *Blackmon*, "since an investigating officer is not responsible for the decisions of the prosecutor and the judge, without which there could not have been a problem under the Due Process Clause, it is hard to see why damages would be appropriate." *Blackmon*, 132 F.4th at 525; *see also Washington v. City*, 98 F.4th 860, 873 (7th Cir. 2024) (police not liable for the prosecution's decision to introduce questionable evidence at trial).

### C. The Latin King photo and Constitution do not support Cruz's fabrication claim.

Cruz alleges Movants fabricated Wojcik's testimony that, when searching Cruz after his arrest, they found on his person a photo depicting Cruz throwing a Latin Kings gang sign and part

11

of a Latin Kings Constitution. (Dkt. 327, SAC, 192(e)(f), 199(e)(f).) He alleges they obtained the photograph during an illegal and undocumented search of his bedroom (SOF ¶ 140) and retrieved the Latin Kings Constitution from another file at the police station. (*Id*. at ¶ 142.)[1]

**1. The photograph was not fabricated and its admission was unchallenged.**

Cruz testified in his deposition that, years after his conviction, his aunt, Ada Pacheco, told him that police came to her house after his arrest, asked if they could enter, and searched his room in the basement. (SOF ¶¶ 139.) He now contends—over a quarter-century later—that the use of this evidence deprived him of a fair trial. This theory is fundamentally flawed.

First, Cruz concedes the photo is authentic; by definition, therefore, it was not fabricated. *See Brown*, 633 F. Supp. 3d at 1156 ("fabricated evidence…is necessarily untrue"). Second**,** Wojcik's allegedly fabricated police report about finding the photo on Cruz's person was never introduced at trial, and his trial testimony about where he obtained the photo is protected by absolute immunity. *Jones v. York*, 34 F.4th 550, 563 (7th Cir. 2022) (police officer is "absolutely immune from damages liability for his trial testimony"); *Patrick*, 974 F.3d at 835 (requiring use of fabricated evidence at trial); *Brown*, 633 F. Supp. 3d at 1159–60 (same).

Third**,** the location from which the photo was recovered—whether from Cruz himself or from his basement—is immaterial. Either way, the photo accurately identified Cruz as a Latin King. Its authenticity and evidentiary value did not depend at all, let alone materially, on how police obtained it. The photograph was one of several pieces of evidence the State used to demonstrate that Cruz was a Latin King. (SOF ¶¶ 100, 107, 111-118.)

Cruz's gang membership was never disputed by his criminal defense attorney, and Cruz

---

[1] There is no documentation that this search ever occurred, and Cruz speculates that Wojcik (possibly with Riccio and/or Gawrys) conducted the search and that Wojcik or Gawrys either did not document or destroyed the documentation of this illegal search. (SOF ¶ 141-142.)

himself admits that he was a Latin King in 1993 and that the photo is genuine. (*Id.* at ¶ 50-51, 96, 101-102, 110-118, 121.) His decades-later attempt to create a fact dispute over how the police obtained it is immaterial as a matter of law.

Fourth, and finally, Cruz's unexplained failure to seek suppression of the photo before or during trial also defeats his claim. While he claims he did not learn of the alleged search until around 2000, he necessarily knew at the time of his arrest that he did not have the photograph on him and could have moved to suppress it on that basis. Nor did Cruz ever produce an affidavit or testimony from Pacheco to corroborate his claim—despite having over a decade between the time she allegedly told him of the search and her death in 2021. (SOF ¶ 44, 137, 139-141.) Because Cruz necessarily knew at the time of his trial that the report of the photo's seizure was fabricated, he was obligated to assert his rights then—not remain silent through decades of litigation and resurrect the claim now. *See Coleman*, 925 F.3d at 347 (Defendants "cannot be held liable for depriving [plaintiff] of his constitutional rights simply because … he forfeited them").

### 2. The Latin King Constitution was not material and unchallenged as evidence.

Cruz's claim about the Latin King Constitution fares no better. (Dkt. 327, SAC, ¶ 115, 116.) Its admission through Wojcik's trial testimony cannot sustain a fabrication of evidence claim because, in light of the extensive evidence presented about Cruz's gang membership, it was immaterial. *Patrick*, 974 F.3d at 835. As one piece within a wealth of undisputed evidence establishing Cruz's gang affiliation, Cruz cannot begin to show that "there is a reasonable likelihood [that its admission] affected the judgment of the jury." *See Moran*, 54 F.4th at 498–99.

Gang evidence permeated the trial, from openings through closings. (SOF ¶¶ 100-104, 111-118, 121.) Cruz's own counsel acknowledged Cruz's gang membership multiple times, in opening statements and closing arguments. (*Id.*at ¶¶ 102, 121.) Meadors and Wojcik both testified that

Meadors identified Cruz from a Latin Kings photo album. (*Id*. at ¶¶ 36-37.) Wojcik testified that Cruz admitted he was a Latin King when he was arrested. (*Id*. at ¶ 6.) Petrone testified that the shooting occurred in Latin King territory. (*Id*. at ¶ 6, 28, 106, 112.) Cruz was arrested wearing a jacket emblazoned with the word "Kings", which a gang expert testified would readily identify him as a Latin King. (*Id*. at ¶ 117.) Also, the jury was shown the photo of Cruz flashing a Latin King gang sign, the authenticity of which is undisputed. (*Id*. at ¶ 50, 96, 116-118.) In the face of that overwhelming record, Cruz cannot plausibly maintain that the Constitution's absence would have altered the verdict. *See Patrick*, 974 F.3d at 835 ("[I]f the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty.").

Cruz's failure to move to suppress the Constitution further undermines any notion of materiality. Cruz purportedly knew at the time of trial that Wojcik's testimony and related reports—which Cruz admits he possessed—were fabricated, yet he did not assert his rights then. Instead, he raises this theory for the first time in a suit for money damages three decades later. That is insufficient. As the Seventh Circuit has explained, Defendants "cannot be held liable for depriving [plaintiff] of his constitutional rights simply because the trial court rejected [his] legal arguments, or because he forfeited them." *See Coleman*, 925 F.3d at 347.

**D. Other allegedly fabricated police reports and statements were not used at trial.**

Cruz claims that Movants Wojcik and Riccio fabricated portions of Jaramillo's and Rodriguez's handwritten statements, and reports documenting those statements. (Dkt. 327, SAC, ¶¶ 92-113, 121.) He further alleges that Movants Rutherford and Boris fabricated a GPR that said Rios glared at Meadors and approached Jaramillo at the scene. (*Id*. at ¶¶ 101-109) But it is undisputed that the State did not introduce the Statements of Jaramillo or Rodriguez—nor any testimony related to those Statements—or any police reports of any kind into evidence against

14

Cruz at his criminal trial. (SOF ¶ 119.) That defeats Cruz's fabrication of evidence claim as a matter of law. *See Brown*, 633 F. Supp. 3d at 1159–60; *Patrick*, 974 F.3d at 835. If the evidence was not used at trial, then there is no harm "and without a harm there is...no tort." *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014).

**V.      Cruz's Suggestive Identification Claim is Foreclosed as a Matter of Law and Alternatively, by Qualified Immunity.**

Count IA alleges that Officer Defendants' use of purportedly "tainted identification procedures" violated Cruz's due process rights and entitles him to damages. (Dkt. 327, SAC, ¶¶ 191, 192(b).) That theory fails as a matter of law. In *Vega v. Tekoh*, the Court squarely held that *Miranda v. Arizona*'s prophylactic safeguards do not create a free-standing constitutional right enforceable through § 1983 damages. 597 U.S. 134, 142 (2022). Rather, "[t]he identification of a *Miranda* violation and its consequences ... ought to be determined at trial," and "except in unusual circumstances, the exclusion of unwarned statements should be a complete and sufficient remedy." *Id.* at 152 (cleaned up).

Recently in 2025, in *Blackmon v. Jones*, the Seventh Circuit extended that principle to suggestive identification claims, holding that "the police [do not] violate a suspect's constitutional rights by showing witnesses a suggestive photo array or conducting a suggestive lineup[.]" 132 F.4th 522, 524–25 (7th Cir. 2025). The "appropriate remedy" for such concerns—had Cruz raised them in his criminal case—"would have been exclusion of the evidence at trial, not damages." *Id.* at 526. *Blackmon* recognized a narrow exception for "unusual circumstances": where suggestive identification procedures were accompanied by fraud or manufactured evidence, such as coaching a witness to identify a suspect and concealing those tactics from prosecutors. *Id.* at 525–26. As discussed above (Sec. 1(D), supra), there is no evidence of such conduct here.

15

The absence of fraud in connection with Meadors's identifications is significant because Cruz's specific complaints—that he "was the only recurring participant" in the procedures, that only Hispanic fillers were used, (Dkt. 327, SAC, ¶¶ 54-56), that he had to sit on a phonebook during the lineup (*id.* at ¶¶ 71, 72), and that the lineup only contained three fillers (*id*. at ¶ 73)— would not have warranted exclusion even if Cruz had moved to suppress Meadors's identifications. Courts routinely reject undue suggestiveness claims involving far more conspicuous disparities. *See, e.g.*, *United States v. Funches*, 84 F.3d 249, 253 (7th Cir. 1996) (lineup not suggestive though suspect 3-5" shorter and 20-45 lbs. lighter than fillers)*; Moorer v. Valkner*, No. 18 CV 3796, 2021 WL 5998533, at *12 (N.D. Ill. Dec. 20, 2021) (some fillers bald but suspect had hair); *Coleman v. Alabama*, 399 U.S. 1, 6 (1970) (only defendant wore a hat, as did an assailant).

Here, Cruz and the three Hispanic fillers were similarly complected and had similar weights, haircuts, facial hair, and clothing. (*See* lineup photo, p. 10, supra.) All sat in the same posture, looked in the same direction, and displayed no distinctive accessory. (*Id.*) And Cruz's claim that the phonebook made him stand out (Dkt. 327, SAC, ¶¶ 71, 72) is belied by the photograph: the phonebook is barely visible (*id.*) and if anything, brought Cruz closer in height to the fillers—making the lineup *less*, not more, suggestive.

Moreover, even if the procedures were suggestive, exclusion would have been warranted only if Cruz could show that the identifications were so lacking in indicia of reliability that the crucible of cross examination was insufficient to safeguard due process concerns. *See Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018); *Coleman*, 925 F.3d at 347 (eyewitness identification are excluded only when "the unduly suggestive circumstances are so egregious as to taint the entire trial."). Cruz cannot meet this demanding standard. Meadors confidently identified him on four occasions and confirmed that he "very clearly" saw Cruz and would never forget his

16

face. (SOF ¶¶ 10, 30-34, 36-38, 39-41, 103.)[2] These circumstances mirror those in which assertedly suggestive identifications were nonetheless deemed reliable. *See, e.g.*, *Neil v. Biggers*, 409 U.S. 188, 200 (1972) (victim had ample opportunity to see and interact with her assailant and expressed "no doubt" that he was her assailant).

In any event, *Blackmon* independently forecloses Cruz's suggestive identification under qualified immunity because "[b]efore 2002 neither this circuit, nor any other, had held that an officer could be liable for employing suggestive identification procedures." *Blackmon*, 132 F.4th at 526. Because the events at issue occurred nearly a decade earlier—in 1993—there was no clearly established law at the time imposing such liability. *See Iglesias v. Guevara*, No. 19-cv-06508, 2025 WL 3171611, at *10–11 (N.D. Ill. Nov. 13, 2025) (immunity bars claim arising from events that occurred in 1993 and 1994); *Johnson*, 2025 WL 903813, at *24 (same for 1991 events).

## VI.    Movants are Entitled to Summary Judgment on Cruz's *Brady* Claim (Count II).

Count II alleges that Movants violated *Brady v. Maryland*, 373 U.S. 83 (1963) by suppressing: (1) systemic evidence of their own misconduct in this and other Area 5 investigations, and (2) their fabrication of witness statements and police reports. (Dkt. 327, SAC, ¶¶ 203-209.)[3] Notably, Cruz cannot identify a single report or document that was allegedly suppressed.

To prevail on a civil claim against the police for failing to disclose exculpatory and/or impeachment evidence to prosecutors, a plaintiff must prove: (1) the evidence was favorable to his defense; (2) the officer intentionally—or at least recklessly—concealed the evidence, and (3) prejudice. *Moran*, 54 F.3d at 925 F.3d at 493. Suppression occurs only when the evidence "was

---

[2] Cruz misleadingly describes Meadors as being uncertain by pointing to his trial testimony that he "saw them, but yet [he] didn't see them." (Dkt. 327, SAC, ¶ 79.) The questions immediately preceding and following that cherry-picked snippet reveal that Meadors's uncertainty concerned only *the other assailants* in the car, not Cruz himself, as Meadors twice confirmed that he observed Cruz's face. (SOF ¶ 10-12.)

[3] Cruz also alleges that Movants suppressed their coercion of Meadors's identification, but as explained above (Sec. 1(C), supra) he has no evidence that Meadors was ever coerced.

not otherwise available to the defendant through the exercise of reasonable diligence." *Brown*, 633 F. Supp. 3d at 1163. And it is only "material if there is a reasonable probability that the jury's verdict would have been different if the evidence had been presented." *Id.* "[E]vidence cannot be said to have been suppressed...if it was already known to the defendant." *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017).

## A. Evidence of Movants' misconduct in this and other Area 5 investigations.

The allegation that Officer Defendants withheld generalized evidence of police misconduct at Area 5 fails under *Saunders-El v. Rohde*, which held that "*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." 778 F.3d 556, 562 (7th Cir. 2015), reh'g denied (Feb. 26, 2015). As here, *Saunders-El* flatly rejected the notion that a plaintiff can successfully "charge the officers with a *Brady* violation for keeping quiet about their [alleged] wrongdoing." *Id.* at 562.

## B. Assertedly exculpatory statements of witnesses and related police reports.

Cruz contends that Movants Halvorsen and Mingey, and Defendant Guevara, suppressed or destroyed a contemporaneous report of their October 6th home interview of Meadors when he did not select Cruz's picture from a photo array. (Dkt. 327, SAC, ¶¶ 44-46.) He makes the same accusation against Movants Wojcik, Riccio, and Gawrys concerning their October 8th interactions with Meadors, which culminated in Meadors identifying Cruz from a photo album at Area 5. (*Id.* at ¶¶ 51-52.) But there is ***no evidence*** that any contemporaneous report of those interactions was prepared on October 6th or 8th and no "require[ment that] police... keep written records of all their investigatory activities[.]" *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988). In any event, all of the interactions between Movants and Meadors on the 6th and the 8th were fully described in Boris, Rutherford, and McDonald's October 6 GPR and Supplementary Report and

18

Wojcik and Riccio's October 10 Cleared/Open Report. Cruz acknowledges those reports were produced to him and his defense attorneys (SOF ¶ 93), eliminating any potential *Brady* violation.

Cruz also alleges that Movants suppressed witnesses' accounts on the night of the shooting that the shooters were Black. (Dkt. 327, SAC, ¶ 3(b).) Initially, Movants dispelled this accusation above in connection with Meadors, who never said the shooters were Black. (Sec. 1(A) supra.) And the October 6 GPR and Supplementary Report of Boris, Rutherford and McDonald's on-scene interviews with Jaramillo and Rios *do document* their statements to police that the shooters (in the case of Jaramillo) and occupants of a speeding car (Rios) were Black. (SOF ¶¶ 22-23, 26.)

Cruz does not dispute that he had both of those reports at the time of his criminal trial. (*Id.* at ¶¶ 93.) Indeed, his attorney argued during opening statement that Jaramillo viewed the lineup and failed to identify Cruz (*id.* at ¶ 143-146) and tried to introduce the non-identification through McDonald's testimony.[4] And Cruz's post-conviction attorney, Swygert, also testified that he too was unaware that the statements of Rios and Jaramillo were suppressed. (*Id.* at ¶ 131.)

### C. The suppression of the allegedly illegal seizure of Cruz's Latin Kings Photo.

Though not alleged in his Complaints, Cruz asserted—near the end of discovery and in response to contention interrogatories—that Riccio, Gawrys and Wojcik either failed to document or destroyed documentation of the allegedly illegal seizure of his gang photograph. (*Id.* at ¶ 141.) To the extent this functions as a *Brady* claim, based on the notion that suppression of the search prevented him from challenging admission of the photo at trial, it fares no better than the photograph-based fabrication claim.

First, Cruz's claim that an illegal search was conducted in the first place rests entirely on

---

[4] The Court rebuffed that effort on grounds of hearsay, and invited counsel to call Jaramillo if he wanted that testimony. (*Id.* at ¶ 146.) However, neither Cruz nor the State called Jaramillo to testify. (*Id.* at ¶ 145.)

his inadmissible hearsay testimony recounting what Pacheco allegedly told him several years after the search. *See* FRE 801; *Gunville v. Webster*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment"). Accordingly, there is no competent evidence that the search that Cruz cites ever occurred.

Second, as explained above (Sec. 4(C)(i), Supra), Cruz cannot explain his failure to move to suppress the photo before trial—an omission that, in the *Brady* context, establishes a lack of reasonable diligence. *See Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008) ("Suppression does not occur when the defendant could have discovered [the evidence] himself through reasonable diligence") (internal quotations omitted).

Although Cruz claims he was only alerted to the illegal search years after his conviction, he and his attorney indisputably knew well before trial that the police were contending—falsely, according to Cruz—that the photo was found on Cruz's person after his arrest. Cruz and his counsel possessed, in advance of trial, Wojcik and Riccio's October 10th Report (SOF ¶ 93-94), which stated that they found the photo on Cruz after his arrest (SOF ¶ 51) Taking Cruz at his word, he knew this assertion was false at the time. Indeed, Cruz testified at his deposition that he always knew the photo was in his room at his aunt's home when he was arrested. (SOF ¶¶ 140-141.)

With reasonable diligence, Cruz's team could have spoken with his aunt and/or other occupants of the house in advance of trial to glean information about the alleged search to support a motion to suppress. He did not. (SOF ¶ 96, 139-141.) His failure to do so forecloses any showing that the allegedly withheld information was unavailable through exercise of reasonable diligence. *See Brown*, 633 F. Supp. 3d at 1163 (suppression element satisfied only if evidence "was not otherwise available to the defendant through the exercise of reasonable diligence").

20

In short, Cruz has admitted that he has no knowledge of, and cannot point to, a single document or piece of evidence that was withheld during his criminal case. (SOF ¶¶ 94, 131.) Movants are thus entitled to judgment as a matter of law on Cruz's *Brady* claim (Count II).

**VII.     Summary Judgment is Warranted on Cruz's Failure to Intervene Claim (Count V).**

A plaintiff states a federal claim for failure to intervene by showing that a "constitutional violation has been committed by a law enforcement official; *and* the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Under § 1983, failure to intervene is "a way to prove the liability of a state actor who was not a direct participant in the challenged wrongdoing." *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *10 (N.D. Ill. Feb. 6, 2014).

Cruz's failure to intervene claim rests primarily on his allegations of fabricated police reports, coerced identifications, and *Brady* violations as outlined above. Cruz provides nothing more than speculation that any Movant engaged in the alleged misconduct and/or violated Cruz's constitutional rights. Cruz's failure to establish a material fact on any underlying constitutional claim against any Movant warrants summary judgment on Count V.

Furthermore, Seventh Circuit Judge Frank Easterbrook cast doubt on the viability of the failure to intervene theory of § 1983 liability, explaining that "'[f]ailure to intervene' sounds like vicarious liability," which is untenable, as "[t]he Supreme Court has held many times that § 1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022) (Easterbrook, J., concurring) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Monell v. N.Y. City of Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Defendants recognize this Court is bound to follow *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972), which validates the claim, but raise the argument that such jurisprudence is out of step with *Monell*, so as to preserve the defense.

21

**VIII.  Cruz's Federal (Count IV) and State (Count VIII) Conspiracy Claims Also Fail.**

Cruz alleges conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and state law.

**A.  Absence of underlying tort violations necessitates dismissal of conspiracy claims.**

Conspiracy is not an independent basis of § 1983 liability. *See, e.g., Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Like failure to intervene, conspiracy claims are derivative of the federal constitutional and state law malicious prosecution claims, respectively. Where those underlying claims fail, so too do the conspiracy claims fail. *See, e.g., Smith*, 550 F.3d at 617 (conspiracy not an independent basis of liability under § 1983). As explained above, (Sec. 7, supra), Cruz lacks evidence that any Movant violated his federal constitutional rights or maliciously prosecuted him under Illinois law, without which his derivative conspiracy claims fail.

**B.  There is no evidence to support Cruz's conspiracy claims.**

To establish liability for a conspiracy under § 1983, a plaintiff must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). *See also Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (a "defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy").

"Although the existence of a conspiracy may be established through circumstantial evidence, the evidence may not be speculative." *Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 781 (N.D. Ill. 2015). "Moreover, the circumstantial evidence 'must be clear and convincing.'" *Id*. (quoting *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134 (1999)). "A defendants' '[m]ere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." *Id*. at 782 (quoting *McClure*, 188 Ill. 2d. at 134). "In determining

22

if a conspiracy exists, '[i]f the facts are as consistent with innocent conduct as they are with guilty conduct, then the evidence is neither clear nor convincing." *Id*. at 782, n. 7 (quoting *Lozman v. Putnam*, 379 Ill. App. 3d 807, 828 (1st Dist. 2008)). Here, Cruz has no evidence—circumstantial or otherwise—of a conspiratorial agreement amongst the Officer Defendants or ASA Maloney. *See Grayson v. City of Aurora*, 157 F. Supp. 3d. 725, 744–45, 747 (N.D. Ill. 2016) (dismissing conspiracy claim under Illinois law and § 1983 conspiracy based on same analysis that there was no evidence of an agreement); *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (circumstantial evidence may provide adequate proof of a conspiracy, but such evidence cannot be speculative). Therefore, Cruz's federal and state law conspiracy claims fail against the Officer Defendants.

### C. Cruz's § 1985 federal conspiracy claim lacks evidence of racial animus.

To establish a conspiracy under § 1985(3), Cruz must prove "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Green v. Benden,* 281 F.3d 661, 665 (7th Cir. 2002) (citing *Majeske v. Fraternal Order of Police Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)). Cruz alleges Movants "willfully conspired with racial animus toward Cruz and the many other Hispanic Area 5 victims identified [in the Complaint]" (Dkt. 327, SAC, ¶ 221) but has no supporting evidence of racial animus. Police indisputably had evidence of a gang-related shooting involving a largely Hispanic gang and investigated accordingly. Accordingly, his § 1985 claim fails.

### IX. Insufficient Evidence Exists of Personal Involvement for Certain Movants.

Personal involvement is a prerequisite for liability under § 1983. *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012). Specifically, a defendant must have caused or participated—i.e., have direct personal involvement—in the alleged constitutional deprivation. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). To survive summary judgment, Cruz must offer evidence

23

that identifies and attributes specific misconduct to each Defendant. *See Colbert*, 851 F.3d at 657 (finding plaintiff failed to establish personal involvement where he was unable to identify four named defendants out of ten potential officers who participated in allegedly illegal search).

Mere participation in an investigation is insufficient. *See, e.g.*, *de Lima Silva v. Wisconsin Dep't of Corrections*, 917 F.3d 546, 564 (7th Cir. 2019) (no personal involvement absent evidence that defendants were involved in decision to fire plaintiff despite participation in investigation). Indeed, an officer cannot be held liable for a constitutional violation committed by another officer without his knowledge. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye").

The events giving rise to Cruz's § 1983 claims—directed against Movants collectively— are premised on alleged fabrication of witness interviews and statements, suggestive identification procedures, and suppression of evidence. But certain Movants were not even present when some of the alleged unconstitutional conduct took place. Specifically, there is no evidence that Movants:

- Rutherford, Wojcik, Riccio, Boris, Gawrys, Mingey, or Halvorsen had any involvement in the creation of the GOCR;

- Rutherford or Boris was personally involved in the photo arrays or live lineup viewed by Meadors;

- Rutherford, Boris, Mingey, or Halvorsen were present when Jaramillo and Rodriguez were at Area 5, or that they had any involvement in either witness's handwritten statement;

- Rutherford, Boris, Gawrys, Mingey, or Halvorsen had anything to do with the photo of Cruz making a Latin King hand signal or the Latin King Constitution;

- Rutherford or Boris had any involvement in the investigation after October 6, 1993, Cruz's arrest, or his detention.

Cruz's inability to provide evidence of personal involvement of these Defendants entitles them to summary judgment on the specified claims. *See Gill v. City of Milwaukee*, 850 F.3d 335,

24

344 (7th Cir. 2017) (dismissal warranted where there was no allegation or plausible inference that officer knew about or was personally involved in the specific misconduct).

**X.     Summary Judgment is Warranted on Cruz's IIED Claim (Count IX).**

To prove IIED under Illinois law, Crux must establish that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearingen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). Here, Cruz's IIED claim is based on the same conduct that allegedly violated his constitutional rights. Because the constitutional claims against the Officer Defendants fail, so does Cruz's IIED claim. Cruz cannot demonstrate the "extreme and outrageous" conduct necessary to support his IIED claim. *See Cooney v. Casaday*, 746 F. Supp. 2d 973, 977–78 (N.D. Ill. 2010) (plaintiff's IIED claim must fail when it is premised on alleged constitutional violations that fail). Accordingly, summary judgment is appropriate for Officer Defendants on Cruz's IIED claim (Count IX).

**CONCLUSION**

WHEREFORE, Movants respectfully request that this Honorable Court grant their motion for summary judgment, dismiss all of Plaintiff's claims against them, enter judgment in their favor, and grant such other additional relief as this Court deems equitable and just.