**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
| | ) | Case No. 23-cv-4268 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Alexakis |
| v. | ) | |
| | ) | |
| FORMER DETECTIVE REYNALDO | ) | |
| GUEVARA, et al, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## DEFENDANT REYNALDO GUEVARA'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ............................................................................................................i-viii

**TABLE OF AUTHORITIES**.............................................................................................................ii

**INTRODUCTION** ..............................................................................................................................1

**BACKGROUND AND LEGAL THEORIES**...................................................................................1

**ARGUMENT**......................................................................................................................................1

    I.  **Guevara's Invocation of His Constitutional Rights Is Not Itself Independent Evidence On Which Any Issue Of Fact May Be Premised.** ...........................................1

    II.  **Fabrication of Evidence (Count IA).**..........................................................................2

    A.  **Evidence Relating to Meadors.** ................................................................................2

    B.  **Jaramillo Evidence.** ..................................................................................................7

    C.  **Other Alleged Fabricated Evidence.** ........................................................................9

    III.  **Count IB: Unlawful Pretrial Detention.** ...................................................................10

    IV.  **Count II: *Brady* Claims.** ............................................................................................12

    V.  **Section 1983 Malicious Prosecution and Unlawful Detention (Count III) and State Law Claim Malicious Prosecution (Count VII).** ..............................................19

    VI.  **Intentional Infliction of Emotional Distress (Count VIII).** ....................................22

    VII.  **Conspiracy (Section 1983 and State).**......................................................................23

    VIII.  **Failure to Intervene (Count V).** ...............................................................................25

**CONCLUSION**.................................................................................................................................26

## TABLE OF AUTHORITIES

**Authority from the Supreme Court of the United States**

*Albright v. Oliver*, 510 U.S. 266 (1994) .................................................................................................22

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..........................................................................................18, 19

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ...........................................................................................1

*Beck v. Ohio*, 379 U.S. 89 (1964) ..........................................................................................................11

*Brady v. Maryland*, 373 U.S. 83 (1963) ..........................................................................................*passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................................3, 4

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ............................................................................................19

*Giglio v. United States*, 405 U.S. 150 (1972) .......................................................................................17

*Kaley v. United States*, 571 U.S. 320 (2014) .....................................................................................11, 20

*Pearson v. Callahan*, 555 U.S. 223 (2009) .........................................................................................18

*Saucier v. Katz*, 533 U.S. 194 (2001) ..................................................................................................18

*Scott v. Harris*, 550 U.S. 372 (2007) ...................................................................................................18

*Thompson v. Clark*, 596 U.S. 36 (2022) ...............................................................................................22

*White v. Pauly*, 580 U.S. 73 (2017) .....................................................................................................18

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) .................................................................................................25

**Authority from the Circuit Courts of the United States**

*Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706 (7th Cir. 2013) ........................................................12, 21,

*Amundsen v. Chi. Park Dist.*, 218 F.3d 712 (7th Cir. 2000) .................................................................24

*Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019) ................................................................8

*Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) ......................................................................17, 24

*Bianchi v. McQueen*, 818 F.3d 309 (7th Cir. 2016) ...............................................................................22

*Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025) ............................................................................4, 7,

*Cairel v. Alderden*, 821 F.3d at 823 (7th Cir. 2016)................................................................*passim*

*Camm v. Faith*, 937 F.3d 1096 (7th Cir. 2019) ...............................................................8, 16

*Carey v. Duckworth*, 738 F.2d 875 (7th Cir. 1984) ...............................................................17

*Carvajal v. Dominguez*, 542 F.3d 56 (7th Cir. 2008) ................................................ *passim*

*Celafu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000)......................................24

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) ................................. 5, 11, 20

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019) ........................................*passim*

*Cooney v. Casady*, 735 F.3d 514 (7th Cir. 2013) ................................................................24

*de Lima Silva v. Wisconsin Dep't of Correction*s, 917 F.3d 546, 564 (7th Cir. 2019).........................5, 8, 9

*Dorsey v. Morgan Stanley*, 507 F.3d 624 (7th Cir. 2007) ...............................................9

*Doxtator v. O'Brien*, 39 F.4th 852 (7th Cir. 2022) ........................................................25, 26

*Eversole v. Steele*, 59 F.3d 710 (7th Cir. 1995)................................................................18

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) .............................................................3, 6

*Gaddis v. Demattei*, 30 F.4th 625 (7th Cir. 2022) ........................................................19

*Green v. Newport*, 868 F.3d 629 (7th Cir. 2017) ...........................................................19

*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023) ...........................................................22

*Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007)............................................................13, 16

*Hart v. Mannina,* 798 F.3d 578 (7th Cir. 2015)................................................... 4, 10, 19

*Holland v. City of Chicago*, 643 F.3d 248 (7th Cir. 2011) ........................................*passim*

*Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673 (7th Cir. 2007)...................................19

*Larsen v. Elk Grove Village*, 433 Fed.Appx. 470 (7th Cir. 2011) ............................23

*LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995)...........................1

*Molina ex rel. Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003).................................5,

*Moore v. City of Dallas, Texas*, 2024 WL 913368 (5th Cir. 2024) ...........................22

*Moorer v. City of Chicago*, 92 F.4th 715 (7th Cir. 2024) ................................................................. 10-11

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) ........................................................*passim*

*Mwangangi v. Nielsen*, 48 F.4th 816 (7th Cir. 2022) ......................................................................25

*National Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924 (7th Cir. 1983) .......................................2

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) ........................................................................22

*Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020) ............................................... 3, 7, 10

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) ..............................................................6, 8

*Rosado v. Gonzalez*, 832 F.3d 714 (7th Cir. 2016) .........................................................................25

*Saunders–El v. Rohde*, 778 F.3d 556 (7th Cir. 2015) .................................................... 13-14,

*Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010) ...................................................................3, 9

*Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008) ..............................................................................24

*Sombreger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006) ....................................................13

*Spiegel v. Cortese,* 196 F.3d 717 (7th Cir. 1999) ................................................................ 12, 18, 21

*Sweanigen-El v. Cook Cnty Sheriff's Dep't,* 602 F.3d 852 (7th Cir. 2010) ..................................19

*U.S. v. Baker*, 453 F.3d 419 (7th Cir. 2006) ....................................................................................10

*U.S. v. Bland*, 517 F.3d 930 (7th Cir. 2008) .....................................................................................10

*U.S. v. Edwards*, 34 F.4th 570 (7th Cir. 2022) ................................................................................16

*U.S. v. Gray*, 648 F.3d 562 (7th Cir. 2011) ................................................................................ 16-17

*U.S. v. Hamilton*, 107 F.3d 499 (7th Cir. 1997) ..............................................................................18

*U.S. v. Hocking*, 860 F.2d 769 (7th Cir.1988) ..................................................................................8

*U.S. v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979) ..........................................................................15

*U.S. v. Mota*, 685 F.3d 644 (7th Cir. 2012) ....................................................................................14

*U.S. v. O'Hara*, 301 F.3d 563 (7th Cir. 2002) ................................................................................16

*U.S. v. Price*, 418 F.3d 771 (7th Cir.2005) ......................................................................................15

*U.S. v. Villasenor*, 664 F.3d 673 (7th Cir. 2011)........................................................................10

*U.S. v. Warren*, 454 F.3d 752 (7th Cir. 2006) ..........................................................................15

*U.S. v. Wilson*, 481 F.3d 475 (7th Cir. 2007) ...........................................................................10

*Vance v. Peters*, 97 F.3d 987 (7th Cir. 1996).............................................................................5

*Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818 (7th Cir. 2019).................................................3

*Washington v. City of Chicago*, 98 F.4th 860 (7th Cir. 2024).......................................... 5, 10, 21

*Whitlock v. Brown*, 596 F.3d 406 (7th Cir. 2010) .....................................................................19

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ....................................................*passim*

*Woods v. City of Chicago*, 234 F.3d 979 (7th Cir. 2000).........................................................19-20

*Young v. City of Chicago*, 987 F.3d 641 (7th Cir. 2021) ...........................................................11

*Zenith Electronics v. WH–TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005)...................13

## Authority from the District Courts of the United States

*Almodovar v. Guevara*, 2025 WL 71735 (N.D. Ill. 2025)....................................................5, 8, 9

*Alvarado v. Hudak,* 2015 WL 4978683 (N.D. Ill. 2015)...........................................................14

*Andersen v. Village of Glenview*, 2018 WL 6192171 (N.D .Ill. 2018) ......................................11

*Barker v. International Union of Operating Engineers Local 150*, 2011 WL 6338800 (N.D. Ill. 2011) .. 1-2

*Bolden v. City of Chicago*, 2019 WL 3766104 (N.D. Ill. 2019) ............................................*passim*

*Boyd v. City of Chicago*, 225 F. Supp. 3d 708 (N.D. Ill. 2016)...............................................17,

*Brooks v. City of Elmhurst*, 2019 WL 5395269 (N.D. Ill. 2019).........................................11, 20

*Brown v. City of Chicago*, 2025 WL 2785426 (N.D. Ill. 2025) ..............................................6, 8

*Brown v. City of Chicago*, 633 F.Supp.3d 1122 (N.D. Ill. 2022).........................................*passim*

*Coleman v. City of Chicago*, 2025 WL 2410325, at *21 (N.D. Ill. 2025) .................................14

*Del Prete v. Village of Romeoville, Illinois*, 2025 WL 446260 (N.D. Ill. 2025)........................15

*Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971 (N.D. Ill. 2013) ..........................................25

*Ezell v. City of Chicago*, 2024 WL 278829 (N.D. Ill. 2024) ........................................................14

*Frias v. Hernandez*, 2024 WL 1252945 (N.D. Tex. 2024) ...........................................................22

*Garcia v. City of Chicago*, 2019 WL 4450499 (N.D. Ill. 2019) ...................................................23

*Garcia v. Rix*, 2025 WL 2624741 (N.D. Ill. 2025) .................................................................12, 22

*Glass v. Vill. of Maywood*, 2024 WL 4007643 (N.D. Ill. 2024) ...................................................19

*Gonzalez v. Scaletta*, 2021 WL 4192065 (N.D. Ill. 2021) .............................................................3

*Haliw v. City of South Elgin*, 2020 WL 1304697 (N.D. Ill. 2020) ................................................25

*Harris v. City of Chicago*, 2015 WL 1331101 (N.D. Ill. 2015) ...............................................14, 26

*Hernandez v. Guevara*, 2024 WL 4299046 (N.D. Ill. 2024) ..................................................... 10-11

*Hill v. City of Chicago*, 2009 WL 174994 (N.D. Ill. 2009) ..........................................................15

*Humphrey v. City of Anderson*, 2021 WL 4477806 (C.D. Ill. 2021) ..............................................4

*Hyung Seok Koh v. Graf*, 307 F.Supp.3d 827 (N.D. Ill. 2018) ......................................................3

*Jackson v. City of Peoria*, 2017 WL 1224526 (C.D. Ill. 2017) ....................................................17

*Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887 (7th Cir. 2018) ...............................3, 9

*Johnson v. Guevara*, 2025 WL 903813 (N.D. Ill. 2025) .......................................................*passim*

*Kluppelberg v. Burge*, 2017 WL 3142757 (N.D. Ill. 2017) ............................................................1

*Lietzow v. Vill. of Huntley*, 2023 WL 2954989 (N.D. Ill. 2023) ...................................................19

*Logan v. City of Chi.*, 891 F. Supp. 2d 897 (N.D. Ill. 2012) .........................................................1

*Mims v. City of Chicago*, 2025 WL 2957803 (7th Cir. Oct. 21, 2025) .........................................17

*Mola v. Warden*, 2020 WL 6149803 (N.D. Ind. 2020) ................................................................10

*Moore v. City of Chicago*, 209 F. Supp. 3d 1016 (N.D. Ill. 2016) ...............................................41

*Moorer v. Valkner*, 2021 WL 5998533 (N.D. Ill. 2021) ..............................................................11

*Morris v. Smith*, 2016 WL 3671428, (N.D. Ill. 2016) .................................................................23

*Myvett v. Heerdt*, 2015 WL 12745087 (N.D. Ill. 2015) ..........................................................14, 15

*Olson v. Cross*, 714 F.Supp.3d 1034 (N.D. Ill. 2024) ............................................................6, 10

*Parria v. Cvitanovich*, 2025 WL 2754743 (E.D. La. 2025)..........................................................22

*Patrick v. City of Chicago*, 103 F.Supp.3d 907 (N.D. Ill. 2015) ..........................................10, 16

*Petrovic v. Am. Airlines, Inc.*, 2014 WL 683640 (N.D. Ill. 2014) ..............................................23

*Rivera v. Guevara*, 2018 WL 11468922 (N.D. Ill. 2018) ...............................................................1

*Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1050-51 (N.D. Ill. 2018) ....................................5, 8, 9

*Rose v. Collins*, 2022 WL 1251007 (E.D. Ark. 2022) .................................................................22

*Serrano v. Guevara*, 2020 WL 3000284 (N.D. Ill. 2020)......................................................14, 16

*Simon v. Northwestern University*, 175 F.Supp.3d 973 (N.D. Ill. 2016) ...................................21

*Smith v. City of Chicago*, 785 F.Supp.3d 356 (N.D. Ill. 2025) ..................................................14

*Tabor v. City of Chicago*, 10 F.Supp.2d 988 (N.D. Ill. 1998) ....................................................24

*Taylor v. City of Chicago*, 80 F.Supp.3d 817 (N.D. Ill. 2015) ...................................................22

*Treadwell v. Salgado*, 2022 WL 17752396 (N.D. Ill. 2022)......................................................23

*U.S. v. Watson*, 1997 WL 124268 (N.D. Ill. 1997)......................................................................8

*Velez v. City of Chicago*, 2023 WL 6388231 (N.D. Ill. 2023) ...................................................20

*Walker v. White*, 2021 WL 1058096 (N.D. Ill. 2021) ..............................................................5, 9

*Wheeler v. Piazza*, 364 F.Supp.3d 870 (N.D. Ill. 2019)............................................................23

*Wrice v. Burge*, 2020 WL 419419 (N.D. Ill. 2020) .....................................................................1

**Authority from Illinois State Court**

*540 N. Lake Shore Drive Condo. Ass'n v. MCZ Dev. Corp.*, 2025 IL App (1st) 230733 .......................24

*Duffy v. Haberkorn,* 2012 IL App (1st) 110841-U .....................................................................23

*Reuter v. Mastercard Intern,* 921 N.E.2d 1205 (Ill.App. 2010) .................................................24

*Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636 (2d. Dist. 2014) ......................21

**Statutes & Rules**

42 U.S.C. §1983 .................................................................................................................................*passim*

745 ILCS 10/8-101(a) ...............................................................................................................................23

This case arises from Plaintiff's prosecution and conviction for the 1993 murder of Antwane Douglas ("Douglas") and attempted murder of Vernon Meadors ("Meadors"). Meadors identified Plaintiff to the police and prosecutors, in a photo array, in a live lineup and under oath at Plaintiff's criminal trial. Meadors never recanted and reaffirmed the identification to Plaintiff's post-conviction attorney years later. None of these identifications were done in the presence of Guevara nor is there evidence he had any other involvement in them *Id.* There is no evidence Guevara fabricated evidence, suppressed exculpatory/impeaching evidence, had involvement in Plaintiff's prosecution or pretrial proceedings, or conspired to frame Plaintiff. There is simply no basis to proceed against Guevara.

## ARGUMENT

### I. Guevara's Invocation of His Constitutional Rights Cannot Be Used As The Sole Evidence On Which To Create An Issue Of Fact.

Guevara has invoked his Fifth Amendment Rights on all matters relating to this case. Plaintiff relies on this as support for his claims. *See* Dckt. No. 327at ¶156. Thus, as a threshold matter, it is important to address the evidentiary limitations on this evidence.

At trial, a trier of fact may draw an adverse inference against a party who invokes his Fifth Amendment Rights. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). However, both during summary judgment and at trial, before an adverse inference may be drawn, there must also be independent corroborative evidence shown to support the inference beyond the invocation of the privilege itself. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995); *Wrice v. Burge*, 2020 WL 419419, *2 (N.D.Ill. 2020)("[C]laims against [a defendant] cannot survive unless he can identify evidence, in addition to [defendant's] silence" evidence supporting claims)*; Rivera v. Guevara*, 2018 WL 11468922, *1 (N.D.Ill. 2018)("Courts in the Seventh Circuit have accordingly held that to create a fact issue for trial, a party resisting summary judgment cannot rely exclusively on the moving party's invocation of the Fifth Amendment privilege."); *Kluppelberg v. Burge*, 2017 WL 3142757, *4 (N.D. Ill. 2017)(same); *Logan v. City of Chi.*, 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012)(same); *Barker v. International Union of*

1

*Operating Engineers Local 150*, 2011 WL 6338800, *6 (N.D.Ill. 2011)(same); *see also National Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924 (7th Cir. 1983). In fact, *Seguban* held doing otherwise would not only be improper but, indeed, would "exceed[] constitutional bounds." 54 F.3d at 391-92. Accordingly, in examining the claims, Plaintiff must establish separate and independent evidence supporting every contention and may not rely on Fifth Amendment invocation as the sole basis for any such contention.

## II. Fabrication of Evidence (Count IA).

Count 1A alleges a claim for fabrication of evidence based on the following:

- Fabrication of Meadors' identification of Plaintiff by suggestive identification tactics;
- Alteration of a police report to change the race description of the shooter provided by Meadors from Black to Hispanic;
- *Attempted* coercion of Jaramillo to identify Plaintiff as the shooter;
- Fabrication of Jaramillo's description of the shooter as possibly being an "olive complected" individual and a statement taken by ASA Maloney from Luis "Danny" Rodriguez;
- Guevara's presence at the crime scene on the night of the murder and on the witness side of the glass at two lineups; and
- Other undescribed evidence. *See* Dckt. No. 327 at Ct. IA; SMF at ¶¶151[1].

### A.      Evidence Relating To Meadors.

Plaintiff claims Guevara and other Defendants pressured and manipulated Meadors into falsely identifying Plaintiff. SMF at ¶¶130, 153, 162-164, 176. Plaintiff identifies Guevara as being present during a visit to Meadors' home after the murders where Meadors was shown photographs of potential perpetrators. *Id.*  Plaintiff also claims that Guevara directed non-defendant Sergeant Frank Capitelli to "leak" Meadors address to the Chicago Tribune so that it would be made public and scare Meadors into identifying Plaintiff as his shooter. *Id.* Plaintiff also alleges Meadors initially identified the shooter as Black not Hispanic as is documented in the police report prepared by non-defendant officer Odegard immediately after the incident and that this report was supposedly altered by one of the Defendants to this effect. *Id.* These legal and evidentiary theories fail.

---

[1] Individual Defendant Officers and Defendant Guevara ("Officer Defendants") have filed a joint Statement of Uncontested Material Facts, herein referenced to as "SMF".

To prevail on an evidence fabrication claim, Plaintiff must establish: (1) the existence of false evidence; (2) that was known "with certainty" was false; (3) that was introduced against Plaintiff at his criminal trial, and (5) was "material" to securing his conviction. *Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020); *Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014); *Whitlock v. Brueggemann*, 682 F.3d 567, 682 (7th Cir. 2012); *Brown v. City of Chi.*, 633 F.Supp.3d 1122, 1160 (N.D.Ill. 2022); *Bolden v. City of Chi.*, 2019 WL 3766104, *19 (N.D.Ill. 2019); *Hyung Seok Koh v. Graf*, 307 F.Supp.3d 827, 857–60 (N.D.Ill. 2018).

First, there is no evidence Meadors' identification was fabricated nor the product of suggestion nor evidence Guevara altered a police report to change the racial description of the shooter. SMF at ¶¶10, 12, 19, 24, 25, 26-28, 37-41, 75, 76, 97, 103-104, 107-109, 129, 134, 149, 150, 159-160, 162, 163, 164, 170. Meadors was consistent in identifying Plaintiff. *Id.* He made this identification to numerous persons outside the presence of Guevara. *Id.* He never recanted, he testified to it under oath, and he re-affirmed it to Plaintiff's post-conviction lawyer years later. *Id.* Summary judgment is "the put up or shut up" stage where Plaintiff must come forward with evidence that supports his evidentiary theories and a defendant is entitled to summary judgment by merely pointing to the inability of a plaintiff to prove his version of the events. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir.2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Speculation is not sufficient. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). An assertion that a witness is lying is not enough. *See Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 823 (7th Cir. 2019)("Criticizing the credibility of the movant's affiants, alone, is not enough to avoid summary judgment."); *Gonzalez v. Scaletta*, 2021 WL 4192065, at *13 (N.D.Ill. 2021)("Trials don't happen based on 'liar liar pants on fire.' Hurdling over the summary judgment bar requires evidence, not skepticism."). A plaintiff cannot defeat summary judgment in a fabrication of evidence claim by casting doubt on a witnesses' sworn identification. *See Johnson v. Guevara*, 2025 WL 903813, *19 (N.D.Ill. 2025)(judgment to Guevara based on fabrication of

identification because witness affirmed it under oath); *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 740 (N.D. Ill. 2016)(rejecting fabrication claim because "two witnesses who testified at Grayson's criminal trial, universally stated that the Defendants did not provide them with what to say or force them to make statements at trial that they knew to be untrue"); *Humphrey v. City of Anderson*, 2021 WL 4477806, *7 (C.D. Ill. 2021)(no fabrication claim when witness denied officers told him "what to say").

Second, there is no evidence of any suggestive identification. SMF at ¶¶10, 22, 24-25, 26-28, 36-27, 39-40, 41, 65-67, 75-77, 80, 97, 154-156,159-160, 162, 164; *see also Celotex*, 477 U.S. 317; *Hart v. Mannina,* 798 F.3d 578, 587 (7th Cir. 2015)(judgment on claim that witness coerced into ID because witness denied coaching and holding claims of false identification "relies on speculation, which is insufficient to withstand summary judgment").

Third, Seventh Circuit precedent forecloses this claim. *See Blackmon v. Jones*, 132 F.4th 522 (7th Cir. 2025). In *Blackmon*, a plaintiff brought a claim alleging his due process right were violated when identifications procured from officers' use of suggestive techniques were used at trial, leading to his conviction. 132 F. 4th at 524. The Court held the sole remedy for the use of suggestive identification techniques is exclusion of identifications at the criminal trial. *Id.* Since *Blackmon,* two other district courts in cases involving Guevara have granted summary judgment on identical claims. *Johnson*, 2025 WL 903813 at *24; *see also Rios v. Guevara*, 22 CV 3973, Dckt. No. 243 at 2-3, 4-6 (judgment on suggestive identification claim and *Brady* claim based on failure to disclose)(attached hereto as Ex. __).

Fourth, the circumstances of Meadors' identification of Plaintiff were known to the prosecution and the choice to introduce his testimony was made by them. SMF at ¶¶43, 86, 97, 100, 103-104, 107-109, 153, 159, 162, 1680169, 173, 176. Indeed, the trial prosecutor specifically testified to his own assessment of the credibility of Meadors and the decision to prosecute Plaintiff. *Id.* This issue was explicitly addressed in *Blackmon. Id.*, 132 F.4th at 525 ("[S]ince an investigating officer is not responsible for the decisions of the prosecutor and the judge, without which there could not have

4

been a problem under the Due Process Clause, it is hard to see why damages would be appropriate."); *see also Washington v. City,* 98 F.4th 860, 873 (7th Cir. 2024)(police not liable for the prosecution's decision to introduce questionable evidence at trial).

Fifth, there is no evidence Guevara was involved in improper identification techniques. SMF at ¶¶26-28, 36-37, 38, 39-41, 71, 74-76, 77, 154, 155-156, 159-160,162, 164, 176. Guevara's only involvement was being present at Meadors' home on one occasion when Meadors was shown pictures of possible suspects and allegedly being present on the witness side of the glass during a lineup involving Meadors. *Id.* Plaintiff identified no evidence Guevara did anything improper on either of these occasions nor that he was present when anyone else did. *Id.* "Section 1983…liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 974 (7th Cir. 2003)(same); *Colbert v. City of Chi.*, 851 F.3d 649, 657-58 (7th Cir. 2017). General participation in an investigation is not enough to establish personal involvement in every act occurring during investigation. S*ee de Lima Silva v. Wisconsin Dep't of Correction*s, 917 F.3d 546, 564 (7th Cir. 2019)(no personal involvement of defendants who participated in investigation but not involved in decision to discharge plaintiff); *Almodovar v. Guevara*, 2025 WL 71735, *7 (N.D.Ill. 2025)(judgment when no evidence defendant was involved in act of fabrication despite participating in other aspect of investigation*); Koh,* 307 F. Supp. 3d at 857-60 (same); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1050-51 (N.D.Ill. 2018)(claims against officers whose names on reports failed as no evidence of personal involvement in fabrication or *Brady* violations); *Walker v. White*, 2021 WL 1058096, *7 (N.D. Ill. 2021)(judgment where no evidence officers participated in creating fabricated photos).

Sixth, Plaintiff must show Guevara knew "with certainty" that the evidence was false. *Coleman v. City of Peoria*, 925 F.3d 336, 345 (7th Cir. 2019). "This is a high bar to clear." *Id.* at 344. The Seventh Circuit draws a distinction between coerced testimony (which might be true) and false or fabricated

5

testimony, "which is known to be untrue by the witness and whoever cajoled or coerced the witness to give it." *Fields*, 740 F.3d at 1110; *Coleman*, 925 F.3d at 346 ("Fabricated testimony…is invariably false because it is made up by the officer, who knows he is making it up."); *Bolden*, 2019 WL 3766104 at \*19 ("Evidence that only suggests defendants had reason to doubt that the evidence was true is insufficient to meet the knowledge requirement."). Even where a plaintiff claims that a defendant should have known testimony was false because the officer coerced a statement or the witness initially did not make a positive identification, this is not enough. *See Moran*, 54 F.4th at 489-91, 495-96 (denial of having made an on-scene identification immaterial because witness later identified plaintiff in court); *Cairel v. Alderden*, 821 F.3d at 823, 834–35 (7th Cir. 2016)(hesitation and inconsistent description not sufficient for fabrication because witness ID'd plaintiff in court); *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014)("[F]abricating evidence that []he knows to be false is different than getting 'a reluctant witness to say what may be true.'"); *Holland v. City of Chi.*, 643 F.3d 248, 256 (7th Cir. 2011)(judgment on suppression of evidence regarding hesitation to identify plaintiff because victim ID'd him at trial); *Brown v. City of Chi.*, 2025 WL 2785426, \*15 (N.D.Ill. 2025)("It is not enough that, based on the use of 'suggestive interrogation methods,' an officer 'should have known [the story] was unreliable.' Fabrication requires more."); *Johnson*, 2025 WL 903813, at \*19 (judgment to Guevara and others based on alleged fabrication of ID despite plaintiff alleging ID's unreliable because witness affirmed); *Olson v. Cross*, 714 F.Supp.3d 1034, 1052 (N.D.Ill. 2024)(judgment even though defendants "questioned whether [plaintiff] was being wholly truthful in his confession, and harbored some doubt that his confession" was accurate); *Koh*, 307 F. Supp. 3d at 860 (rejecting that coercion established defendant knew confession false). Here, there is no evidence Guevara knew "with certainty" that Meadors' identification was false. SMF at ¶164. Again, Meadors identified Plaintiff to numerous persons outside of Guevara's presence including to the prosecution, in court, and to Plaintiff's post-conviction attorney. SMF at ¶¶43, 97, 107-108, 103-104, 129, 133, 134, 159, 160, 162. There is no

6

evidence Meadors wavered to Guevara, much less said anything to make Guevara know "with certainty" the identification was false. *Id.*.

Seventh, Guevara is entitled to Qualified Immunity. *Blackmon*, 132 F. 4th at 526. It was not clearly established even as of 2022 that a police officer could be liable for conducting suggestive identification procedures. *Id.* While the Court commented that some allegations may present "unusual circumstances" that open the door to liability (coercion, misrepresentation of identification to prosecutors, etc.), there is no evidence of anything like that here. SMF at ¶¶153-155, 158-160, 162, 164, 176. Even if there were, such claims are subject to qualified immunity. *Johnson*, 2025 WL 903813, at *24.

### B.  Jaramillo Evidence.

Plaintiff claims Guevara *attempted* to pressure Jaramillo to identifying Plaintiff. SMF at ¶15, 1561. Plaintiff also claims other Defendants took a statement of Jaramillo where he is attributed a statement that the shooter may have been a "olive complected" person. *Id.* These theories fail. *Id.* at ¶¶21-22, 67, 77, 78-80, 154, 157, 158.

First, Jaramillo was not a witness at Plaintiff's criminal trial nor were any statements of him (or reports thereof) introduced at trial. SMF at ¶¶91, 100, 119, 120. The "essence of a due process evidence-fabrication claim is that the accused was convicted based on knowingly falsified evidence"; thus, evidence not introduced at trial cannot form the basis for a fabrication of evidence claim *See Patrick*, 974 F.3d at 835; *Moran*, 54 F.4th at 499 ("Because the evidence we assume was fabricated— the police report and the detectives' pretrial testimony—was not introduced at the trial, it could not have influenced the jury's verdict."); *Brown*, 633 F.Supp.3d at 1160 (noting "deprived of liberty in some way" standard was improper and that "used against [plaintiff] in his criminal trial" was standard). Even testimonial references to a police report or non-substantive use of same does not transform out of court evidence into a fabrication claim. *Brown*, 633 F.Supp.3d at 1159–60 ("The fact that [defendants]

7

testified to a version of events consistent with the reports makes no difference…This is so even when the false testimony is consistent with fabricated but unadmitted police reports."). Any other result would be a logical impossibility since the crux of a Fourteenth Amendment claim is the fairness of the *actual trial* and evidence the jury never hears can never impact the trial. *Moran*, 54 F. 4th at 499.

Second, Jaramillo never implicated Plaintiff to Guevara or anyone else. SMF at ¶¶66, 77, 80, 154-155. Coercion without fabrication is *never* a viable claim. *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014)(coercion without fabrication failed to establish claim); *Camm v. Faith*, 937 F.3d 1096, 1111 (7th Cir. 2019)(same); *Anderson v. City of Rockford*, 932 F.3d 494, 510 (7th Cir. 2019)(same); *Whitlock*, 682 F.3d at 584 ("Coercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation…"); *Brown*, 2025 WL 2785426, at *14 (same); *Koh*, 307 F. Supp. 3d at 860 (same).

Third, the "coercion" was an intimidating tone and reference that Jaramillo had been to jail. SMF at ¶¶156. This is not unconstitutional. *U.S. v. Hocking*, 860 F.2d 769, 775 (7th Cir.1988)(accusing questioning not coercive); *U.S. v. Watson*, 1997 WL 124268, *6 (N.D.Ill. 1997)(same).

Fourth, with respect to the statement of Jaramillo describing the shooter as "olive complexed Hispanic," there is no evidence Guevara had involvement in this. SMF at ¶¶61, 78, 158. The persons present during this alleged statement were ASA Maloney, Defendant Wojcik and non-defendant Detective Maria Maher acting as a translator. *Id.* This theory fails on personal involvement grounds. *See de Lima Silva*, 917 F.3d at 564 (no involvement of defendants who participated in investigation but not involved in the decision to discharge plaintiff); *Almodovar*, 2025 WL 71735, at *7 (judgment when there no evidence officer was involved in fabrication despite participating in other parts of investigation); *Koh*, 307 F.Supp.3d at 857–60 (same); *Rivera*, 319 F. Supp. 3d at 1050-51 (claims against

8

officers whose names on reports in investigation failed as no evidence of involvement); *Walker*, 2021 WL 1058096, at *7 (no evidence officers participated in fabricating photos).

### C. Other Alleged Fabricated Evidence

Plaintiff makes reference to other pieces of evidence that he claims were fabricated including a statement taken by ASA Maloney from Luis "Danny" Rodriguez, allegations Guevara was present at the crime scene on the night of the murder and on the witness side of the glass at two lineups despite not being listed as present for either, allegations Guevara "had contact with ASA Maloney about the status of the investigation" at which Guevara supposedly "ma[de] clear to Maloney his desire that Jaramillo and Meadors identify Cruz as the shooter and his desire to undermine Cruz's alibi," and "that Guevara participated in other aspects of the Douglas/Meadors investigation and other aspects of the conspiracy to direct that investigation in such a way as to fabricate a false murder charge onto Mr. Cruz." SMF at ¶¶82, 151-153, 158. None of these theories are a viable fabrication claims.

First, there is no evidence Guevara had any communications with ASA Maloney about framing Plaintiff nor "participated in other aspects of the Douglas/Meadors shooting investigation and other aspects of the conspiracy to direct the investigation in such a way as to fabricate a false murder charge onto [Plaintiff]." SMF at ¶¶151, 153, 158. Nor is there evidence Guevara fabricated other evidence. *Id.* These theories, thus, fail. *Siegel*, 612 F.3d at 937; *Johnson*, 892 F.3d at 894; *Dorsey*, 507 F.3d at 627.

Second, there is no evidence Guevara was involved in generating any of the above evidence. SMF at ¶¶19, 21, 24, 19-20, 30, 32-33, 36-40, 43, 56-57, 61, 70-71, 78, 80, 82-83, 87, 151-153, 157, 158, 162, 163, 167-168, 175-176. General involvement in an investigation is not a basis to find personal involvement. S*ee, e.g., de Lima Silva*, 917 F.3d at 564; *Almodovar*, 2025 WL 71735, at *7; *Koh*, 307 F.Supp.3d at 857–60; *Rivera*, 319 F. Supp. 3d at 1050-51; *Walker*, 2021 WL 1058096, at *7.

9

Third, the above evidence was never introduced at Plaintiff's trial. SMF at ¶¶100, 103-104, 107-109, 119-120; *see also Patrick*, 974 F.3d at 835; *Moran*, 54 F.4th at 499 (same); *Brown*, 633 F.Supp.3d at 1160.

Fourth, there is no evidence Guevara knew "with certainty" that any of the above evidence was fabricated. SMF at ¶¶19, 21, 24, 153, 158, 175, 176. *Coleman*, 925 F.3d at 345; *Bolden*, 2019 WL 3766104 at *19; *Johnson*, 2025 WL 903813, at *19; *Olson*, 714 F.Supp.3d at 1052; *Koh*, 307 F. Supp. 3d at 860.

Finally, in light of Meadors' identification of Plaintiff, the other evidence Plaintiff alleges was fabricated is not "material." Whether evidence is material is a question of law. *See Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 350 (7th Cir. 2019). An eyewitness (even a shaky or equivocal one) providing evidence of guilt renders other evidence immaterial for purposes of a fabrication claim. *See Moran*, 54 F.4th at 489-91, 495-96 (eyewitnesses' denial of making an on-scene identification of plaintiff immaterial because witness later identified plaintiff in court); *Cairel*, 821 F.3d at 823, 834–35 (hesitant and inconsistent eyewitness established probable cause); *Hart,* 798 F.3d 578, 593 (eyewitness testimony rendered uncertainty of other witness immaterial); *Holland*, 643 F.3d at 256 (judgment regarding victim's hesitation to identify plaintiff because victim identified him at trial); *U.S. v. Villasenor,* 664 F.3d 673, 683 (7th Cir. 2011)(materiality not established because other incriminating evidence that supported conviction); *U.S. v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008)(same); *U.S. v. Wilson*, 481 F.3d 475, 478 (7th Cir. 2007)(same); *U.S. v. Baker*, 453 F.3d 419, 423 (7th Cir. 2006)(same); *Mola v. Warden*, 2020 WL 6149803, *6 (N.D. Ind. 2020)(eyewitnesses established other evidence immaterial).

**III. Count IB: Unlawful Pretrial Detention.**

Count IB of Plaintiff's Complaint is a claim brought under the Fourth Amendment for unlawful pretrial detention. *See* Dckt. No. 327 at Ct. IB. This claim is defeated by the existence of probable cause. *Moorer v. City of Chi.*, 92 F.4th 715, 720-21 (7th Cir. 2024); *Washington*, 98 F.4th at 863;

10

*Young v. City of Chi.*, 987 F.3d 641, 644 (7th Cir. 2021); *Hernandez v. Guevara*, 2024 WL 4299046, at *10 (N.D. Ill. 2024); *Johnson*, 2025 WL 903813, at *30–31. An officer has probable cause to arrest when "the police officer is aware of facts and circumstances 'sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). A single eyewitness (even questionable or equivocal) is sufficient to establish probable cause. *See Moran*, 54 F.4th at 500 (affirming judgment; "an eyewitness 'identification, even if questionable, is enough to give the police probable cause to arrest,'"); *Coleman*, 925 F.3d at 351 (same); *Cairel*, 821 F.3d at 834-35 (affirming judgment on claims based on uncertain identification); *Holland*, 643 F.3d at 256 (affirming judgment on suppression of evidence regarding victim's hesitation to identify plaintiff because victim identified him at trial); *Johnson*, 2025 WL 903813, at *30–31 (judgment to Guevara because arrest was supported by probable based on eyewitness identification despite that other eyewitnesses recanted; "An eyewitness identification, 'even if questionable,' sufficed to give the Individual Defendants probable cause to arrest Johnson."); *Moorer v. Valkner*, 2021 WL 5998533 (N.D.Ill. 2021)("It's true that some of the witnesses' identifications don't line up with how they otherwise described the shooting and the suspect…But these inconsistencies and challenges to perception didn't make the witnesses so unreliable that the officers could not believe them"). Moreover, a grand jury indictment "definitively establishes the requisite probable cause." *See Kaley v. U.S.*, 571 U.S. 320, 328 (2014); *U.S. v. Schreiber*, 866 F.3d 776, 781 (7th Cir. 2017); *Colbert v. City of Chi.*, 851 F.3d 649, 655 (7th Cir. 2017)("The fact that [the plaintiff] was indicted by a grand jury defeats his [malicious prosecution] claim.); *Andersen v. Village of Glenview*, 2018 WL 6192171, *15 (N.D .Ill. 2018)(same); *Brooks v. City of Elmhurst*, 2019 WL 5395269, *9 (N.D. Ill. 2019)(indictment barred claims of lack of probable cause). Plaintiff's detention was supported by an eyewitness who directly implicated Plaintiff as his assailant as well as a grand jury indictment. SMF at ¶¶88. This bars any pretrial detention claim.

11

Qualified Immunity also bars this claim. "[Q]ualified immunity affords an added layer of protection" to a probable cause defense "by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). A defendant is "immune to claims based on an arrest without probable cause unless it is obvious that no reasonably competent officer would have believed that there was probable cause" *Spiegel v. Cortese,* 196 F.3d 717, 723 (7th Cir. 1999). "Thus, qualified immunity applies…also to those governmental officials who reasonably but mistakenly conclude that it does." *Id.* Statements of an eyewitness are more than enough to supply at least "arguable" probable cause. *Garcia v. Rix*, 2025 WL 2624741, *3 (N.D. Ill. 2025)(eyewitness ID sufficient to establish Qualified Immunity). Here, Meadors' identification, even if questionable or equivocal, bars this claim.

## IV. Count II: *Brady* Claims.

Count II alleges a violation under *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Dckt. No. 327 at Ct. 2. Guevara issued contention interrogatories requesting Plaintiff identify every piece of exculpatory or impeachment evidence Plaintiff claimed was suppressed by Guevara. SMF at ¶¶151. Plaintiff provided no substantive answer but, rather, incorporated a previous answer which asked Plaintiff to list every act he claimed Guevara took during the investigation. *Id.* This answer included:

- Guevara went to the crime scene in the early morning hours of October 6 despite not being assigned to do so but that Plaintiff does not know whether Guevara took notes or made a report about going to the crime scene;
- Guevara drove Jaramillo from his job to his home and "began questioning Mr. Jaramillo further about what he had seen" which Plaintiff alleges was not documented;
- "On the night of October 6, 2024 [sic], Guevara appeared at the home of Vernon Meadors, accompanied by two of his co-defendants, Halvorsen and Mingey" and showed Meadors a photo array of 21 Hispanic men including Plaintiff and "used various suggestive techniques" to suggest to Meadors that he should choose Plaintiff out of this photo array and did not document this visit;
- "[O]ne of the Defendants" who Plaintiff "believes" to be Defendant Wojcik altered the original case incident report to modify the racial description provided by Meadors from black

12

to Hispanic and that there is a "strong inference that the person who altered the document was told to do so by Defendant Guevara.";

- "[T]hat Guevara was at the live line-up, but he is not listed in the Line-Up Report; only Wojcik, Riccio, and Gawrys are.";
- "After the visit to Meadors' home, Cruz believes that Guevara spoke with Area 5 Police Sergeant Frank Cappitelli and directed Capitelli to leak the location of Meadors' home to the press for the purpose of putting fear in Mr. Meadors, making it easier for Guevara and his co-conspirators to manipulate Meadors into identifying Cruz as the shooter of Douglas and Meadors" and did not document this;
- "On October 7, 8, and 9 (or at the very least, two of those three days), Guevara picked up Mr. Jaramillo at his home, drove Jaramillo to the Area 5 police station, and began aggressively interrogating Mr. Jaramillo to try to get Jaramillo to change his identification of 3 Male Black shooters to 3 Hispanic shooters and to identify the lead shooter (the first one out of the vehicle) as Jose Cruz, or at the very least a Male Hispanic who fit the description of Jose Cruz" and did not document this;
- "On the night of October 9, the same night that Cruz was arrested, Guevara was present on the witness side of the glass at two line-up procedures conducted by Defendants in his case" and Guevara's presence was not documented on any police report;
- On both October 8 and October 9, Guevara "had contact with ASA Maloney about the status of the investigation" and while Plaintiff "do[esn't] know what was said between them precisely" but Plaintiff "believe[s] that Mr. Guevara would have been the one to make clear to Maloney his desire that Jaramillo and Meadors identify Cruz as the shooter and his desire to undermine Cruz's alibi" and this was not documented.
- "[T]here is a fair inference that Guevara participated in other aspects of the Douglas/Meadors investigation and other aspects of the conspiracy to direct that investigation in such a way as to fabricate a false murder charge onto Mr. Cruz." *Id.*

Plaintiff is limited to these theories (*Moran*, 54 F.4th at 497 (court properly refused to address *Brady* suppression theory because Plaintiff failed to list in contention interrogatories); *Zenith Electronics v. WH–TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir.2005)(same)), and none have merit.

To establish a *Brady* claim, Plaintiff must show the evidence: (1) is favorable because it is exculpatory or impeaching; (2) was suppressed; and (3) is material, meaning there is reasonable probability the result of the proceeding would have been different. *Carvajal v. Dominguez*, 542 F.3d 56, 566–67 (7th Cir. 2008). Evidence known to the defense is not "suppressed." *Sombreger v. City of Knoxville*, 434 F.3d 1006, 1028–29 (7th Cir. 2006); *Harris v. Kuba*, 486 F.3d 1010, 1016–17 (7th Cir. 2007).

First, Plaintiff's *Brady* theories are identical to his fabrication theories. To the extent Plaintiff claims Guevara fabricated evidence and then failed to disclose he had done so, this claim is barred. *See*

13

*Saunders–El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015); *Coleman v. City of Chi.*, 2025 WL 2410325, at *21 (N.D. Ill. 2025)("[I]f Coleman argues that the detectives and Garfinkel suppressed their own account of the circumstances of Fulton's confession, then the argument is squarely foreclosed by *Saunders-El*, which rejected an argument that police officers' failure to admit their misdeeds amounts to a withholding of exculpatory evidence in violation of *Brady*."); *Johnson,* 2025 WL 903813, at *27 (same); *Serrano v. Guevara*, 2020 WL 3000284, *19 (N.D. Ill. 2020)(same); *Jackson v. City of Chi.*, 2024 WL 1142015, *12 (N.D.Ill. 2024)(same); *Ezell v. City of Chi.*, 2024 WL 278829, *23 (N.D.Ill. 2024)(same); *Harris v. City of Chi.*, 2015 WL 1331101, *4 (N.D. Ill. 2015)(same); *Alvarado v. Hudak,* 2015 WL 4978683, * 3 (N.D.Ill. 2015)(same); *Myvett v. Heerdt,* 2015 WL 12745087, *6 (N.D.Ill. 2015)(same); *Phillips*, 2015 WL 5675529, *5-6 (same).

Second, as noted above, Plaintiff's fabrication theories premised on allegations that Guevara supposedly engaged in suggestive/coercive identification tactics with Meadors, directed Sergeant Capitelli to leak Meadors' identifying information to the press, conspired with others to change the racial classification on a report documenting Meadors' description, and conspired with ASA Maloney in some unknown way to attempt to frame Plaintiff, these theories fail as a matter of proof on their face and for lack of any evidence Guevara was involved in any such thing. *See supra* Part II.

Third, the crux of Plaintiff's putative *Brady* theories appear to be premised on Guevara failing to document things done and/or speculative theories that Guevara did document things and then destroyed such documentation. SMF at ¶¶151. Either way, these theories fail.

Police officers have no *Brady* obligation to create evidence by documentation or creating police reports. *Saunders-El*, 778 F.3d at 562 ("*Brady* does not require the creation of exculpatory evidence…"); *U.S. v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012)(failure to prepare report does not violate *Brady*); *Johnson*, 2025 WL 903813, at *27 (same); *Smith v. City of Chi.*, 785 F.Supp.3d 356, 413 (N.D.Ill. 2025)("To the extent plaintiff is arguing that defendants had a duty to create evidence consistent with plaintiff's

14

theory of fabrication, such a claim must fail."); *Del Prete v. Village of Romeoville, Illinois*, 2025 WL 446260, *10 (N.D.Ill. 2025)(same); *Brown v. City of Chi.*, 633 F.Supp.3d 1122, 1163–64 (N.D.Ill. 2022)(same).

Plaintiff speculates that certain documents may have existed and been destroyed but admits he has no evidence this occurred. SMF at ¶¶151. This too is a nonstarter. "[A] denial of Due Process cannot be premised on the defendant's mere conjecture that there might have been favorable evidence which was undisclosed. The existence of the evidence must be established…" *McPartlin*, 595 F.2d at 1346, n. 32; *U.S. v. Warren*, 454 F.3d 752, 759 (7th Cir. 2006)(no *Brady* violation because defendant was "unable to point to any specific evidence, exculpatory or otherwise, withheld by the government."). "[I]f there is no proof of a document's existence, government officials cannot be held liable under *Brady*." *Hill v. City of Chi.*, 2009 WL 174994, *4 (N.D. Ill. 2009)(collecting cases); *U.S. v. Warren*, 454 F.3d 752, 759 (7th Cir.2006)(no *Brady* violation because party was "unable to point to any specific evidence, exculpatory or otherwise, withheld by the government."); *U.S. v. Price*, 418 F.3d 771, 785 (7th Cir.2005)(*Brady* violation did not occur where no document existed corroborating party's claim). Plaintiff admits he has no proof any documentation exists. SMF at ¶¶191-93, 105, 153, 159-160, 161, 163, 169, 170-171, 176. Moreover, "[w]ithout knowing what [the allegedly suppressed notes or reports] said," th[e] Court "cannot determine whether they had exculpatory value or whether that exculpatory value was apparent to defendants before the notes were destroyed." *Bolden*, 2019 WL 3766104, at *11. Thus, these claims fail both for failure to prove the existence of the any suppressed document or failure to establish such documents contained exculpatory/impeachment value. *Id.*

Third, with respect to *attempted* coercion of Jaramillo, a defendant's failure to disclose that he attempted to coerce a witness is not a viable *Brady* claim. *See Brown*, 633 F.Supp.3d at 1163–64 (coercion of witnesses not a basis for *Brady* claim); *Phillips*, 2015 WL 5675529 at *5-6 (non-disclosure of alleged treatment of the plaintiffs' codefendants and witness not a *Brady* violation); *Myvett* 2015 WL 12745087 at * 6 (judgment on *Brady* claim where plaintiff claimed defendants withheld they fabricated witnesses'

15

statement). This is doubly so when the person is not even a trial witness, as here. *Brown,* 633 F.Supp.3d at 1163–64 (judgment granted on failure to disclose coercion of non-testifying witnesses).

Fourth, the alleged interaction between Jaramillo and Guevara which Plaintiff characterizes as coercive was not suppressed. Jaramillo was identified explicitly in disclosed police reports as a potential witness to the shooting and it was also specifically documented that Jaramillo advised police he believed the shooter to be a Black person not a Hispanic person. SMF at ¶¶22, 25, 65, 67, 90-93, 131. It is undisputed that the prosecution interviewed Jaramillo separate and apart from Guevara. *Id.* This was not only disclosed to the prosecution but, indeed, to Plaintiff's criminal defense attorney. *Id.*

There can be no *Brady* violation based on the alleged suppression of evidence that was actually available for use at the criminal trial. *U.S. v. O'Hara,* 301 F.3d 563, 569 (7th Cir.2002); *U.S. v. Gray,* 648 F.3d 562, 567 (7th Cir.2011). Moreover, evidence is not "suppressed" if it could have been obtained through reasonable diligence. *See Camm*, 937 F.3d at 1108-09; *Harris*, 486 F.3d at 1015. A defendant in a criminal case has the "responsibility to probe the witnesses and investigate their versions of the relevant events" and failure to discover the information held by such persons does not amount to a *Brady* violation. *Carvajal,* 542 F.3d at 567; *Patrick v. City of Chi.*, 103 F.Supp.3d 907, 915–16 (N.D. Ill. 2015)("[R]easonable diligence certainly entails questioning available fact witnesses regarding what they saw."); *Holland,* 643 F.3d at 256 ("A defendant in a criminal case…has the responsibility to probe the witnesses and investigate their versions of the relevant events."). Reasonable diligence requires that a criminal defense attorney interview a witness to determine the merits of his identification as documented by police and failure to do so to learn possible exculpatory or impeaching evidence cannot form the basis for a *Brady* violation. *See U.S. v. Edwards,* 34 F.4th 570, 587 (7th Cir. 2022); *Holland,* 643 F.3d at 256; *Serrano,* 2020 WL 3000284, at *18 (judgment on failure to disclose coercion of witness and fabrication of statements because witness disclosed and known to defense); *Patrick,* 103 F. Supp. 3d at 915-16 (failure to interview disclosed witness to discover

16

exculpatory evidence barred *Brady* claim); *Boyd v. City of Chi.*, 225 F. Supp. 3d 708, 722-23 (N.D. Ill. 2016)("Because plaintiff's trial attorney could have interviewed [an eyewitness] regarding what she saw at the crime scene and what she said during the lineup, her statements could have been obtained through the exercise of due diligence."); *Jackson v. City of Peoria*, 2017 WL 1224526, *7 (C.D. Ill. 2017)(same). Here, Jaramillo's failure to identify Plaintiff as the shooter was expressly disclosed and known to Plaintiff's defense attorney. SMF at ¶¶90-93, 98-100, 131. Moreover, even were there parts of Jaramillo's statements that Plaintiff claims were inaccurate or questionable, his identity as an eyewitness mandated interviewing him to learn his version of the events.

Relatedly, Jaramillo was interviewed by the prosecution and did not identify Plaintiff as the shooter. SMF at ¶¶78-80. Indeed, it was the prosecution who took Jaramillo's statement and Guevara was not privy to this conversation. *Id.* There is no *Brady* violation if the prosecution was aware of the evidence, even if the police failed to disclose the evidence or if a criminal defense attorney is not ultimately given such evidence. *Mims v. City of Chi.*, 2025 WL 2957803, at *4 (7th Cir. 2025). Once a prosecutor is aware of information that may be considered *Brady* material, it remains the responsibility of the prosecutor to provide this evidence to the defense not the police. *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015)*; Whitlock*, 682 F.3d at 583. Information known by one prosecutor also "must be attributed" to all other prosecutors, *see Giglio v. U.S.*, 405 U.S. 150, 154 (1972), and "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984).

Fifth, Plaintiff fails to provide explanation for how certain undisclosed matters were exculpatory or impeaching. Plaintiff interjects theories such as Guevara supposedly showing up at the crime scene and being on the witness side of the glass during lineups without documentation thereof but provides no explanation for how this would be exculpatory or impeaching in any way. SMF at ¶¶151, 176. It is Plaintiff's burden to demonstrate how supposedly suppressed evidence was material

17

or impeaching. *Bolden*, 2019 WL 3766104, at \*11 ("Without knowing what [the allegedly suppressed notes or reports] said," th[e] Court "cannot determine whether they had exculpatory value or whether that exculpatory value was apparent to defendants before the notes were destroyed."). Evidence that is tangential, cumulative, or favorable only through inference is not material. *Carvajal*, 542 F.3d at 567; *Harris*, 486 F.3d at 1016; *Socha v. Richardso*n, 874 F.3d 983, 989 (7th Cir. 2017)(notes of deputy who interviewed cellmate of accomplice in murder, was not material as it was cumulative of other evidence); *U.S. v. Hamilton*, 107 F.3d 499, 510 (7th Cir. 1997). Plaintiff fails to provide evidence that these occurrences were material, exculpatory or impeaching.

Finally, Guevara is entitled to summary judgment on Plaintiff's *Brady* claims based on qualified immunity. Plaintiff's theories, in essence, comprise a failure to affirmatively document activities and/or failing to disclose his own alleged misconduct. *See supra*. Qualified immunity is "an immunity from suit rather than a mere defense to liability; and…it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376, n.2 (2007). Qualified immunity protects police "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011); *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995). Qualified immunity applies to "a mistake of law, a mistake of fact, or a mistake based on mixed question or law and fact." *Pearson*, 555 U.S. at 231. The burden of defeating qualified immunity rests with a plaintiff. *Spiegel,* 196 F.3d at 723. Two questions are asked in determining qualified immunity: (1) do the facts alleged show the officer's conduct violated a constitutional right?; and (2) was the right was clearly established? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Generalized conceptions of constitutional rights are not appropriate bases to deny qualified immunity. *See White v. Pauly*, 137 S. Ct. 548, 551-52 (2017). "The showing of clearly

18

established law must be specific to the particular facts of the case." *Gaddis v. Demattei*, 30 F.4th 625, *13 (7th Cir. 2022). It is Plaintiff's burden to identify precedent with facts on point. *Ashcroft*, 563 U.S. at 741; *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017)("The plaintiff bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred"). As set forth above, courts routinely hold that Plaintiff's theories of *Brady* violations are not legally sufficient.

## V. Section 1983 Malicious Prosecution and Unlawful Detention (Count III) and State Law Claim Malicious Prosecution (Count VII).

Counts III and VII assert claims for Section 1983 Malicious Prosecution and Unlawful Detention and State Law Malicious Prosecution. *See* Dckt. No. 327 at Cts. III, VII. These claims fail.

First, these claims are barred by the existence of probable cause based on Meadors' repeated consistent identification of Plaintiff as his assailant. SMF at ¶¶24, 27-28, 36-38, 39-40, 42-43, 75-76, 86, 103-104, 107-109. Probable cause defeats claims for malicious prosecution (state or federal). *Sweanigen-El v. Cook Cnty Sheriff's Dep't,* 602 F.3d 852, 864 (7th Cir. 2010)(judgment proper on malicious prosecution claim where probable cause existed); *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 682-83 (7th Cir. 2007)(probable cause for each charge for which plaintiff was prosecuted defeats a state law malicious prosecution claim); *Lietzow v. Vill. of Huntley*, 2023 WL 2954989, *15 (N.D. Ill. 2023)(same); *Glass v. Vill. of Maywood*, 2024 WL 4007643, *8 (N.D. Ill. 2024)(same). Probable cause exists "whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). The probable cause standard is objective based on the facts known to the officers at the time of the seizure or arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). That belief does not need to be "correct or even more likely true than false, so long as it is reasonable." *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022).

"Probable cause can be based on a single identification from a credible eyewitness." *Hart*, 798 F.3d at 587; *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000). Probable cause is conclusively established based on a single eyewitness even if inconsistent, equivocal, or questionable. *See Moran*, 54

19

F.4th at 500 ("an eyewitness 'identification, even if questionable, is enough to give the police probable cause to arrest,"); *Coleman*, 925 F.3d at 351 (same); *Cairel*, 821 F.3d at 834-35 (judgment on claims based on uncertain ID); *Johnson*, 2025 WL 903813, at *30–31 (judgment to Guevara and others because arrest supported by probable cause based on eyewitness ID despite that other eyewitnesses recanted); *Velez v. City of Chi.*, 2023 WL 6388231, *14 (N.D. Ill. 2023)(judgment on unlawful detention/malicious prosecution claims because of eyewitness ID despite claims that officers coerced or manipulated other eyewitness); *Moorer*, 2021 WL 5998533 (judgment based on eyewitness ID despite inconsistencies and question if witnesses could perceive shooter). Moreover, a grand jury indictment "definitively establishes the requisite probable cause." *See Kaley*, 571 U.S. at 328 ("An indictment fair upon its face, and returned by a properly constituted grand jury...conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged."); *U.S. v. Schreiber*, 866 F.3d 776, 781 (7th Cir. 2017); *Andersen* 2018 WL 6192171 at *15 ("A grand jury indictment conclusively establishes the existence of probable cause as to the charged crimes."); *Brooks v. City of Elmhurst*, 2019 WL 5395269, *9 (N.D. Ill. 2019)(indictment barred claims of lack of probable cause). The statements of Meadors bar claims for malicious prosecution or unlawful detention. Moreover, Plaintiff was indicted by a grand jury and Guevara was not part of this process. SMF at ¶¶87, 88. These claims, thus, fail.

Second, Plaintiff's prosecution was not commenced and caused by Guevara but, rather, by prosecutors who decided the identification by Meadors was a viable basis to proceed. SMF at ¶¶42-43, 86, 97. The commencement/continuance of a prosecution requires a defendant to play a "significant role" in the criminal prosecution. *Hill v. Cook County*, 463 F. Supp. 3d 820, 845 (N.D. Ill. 2020). Absent evidence that Guevara manipulated the evidence supporting probable cause which lead to the indictment, this indictment breaks the causal chain between an his conduct and the prosecution. *See Colbert*, 851 F.3d 649, 655 (7th Cir. 2017)("The fact that [the plaintiff] was indicted by a grand jury defeats his [malicious prosecution] claim…[T]he State's Attorney, not the police, prosecutes a criminal

action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor.").

Third, "even if an individual knowingly provides false information to a prosecuting authority, he or she is not liable for commencing a criminal proceeding if the prosecution is based upon separate or independently developed information." *Simon v. Northwestern Univ.*, 175 F.Supp.3d 973, 982 (N.D. Ill. 2016); *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 13 (2d. Dist. 2014)(evidence other than false statements to police broke causal chain). Where the prosecution interviews a witness and decides to proceed with a prosecution based on its assessment of the evidence, this bars any claims against a police officer. *Washington*, 98 F.4th at 873 (prosecutors investigation into evidence and decision to introduce it at trial barred claims against police officers); *see also Whitlock*, 682 F.3d at 580 (7th Cir. 2012)(causal link between fabrication and injury broken if prosecutor aware). Meadors was interviewed and found credible by prosecutors who decided to proceed based on his statements. SMF at ¶¶42-43, 97.

Fourth, Qualified Immunity bars such claims. "[Q]ualified immunity affords an added layer of protection" to a probable cause defense "by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). "[A] law enforcement officer will be immune to claims based on an arrest without probable cause unless it is obvious that no reasonably competent officer would have believed that there was probable cause to arrest." *Spiegel,* 196 F.3d at 723. "Thus, qualified immunity applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those governmental officials who reasonably but mistakenly conclude that it does." *Id.* Statements of an eyewitness, even

if disputed by other evidence, is more than enough to supply at least "arguable" probable cause barring any claim based on the lack of probable cause. *Garcia v. Rix*, 2025 WL 2624741, *3 (N.D. Ill. 2025).

Finally, to the extent Plaintiff seeks to proceed on a "Malicious Prosecution" claim recognized in *Thompson v. Clark*, 596 U.S. 36, 49 (2022), such a claim is barred by Qualified Immunity. Until 2022, there was no such federal claim for malicious prosecution under Section 1983. *See Newsome v. McCabe*, 256 F.3d 747, 750–52 (7th Cir.2001); *Albright v. Oliver*, 510 U.S. 266, 270–71 (1994). In 2022, the Supreme Court for the first time recognized such a claim. *Thompson*, 596 U.S. at 49. While that jurisprudence may govern liability for cases which occur *subsequent* to *Thompson*, the unsettled nature of whether this was a claim means that claims arising before this change are barred by Qualified Immunity. *See Bianchi v. McQueen*, 818 F.3d 309, 323 (7th Cir. 2016). Even before *Thompson*, the Seventh Circuit held challenges to whether *Newsome* should be overturned was a perfect application of Qualified Immunity given the unsettled nature of the law. *Id.* ("Although some circuits have recognized such a claim, this circuit has not. With the law this unsettled, qualified immunity applies."). Federal Malicious Prosecution claims arising before *Thompson* are barred by Qualified Immunity. *See e.g. Parria v. Cvitanovich*, 2025 WL 2754743, at *19 (E.D. La. 2025)(claim barred by Qualified Immunity because not well-established prior to *Thompson*); *Moore v. City of Dallas, Texas,* 2024 WL 913368, *3 (5th Cir. 2024)(same); *Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023)(same); *Frias v. Hernandez*, 2024 WL 1252945, *8 (N.D.Tex. 2024)(same); *Rose v. Collins*, 2022 WL 1251007, at *1 (E.D. Ark. 2022)(same).

**VI. Intentional Infliction of Emotional Distress (Count VIII).**

Count VIII alleges a claim under Illinois state law for Intentional Infliction of Emotional Distress. *See* Dckt. No. 327 at Ct. VIII. This claim fails as well.

First, a claim for IIED arising from a prosecution accrues on the date of the prosecution. *Bridewell v. Eberle,* 730 F.3d 672, 678 (7th Cir. 2013); *see also Taylor v. City of Chi.*, 80 F.Supp.3d 817, 828 (N.D. Ill. 2015)(dismissing IIED claim in a reverse conviction case because the statute of limitations

22

began to run on the date of arrest). Plaintiff's arrest occurred on October 9, 1993, and any IIED claim expired on October 9, 1994. 745 ILCS 10/8-101(a). Count VIII is untimely.

Second, Plaintiff's IIED claim fails because his arrest and prosecution were supported by probable cause. *See supra* Part III, V. An IIED claim based on a wrongful arrest or prosecution cannot be sustained if probable cause existed. *Larsen v. Elk Grove Village,* 433 Fed.Appx. 470, 474 (7th Cir. 2011); *Garcia v. City of Chi.*, 2019 WL 4450499, *8 (N.D.Ill. 2019); *Morris v. Smith*, 2016 WL 3671428, at *2 (N.D. Ill. 2016). Again, probable cause existed to prosecute Plaintiff; thus, his IIED claim fails.

Third, the conduct Plaintiff attributes to Guevara is not remotely sufficient. Guevara had no contact with Plaintiff. SMF at ¶¶165, 174, 176. Plaintiff has no evidence Guevara was involved in any way in manipulating or coercing Meadors to identify Plaintiff or fabricating any evidence. *Id.* at ¶¶159-160, 162-165, 176. The best Plaintiff can muster is Guevara may have raised his voice when dealing with Jaramillo in an unsuccessful *attempt* to try to get Jaramillo to identify Plaintiff. *Id.* at ¶156. This conduct is nowhere close to sufficient. *See Treadwell v. Salgado*, 2022 WL 17752396, *19 (N.D.Ill. 2022)(failure to establish defendants' actions caused him distress and existence of probable cause barred IIED claim); *Duffy v. Haberkorn,* 2012 IL App (1st) 110841-U, ¶¶21-22 ("[E]ven if defendants made three false police reports, it is 'not beyond all possible bounds of decency' such that it can be deemed extreme and outrageous, as required to satisfy the first element of IIED."); *Petrovic v. Am. Airlines, Inc.,* 2014 WL 683640, *2 (N.D. Ill. 2014)("But courts hold consistently that false accusations, even as part of a larger pattern of alleged misconduct, are not extreme and outrageous").

## VII.     Conspiracy (Section 1983 and State).

Counts IV and IX assert claims for conspiracy, federal and state. *See* Dckt. No. 327 at Cts. IV, IX. For both, Plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Wheeler v. Piazza,* 364 F.Supp.3d 870, 880 (N.D. Ill. 2019);

23

*Amundsen v. Chi. Park Dist.,* 218 F.3d 712, 718 (7th Cir. 2000); *Reuter v. Mastercard Intern,* 921 N.E.2d 1205, 1217 (Ill.App. 2010). These claims also fail.

First, Plaintiff failed to set forth any valid constitutional or state law claims against Guevara. *See supra* Part II-VI. This bars any claims for conspiracy. *Celafu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000); *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *see also 540 N. Lake Shore Drive Condo. Ass'n v. MCZ Dev. Corp.*, 2025 IL App (1st) 230733, ¶153, 158, 172, 174-176.

Second, Plaintiff's Section 1983 and state law conspiracy claims both require evidence of an agreement between more than one person. *See Beaman*, 776 F.3d at 510 (conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means."). Plaintiff has not adduced any evidence of a conspiratorial agreement that was made involving Guevara. SMF at ¶¶172. Plaintiff has merely provided vague notions of what he *believes* Guevara *might* have done without backing it up with any evidence that it *was* done. *Id.* No evidence shows Guevara formed an agreement with anyone to coerce Meadors or fabricate police reports, Jaramillo's court-reported statement, or otherwise implicate Plaintiff in anything. *Id. at* ¶¶163, 157, 158, 159-160, 172, 175-176. Plaintiff's binding contention interrogatory responses are riddled with speculative and unexplained inferences of misconduct which appear to be concocted from Plaintiff's attorney's minds without evidentiary basis. SMF at ¶¶151. This is plainly insufficient. *See Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013)(conclusory claims of conspiracy insufficient).

Finally, Guevara is entitled to summary judgment based either on the "intracorporate conspiracy doctrine" because all police defendants were working for the same governmental employer and in the scope of their employment. *See Tabor v. City of Chi.*, 10 F.Supp.2d 988, 994 (N.D.Ill.1998). Indeed, in another cases involving Guevara and some of the other Defendants here, Judge Seeger granted summary judgment to Guevara and other Defendants on conspiracy claims on this basis. *See* Ex. A at 129:3-136:4. Alternatively, Defendants are entitled to qualified immunity on Plaintiff's Section

1983 conspiracy claim. *Haliw v. City of South Elgin*, 2020 WL 1304697, *4 (N.D. Ill. 2020)(liability not clearly established for conspiracies amongst police officers of a single municipality); *Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 985 (N.D. Ill. 2013)("The Seventh Circuit has yet to decide whether the doctrine applies to § 1983 conspiracy claims, and district courts in this Circuit are split on whether it does."). As recently as 2017, the Supreme Court held it was not well-established that agents employed by the same governmental agency could engage in a conspiracy amongst themselves. *See Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). If the law was unsettled in 2017, it was unsettled in 1993, and Guevara is entitled to qualified immunity on the federal conspiracy claims.

### VIII.   Failure to Intervene (Count V).[2]

First, since there is no underlying constitutional violation, any claim for failure to intervene fails. *Rosado v. Gonzalez,* 832 F.3d 714, 719 (7th Cir. 2016). Second, there is no evidence Guevara failed to intervene to prevent another Defendant from violating Plaintiff's rights. A plaintiff must establish that "an officer must know that a citizen's rights are being infringed, and he must have a 'realistic opportunity' to intervene." *Doxtator v. O'Brien*, 39 F.4th 852, 864–65 (7th Cir. 2022). Plaintiff alleges the individual defendants conspired to frame him. Dckt. 327, ¶228. However, Guevara was present only for an interview with Meadors on the evening of October 6, 1993, with Mingey and Halvorsen, during which Meadors did not make an identification. SMF at ¶¶26-28. Accordingly, Guevara did not have an opportunity to intervene in any alleged coercion. While Plaintiff contends Guevara attempted to manipulate or pressure Meadors into making an identification, Meadors consistently identified Plaintiff and maintained that identification until his passing. *Id.* at ¶¶133, 134, 136. Plaintiff also alleges Guevara attempted to influence Jaramillo to change his identification and to fabricate portions of

---

[2] In addition, failure to intervene is not cognizable under § 1983 because it violates the prohibition against vicarious liability. Recently, Judge Easterbrook called into question the viability of the failure to intervene theory under § 1983, noting that "'[f]ailure to intervene' sounds like vicarious liability," which would of course be untenable. *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022)(Easterbrook, J., concurring)..

25

Jaramillo's court-reported statement. Dckt. 327, ¶199. There is no evidence Guevara was present when Jaramillo provided his statement, nor present during his interview by other investigators. SMF at ¶¶25, 61, 77-78; *Doxtator*, 39 F.4th 864–65.

WHEREFORE Defendant Guevara prays this Court enter summary judgment in Defendant Guevara's favor on all counts and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:     /s/ Timothy P. Scahill
             *Special Assistant Corporation Counsel*

Steven B. Borkan
Timothy P. Scahill
Andrea Fabian-Checkai
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*

26