**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Jose Cruz, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 cv 4268 |
| | ) | |
| v. | ) | Honorable Judge Alexakis |
| | ) | |
| Former Detective Reynaldo Guevara, et al. | ) | Magistrate Judge Fuentes |
| | ) | |
| *Defendants*. | ) | |

**<u>DEFENDANT CITY OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT[1]</u>**

---

[1] The City adopts and incorporates herein Defendant Officers' and Defendant Guevara's memoranda of law and rule 56.1 fact statements.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PLAINTIFF'S *MONELL* ALLEGATIONS ....................................................................... 2

LEGAL STANDARD .......................................................................................................... 2

I. The City is entitled to summary judgment if Defendant Officers prevail on their motion for summary judgment. .................................................................................................. 4

II. The City is entitled to summary judgment on Plaintiff's theory that the City failed to discipline officers who commit misconduct. ................................................................. 5

    A. Plaintiff cannot prove a widespread practice based on a limited set of allegations. ....... 5

    1. *Longo's opinions are insufficient to establish a widespread practice.* .......................... 5

    2. *Plaintiff failed to develop any other evidence to support his failure to discipline theory.* ...............................................................................................................................11

    B. Longo's code of silence and early warning system opinions do not defeat summary judgment. ................................................................................................................ 14

    C. Plaintiff failed to prove municipal fault or causation for any discipline theory. .......... 16

III. The City is entitled to summary judgment on Plaintiff's theory that the City had a policy of withholding exculpatory evidence. ................................................................ 18

    A. The history of "street files" in the *Jones* and *Palmer* litigation shows Plaintiff's failure to develop evidence of a "street file" in this case. ........................................................ 18

    B. Plaintiff failed to develop evidence of a practice of failing to record exculpatory evidence in police reports. ......................................................................................... 21

IV. Plaintiff failed to develop evidence to support his failure to supervise and train *Monell* theories. ...................................................................................................................... 22

V. Plaintiff failed to develop evidence of a policy of fabricating evidence, coercing witnesses into making false identifications and statements from suspects, or perjured testimony. ................................................................................................................... 24

VI. Summary judgment should be granted in favor of the City on Plaintiff's derivative claims – *respondeat superior* and indemnification. ................................................................... 25

C<small>ASES</small>

*Baxter v. Vigo County School Corp.*, 26 F.3d 728 (7th Cir. 1994) .................................................. 3

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) .................................................. 3

*Black v. City of Chicago*, 18-CV-6518, 2022 WL 425586 (N.D. Ill. Feb. 11, 2022) ..................... 9

*Blackmon v. Jones* 132 F.4th 522 (7th Cir. 2025) ......................................................... 23

*Brayn County Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ......................................... 4

*Brown v. City of Chi.,* 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ........................................... 13, 14, 18

*Bryant v. Whalen*, 759 F. Supp 410 (N.D. Ill. 1991) ..................................................... 10

*Calusinski v. Kruger*, 24 F.3d 931 (7th Cir. 1994) ....................................................... 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................... 2

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146 (7th Cir. 1994) .................... 2

*Connick v. Thompson*, 563 U.S. 51, 51, 131 S. Ct. 1350 (2011) ........................................ 22, 23

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................................... 6

*First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) .................................. 5, 17

*Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021) ........................................... 17

*Flowers v. Kia Motors Fin.*, 105 F.4th 939 (7th Cir. 2024) ........................................... 14

*Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) .................................................. 4

*Harris v. City of Chicago*, 24 CV 3215, 2025 WL 2044020 (N.D. Ill. July 21, 2025) .......... 14, 20

*Harvey v Dart*, 2023 WL 2561620 (N.D. Ill. Mar. 17, 2023) ........................................... 17

*Haywood v. Lucent Techs.*, Inc., 323 F.3d 524 (7th Cir. 2003) ......................................... 6

*Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021) ............................... 11, 22

*Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002) ................................................ 3

*Johnson v. Guevara*, 20 C 4156, 2025 WL 903813 (N.D. Ill. Mar. 24, 2025) ........................... 23

*Jones v. City of Chicago*, 787 F.2d 200 (7th Cir. 1986) ............................................... 4

*Jones v. York*, 34 F.4th 550 (7th Cir. 2022) ......................................................... 25

*Joseph P. Caulfield & Assocs. v. Litho Prods.*, 155 F.3d 883 (7th Cir. 1998) ......................... 10

*Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698 (7th Cir. 2009) ........................................ 3

*McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1995) ............................................ 3, 4

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333 (7th Cir. 1989) ............. 8

*Miller v. City of Harvey*, 13 C 9257, 2015 WL 5144476 (N.D. Ill. Aug. 31, 2015) .................... 8

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) .............................................. 12, 25

iii

*Obrycka v. City Of Chi.,* 913 F. Supp. 2d 598 (N.D. Ill. 2012)...................................................... 15

*Ovadal v. City of Madison*, 416 F.3d 531 (7th Cir. 2005)............................................................... 3

*Palmer v. City of Chicago*, 755 F. 2d 560 (7th Cir. 1985) .......................................................... 19

*Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) .................................................. 19, 20, 21

*Petropoulos v. City of Chicago*, 19-CV-03206, 2021 WL 1103480 (N.D. Ill. Mar. 23, 2021) ..... 23

*Pugh v. City of Attica,* 259 F.3d 619 (7th Cir. 2001)..................................................................... 3

*Pursley v. City of Rockford*, No. 3:18-cv-50040, 2024 WL 1050242 (N.D. Ill. Mar. 11, 2024)... 25

*Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194 (7th Cir. 1985) .......................................... 4

*Rossi v. City of Chicago*, 790 F.3d 729 (7th Cir. 2015) ...................................................... 2, 3, 13

*Ruiz-Cortez v. City of Chicago*, 11 C 1420, 2016 WL 6270768 (N.D. Ill. Oct. 26, 2016), aff'd, 931 F.3d 592 (7th Cir. 2019)......................................................................................................11

*Sallenger v. City of Springfield, Ill.*, 630 F.3d 499 (7th Cir. 2010) ............................................... 4

*Scott v. Harris,* 550 U.S. 372 (2007)........................................................................................... 3

*Sigle v. City of Chicago*, 10 C 04618, 2013 WL 1787579 (N.D. Ill. Apr. 25, 2013) ............ 7, 8, 10

*Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990)........................................................................... 4

*Smith v. Ill. DOT*, 936 F.3d 554 (7th Cir. 2019)....................................................................... 15

*Strauss v. City of Chi.*, 760 F.2d 765 (7th Cir. 1985) ............................................................ 7, 8, 10

*Swetlik v. Crawford,* 738 F.3d 818 (7th Cir. 2013)...................................................................... 3

*Velez v. City of Chicago*, 1:18-CV-08144, 2023 WL 6388231 (N.D. Ill. Sept. 30, 2023) ............ 10

*Weigel v. Target Stores*, 122 F.3d 461 (7th Cir. 1997).................................................................. 8

*Wilson v. City of Chi.,* 6 F.3d 1233 (7th Cir. 1993)............................................................ 9, 13, 17

*Wragg v. Vill. of Thornton*, 604 F.3d 464 (7th Cir. 2010) ............................................................ 4

## RULES

Fed. R. Civ. P. 56(c) ................................................................................................................... 2

Pursuant to Fed. R. Civ. P. 56, Defendant City of Chicago ("City") submits the following memorandum of law in support of its motion for summary judgment, and states:

**INTRODUCTION**

Plaintiff claims that his conviction for the 1993 murder of Antwan Douglas was the result of the City's policies. Despite alleging numerous theories of liability to support his *Monell* claim, Plaintiff failed to adduce citywide evidence sufficient to meet the rigorous standards for holding the City liable for his alleged constitutional injuries.

Instead, Plaintiff relies primarily on the opinion of his expert, Timothy Longo. Longo provided three main opinions[2]. (CSOF ¶32). First, Longo opines that the City had an alleged failure to discipline, including maintaining a "code of silence," and failing to identify and track officers who commit misconduct. (CSOF ¶¶32, 59). But the bases for his opinion are primarily limited to his conclusions regarding allegations of physical abuse relating to Jon Burge and the Area 2 Detective Division during the 1970s and 80s, and allegations against one Defendant Officer, Defendant Guevara, which is insufficient to establish a widespread practice. (CSOF ¶59). Second, Longo opines that the City had an alleged practice of failing to disclose exculpatory and impeachment evidence, yet Longo did not identify any evidence from any case where alleged exculpatory material was withheld other than his conclusions regarding the Douglas homicide investigation. (CSOF ¶¶60-62). And last, Longo opines that the City had an alleged failure to supervise but mainly rehashes the basis for his failure to discipline opinion. (CSOF ¶70). He then opines that the City allegedly failed to train officers regarding disclosing exculpatory evidence and identification procedures, but this opinion is based solely on his criticisms of the identification procedures in the Douglas investigation, not a citywide practice. (CSOF ¶¶72-73).

---

[2] At his deposition, Longo also testified to three ancillary opinions. These ancillary opinions were not properly disclosed in his Rule 26(a)(2) report and, for the reasons set forth in Section V. *infra,* are barred.

The gravamen of a widespread practice *Monell* claim "is not individual misconduct by police officers (that is covered elsewhere under § 1983), but a *widespread* practice that permeates a critical mass of an institutional body." *Rossi v. Chicago,* 790 F.3d 729, 737 (7th Cir. 2015) (original emphasis). Plaintiff's failure to adduce evidence of any citywide practice dooms his *Monell* claim. Plaintiff also failed to develop evidence of the necessary elements of notice and deliberate indifference, and there is no evidence to support an allegation that any City written policy caused Plaintiff's alleged constitutional injuries.

## PLAINTIFF'S *MONELL* ALLEGATIONS

In paragraphs 235-237 of his Second Amended Complaint, Plaintiff lists 12 theories of *Monell* liability. Plaintiff only attempted to develop evidence regarding the following *Monell* theories: (1) the City failed to discipline officers who engage in misconduct, including that it failed to identify and track officers who engage in repeated misconduct, and condoned a "code of silence;" (2) the City maintained an accepted and widespread practice of suppressing exculpatory and impeachment evidence, including by maintaining secret files, not documenting exculpatory evidence, and/or destroying or concealing evidence; (3) the City failed to adequately supervise officers; and (4) the City failed to adequately train detectives and other officers regarding disclosing exculpatory evidence and conducting identification procedures.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact remains, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Though the movant bears the burden of showing that summary judgment is appropriate, the non-moving party may not rest upon mere allegations in the pleadings nor upon

2

conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence.'" *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (citation omitted). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). However, "that duty does not extend to drawing inferences that are supported only by speculation or conjecture." *Swetlik v. Crawford,* 738 F.3d 818, 829 (7th Cir. 2013). The nonmoving party also must produce "more than a scintilla of evidence to support his position" that a genuine issue of material fact exists. *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001). Expert evidence offered by the nonmovant to defeat summary judgment must be admissible. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 704 (7th Cir. 2009).

To establish § 1983 municipal liability, Plaintiff must show that "'(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury.'" *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005) (quoting *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002)).

Municipal liability lies where a constitutional violation is caused by one of the following: (1) an express policy (2) a well-settled widespread practice or (3) the act of a final policy maker. *See McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (quoting *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994)); s*ee also, e.g., Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Here, Plaintiff does not claim any express policy or act of a final policymaker caused him injury. (CSOF ¶3). Rather, Plaintiff's *Monell* claim seeks to attach liability under a "widespread practice" theory.

3

To assert a *Monell* claim based on a "widespread practice" theory, as Plaintiff does here, he must establish a pattern of similar deprivations that are so "permanent, well-settled, and widespread as to constitute custom or usage" with the force of law. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010); *McTigue*, 60 F.3d at 382. A custom "implies a habitual practice or a course of action that characteristically is repeated under the circumstances." *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990) (quoting *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)). Further, it is not enough to demonstrate that policymakers could, or even should, have been aware of unlawful activity because it occurred more than once. *Id.* (citing *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 202 (7th Cir. 1985)). Rather, Plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of the policymakers was apparent and amounted to a policy decision. *Id.* at 543; *see also Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008).

Only where Plaintiff can prove a constitutional violation occurred is he entitled to prove the City's policy caused it. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010). The plaintiff must establish the municipality's action was the "moving force" behind the constitutional violation. That requires demonstrating the existence of a "direct causal link." *Harris*, 489 U.S. at 385; *Bryan County Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997). On top of that, municipal liability only attaches where the final policymaker acts with deliberate indifference as to the known or obvious consequences of that action. *Id.*, at 407. "These requirements—policy or custom, municipal fault, and 'moving force' causation—must be scrupulously applied in every case alleging municipal liability." *Id.*

I.      **The City is entitled to summary judgment if Defendant Officers prevail on their motion for summary judgment.**

4

As Defendant Officers and Defendant Guevara's Motions for Summary Judgment demonstrate, Plaintiff failed to develop evidence of any constitutional violation. If no constitutional violation occurred, the alleged City policies cannot support *Monell* liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Matthews v. City of E. St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012). Plaintiff cannot proceed with a *Monell* claim on the same basis because doing so would create an inconsistent verdict. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (reiterating that municipality cannot be held liable under *Monell* if such a finding would create an inconsistent verdict); *see also*, *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2009).

## II. Plaintiff's failure to discipline claim fails.

Plaintiff alleges the City routinely failed to discipline officers who committed misconduct. The City is entitled to summary judgment on this theory because Plaintiff failed to develop evidence of a widespread practice where officers who committed misconduct were not disciplined. As a consequence, Plaintiff also cannot establish the City knew of and was deliberately indifferent to such an alleged policy or that it caused him any constitutional violation.

### A. Plaintiff cannot prove a widespread practice based on limited allegations.

Plaintiff has not established—nor has he even attempted to demonstrate—a citywide practice that constitutes a City custom and practice with the "force of law." Instead, Plaintiff relies on the opinion of his retained expert, Timothy Longo, that such practice existed; nevertheless, Longo failed to provide a sufficient factual basis to establish such a municipal policy.

#### 1. Longo's opinions are insufficient to establish a widespread practice.

To start, Plaintiff cannot rely on Longo's opinions to defeat summary judgment because his opinions are inadmissible. For the reasons expressed in the City's Motion to Bar the Opinions

5

of Plaintiff's Expert, Timothy Longo, incorporated here, Longo's opinions do not pass muster under Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).  Longo employed no discernible methodology.  His opinions lack a reliable basis and are not premised on sufficient facts and data.  *Haywood v. Lucent Techs*., Inc., 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible evidence cannot overcome a motion for summary judgment).

Even if the Court accepted Longo's opinions, the factual basis for Longo's opinions is limited to (1) allegations of physical abuse at Area 2 related to Jon Burge, (2) a list of purported exonerees related to the "Burge era," (3) allegations against Defendant Guevara, and (3) other "historical documentation."  (CSOF ¶¶35, 42-44, 46-49, 52-54, 59).  Because Longo's conclusions are based on a limited set of allegations only, his opinion is insufficient to establish a citywide policy.

The first basis for Longo's opinion that the City failed to discipline officers who committed misconduct is his list of ten complaint register ("CR") files regarding allegations of physical abuse at the Area 2 Detective Division in the 1980s.  (CSOF ¶¶35-36).  A CR file contains the documents generated during CPD's investigation of an allegation of officer misconduct.  (CSOF ¶17).  Longo's report simply identifies the allegations in the ten CR files listed in his report and summarizes the allegations.  (CSOF ¶35).  He testified that he merely accepted the allegations as true and only surmised that "no action" was taken until Jon Burge was fired from CPD.  (CSOF ¶¶35-36).  Longo admitted he did not review the CR files and did not know what evidence supported or undermined the allegations. (CSOF ¶35).  He also acknowledged that, in his experience, not all complaints made against police officers are, or should, be sustained because there may be evidence that shows the allegations are not true.  (CSOF ¶51).  Longo, therefore, lacks any factual support to establish that (1) the City knew misconduct occurred in these cases,

6

or (2) that appropriate discipline should have been imposed but was not. *See Strauss v. City of Chi.*, 760 F.2d 765, 769 (7th Cir. 1985) (finding number of complaints filed, without more, "indicates nothing," as "people may file a complaint for many reasons, or for no reason at all").

Next, Longo refers to a document described as the "Goldston Sanders report" from 1990, which is in fact two separate reports. (CSOF ¶¶37-39). According to Longo, the "report" recounts additional allegations of physical abuse and states that of the 26 CR files listed, 25 were not sustained. (CSOF ¶37). Again, however, Longo conducted no analysis as to any individual case. (*Id.*). Nor do the documents Longo identified as the "Goldston Sanders report" analyze the propriety of any individual CR investigation. (CSOF ¶40). Consequently, Longo lacks a factual basis to establish that the City knew the allegations recounted in the documents cited were true or that discipline should have been imposed in those instances but was not. *Sigle v. City of Chicago*, 10 C 04618, 2013 WL 1787579, *8-9 (N.D. Ill. Apr. 25, 2013) (finding no basis to draw an inference of failure to discipline when complaints were not sustained; without evidence to impeach the integrity of the investigations, there is no basis to conclude any allegations had merit).

Longo's report also provides a list of "exonerees" that he attributes to Jon Burge. (CSOF ¶43). This list, too, fails to establish a practice of failure to discipline. Longo's report merely provides a list of names. (*Id.*). His report contains no factual basis to support any allegations of misconduct by any of the individuals listed. (*Id.*). He does not even state what allegations each individual made. (CSOF ¶¶43, 78). Instead, his report cites the website for "National Registry of Exonerations" for summaries of the circumstances of these individual exonerations."[3]

---

[3] Not only is the website hearsay, but it includes a specific disclaimer to "[c]orrect an error or add information about an exoneration on our list," thereby expressly acknowledging the information provided on the website may contain errors. *See* https://www.law.umich.edu/special/exoneration/Pages/about.aspx (emphasis added),

7

What's more, Longo does not state whether any of the individuals made complaints to CPD, such that CPD would have had an opportunity to investigate and discipline the officers. (CSOF ¶43). He never considered that. *(Id.)*. Consequently, his bare bones list of names fails to provide a factual basis that any misconduct went undisciplined. *See Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) (expert's opinion simply too conclusory and uninformative to be given any weight); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1338-39 (7th Cir. 1989) (affirming summary judgment expert's opinion lacking facts and reasons).

Following his conclusions regarding Area 2, Longo's report references allegations against Defendant Guevara. (CSOF ¶¶46-49, 53). He cites four CR files pertaining to Defendant Guevara, but, like his reliance on the other CR files, Longo provides no analysis for any of the CR investigations. (CSOF ¶48). Longo even admitted that in two of the four CR files, discipline was recommended. *(Id.)*. For the remaining two CR files, like the CR files pertaining to Burge, Longo's report provides no factual basis to conclude that discipline should have been imposed in those cases but was not. *(Id.)*. *See Straus*, 760 F.2d at 769; *Sigle*, 2013 WL 1787579, *8-10.

Next, Longo identifies five civil cases, two resulting in settlements after a jury trial, and three that were resolved by settlement before trial. (CSOF ¶49). Yet, the mere fact that a settlement was reached in a lawsuit is not evidence of wrongdoing for any party. *Miller v. City of Harvey*, 13 C 9257, 2015 WL 5144476, *4 (N.D. Ill. Aug. 31, 2015). Longo knows this, as he denies the allegations in each of the cases where he was sued. (CSOF ¶51).

Further, Longo includes the jury awards and the amounts, as well as a cite to a news article regarding the alleged cost of hiring attorneys to defend the cases involving Defendant Guevara. (CSOF ¶¶49-50). Yet complaints and settlements are not evidence; they are allegations. *Solache v. Guevara et al.*, 18-cv-2312, and *Reyes v. Guevara et al.*, 18-cv-1028, Sept. 9, 2025 transcript,

8

attached here as Ex. 1, p. 8-11. Even so, Longo's opinion includes no evidence that (1) any plaintiffs made complaints to CPD, (2) the City knew the allegations were true, or (3) discipline should have been imposed but was not. *See Black v. City of Chicago*, 18-CV-6518, 2022 WL 425586, \*6 (N.D. Ill. Feb. 11, 2022) (concluding Plaintiff cannot prevail by showing that the City of Chicago gets "sued a lot;" there must be evidence connecting the cases to the case at hand).

Following that section, Longo lists eight affidavits with allegations against Defendant Guevara. (CSOF ¶53). All of the affidavits, however, are dated after 1993. *(Id.)*. And, once again, Longo fails to provide a basis to conclude (1) the City knew allegations in these affidavits were true, or that (2) discipline should have been imposed but was not.

And finally, Longo relies on various "historical documents" regarding Jon Burge and Defendant Guevara. (CSOF ¶¶44, 52). As to Burge, this includes reference to (1) a letter regarding injuries observed on Andrew Wilson (who alleged torture by Burge in 1982) by the doctor who examined him; (2) a letter from former Superintendent Richard Brzeczek to then Cook County State's Attorney Daley about the doctor's letter and investigation of police misconduct given the pending criminal case against Wilson; (3) Wilson's civil case, where the officers were found not liable, *see Wilson v. City of Chi.,* 6 F.3d 1233 (7th Cir. 1993); (4) other allegations of abuse derived from a community activist's requests for accountability regarding Andrew Wilson and other allegations of police brutality; and (5) a 2007 Resolution regarding the payment of attorneys' fees for litigation regarding Burge that post-dates Plaintiff's criminal case by nearly 15 years. (CSOF ¶44). Longo also refers to statements by political figures, including (1) former Mayor Richard M. Daley's statement regarding the Special Prosecutor's Report in 2007; (2) a 2007 letter from City Council members regarding allegations of torture; and (3) a 2012 City Council statement by Professor Adam Green regarding allegations of torture. (CSOF ¶52). And finally, as to Defendant

9

Guevara, Longo refers to Cook County Judge Obbish's finding regarding Guevara's testimony at a 2017 post-conviction hearing for a 1998 criminal case. *(Id.)*.

Andrew Wilson and the doctor who examined him are not listed witnesses in this case, nor are the various political figures for whom Longo references statements. (CSOF ¶45). Further, political statements and opinions by judges are not evidence. Ex. 1, *Solache v. Guevara et al.*, 18-cv-2312, and *Reyes v. Guevara et al.*, 18-cv-1028, Sept. 9, 2025 transcript, p. 8-10, 17. Neither are statements made by community activists without personal knowledge. *Id.*, p. 13. *See Joseph P. Caulfield & Assocs. v. Litho Prods*., 155 F.3d 883, 888 (7th Cir. 1998) (reasoning witness testimony must be supported by personal knowledge). Ultimately, neither Plaintiff, nor Longo, provide evidence to establish how these various statements about allegations of police brutality or comments on Guevara's credibility are probative of CPD's citywide disciplinary practices in 1993.

In total, Longo references at most 25 CR files pertaining to allegations of physical abuse and two additional CR files pertaining to Defendant Guevara where he alleges no discipline was imposed. (CSOF ¶¶35, 48). Even assuming discipline should have been imposed in those cases but was not (evidence Plaintiff failed to develop), such a limited number is insufficient to establish a citywide widespread practice. *See, e.g., Strauss*, 760 F.2d at 768-69 (7th Cir. 1985) (holding mere reliance on statistical evidence, without more, is insufficient to establish causation for purposes of municipal liability); *Bryant v. Whalen*, 759 F. Supp 410, 424 (N.D. Ill. 1991); *Sigle,* 2013 WL 1787579, at *8 ("evidence of statistics and complaint register allegations alone are insufficient to support a *Monell* claim"). This is particularly so, considering the CR files pertaining to Area 2 stemmed from allegations from 1973-1986, years before Plaintiff's criminal case. (CSOF ¶40). *See Velez v. City of Chicago*, 1:18-CV-08144, 2023 WL 6388231, *23 (N.D. Ill. Sept. 30, 2023) (evidence that is remote in time from the underlying misconduct is irrelevant in establishing

10

a pertinent practice or custom). And the other two CRs are against only one officer. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (*Monell* requires establishing a true municipal policy rather than isolated wrongdoing of one or a few rogue employees).

And finally, the undisputed evidence shows that CPD *did* discipline officers. (CSOF ¶20). Just in the five years leading up to Plaintiff's criminal case, CPD issued an average per year of 275 reprimands, 562 one-to-five-day suspensions, 43 six-to-fifteen-day suspensions, 35 sixteen-to-thirty-day suspensions, 16 suspensions of more than 30 days, and CPD terminated 48 employees. *(Id.)*. Another 72 employees on average resigned while under investigation. *(Id.)*. That is an average of nearly 1000 instances of discipline per year, making Longo's reliance on less than 30 CRs spanning years before Plaintiff's criminal case a small fraction *See Ruiz-Cortez v. City of Chicago*, 11 C 1420, 2016 WL 6270768, *26 (N.D. Ill. Oct. 26, 2016), aff'd, 931 F.3d 592 (7th Cir. 2019) (plaintiff failed to explain how he came to the conclusion that 41 files are a sufficient number to reach a reliable conclusion about the CPD's disciplinary practice).

### 2. No other evidence supports a failure to discipline theory.

In written discovery, the City asked Plaintiff, for each theory of *Monell* liability he intended to prove, to state the factual basis and *evidence* that supports how each theory amounts to a policy pursuant to *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978). Despite an over 20 page response, other than referencing evidence pertaining to the Douglas homicide alone, Plaintiff did not identify a single document by bates stamp or line of testimony to support his theories.

For instance, Plaintiff claimed that he intended to rely on "admissions" by officers. (CSOF ¶5). Plaintiff, however, failed to identify any testimony from any of those individuals. (*Id.*). As another example, he stated he would rely on "City admissions" in *Wilson v. City of Chicago*, 86-c-2360, but did not identify any such "admission" for the City to know to what he was referring. (CSOF ¶8). He then claimed he would rely on jury verdicts and settlements but did not identify

11

the documents or testimony from other litigation to show how any such verdict or settlement establishes the City had a failure to discipline in 1993. (*Id.*). He stated that he would rely on "victim testimony" and "statements from Humboldt Park residents" regarding complaints about "Guevara and his men," but he did point to specific evidence.

Plaintiff's failure to identify any actual evidence waives his reliance on any specific document or testimony now. In *Moran v. Calumet City*, 54 F.4th 483, 497 (7th Cir. 2022), the defense asked the plaintiff to provide the factual basis for his claims. In response to summary judgment, the plaintiff attempted to rely on information not included in his answer. The Court rejected that attempt, finding the evidence excluded under Rule 37(c)(1), given the failure to provide a complete response was neither justified nor harmless.

So, too, is the case here. Plaintiff had six months to prepare his answers (CSOF ¶2), leaving no excuse for failing to identify actual evidence. In fact, his responses were even provided *after* the close of fact discovery, giving Plaintiff full opportunity to provide a complete response. (*Id.*). Plaintiff's non-response also prejudices the City. Plaintiff failed to identify documents by bates stamp or specific testimony, thereby hindering the City's ability to rebut it. *See Moran*, 54 F.4th at 497. Because Plaintiff did not identify any actual evidence that he intended to support his theory of a widespread practice of failure to discipline, this Court should not permit him to do so at summary judgment. *See Id.*; Ex. 2, *Solache v. Guevara*, 18-cv-2312 and *Reyes v. Guevara*, 18-cv-1028, July 24, 2025 transcript, p. 54-59 (finding plaintiffs could not rely on evidence not included in discovery responses; defendants should not have to guess what plaintiffs' evidence is).

Additionally, while Plaintiff claimed in his contention interrogatory response that he would rely on the City's responses to Plaintiff's requests to admit, he never identified one specifically, and none supports his failure to discipline theory. To the contrary, Plaintiff devoted most of his

12

discovery to requests to admit to the Andrew Wilson case. (CSOF ¶80). The Andrew Wilson case, however, does not establish a widespread practice of failure to discipline in 1993. Wilson himself tried to prove a variation of this claim in his own case and lost. *See Wilson v. City of Chi.,* 6 F.3d 1233, 1241 (7th Cir. 1993) (affirming judgment in favor of the City). Despite Wilson's criticisms of then Superintendent Brzeczek's response to the allegations of abuse, the Seventh Circuit affirmed the judgment, finding no reasonable jury could find that Brzeczek approved the practice. Because "[f]ailing to eliminate a practice cannot be equated to approving it," Wilson failed to prove the City was deliberately indifferent to complaints of abuse. *Id.* at 1240. Moreover, despite the jury verdict in their favor, the City instituted disciplinary proceedings against Burge and the two other officers. *Id.* at 1233. The Police Board fired Burge and suspended the other two. *Id.* Plaintiff, therefore, cannot establish the Wilson case as an instance of failure to discipline.

Even so, limited instances of allegations of abuse do not establish any widespread practice. *See Brown v. City of Chi.,* 633 F. Supp. 3d 1122, 1177 (N.D. Ill. 2022) (granting City's motion for summary judgment, finding complaints made against Jon Burge and those under his command does not support an inference that the abusive tactics that occurred at Area 2 permeate[d] "a critical mass" of the CPD at the time of plaintiff's 1988 arrest) (citing *Rossi*, 790 F.3d at 737).

Plaintiff's other requests to admit focus on documents or statements that post-date Plaintiff's criminal case by over a decade. These include reference to (1) other statements by City Council members and other political figures; (2) the 2016 Police Accountability Task Force and its findings; and (3) the 2017 Department of Justice ("DOJ") Report. (CSOF ¶80). Plaintiff failed to establish that any of these statements or reports provide evidence of the City's disciplinary practices in 1993. *See Brown*, 633 F. Supp. 3d at 1150 (finding 2017 DOJ Report investigated CPD practices beginning in 2015, so it is not material to whether a "code of silence" existed in

13

1988); *Harris v. City of Chicago*, 24 CV 3215, 2025 WL 2044020, *7 (N.D. Ill. July 21, 2025) (allegations that post-date plaintiff's arrest do not support conclusion that City was on notice of alleged constitutional practices prior to plaintiff's arrest).

**B.      Longo's code of silence and early warning system opinions are baseless.**

Related to his failure to discipline claim, Plaintiff also relies on Longo's opinions that (1) a "code of silence" existed such that misconduct occurred and others "turned a blind eye to it," and (2) that the City lacked an early warning system to identify and track officers who committed repeated misconduct.  Neither survives summary judgment.

As to "code of silence," Longo admitted his opinion that such a practice existed was based on allegations against Burge and Defendant Guevara.  (CSOF ¶54).  As explained, however, his assertions regarding those allegations lack factual support and are based on mere speculation. Longo simply assumes that misconduct occurred in those cases, without even knowing what the allegations were in most instances.  (CSOF ¶¶35, 43-44, 47-49, 52, 76).  And from that, he apparently assumes that others witnessed and failed to report it.  Yet he did not identify any instance where a fellow officer failed to report another officer's misconduct.  (CSOF ¶54).  His speculation is insufficient. *Flowers v. Kia Motors Fin*., 105 F.4th 939, 946 (7th Cir. 2024).

Longo relies on three other purported pieces of evidence.  Longo's report first references a statement purportedly made by CPD Superintendent Martin wherein Longo states that Martin answered whether he believes a code of silence existed, and he stated, "to some extent, yes." (CSOF ¶55).  Longo's report provides no citation to show that Martin even said that, plus no context establishing it was regarding the City's practices in 1993.  *(Id.*).  In fact, the Court in *Brown* found Martin's testimony "actually shows that Martin stated, 'there is no such thing as a code of silence' and he did not believe such a code exists." *Brown*, 633 F. Supp. 3d at n. 63.

14

Longo then relies on two news articles, one pertaining to a speech given by former Mayor Rahm Emanuel in 2015, where he stated, among other things, "the problem is other times referred to as the code of silence", and the other pertaining to the jury's finding in *Obrycka v. City of Chicago et al*, a 2007 lawsuit involving an off-duty officer. (CSOF ¶¶56, 58). The undisputed evidence, however, shows that Emanuel explained that his statements were based on his own understanding and belief, not on any specialized knowledge or information he learned as Mayor. (CSOF ¶57). And regarding *Obrykca*, there were no special interrogatories in that case, and so there is no basis for Longo's conclusion that the jury found the existence of a "code of silence" in 2007, much less in 1993. *Obrycka v. City Of Chi.*, 913 F. Supp. 2d 598, 604 (N.D. Ill. 2012) ("It is unclear, however, which custom or practice supports the jury's general verdict").

Added to that, Longo's opinion is undermined by all the examples in which CPD did impose discipline. (CSOF ¶20). Because Longo's analysis was limited to summarizing allegations related to Jon Burge and against Defendant Guevara, he has no basis to conclude that officers did not report the misconduct of fellow officers in any other cases. *See Smith v. Ill. DOT*, 936 F.3d 554, 558-59 (7th Cir. 2019) (doubting soundness of opinion based on an incomplete picture, but rather an anemic set of facts curated by plaintiff).

As to Longo's opinion about an alleged lack of an "early warning" system, he admitted, too, that his opinion was based on allegations related to Burge and Defendant Guevara, such that he assumed based on those allegations that it "did not appear" that CPD was "doing anything to monitor trends and complaints" to determine whether "a behavior needed to change," or "intervention was needed." (CSOF ¶59). The undisputed evidence, however, shows that CPD did have systems in place to account for "early intervention." Those included the Personnel Concerns Program for early identification for members who engage in conduct contrary to the goals of the

15

Department, and the "Behavioral Alert System," for members whose behavior indicates that future disciplinary or performance problems may result unless correct action is taken. (CSOF ¶¶18-19).

Further, as explained, Longo failed to establish that all of the individuals identified in his report even made complaints to CPD. (CSOF ¶¶43, 49). Plus, Longo did not assess the CRs of any of the other Defendant Officers to show that any "alleged failure to track" would have any meaningful effect for them. (CSOF ¶48).

Additionally, Plaintiff's interrogatory responses prove he lacks evidence to prove this theory. Plaintiff stated that he would rely on (1) the verdict in *Obrycka;* (2) Mayor Emanuel's 2015 speech; (3) the 2016 Police Accountability Task Force; (4) the 2017 DOJ report purportedly regarding use of force; and (5) a 2000 "Official Statement" form City Council that Plaintiff does not identify. As explained, all of that post-dates Plaintiff's case. The only other evidence Plaintiff pointed to was Martin's alleged testimony, which Plaintiff could not establish, and the verdict in *Klipfel v. Bentsen*, for which Plaintiff also identified no documents or testimony. (CSOF ¶6). The remaining portion of Plaintiff's interrogatory response purports to relate to another lawsuit which Plaintiff claims also settled in 2016, and other unidentified testimony. (CSOF ¶7). The answer fails to even attempt to identify "evidence" of a failure to track or "early warning system." Thus, Plaintiff's failure to identify any documents by bates stamp or actual testimony and Longo's failure to substantiate evidence on this claim, proves Plaintiff cannot succeed on these theories.

### C.    No evidence supports municipal fault or causation for any discipline theory.

An independent basis to grant summary judgment is that Plaintiff failed to meet his burden that the City's policymakers knew of and were deliberately indifferent to failing to discipline officers who committed misconduct, or that such conduct was the "moving force" behind Plaintiff's alleged constitutional injury.

16

Any time a plaintiff brings a *Monell* claim based on an alleged widespread practice, he must meet rigorous causation standards by showing that the City's policymakers were "deliberately indifferent" to the "known or obvious consequences" of the alleged widespread practice. *Brown*, 520 U.S. at 405 (rigorous standards ensure that the municipality is not held liable solely for the actions of its employee). Deliberate indifference is a "high bar." *First Midwest Bank,* 988 F.3d at 986. It is "beyond a failure to act – a municipality's conduct must rise to the level of criminal recklessness." *Harvey v Dart*, 2023 WL 2561620, at \*15 (N.D. Ill. Mar. 17, 2023) (citing *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021)).

Starting with notice, Plaintiff provided no pattern of prior constitutional violations sufficiently similar to his. *See Bohanon v. City of Indianapolis*, 46 F.4th 669, 677 (7th Cir. 2022) ("Typically notice is established by 'a prior pattern of similar constitutional violations"). Most of the CRs identified by Longo pertain to physical abuse, and Plaintiff claims he suffered no physical abuse by the Defendant Officers. (CSOF ¶42).

Plaintiff also cannot show deliberative indifference because, as explained above, he adduced no evidence that discipline should have been imposed in any case but was not. Further, with respect to allegations against Jon Burge, the City was not deliberately indifferent because it actively investigated Burge and ultimately fired him and imposed discipline on his subordinates. *Wilson*, 6 F.3d at 1233. Nor do allegations against Guevara establish deliberate indifference. To the contrary, Longo only identified a handful of CR investigations initiated against him before 1993, and CPD did recommend discipline in two of those cases. (CSOF ¶48).[4]

---

[4] Plaintiff's reliance on evidence like the DOJ report, the Police Accountability Task Force's finding, and statements made by elected officials years later is misplaced because the City could not have been on notice of or deliberately indifferent based on documents generated or statements made *after* Plaintiff's arrest. *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994) ("subsequent conduct is irrelevant to determining the Village of Carpentersville's liability for the conduct of its employees on February 23, 1988. Holding a

17

Likewise, Plaintiff developed no evidence that the Defendant Officers allegedly violated his rights because of some City policy. There is no evidence of any prior similar conduct that went unpunished, such that a jury could conclude that the Defendant Officers here believed they could commit the misconduct alleged in this case without consequence. *See Brown*, 633 F. Supp. 3d at 1176 (granting summary judgment after finding the record "does not show that the Detective Defendants had the kind of checkered records that would suggest they felt that they could act with impunity due to the City's policies").

And finally, Plaintiff failed to establish the requisite evidence of culpability and causation because the evidence establishes that the City imposed significant discipline in the years leading up to Plaintiff's criminal case. (CSOF ¶20).

## III. No evidence supports a policy of withholding exculpatory evidence.

Plaintiff alleges the City maintained an accepted and widespread practice of suppressing exculpatory and impeachment evidence, including by maintaining secret files or "street files," not documenting exculpatory evidence, and/or destroying or concealing evidence, which resulted in the Defendant Officers failing to record or preserve written documentation of their interactions with victim Verdon Meadors and bystander Pedro Jaramillo. As explained in the Defendant Officers and Guevara's motions, those allegations fail to establish a constitutional violation. Even so, there is also no evidence of any supposed City practice of concealing exculpatory evidence.

### A. The history of "street files" in the *Jones* and *Palmer* litigation shows Plaintiff's failure to develop evidence of a "street file" in this case.

---

municipality liable for its official policies or custom and usage is predicated on the theory that it knew or should have known about the alleged unconstitutional conduct on the day of the incident").

Plaintiff and Longo draw a specious similarity between Plaintiff's allegations as to the documentation in the Douglas homicide and the file that was subject of the litigation in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) and subsequent class action litigation in *Palmer*, 755 F. 2d 560 (7th Cir. 1985) ("*Palmer I*"). (CSOF ¶65). *Jones*, as well as the Seventh Circuit's subsequent decisions in *Palmer I* and *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) ("*Palmer II*") provide the necessary background for this theory.

In *Jones*, the plaintiff alleged that CPD and the individual officers withheld exculpatory evidence from him in a "street file" during his 1981 prosecution. *Jones*, 865 F.2d at 995. While CPD required detectives to document all information pertinent to an investigation in case or supplementary reports, handwritten reports used to create those reports were not routinely disclosed. *Id.* In *Jones*, because a detective rewrote a key report, documentation of certain exculpatory evidence existed only in the "street file," which was not disclosed. *Id.* at 991. The Seventh Circuit found that because the original supplementary report was destroyed, CPD's practice of maintaining "street files" left a source of exculpatory information unavailable to Jones. *Id* at 995.[5]

In 1982, as a result of the *Jones* criminal prosecution, the class action plaintiffs in *Palmer v. City of Chicago* sued the City challenging the constitutionality of CPD's alleged practice of concealing exculpatory material collected in criminal investigations in the department's informal "street files." *Palmer I*, 755 F.2d at 564-65. Notwithstanding their search of files, the *Palmer* plaintiffs failed to uncover even one piece of undisclosed exculpatory evidence. *Id.* at 1324 ("their claim depends on there being exculpatory material in the 'street files' – and there isn't any."). In

---

[5] Critically, the Court did not find that CPD's practice of maintaining "street files" was designed to conceal exculpatory information. To the contrary, the detective intended the exculpatory evidence to be known – that is why he documented it, both in his memorandum and in a supplementary report. *Id*. at 991.

fact, the Seventh Circuit denied counsel Section 1988 attorneys' fees, finding the plaintiffs were unable to find anything to substantiate their allegations, stating "they went on a fishing expedition, and the pond was empty." *Palmer II*, 806 F.2d at 1316, 13-20-21.

Here, Plaintiff did not develop any evidence of a so-called "street file" in this case. Longo also admitted he discovered no "secret file" pertaining to the Douglas homicide. (CSOF ¶62). And Longo's report does not identify a single document in the possession of CPD that Plaintiff alleges was not produced to him prior to his criminal trial. (*Id.*). Naturally, this dooms Plaintiff's "street file" theory. *See Harris*, 2025 WL 2044020, *7 (N.D. Ill. July 21, 2025) (granting motion to dismiss where Plaintiff failed to allege the existence of any "street file" in his case or that the officers had a practice of maintaining "street files").

Despite this, Longo's report states that "notwithstanding the Court Orders and General Orders that were issued to put an end to the "Street Files" and other methods of withholding exculpatory and impeachment evidence, the practice of withholding such evidence nevertheless continued." (CSOF ¶66). To support this, Longo references three civil cases – *Fields v. Chicago*, *Rivera v. Chicago*, *Brown v. Chicago* – yet Longo provides no facts to establish the relevance of any of those cases. (*Id.*). In fact, at his deposition, Longo admitted that he did not *know* the facts of any of those cases or what was alleged to have been withheld. (CSOF ¶67).

What's more, during discovery in this case, the City produced CPD detective investigative files for over 400 homicide investigations. (CSOF ¶69). Despite having the opportunity to review hundreds of files to prove this theory, Plaintiff could not identify any instance where material exculpatory evidence was withheld and admitted he could not do so. (CSOF ¶15).

20

**B.      No evidence supports a practice of excluding evidence from police reports.**

Plaintiff's alternate suppression theory is that the City had a practice of withholding or destroying material exculpatory evidence because detectives routinely failed to record it in their police reports.  Plaintiff developed no evidence to support any alleged practice.

As explained, Plaintiff claims the Defendant Officers failed to record information about their interactions with witnesses in the Douglas homicide.  (CSOF ¶61).  Not only does that not support a constitutional violation, but Longo identified no other case where detectives allegedly failed to document exculpatory evidence.  (CSOF ¶¶62-63).  Nor did he identify any instance where alleged exculpatory evidence was destroyed. (CSOF ¶63).  He had the opportunity to do so with the 419 investigative files produced to Plaintiff, but he did not point to a single piece of evidence in any one of them.  (CSOF ¶69).  Accordingly, Plaintiff failed to develop evidence of a widespread practice sufficient to establish a City policy.  *See Thomas,* 604 F.3d at 303 (reasoning that to establish a practice "it must be more than one instance, or even three").

Plaintiff also did not develop evidence of a municipal fault or causation to support this theory.  Longo appeared to reference *Palmer* to establish notice on the part of the City, but Longo admitted that he did not review the Seventh Circuit opinions in *Palmer* and did not assess whether any exculpatory material was withheld from the class plaintiffs in those cases.  (CSOF ¶64).  And the Seventh Circuit concluded that there was none.  *Palmer II*, 806 F.2d at 1321.  Further, Longo's report does not attempt to establish the issue of causation on this point, and so Plaintiff developed no evidence to show that any City policy caused him a constitutional injury.  (CSOF ¶68).

Finally, Plaintiff failed to identify any document by bates stamp or specify testimony or evidence in his contention interrogatory responses regarding an alleged practice of detectives not

21

memorializing exculpatory evidence. Accordingly, he waived his opportunity to rely on specific evidence in response to this motion. *Moran*, *supra*.

## IV. No evidence supports Plaintiff's failure to supervise and train *Monell* theories.

Relying again on Longo's opinions, Plaintiff claims the City failed to supervise and discipline officers. Longo's opinions are insufficient to establish either theory.

As to failure to supervise, Longo admitted his opinion is dependent on his failure to discipline opinion. (CSOF ¶70). Because the discipline theory fails for the reasons explained in Section II, Plaintiff's failure to supervise claim fails as well. Indeed, for this opinion, Longo only relies on two additional facts: (1) that in one of the CR files pertaining to Guevara, there was evidence that he "lied" in a police report and was not fired, and (2) Defendant Mingey's testimony that he did not recall seeing anything "flagrant" with respect to Guevara while Mingey was his supervisor, testimony that Longo found incredulous. (CSOF ¶71). Limited evidence pertaining to one officer is insufficient to establish a widespread practice. *See Howell*, 987 F.3d at 654, *supra*.

As for an alleged failure to train, succeeding on that theory is a high hurdle to surpass. *Connick v. Thompson*, 563 U.S. 51, 51, 131 S. Ct. 1350, 1353 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" and such failure "must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact." *Id.* To demonstrate deliberate indifference, Plaintiff must present evidence of a pattern of similar constitutional violations by untrained employees. *Id.*

Longo claims a failure to train is "evident in the conduct repeatedly set out in the vast number of complaints and lawsuits against defendant Guevara and a host of others who operated with him." (CSOF ¶72). As explained, there is no evidence that any allegation was true, nor does this opinion explain how these allegations resulted from a supposed lack of training.

22

Longo also states the City failed to train regarding disclosure of exculpatory evidence, but his opinion amounts to only two sentences in his report and he failed to identify any case where exculpatory evidence was withheld due to a lack of training. (CSOF ¶73). Nor did he identify any specific training that was lacking or how any such unconstitutional conduct in this case was caused, even in part, by an alleged lack of training. (CSOF ¶74). *See Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights"); *Petropoulos v. City of Chicago*, 19-CV-03206, 2021 WL 1103480, *9 (N.D. Ill. Mar. 23, 2021) ( allegations "that there wasn't enough training, without specifics, isn't enough. It's too generic to support an inference that the City caused the injury").

Longo also opines the City did not properly train its detectives as to eyewitness identification procedures, which is based on Longo's criticism of how the detectives conducted the identification procedures in the Douglas homicide investigation, as no other cases are identified in that portion of his report. (CSOF ¶72). Yet, a failure to train regarding identification procedures is not an actionable *Monell* claim given the Seventh Circuit Court's recent decision in *Blackmon v. Jones* 132 F.4th 522, 525 (7th Cir. 2025) (conducting a suggestive photo array does not by itself violate an individual's constitutional rights, considering exclusion of the evidence is the appropriate remedy); *Johnson v. Guevara*, 20 C 4156, 2025 WL 903813, *35 (N.D. Ill. Mar. 24, 2025) (granting summary judgment on *Monell* theories pertaining to eyewitness identifications under *Blackmon*).

Additionally, in response to the City's interrogatories, the only specific evidence Plaintiff pointed to was testimony from Defendant Mingey, where Plaintiff's counsel asked him if he recalled any training regarding preserving evidence and what detectives were trained regarding

23

eyewitness identifications. Mingey, who was 81 years old at the time of the deposition, and started with CPD in 1966, explained that he was never a detective and so whatever he learned was on the job. and that he did not remember formal training but he learned that evidence should be preserved. (CSOF ¶10). He also testified that he could not recall training provided to detectives on eyewitness identifications, but detectives were instructed on it. *(Id.)*. Certainly, this testimony does not establish that training was not provided to detectives, nor does it provide evidence that any training provided was constitutionally deficient. Moreover, the undisputed evidence shows that CPD did provide training on disclosing exculpatory evidence and conducting eyewitness procedures. (CSOF ¶¶21-31).

**V.    No evidence supports a policy of fabricating evidence, coercing witnesses into making false identifications and statements from suspects, or perjured testimony.**

In his Second Amended Complaint, Plaintiff alleges that the City had a pattern and practice of officer (1) routinely fabricating evidence to support false charges and wrongful convictions, (2) o routinely using coercion to extract involuntary and false statements and identifications from suspects and witnesses, and (3) lying about police misconduct at hearings and trials to support false charges and wrongful convictions. (Dkt. 327, ¶ 237). Longo claimed at his deposition to have provided opinions regarding each of these alleged widespread practices. (CSOF ¶75). As explained in the City's *Daubert* motion, no such opinions were disclosed. (City's Mtn to Bar Longo, p. 18-19). Because this failure was not harmless or justified, they are properly excluded.

What's more, Plaintiff was asked in discovery to identify the evidence he intended to rely on to support these *Monell* theories, and he provided none. (CSOF ¶¶11-13). In his lengthy response, Plaintiff stated he intended to pursue a theory that detectives and other officers would fabricate evidence and then lie about it at hearings and trials. (CSOF ¶11). Plaintiff then provided a laundry list of "evidence" he intended to support that theory, but, other than his allegations

24

regarding the Douglas homicide alone, failed to identify one single document by bates stamp or any specific evidence to support his contention that (1) any evidence was fabricated, (2) who fabricated it, (3) what evidence supports the conclusion that it was fabricated, or (4) what constitutional harm, if any, resulted from the alleged fabrication. (CSOF ¶¶11, 14).

The same is true for his claim about coerced statements. Plaintiff claimed that his theory was supported by allegations that officers accused of using violence to extract false confessions, but he does not point to any admissible evidence to show any confession or statement was coerced or that the City had notice of such a practice. (CSOF ¶¶12, 14).

And finally, Plaintiff presented no evidence regarding an alleged practice of committing perjury. (CSOF ¶13). Such a claim is not even addressed substantively in Plaintiff's contention interrogatories answers, and, even so, officers are absolutely immune for their testimony provided in court. *Jones v. York*, 34 F.4th 550, 563 (7th Cir. 2022)

Because Plaintiff presented no evidence in support of these alleged practices, summary judgment should be granted on these theories. *See Solache/Reyes*, Ex. 2, p. 57-59, 70; *Pursley v. City of Rockford*, No. 3:18-cv-50040, 2024 WL 1050242, at *14 (N.D. Ill. Mar. 11, 2024) (holding plaintiff to interrogatory response).

## VI. Plaintiff's derivative claims – *respondeat superior* and indemnification - fail.

"[C]laims…for respondeat superior and indemnity" against a municipal entity "are derivative liability claims that depend on [Plaintiff] prevailing against at least one of the individual defendants." *Moran v. Calumet City*, 54 F.4th 483, 500 (7th Cir. 2022). Because the officers are entitled to summary judgment, the claims against the City fail. *Id. Respondeat superior* liability is also limited to state-law claims, so to the extent the state law claims against the officers are dismissed, so is the *respondeat superior* claim.

25

Dated: January 5, 2026

Respectfully submitted,

By: */s/ Eileen E. Rosen*
Special Assistant Corporation Counsel
*One of the attorneys for Defendant City of Chicago*

Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Lauren Ferrise
Rock Fusco & Connelly, LLC
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
Phone: (312) 494-1000
erosen@rfclaw.com

26