**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 23-cv-4268 |
| REYNALDO GUEVARA, | ) | |
| ERNEST HALVORSEN, | ) | |
| ANTHONY WOJCIK, | ) | |
| ROBERT RUTHERFORD, | ) | Honorable Georgia N. Alexakis |
| ANTHONY RICCIO, | ) | |
| ROBERT BORIS, | ) | |
| STEPHEN GAWRYS, | ) | |
| EDWARD MINGEY, | ) | **JURY TRIAL DEMANDED** |
| FORMER ASA EDWARD MALONEY, | ) | |
| and THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**OFFICER DEFENDANTS' REPLY TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Date:   March 11, 2026

Respectfully submitted,

/s/ Jeffrey C. Grossich
JEFFREY C. GROSSICH, Attorney No.6316511
*One of the Attorneys for Defendants
Wojcik, Rutherford, Riccio, Boris, Gawrys,
Mingey, and Yanow, special representative
for the Estate of Halvorsen*

James G. Sotos
Josh. M. Engquist
Lisa M. Meador
Jeffrey C. Grossich
Blake A. Savidge
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jgrossich@sotoslaw.com

**TABLE OF CONTENTS**

**Page**

I. The Court Should Reject Cruz's Posturing in His Rule 56.1 Fact Filings .........................1

    a. Meadors' Criminal trial testimony is clearly admissible ...............................................1

        i. Cruz waives the objection at multiple steps.........................................................1

        ii. Meadors' former testimony is, in any event, plainly admissible......................2

    b. To ensure Movants do not waive their objections, they as the Court not to indulge Cruz's improper efforts to create illusions of fact disputes .........................................3

II. Cruz's Efforts to Conjure a Dispute of Fact Over Whether Meadors' Identifications Were Fabricated/Coerced Defies the Record & Settled Law .......................................................3

III. The Federal Malicious Prosecution & Unlawful Detention Claims (Count III) & the State Law Malicious Prosecution Claim (Count VII) Fail..........................................................5

    a. There was ample probable cause ....................................................................................5

    b. Cruz miscomprehends how qualified immunity arises in the context of a probable cause defense, defeating the Fourth Amendment claims(Count III) ...........................11

IV. Movants are Entitled to Summary Judgment on Cruz's Fourteenth Amendmen Fabrication Claim (Count IA)...........................................................................................12

    a. Cruz's abandoned claims must be dismissed................................................................12

    b. Cruz has no viable claim that Meadors' identifications were fabricated.....................12

    c. The GOCR was not fabricated and was not used at trial ............................................12

    d. The Latin King photo and Constitution do not support a fabrication claim ...............14

V. Cruz's *Brady* Theories Are Wanting ...............................................................................16

    a. Subparagraphs (a), (b), (c), fail for reasons already discussed ...................................16

    b. The suppression concerning Meadors (subparagraph (b)) separately fails because Cruz concedes Movants had no constitutional obligation to contemporaneously record every interaction...............................................................................................16

**TABLE OF CONTENTS**
**-CONTINUED-**

c. The *Brady* claim in subparagraph (c), concerning the Latin King photo and Constitution, separately fails for multiple reasons ......................................................18

    i. The claim relies exclusively on inadmissible hear ........................................18

    ii. Cruz does not adequately address his lack of reasonable diligence.................18

d. The *Brady* claim in subparagraph (d), concerning attempts at coercing Jaramillo's false identification, separately fails for multiple reasons.............................................20

e. Evidence that the perpetrators shot at Rios (subparagraph (e)) is neither exculpatory nor impeaching, and thus not material.......................................................................23

f. Cruz does not claim Movants were personally involved in subparagraph(f) ..............24

VI. The Court Should Grant Summary Judgment for Certain Movants for Lack of Personal Involvement .....................................................................................................................24

VII. Movants Incorporate Certain of Guevara's Reply Arguments .........................................25

# TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Page**

*Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2005). ...................................................14

*Askew v. City of Chicago,* 440 F.3d 894 (7th Cir. 2006) ........................................................7, 8

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) .............................................................15

*Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001)..........................................................................19, 20

*Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010) ...................................................................1

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................................. *passim*

*Briscoe v. LaHue*, 460 U.S. 325 (1983)...........................................................................................15

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ..............................12, 15, 16, 23

*Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016)...........................................................................10

*Carmody v. Bd. Of Tr. Of Univ. of Ill.*, 893 F.3d 397 (7th Cir. 2018) ...........................................13

*Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2008) ..............................................................18, 24

*Chambers v. Maroney*, 399 U.S. 42 (1970) ......................................................................................9

*Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017 ................................................................22

*Cole v. Ill. Tool Works, Inc.*, 924 F. Supp. 2d 978 (N.D. Ill. 2013)................................................11

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019)...............................................7, 10, 12, 14

*Crespo v. Colvin*, 824 F.3d 667 (7th Cir. 2016) ...............................................................................1

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) .......................................................................11

*Dukes v. Washburn*, No. 21-cv-03672, 2026 WL 579205, at *8–9 (N.D. Ill. Mar. 2, 2026); .......16

*Flowers v. Kia Motors Fin.*, 105 F. 4th 939 (7th Cir. 2024) ..........................................................13

*Goudy v. Cummings*, 922 F.3d 834 (7th Cir. 2019).........................................................................15

*Gramenos v. Jewel Cos.*, 797 F.2d 432, 440 (7th Cir. 1986)..............................................8, 10, 12

*Gunville v. Webster*, 583 F.3d 979 (7th Cir. 2009).........................................................................18

**TABLE OF AUTHORITIES**
**-CONTINUED-**

**Cases:**          **Page**

*Hampton v. City of Chicago*, No. 12-cv-5650, 2017 WL 2985743, at *23 (N.D. Ill. July 13, 2017) .........................................................................................................................................15

*Heidelberg v. Manias*, No. 1:18-cv-01161-SLD-JEH, 2024 WL 1316206, at *25 (C.D. Ill. Mar. 27, 2024) ...............................................................................................................................21, 23

*Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at *4 (N.D. Ill. Jan. 26, 2009) ..........23

*Holloway v. City of Milwaukee*, 43 F.4th 760 (7th Cir. 2022).........................................................22

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024)...................................................2

*In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa. 1983) ........................................................................17

*Jackson v. City of Peoria*, 16–cv–01054, 2017 WL 1224526, at *1 (C.D. Ill. Mar. 31, 2017).........
...........................................................................................................................................19, 20

*Johnson v. Guevara*, No. 20 C 4156, 2025 WL 903813, at *19 (N.D. Ill. Mar. 24, 2025) .....13, 25

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ..................................................... 16-17, 18

*Jones v. York*, 34 F.4th 550 (7th Cir. 2022).....................................................................................16

*Lavite v. Dunstan*, 932 F.3d 1020 (7th Cir. 2019) .............................................................................5

*Lee v. Harris*, 127 F.4th 666 (7th Cir. 2025) ...................................................................................10

*Mack v. City of Chicago*, 151 F.4th 887 (7th Cir. 2025) ............................................................11, 12

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) ........................................................................................................................................5

*Moorer v. City of Chicago*, 92 F.4th 715 (7 th Cir. 2024)...................................................................8

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) ........................................................... *passim*

*Pasiewicz v. Lake County Forest Preserve District*, 270 F.3d 520 (7th Cir. 2001) ........................9

*Patrick v. City of Chicago*, 974 F.3d 834 (7th Cir. 2020)..........................................................12, 15

*People v. Ertl*, 686 N.E.2d 738, 748 (Ill. App. Ct. 1997) .................................................................9

v

## TABLE OF AUTHORITIES
### -CONTINUED-

**Cases:** **Page**

*People v. Turner*, 240 Ill. App. 3d 340 (1st Dist. 1992). ........................................8

*Pepper v. Vill. of Oak Park*, 430 F.3d 805 (7th Cir. 2005)..............................................24

*Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012)..............................................................8

*Reyes/Solache v. City of Chicago*, Nos. 18 CV 1028 (N.D. Ill. July 24, 2025).............................6

*Ruckelshaus v. Cowan*, No. 1:17-cv-02009-JMS-MJD, 2018 WL 2150953, at *1 (S.D. Ind. May 10, 2018) ........................................................................................17

*Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735 (7th Cir. 1998) ..............................21, 23

*Sanchez v. City of Chicago*, 880 F.3d 349 (7th Cir. 2018) ...............................................1

*Saunders-El v. Rohde* 778 F.3d 556 (7th Cir. 2015)......................................................17

*Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599 (7th Cir. 2016)...............9, 23, 24

*Smith v. City of Chicago*, 785 F. Supp. 3d 356 (N.D. Ill. 2025)........................................16

*Socha v. Richardson*, 874 F.3d 983 (7th Cir. 2017) ....................................................24

*Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006)...........................................17

*United States v. Johnson*, No. 20-CR-926, 2024 WL 3509623, at *8 n.4 (N.D. Ill. July 23, 2024) ........................................................................................8

*United States v. McClellan,* 868 F.2d 210, 215 (7th Cir.1989) .........................................2

*United States v. Saelee*, 162 F. Supp. 2d 1097 (D. Alaska 2001)......................................13

*United States v. Starzecpyzel*, 880 F. Supp. 1027 (S.D.N.Y. 1995) ..................................13

*United States v. Truitt*, 440 F.2d 1070 (5th Cir. 1971) ....................................................1

*Wade v. Collier*, 783 F.3d 1081 (7th Cir. 2015) ............................................................7

*Walden v. City of Chicago*, 846 F. Supp. 2d 963 (N.D. Ill. 2012)......................................2

## TABLE OF AUTHORITIES
## -CONTINUED-

**Cases:** **Page**

*Walker v. City of Chicago*, No. 21 CV 2648, 2025 WL 343471, at *4
(N.D. Ill. Jan. 30, 2025) ....................................................................................15,16

*Walker v. Groot*, 867 F.3d 799 (7th Cir. 2017)....................................................1

*Washington v. City of Chicago*, 98 F.4th 860 (7th Cir. 2024). ...........................6

*Whitaker v. Dempsey*, 144 F.4th 908 *(*7th Cir. 2025) .......................................5

*Zambrano v. City of Joliet*, 141 F.4th 828 (7th Cir. 2025) ..............................14


**Statutes:** **Page**

42 U.S.C. § 1983..............................................................................................24, 25

42 U.S.C. § 1985.....................................................................................................25

Fed. R. Civ. P 37(c)(1)......................................................................................21, 23

FRE 804(b)(1)...........................................................................................................2, 3

FRE 806 .....................................................................................................................3

### I.     The Court Should Reject Cruz's Posturing in His Rule 56.1 Fact Filings

#### a.  Meadors' criminal trial testimony is clearly admissible.

This case turns greatly on shooting victim Vernon Meadors' repeated identifications of Cruz as a shooter. In Response to Officer Defendant's Joint Statement of Uncontested Material Facts, Cruz argues Movants cannot rely on Meadors' testimony because it is hearsay. (Dkt. 490, Cruz's 56.1 Response at 2 ¶¶ 5, 5 n.1.) This contention is waived and otherwise meritless.

#### i.  Cruz waives the objection at multiple steps.

First, in his Statement of Additional Material Facts, Cruz cites Meadors' testimony to support at least three facts. (Dkt. 487, Cruz's SOAF ¶¶ 8, 21, 25.) Cruz "cannot complain of errors which he has committed or to which he consented." *Sanchez v. City of Chicago*, 880 F.3d 349, 360 (7th Cir. 2018) (cleaned up). By using evidence "to support his…theory of the case," Cruz "waive[s] the argument" of exclusion. *Walker v. Groot*, 867 F.3d 799, 805 (7th Cir. 2017). "It is settled law that one waives his right to object to the admission of evidence if he later introduces evidence of the same" and "may not complain about the admission where, as here, he introduced that very evidence himself." *United States v. Truitt*, 440 F.2d 1070, 1071 (5th Cir. 1971) (cleaned up).

Second, rather than fulsomely oppose the use of Meadors' testimony in his merits Response, Cruz tucked the point in a footnote in his Rule 56.1 Response, omitted supporting law, and did not specify the withheld evidence that made his cross-exam opportunity "insufficient." That is a classic "perfunctory and undeveloped assertion," "unsupported by pertinent authority," which is "waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (cleaned up); *see also Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010) (defense raised in "footnote" is "waived").

Third, objections in a fact "response may not assert legal arguments." L.R. 56.1(e)(2). To *raise* a hearsay objection in a 56.1 Response is distinct from *arguing* via footnote that evidence is

1

barred based on a fact-centric theory about opportunity and motive. As Cruz used his "LR 56.1 fact statements and responses" to "argue…that the evidence on which the opposing party relies is inadmissible hearsay," the Court must "not consider [his] improper arguments in the LR 56.1 statements." *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 860–61 (N.D. Ill. 2024).

### ii. *Meadors' former testimony is, in any event, plainly admissible.*

Waiver aside, Meadors' testimony is admissible under Rule 804(b)(1), which applies where testimony of a now-unavailable "witness at a trial…whether given during the current proceeding or a different one" is "offered against a party who had…an opportunity and similar motive to develop it by…cross-…examination." Fed. R. Evid. 804(b)(1).[1] Cruz's footnote claims a lack of "sufficient" opportunity to cross Meadors because unspecified exculpatory/impeaching evidence was withheld. (Dkt. 490, Cruz's 56.1 Resp. at 2 ¶ 5 n.1.) Nothing about the identifications was withheld—as argued extensively by Movants—defeating the objection at the outset.

Moreover, Cruz "had the opportunity to, and did in fact, cross-examine" Meadors about his identifications. *Walden v. City of Chicago*, 846 F. Supp. 2d 963, 971–72 (N.D. Ill. 2012). (*See* Dkt. 461-3, Ex. 2, Crim. Tr. 12/13/1995, Meadors' Test. at 58:13–76:6, 77:14–19 (cross-examining Meadors).) Cruz "also had a similar—if not greater—motive to develop the testimony regarding his claims that [Meadors] was coerced into [identifying Cruz] at his criminal trial because he faced a lengthy prison sentence if convicted." *Walden*, 846 F. Supp. at 972. "While [Cruz] now contends his cross-examination was inadequate because his criminal trial attorney lacked 'now known' evidence of police misconduct, this argument fails because 'the emphasis in this inquiry is upon the motive underlying the cross-examination rather than the actual exchange that took place.'" *Id.* (quoting *United States v. McClellan,* 868 F.2d 210, 215 (7th Cir. 1989)).

---

[1] The parties agree that "Meadors is deceased," (Dkt. 490, Cruz's 56.1 Resp. at 2 ¶ 5 n.1), such that Cruz appropriately declines to claim Meadors is not unavailable.

Thus, even if Cruz lacked access to certain material at trial (he did not), where later-acquired information suggests new lines to impeach a declarant, the cure is broader impeachment—not exclusion of admissible former testimony. Fed. R. Evid. 806 advisory committee's note. "[T]he expanded admissibility of former testimony…under Rule 804(b)(1) calls for a correspondingly expanded approach to impeachment." *Id*. So, the answer is not to exclude Meadors' testimony as hearsay beyond Rule 804(b)(1), but rather to admit it and let Cruz impeach it under Rule 806.

> **b. To ensure Movants do not waive their objections, they ask the Court not to indulge Cruz's improper efforts to create illusions of fact disputes.**

Electing to take their Motion to Strike (Dkt. 494) with the summary judgment briefs, the Court ordered that Movants' Reply "not be used to raise arguments already advanced in the motion to strike." (Dkt. 498, Minute Entry.) For preservation purposes, however, Movants are obliged to note that, to ensure concision in the Motion to Strike, they only identified *some* of Cruz's offending responses and fact statements as representative examples. (Dkt. 494, Mot. to Strike at 3–5.) Unfortunately, Cruz mischaracterized this representative nature in his opposition. (Dkt. 497, Resp. to Mot. to Strike at 4, 6–7.) Rather than wade into specifics—and to abide by the Court's Minute Entry while avoiding potential appellate waiver—Movants simply note, should the Court decline to strike all of Cruz's fact submissions, the following fact items so clearly violate the rules as to warrant rejection for the reasons stated in the Motion to Strike:

- Dkt. 487, Cruz's SOAF: ¶¶ 1-4, 6, 7, 9, 13, 14, 15–19, 21–41, 43–51, 53–54, 59–70, 73, 75–78, 80.
- Dkt. 490, Cruz's 56.1 Response: ¶¶ 24, 25, 27, 29, 33, 41, 58–60, 67, 74, 76, 79, 80, 82, 86, 98, 101, 103, 104, 108–10, 112, 113, 118, 120, 134, 148, 149, 154, 159.

## II. Cruz's Efforts to Conjure a Dispute of Fact Over Whether Meadors' Identifications Were Fabricated/Coerced Defies the Record & Settled Law

On four of his claims—unlawful detention; federal and state law malicious prosecution; and fabrication of evidence—Cruz's Response turns nigh exclusively on Meadors' identifications. He

3

says the Court must *infer* that the identifications were fabricated/coerced, such that the fabrication claim lies and, for the other three claims, officers could not use the identifications for probable cause. (Dkt. 491, Resp. at 2–5, 21–23.) This argument must be rejected.

Cruz's fabrication/coercion theory is a plea for an impermissible inference arising from this undisputed fact: Meadors did not identify Cruz in an October 6 photo array, but he did identify Cruz multiple times on October 8–9. (*Id.* at 22.) Cruz claims there are competing inferences as to whether, as Movants contend, Meadors was reticent on October 6 from fear of gang retaliation— a fear he overcame by October 8—or whether, as Cruz speculates, police coerced Meadors to falsely identify him. (*Id.*) Movants, however, do *not* seek inferences. Rather, they merely recite Meadors' uncontradicted testimony. Cruz, by contrast, seeks an inference based on speculation.

Meadors identified Cruz three times, which he confirmed in-court at Cruz's trial. (SOF ¶¶ 36–37, 39–40, 71–76, 103–09.) Asked at trial, "***Did anyone at any time tell you who to pick out?***" Meadors answered, "***No, no***." (*Id.* ¶ 108 (emphasis added).) For the rest of his life, he maintained he saw Cruz shoot. (*Id.* ¶ 129.) To his reticence on October 6, Meadors said, "I was still afraid and nervous at the time, not wanting to jeopardize my family," and "I was worried about my family and the location I was at…living right in the neighborhood, **which I knew was a *Latin King* neighborhood**." (*Id.* ¶ 28 (emphasis added).) By October 8, after he "talked to my wife and everybody on making a decision whether…I should come forward," Meadors made his "final decision." As Cruz "shot me and I watched him kill someone, he needed to be off the street before he done it again." (Dkt. 461-3, Ex. 2, Crim. Tr. 12/13/1995, Meadors' Test. at 46:4–9.)[2]

This is ***direct, uncontradicted evidence***, from the man against whom Cruz seeks a contrary inference, that he was not coerced and that his path to identifying Cruz came from fear of gangs

---

[2] Cruz cannot—and does not—marshal evidence that witness protection provided to Meadors was conditioned on his cooperation with police. Cruz admitted *in his deposition* that he has no evidence Meadors was coerced. (SOF ¶ 149.)

receding in the face of courage. "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (cleaned up). "**An inference is not reasonable if it is *directly contradicted by direct evidence*** provided at the summary judgment stage, nor is a conceivable inference necessarily reasonable." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (emphasis added, cleaned up).

This bars Cruz from relying on whataboutism and propensity to beseech for inferences that refute direct evidence—Meadors' own sworn testimony. For example, Cruz claims since Ivan Rios and Pedro Jaramillo said the assailants were Black, Meadors *must* have said the same. (Dkt. 491, Resp. at 2.) Cruz is not entitled to this unreasonable, speculative inference, *MAO*, 994 F.3d at 876, especially since Meadors expressly said the shooter he saw was Hispanic. (SOF ¶ 104.)

*Whitaker v. Dempsey* rejects this sort of inference-seeking, where a plaintiff tried to "explain away" direct evidence by seeking an inference despite a sworn statement indicating the opposite. 144 F.4th 908, 920 (7th Cir. 2025). As here, the plaintiff "lack[ed] personal knowledge" about the circumstance and "has not presented any evidence contradicting the sworn statement of [the person]"—here, Meadors—"who does have such knowledge." *Id*. Ultimately, Cruz's theory that Meadors' identifications were fabricated/coerced would require the Court to ignore Meadors' direct evidence in favor of speculation derived from what officers have allegedly done in *other* cases or with *other* witnesses. The Seventh Circuit bars the Court from indulging Cruz thus.

### III. The Federal Malicious Prosecution & Unlawful Detention Claims (Count III) & the State Law Malicious Prosecution Claim (Count VII) Fail

#### a. There was ample probable cause.

Movants' core defense to these claims is that probable cause was supplied by Meadors' identifications. (*See generally* Dkt. 460, MSJ at 3–7.) Cruz's first oppositional tack—Meadors'

5

identifications were coerced or fabricated—was addressed above. *Supra* at 3–5. His second, much broader oppositional category posits that, irrespective of fabrication, a variety of legal principles preclude Movants from relying on Meadors' identifications for probable cause. To adequately address these notions, Movants must unwind a disjointed pastiche of red herrings and misstatements of law. Movants strive for concision wherever possible.

First, Cruz claims Defendants "completely mis-state their actual legal burden," based on oral comments made by Judge Seeger in *Reyes/Solache v. City of Chicago*, Nos. 18 CV 1028, 2312 (N.D. Ill. July 24, 2025). (Dkt. 491, Resp. at 6.) In commentary from the bench—never committed to a written opinion and devoid of reference to Seventh Circuit authority—Judge Seeger suggested that, at summary judgment, the probable cause inquiry asks if there is enough record evidence to support a reasonable jury's finding that there was not probable cause. (Dkt. 464-1, *Reyes* Tr. at 116:8–11.) Cruz cites no appellate nor even published district court authority supporting this construction; he relies solely on Judge Seeger's oral remarks.

To be clear, Movants misstated nothing. Judge Seeger's negative framing—asking if there was *not* probable cause—contradicts the Seventh Circuit. For a "district court" weighing whether to "grant[] summary judgment," "[t]he existence of probable cause is a defense to both Fourth Amendment and malicious prosecution claims." *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). "Consequently, **this case turns on *whether probable cause existed***…." *Id.* (emphasis added). This Seventh Circuit law binds, and Movants framed it thus. Judge Seeger's unpublished oral comments in no way permit the accusation that Movants misstated their burden.

Second, Cruz suggests Movants omit that obvious exculpatory/impeaching evidence may not be ignored as part of the totality of the circumstances for probable cause. (Dkt. 491, Resp. at 7–9.) This is a red herring. Movants' position is that because Cruz lacks evidence that Meadors had

6

any reason to falsely point the finger at Cruz, his identifications established probable cause regardless of the presence of some exculpatory evidence that might prevent the State from proving Cruz's guilt at trial. (Dkt. 460, MSJ at 3–5.)

Per the Seventh Circuit, where a crime victim makes an identification, the law accords that identification so substantial a weight as to establish probable cause as a legal matter. "[T]he fact [is] that an eyewitness 'identification, even if questionable, is enough to give the police probable cause.'" *Moran v. Calumet City*, 54 F.4th 483, 499–500 (7th Cir. 2022) (quoting *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019)). Unless the victim/eyewitness has a grudge, *see infra* at 8, no amount of exculpatory/impeaching evidence can undermine the probable cause established by his identification. The court in *Askew v. City of Chicago* stated it most succinctly:

> [A]llegations by eyewitnesses supply probable cause when the statements, if true, show that a crime has occurred. It does not matter…whether the accused person denies the allegations. Police need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth.

440 F.3d 894, 895 (7th Cir. 2006). Cruz's suggestion that Movants "forfeited their probable cause argument" by relying on this binding law is irresponsible and frivolous. (Dkt. 491, Resp. at 8.)

Third, after acknowledging that an indictment creates a presumption of probable cause, Cruz contends he rebutted said presumption by showing the indictment was procured through "improper-and-fraudulent-means evidence." (*Id.* at 9.) This argument fails for the reasons already explained: Cruz has *no* evidence that Meadors' identifications were fraudulently procured. *Supra* at 3–5. Moreover, "even if we disregard the grand jury indictment" itself, Meadors' identification "established probable cause to charge [Cruz]," *Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015), as Movants have argued extensively.

Fourth, Cruz cites some cases to argue that a lone victim identification does not conclusively establish probable cause, but rather is only generally sufficient, unless the officer has reason to

7

question the victim's reliability. (Dkt. 491 Resp. at 10.) This notion, however, has a narrow and specific manifestation, which Cruz either deliberately ignored or failed to comprehend.

Specifically, Cruz presumes officers should "question the victim's reliability" wherever there is exculpatory/impeaching evidence of *any* sort. (*Id.* at 10–11.) That is *not* how identifications work for probable cause. As Movants explained, (Dkt. 460, MSJ at 6), as recently as 2024, the Seventh Circuit "held that an identification by even **one eyewitness who *lacks an apparent grudge* against the accused person *is sufficient* to demonstrate probable cause**." *Moorer v. City of Chicago*, 92 F.4th 715, 721 (7th Cir. 2024) (emphasis added). This law stretches back decades. *E.g., Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012); *Askew*, 440 F.3d at 895; *Gramenos v. Jewel Cos.*, 797 F.2d 432, 440 (7th Cir. 1986). As Cruz does not dispute that Meadors held no grudge, (Dkt. 460, MSJ at 6–7), probable cause is established by Meadors' identifications.

Fifth, Cruz makes bewildering hay of Movants' lone sentence that Illinois law tabs victim identifications as inherently reliable, (Dkt. 460, MSJ at 4 (citing *People v. Turner*, 240 Ill. App. 3d 340 (Ill. App. Ct. 1992))), which sets Cruz off on an inapt four-page screed. Absurdly, he labels this principle irrelevant because it flows from Illinois evidentiary presumptions. (Dkt. 491, Resp. at 11–12.) In their MSJ and Reply, Movants cite a litany of *federal* cases standing for the identical proposition, that a victim/eyewitness' identification is presumed reliable and establishes probable cause. Judge Blakey recently identified fourteen federal cases demonstrating that such identifications carry a presumption of reliability. *United States v. Johnson*, No. 20-CR-926, 2024 WL 3509623, at *8 n.4 (N.D. Ill. July 23, 2024) (collecting cases). Movants simply noted this principle carries over to Illinois law because of Cruz's state law malicious prosecution claim.

Regardless, it does not matter whether a state or federal case is credited for the victim-reliability principle, as it ultimately flows from the same source—federal law—as Illinois courts

8

recognize. "[T]he United States Supreme Court has proceeded as if veracity may be assumed when information comes from the victim of or a witness to criminal activity." *People v. Ertl*, 686 N.E.2d 738, 748 (Ill. App. Ct. 1997) (Doyle, J., concurring) (citing *Chambers v. Maroney*, 399 U.S. 42 (1970)). "Accordingly, police may ordinarily rely on information from a private citizen who is a victim or witness to formulate probable cause to arrest without verifying that citizen's reliability." *Ertl*, 686 N.E.2d at 748 (Doyle, J., concurring) (collecting cases). Across both bodies of law, the principle is the exact same: because a victim's identification is presumptively reliable absent evidence that the victim carried a grudge, said identification establishes probable cause.

Cruz's follow-on contention, that no Illinois case has applied the principle to a stranger identification (Dkt. 491, Resp. at 12–13), is thus irrelevant. The Supreme Court found probable cause under such circumstances in *Chambers*, where victims identified a gas station robber with no indication they had previously seen or known him. 399 U.S. at 46–48. The Seventh Circuit did the same in *Pasiewicz v. Lake County Forest Preserve District*, where two women identified a man they did not know as the "naked man cavorting in the woods"—one victim had to ask a third party "who the man was." 270 F.3d 520, 521, 524 (7th Cir. 2001).

Cruz raises two final objections—(i) the specifics of Meadors' identifications were not reliable, (Dkt. 491, Resp. at 13–14), and (ii) Rios provided what Cruz construes as a contradictory suspect identification, (*id.* at 14)—each of which are waived. Cruz cites no authority to support either contention, and "arguments unsupported by legal authority" "are waived." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016).

In addition, neither proposition accurately reflects the law. A lack of specifics may undermine the identification of a biased witness, but that is not the case in the absence of an apparent grudge. For the narrow purpose of establishing probable cause, a victim identification suffices.

9

*Supra* at 6–9. "[E]yewitness identifications," even where the witness "expressed some hesitation during his initial identifications and [his] identifications did not match his earlier descriptions very well," are "sufficient to establish probable cause." *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016); *see Moran*, 54 F.4th at 499–500 (same); *Coleman*, 925 F.3d at 351 (same). Lack of specificity can be emphasized to establish reasonable doubt at trial.

The last objection, concerning contradictions in Meadors' and Rios' identifications, again misunderstands the law. Last year, the Seventh Circuit once more rejected the claim that contrary evidence defeats probable cause established by one eyewitness identification. "'[A] single eyewitness's statement—**without further investigation** *or a narration of contrary evidence*—can support a warrant'" and is "'enough' to give the police probable cause." *Lee v. Harris*, 127 F.4th 666, 672–73 (7th Cir. 2025) (quoting *Gramenos*, 797 F.2d at 440) (emphasis added). The Supreme Court "has never suggested that," where "one identified, reliable eyewitness creates probable cause," officers "must conduct a further investigation or [credit] contradictory evidence." *Gramenos*, 797 F.2d at 440. Cruz's objections are uniformly baseless.

Sixth, Cruz dismisses Movants' citation to post-1993 evidence—Meadors' trial testimony—as irrelevant to probable cause. (Dkt. 491, Resp. at 14–16.) But Movants did not cite the testimony to establish probable cause; they were simply citing Meadors' consistent trial testimony to defeat Cruz's theory that his identifications were coerced and unsupportive of probable cause. (Dkt. 460, MSJ at 6.) *Supra* at 3–5.

Seventh, and finally, Cruz dismisses as hearsay Movants' citation to Meadors' description to two officers at the hospital of the assailant as a male white Hispanic, around 24, and of a certain height and weight. (Dkt. 491, Resp. at 16.) But Movants do not offer the description for its truth i.e., to show that the man conformed to these characteristics. Rather, it is offered merely to show

10

officers' knowledge—specifically that they had a basis for showing Meadors a stack of pictures of white Hispanic males after he was discharged from the hospital. (SOF ¶ 27.) "A statement is not hearsay…if it is being offered for some purpose besides its truth, **such as *knowledge*.**" *Cole v. Ill. Tool Works, Inc.*, 924 F. Supp. 2d 978, 989 (N.D. Ill. 2013) (emphasis added).

Nevertheless, even were the Court inclined to exclude the hospital comments, it would not impact Movants' entitlement to summary judgment, as Cruz does not challenge the admissibility of Meadors' ultimate identifications of Cruz from a photobook and in a live lineup, which identifications supplied probable cause in and of themselves.

### b. Cruz miscomprehends how qualified immunity arises in the context of a probable cause defense, defeating the Fourth Amendment claims (Count III).

Rather than fulsomely oppose Movants' qualified immunity defense, (Dkt. 460, MSJ at 7–8), Cruz narrowly argues that the arguable probable cause framework does not apply because it was "obvious" that Movants would have known they lacked probable cause. (Dkt. 491, Resp. at 17–18.) But "obviousness" is reserved for "the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (cleaned up).

Respectfully, it is difficult to take seriously Cruz's insistence that it was "obvious" that police were duty-bound to disregard a shooting victim's unbiased identifications of an assailant he saw in a lighted area from a distance of several feet for several seconds. Rather, arguable probable cause under such circumstances was resoundingly illustrated just last year when the Seventh Circuit addressed a case where a robbery victim "saw [one suspect] at the show-up, [] said that she was not sure, but that [he] 'might be' the person who was with the shooter." *Mack v. City of Chicago*, 151 F.4th 887, 895 (7th Cir. 2025). The court expressly held, "This identification, even if tentative, was sufficient to support at least arguable probable cause." *Id.* at 895–96.

11

While Cruz insists that Meadors' identifications did not supply probable cause, his only point on qualified immunity is that *arguable* probable cause "obviously" did not lie. As *Mack* makes clear, the legion of authority supporting the victim-reliability principle, both pre- and post-1993, *e.g., Gramenos*, 797 F.2d at 440, renders that contention frivolous. Meadors' identifications supplied at least arguable probable cause to charge Cruz. *Mack*, 151 F.4th at 895–96.

### IV. Movants Are Entitled to Summary Judgment on Cruz's Fourteenth Amendment Fabrication of Evidence Claim (Count IA)

#### a. Cruz's abandoned claims must be dismissed.

Cruz abandons—i.e., is "not pressing"—fabrication theories related to statements made by witnesses Jaramillo and Luis "Danny" Rodriguez, as well as his suggestive identification claim. (Dkt. 491, Resp. at 20, 26.) The claims must therefore be dismissed.[3]

#### b. Cruz has no viable claim that Meadors' identifications were fabricated.

Since Cruz has no supporting evidence, the due process claim that Meadors' identifications of Cruz were fabricated must be rejected. *Supra* at 3–5. Separately, even if Cruz could identify evidence of *coercion*, "there is a difference between fabricated evidence, which is necessarily untrue, and evidence obtained through coercion, which may be true." *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1156 (N.D. Ill. 2022). Cruz cannot show any Movant "knew—with certainty"—that the identifications "w[ere] false." *Coleman*, 925 F.3d at 344. The claim fails.

#### c. The GOCR was not fabricated and was not used at trial.

Per Cruz, an unknown Defendant altered the General Offense Case Report ("GOCR")—to conceal Meadors' initial description of the shooter as Black—which was "used" at his trial because his counsel was unable to use it to cross-examine Meadors. (Dkt. 491, Resp. at 20, 27.)

---

[3] The fabrication claims also fail on the merits, as the Jaramillo and Rodriguez Statements were not used at trial and therefore cannot support a fabrication claim. *Moran*, 54 F.4th at 499; *Patrick*, 974 F.3d at 834.

First, Cruz's *entire* theory that the GOCR was fabricated rests on conjecture, and a fabrication claim based on speculation cannot proceed.[4] *Johnson v. Guevara*, No. 20 C 4156, 2025 WL 903813, at *19 (N.D. Ill. March 24, 2025). There is quite literally no evidence that any other version of the GOCR existed or that anyone other than non-defendant Odegard wrote on the document. It is pure speculation that the entry that says "M4" originally said "M1."[5] And every record and witness testimony—including from Meadors himself—demonstrate Meadors always identified the shooter as Hispanic, not Black. (SOF, ¶¶ 10, 24, 30–34, 36–41, 103, 104, 107–09.) "Speculation cannot create a genuine issue of fact that defeats summary judgment." *Flowers v. Kia Motors Fin*., 105 F.4th 939, 946 (7th Cir. 2024). The GOCR fabrication claim must be rejected. *See Carmody v. Bd. of Tr. Of Univ. of Ill*., 893 F.3d 397, 401 (7th Cir. 2018) ("inferences…supported by only speculation or conjecture will not defeat" summary judgment).

Second, assuming *arguendo* the GOCR was altered, the claim still fails, as the GOCR was never used against Cruz at his criminal trial. Cruz's theory—that the "used at trial" requirement is satisfied because his trial counsel was *prevented* from using the GOCR to impeach Meadors— is a head-scratching, under-vetted legal pretzel. Cruz admits the GOCR was not admitted into evidence at trial and was hearsay. (Dkt. 491, Resp. at 31.) Thus, under binding law, "the content of the police report is irrelevant" for a fabrication claim, because "[Cruz] offers no evidence that the report was introduced into evidence at trial." *Moran*, 54 F.4th at 499 n.8. Nor were the contents of the GOCR testified to at the criminal trial. The Court should stand by its previous

---

[4] Cruz cites two non-binding, out-of-circuit, non-civil district court criminal cases— *United States v. Saelee*, 162 F. Supp. 2d 1097 (D. Alaska 2001) and *United States v. Starzecpyzel*, 880 F. Supp. 1027 (S.D.N.Y. 1995)—for the proposition that documents can be presented to a jury for handwriting comparison and that the jury should decide if it was altered. (Dkt. 491, Resp. at 28–29.) But since Cruz's alteration claim is based entirely on speculation, there is no evidentiary basis for the GOCR to be presented to a jury in the first instance. *Johnson*, 2025 WL 903813, at *19.
[5] As Movants discussed in their MSJ, Cruz retained experts to support this allegation, but never disclosed an expert opinion or other evidence suggesting the GOCR was altered. (Dkt. 460, MSJ at 5; SOF ¶ 150.) Movants interpret this otherwise inexplicable strategy to mean the results rebutted or failed to support the GOCR alteration theory.

13

rulings that evidence not used at trial cannot ground a fabrication claim, (Dkt. 309, Op. at 12; Dkt. 395, Order at 3), which reflect the unambiguous law in this circuit.

### d. The Latin King photo and Constitution do not support a fabrication claim.

Cruz alleges that Officer Defendants fabricated the fact that they found the Latin King photo and Constitution on Cruz's person. (Dkt. 491, Resp. at 20.) This claim fails for a host of reasons.

First, Cruz does not attribute any materiality to the fact that police said the documents were found "on his person," and he admits the photo accurately depicts him flashing a Latin King gang sign. (SOF ¶ 50.) He also flat-out concedes the documents were not needed to prove he was a Latin King, as "[t]he State had that under control from the very start." (Dkt. 491, MSJ Resp. at 37.) Cruz then lists all the trial evidence showing he was a Latin King, including his and his lawyer's admissions of such and the fact that Cruz was arrested in a jacket emblazoned with the word "Kings." (*Id*.) Certainly, the clothes Cruz was wearing coupled with his pronouncement to police that he was a Latin King sufficiently proved his membership and devotion. Last year, the Seventh Circuit expressly held that where the "same" information underlying the allegedly fabricated evidence was introduced at trial in some other way, the challenged evidence was "not material" as a matter of law. *Zambrano v. City of Joliet*, 141 F.4th 828, 833 (7th Cir. 2025).

As Movants noted, this is ensconced by Cruz's decision to forego a motion to suppress the photo or Constitution, despite his present theory that he knew all along the documents were not on his person at the time of arrest. (Dkt. 460, MSJ at 14.) Cruz wrongly claims Movants cited no law demonstrating the relevance of that choice; Movants cited *Coleman* for the proposition that they "'cannot be held liable for depriving plaintiff of his constitutional rights simply because he forfeited them.'" (*Id.* at 13 (quoting *Coleman*, 925 F.3d at 347).) Cruz must show that fabricated evidence "made his trial unfair." *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir.

14

2005). "An illustrative list of questions the Court may consider in making this determination include…Was any objection or motion to suppress the…evidence made?" *Hampton v. City of Chicago*, No. 12-cv-5650, 2017 WL 2985743, at *23 (N.D. Ill. July 13, 2017).

Ultimately, the photo and Constitution must be assessed "in the context of the entire record." *Goudy v. Cummings*, 922 F.3d 834, 842 (7th Cir. 2019). Here, Meadors' positive identifications, in conjunction with trial evidence that the shooting was gang-motivated and that Cruz was a Latin King, defeat any claim of a "reasonable likelihood" that evidence that the documents were found on Cruz's person "affected the judgment of the jury." *Patrick*, 974 F.3d at 834–35.

Second, the challenged Latin King evidence was introduced at trial via Defendant Wojcik's testimony, for which he is absolutely immune. (Dkt. 460, MSJ at 12.) "False testimony at trial does not give rise to a viable constitutional claim because witnesses are entitled to absolute immunity." *Brown*, 633 F. Supp. 3d at 1159 (citing *Briscoe v. LaHue*, 460 U.S. 325, 327 (1983)). "This is so even when," as here, "the false testimony is consistent with [allegedly] fabricated but unadmitted police reports." *Brown*, 633 F. Supp. 3d at 1159.

To circumvent this argument, Cruz misapplies *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017). *Avery* held that officers who fabricate evidence cannot immunize themselves by authenticating it at trial. *Id*. at 441. But Cruz does not claim the Constitution or contents of the photo were fabricated or that Wojcik "authenticated" them at trial. He only claims Wojcik fabricated *his testimony* that he found them on Cruz's person. (Dkt. 491, Resp. at 32, 34.) And the CPD supplementary report that stated the documents were found on Cruz was not used or referenced at trial. *See Walker v. City of Chicago*, No. 21 CV 2648, 2025 WL 343471, at *4 (N.D. Ill. Jan. 30, 2025) ("a due process claim based *solely* on trial-testimony perjury *itself* must fail as a matter of law" under *Briscoe*). Where officer trial testimony does not authenticate that

15

report but rather is "testimony…consistent with fabricated but unadmitted reports," absolute immunity attaches. *Brown*, 633 F. Supp. 3d at 1159–60; *see also Jones v. York*, 34 F.4th 550, 563 (7th Cir. 2022) (officer is "absolutely immune from damages liability for his trial testimony," including testimony "about his…police report").[6] Wojcik is therefore absolutely immune.

## V. Cruz's *Brady* Theories Are Wanting

Cruz's Response lists six *Brady* theories, (Dkt. 491, Resp. at 40), collectively arguing Defendants suppressed each piece of evidence from Cruz's defense attorney and the prosecution.

### a. Subparagraphs (a), (b), and (c) fail for reasons already discussed.

Cruz's first three *Brady* theories allege suppression of (a) a conspiracy to alter the GOCR, (b) fabrication/coercion of Meadors' identification, and (c) fabrication that Constitution and photo were found on Cruz. (Dkt. 491, Resp. at 40.) These theories' failings have been shown. *Supra* at 3–5, 12–16. There is no evidence Meadors' identifications were fabricated or the GOCR was altered, such that there was nothing to suppress; and the materiality failings of the Latin King evidence attends the fabrication and *Brady* theories of liability with equal vigor. *See Moran*, 54 F.4th at 492 ("*Brady* violation only exists when suppressed evidence is material, meaning that there is a reasonable probability that the outcome would have been different if the evidence had been disclosed") (cleaned up). Thus, for the reasons already argued, these *Brady* theories fail.

### b. The suppression claim concerning Meadors (subparagraph (b)) separately fails because Cruz concedes Movants had no constitutional obligation to contemporaneously record every interaction.

While Cruz accuses Officer Defendants of destroying or concealing reports which he claims *should have* been created, (Dkt. 491, Resp. at 39–40), he utterly ignores the fact that *Jones v. City*

---

[6] Cruz argues there is a District split on how to interpret *Avery*, citing four cases to support his position. (Dkt. 491, Resp. at 36–37 n.8.) But all these cases predate *York*, and Cruz acknowledges that the more-recent cases—more recent even than *Walker* and *Brown*—favor Movants' position. *E.g., Dukes v. Washburn*, No. 21-cv-03672, 2026 WL 579205, at *8–9 (N.D. Ill. Mar. 2, 2026); *Smith v. City of Chicago*, 785 F. Supp. 3d 356, 407 (N.D. Ill. 2025).

*of Chicago* established there is no constitutional obligation to record investigative activities. 856 F.2d 985 (7th Cir. 1988). (Dkt. 460, MSJ at 18.) This avoidance is a tacit concession, especially given Cruz's perplexing argument that Movants' citation to *Jones* is "180° contrary to what its co-defendant, the City, asserts," "that by 1992, all Detectives had been trained, and all Detectives knew, that they were required to keep written records of their investigatory activities and that the City's deeply-engrained suppression problem had been solved." (Dkt. 491, Resp. at 43.)

Cruz's point is both wrong[7] and irrelevant. Initially, his peculiar suggestion that the City inadvertently created a dispute of material fact as to the Officer Defendants' legal obligations ignores the obvious fact that "'[t]he admission of one party to an action is not binding upon a co-defendant.'" *Ruckelshaus v. Cowan*, No. 1:17-cv-02009-JMS-MJD, 2018 WL 2150953, at *1 (S.D. Ind. May 10, 2018) (quoting *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa. 1983)).

Relatedly, Cruz appears to confuse Constitutional requirements with the City's reporting requirements, as any implication that violating CPD policy amounts to a constitutional violation contravenes black letter law. Indeed, "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

At bottom, officers do not flout the Constitution by not contemporaneously recording their investigative steps, *Jones*, 856 F.2d at 995, and they are not constitutionally obliged to *create* exculpatory evidence. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015). After twice admitting that the Oct. 10 Supp. Report "cured" any *Brady* violation relating to officers' October 6 meeting with Meadors, Cruz argues the report "does not cover anything else that happened or

---

[7] Assuming *arguendo* that Cruz's characterization is remotely accurate, the codefendants' positions *are* logically consistent: (i) *Brady*'s constitutional minimum does not require all investigative steps to be documented, and (ii) the City's policy minimum—even embracing Cruz's interpretation—is allowed to be different, and might in fact seek to ensure constitutional fidelity by requiring even more than what the Constitution demands.

17

was said at the October 6 meeting at Meadors' home or any…other events for which Defendants did not take any contemporaneous notes." (Dkt. 491, MSJ Response at 43.) This is a non-starter under *Jones*. The supplement took Defendant Officers *beyond* the Constitution's demands, not beneath them. *Jones*, 856 F.2d at 995. The *Brady* claim in subparagraph (b) therefore fails.

### c. The *Brady* claim in subparagraph (c), concerning the Latin King photo and Constitution, separately fails for multiple reasons.

#### i. The claim relies exclusively on inadmissible hearsay.

In their MSJ, Movants explained how Cruz's sole evidence that the Latin King photo was the fruit of an illegal search—Cruz's testimony recounting what Ada Pacheco told him—is hearsay. (Dkt. 460, MSJ at 19–20.) Cruz frivolously labels this "a complete non-sequitur," as the "when" and "how" of Pacheco's story are "completely irrelevant" to whether evidence of the search was suppressed. (Dkt. 491, Resp. at 44.) To be sure, the *only* allegedly false and suppressed information concerning the photograph is the when and how of its recovery, and the *sole evidence* for this when-and-how is Pacheco's hearsay. (*See id.* (citing no additional evidence).) The claim is defined by hearsay, and "[a] party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Webster*, 583 F.3d 979, 985 (7th Cir. 2009).

#### ii. Cruz does not adequately address his lack of reasonable diligence.

Movants argued reasonable diligence required Cruz's defense team to, e.g., speak "with his aunt and/or other occupants of the house in advance of trial to glean information about the alleged [photo] search to support a motion to suppress." (Dkt. 460, MSJ at 20 (citing *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008)).) Cruz calls this expectation "concocted" and "well outside the Seventh Circuit definition of reasonable diligence," vaguely suggesting his attorney had no reason to know of or investigate the matter. (Dkt. 491, Resp. at 45.) The law does not permit this shirking. Such interpretation would render *Brady*'s reasonable diligence

18

requirement meaningless when confronted with (i) a criminal defendant who withholds critical information from his attorney, even upon the attorney's request, and/or (ii) a defense attorney who fails to ask his client about basic facts. But *Brady* requires both, as explained next.

First, Cruz asserts, "Reasonable diligence does not require defense attorneys to seek evidence they 'had no reason to believe existed.'" (*Id.* at 45–46 (quoting *Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001)).) *Boss* is inapplicable, however, as it concerned *witnesses*—not clients—and explored the limitations of diligence by explaining that "a defense *witness* may be uncooperative or reluctant," "may have forgotten or inadvertently omitted some important piece of evidence," or might have "learned of certain evidence in the time between when she spoke with defense counsel and the prosecution." 263 F.3d at 740 (emphasis added).

Cruz was decidedly not a witness. He was the defendant. His incentive to relate his direct knowledge of the events to his own lawyer takes this case far afield of *Boss*. Cruz (i) had no rational reason to withhold his "knowledge" of fabricated evidence, (ii) could not reasonably have "forgotten" the fabrication, and (iii) "knew" police did not find the photo when searching him. (Dkt. 491, Resp. at 45.) *Boss*' public policy considerations simply do not apply.

Undaunted, Cruz labels himself a "witness," arguing "courts should be highly reluctant to apply such a test to '*Brady* material contained in a witness's head.'" (*Id.* at 46 (quoting *Boss*, 263 F.3d at 741).) But courts have rejected such efforts. In *Jackson v. City of Peoria*, the court faced a *Brady* claim premised on a suggestive identification—one where police "seemed 'hellbent'" on the plaintiff, to the point that his photo was, figuratively, "pushed down [a witness'] throat." No. 4:16–cv–01054, 2017 WL 1224526, at *1 (C.D. Ill. Mar. 31, 2017). Dismissing a claim alleging the *circumstances* of that identification were concealed, the court explained:

> Plaintiff acknowledges that he learned before the trial that the officers may have
> used improper identification procedures, but would have preferred to "bolster" his

19

attacks on the reliability of the identification with more information on the "full extent of Defendants' misconduct." Plaintiff's defense counsel knew about the witness' allegations that he was coerced to identify Plaintiff as the shooter and was able to explore that information in preparation for trial, even moving to suppress the identification. Plaintiff has not sufficiently alleged that a failure to disclose on the part of any Defendant disabled him from making use of the information.

*Id.* at *7 (cleaned up). As in *Jackson*, Cruz knew pretrial that the location of the Latin King evidence was fabricated, (Dkt. 491, Resp. at 45 ("Cruz knew Wojcik was lying [about the photograph and Constitution]")), but believes he was deprived of *additional* evidence to impeach Wojcik. (*See id.* (arguing Cruz could not cross-examine on the full extent of officer's "lie").) And while Cruz implies his attorney never knew of the fabrications (more on that below), this Court, like *Jackson*, should hold reasonable diligence required him to use the information he had.

Second, *Boss*—though not the portion Cruz references—actually supports Movants. *Boss* clarifies that Cruz's defense attorney was expected to inquire into Cruz's role in his own case, explaining, "Defense counsel can *certainly* be expected to ask witnesses (defense and otherwise) questions relevant to what counsel understands the witness's role to be in the case." 263 F.3d at 741 (emphasis added). Any concept of reasonable diligence that does not require an attorney to ask basic questions of his own client is a farce. Fortunately, *Brady*'s reasonable diligence element is nothing so foolish. Cruz claims to have known the information he argues was withheld, and *Brady*'s reasonable diligence requirement obliged his counsel to inquire into such. That his counsel failed to do so constitutes a lack of reasonable diligence, requiring summary judgment.

### d. The *Brady* claim in subparagraph (d), concerning attempts at coercing Jaramillo's false identification, separately fails for multiple reasons.

Despite dropping his "Jaramillo Fabrication" claim, (Dkt. 491, Resp. at 20), Cruz pursues the parallel *Brady* theory that Officer Defendants suppressed evidence of their attempts to coerce Jaramillo into falsely identifying Cruz. (*Id.* at 40.) This claim fails for several reasons.

20

First, Cruz did not identify this *Brady* theory against Movants in response to contention interrogatories. (*See generally* Dkt. 461-56, Ex. 55, Cruz's Resp. to Defs.' Boris's and Wojcik's Contention Interrogs.; Dkt. 461-61, Ex. 60, Cruz's Resp. to Def. Guevara's Contention Interrogs.) While he contended that *Guevara* suppressed his coercion of Jaramillo, he never said *Movants* suppressed this evidence. (*See* Dkt. 461-56, Ex. 55, Cruz's Resp. to Defs.' Boris's and Wojcik's Contention Interrogs. at 30–31.)

Under Federal Rule of Civil Procedure 37(c)(1), this earns an "***automatic*** sanction" to ensure "a strong inducement for disclosure of material that the disclosing party would expect to use as evidence…on a motion, such as one under Rule 56." Rule 37 advisory committee's note to 1993 amendment (emphasis added). *Moran* affirmed waiver of two *Brady* claims a plaintiff failed to identify in response to contention interrogatories, noting such "poor discovery practice" is "costly." 54 F.4th at 497. In *Heidelberg v. Manias*, an unduly suggestive identification claim was "new at summary judgment and…thus barred." 18-cv-01161-SLD-JEH, 2024 WL 1316206, at *20 n.21 (C.D. Ill. Mar. 27, 2024). Since "**exclusion is automatic *and mandatory***" unless the late inclusion is justified or harmless—Cruz demonstrates neither—this claim must be barred. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (emphasis added).

Second, Cruz has no evidence that any Movant coerced Jaramillo. (Dkt. 327, Second Am. Compl. ¶¶ 81–91.) While he alleged "on information and belief one or more of the other Officer Defendants also made repeated attempts to coerce Jaramillo," (*id.* ¶ 81), Cruz does not specify how and cites no evidence in support at summary judgment. Cruz also proffers no evidence to support his allegation that, "on information and belief," Movants were aware of Guevara's alleged coercion of Jaramillo. (*Id.* ¶ 89.)

21

While Cruz alleges Wojcik was present during ASA Maloney's fabrication of the Jaramillo Statement, (*id.* ¶ 93), his admission that ASA Maloney (not Wojcik) took Jaramillo's Statement, (*id.* ¶ 99), in conjunction with his failure to explain *how* Wojcik coerced Jaramillo, (*see* Dkt. 491, Resp. at 40–46), defeats the claim. Cruz also notes that Jaramillo's deposition testimony—that the "light-skinned or olive-oil complected [notion] began with Guevara"—is evidence that Wojcik or Maloney were involved in the coercion, (Dkt. 490, Cruz's 56.1 Resp. at 139–41 ¶ 153), but he cites no evidence that any communication among the officers ever occurred. (*See* Dkt. 491, Resp. at 40–46.) That Cruz's Response *never even chooses* between those two theories is fatal to his claim. Neither Wojcik's mere presence nor Cruz's admitted speculation are enough to constitute coercion or fabrication; the claim fails against Wojcik (and any other Movants) for lack of personal involvement. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

Third, Cruz acknowledges that ASA Maloney was present when Jaramillo's Statement was allegedly fabricated. (Dkt. 491 Resp. at 3, 20.) "[A] plaintiff cannot show that a police officer suppressed evidence if the prosecution was aware of it." *Moran*, 54 F.4th at 492. "A police officer's *Brady* obligation extends only 'insofar as they must turn over potentially exculpatory evidence…to the prosecution.'" *Id*. (quoting *Holloway v. City of Milwaukee*, 43 F.4th 760, 768 (7th Cir. 2022)). Since the prosecution was aware—through ASA Maloney—of the alleged coercion/fabrication of Jaramillo's Statement, this evidence was not suppressed.

Fourth, Cruz failed to explain how this evidence is material, exculpatory, or impeaching—a trend not solely confined to this particular theory. For the reasons discussed below concerning subparagraph(e) and Rios, such underdevelopment requires the theory's rejection. *Infra* at 23–24.

Fifth, like his Meadors-based *Brady* claim, Cruz "cannot identify a single report or document that was allegedly suppressed." (*See* Dkt. 460, MSJ at 17; *see also* Dkt. 491, Resp. at 40–46.)

22

That failure illustrates the claim's weakness: Cruz presumes "destruction" or "concealment" on the basis of deposition and circumstantial testimony, but he lacks direct evidence of either allegation. (*See* Dkt. 491, Resp. at 40–46 (citing no such reports).) For *Brady* purposes, he needed more. The evidence must have *actually existed*. *See Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at \*4 (N.D. Ill. Jan. 26, 2009) ("if there is no proof of a document's existence, government officials cannot be held liable under *Brady*").

### e. Evidence that the perpetrators shot at Rios (subparagraph (e)) is neither exculpatory nor impeaching, and thus not material.

For the first time, Cruz alleges in his Response that Defendants suppressed the fact that the front seat passenger shot at Rios as the perpetrators' car fled the scene. (Dkt. 491, Resp. at 40.)

First, Cruz did not identify this item in his answers to contention interrogatories. (*See generally* Dkt. 461-56, Ex. 55, Cruz's Resp. to Defs.' Boris's and Wojcik's Contention Interrogs.; Dkt. 461-61, Ex. 60, Cruz's Resp. to Def. Guevara's Contention Interrogs.) For the reasons already discussed, *supra* at 21, this claim must be mandatorily barred pursuant to Rule 37(c)(1). *Moran*, 54 F.4th at 497; *Salgado*, 150 F.3d at 742; *Heidelberg,* 2024 WL 1316206, at \*20 n.21.

Second, the new allegation, supported solely by Rios' decades-later testimony, does not try to show "materiality," (Dkt. 491, Resp. at 39–41), conceding a lack thereof. *Moran*, 54 F.4th at 492. "Perfunctory and undeveloped arguments are waived." *Schaefer*, 839 F.3d at 607.

Third, on the merits, there is no straw man on materiality to even oppose. Assuming *arguendo* the evidence could be impeaching (it is not, as explained next), there is no reasonable probability that "the jury's verdict would have been different if [this] evidence had been presented." *Brown*, 633 F. Supp. 3d at 1163. This likely explains why Cruz makes no such argument. Considering the other evidence against Cruz, no reasonable juror, upon learning that

23

the assailants *also* shot at Rios, would on that basis alone doubt Cruz's guilt. Especially as to materiality, this *Brady* theory is meritless and malnourished, warranting summary judgment.

Fourth, *Brady* carries an extra requirement separate from materiality; Cruz must show that "the evidence at issue is favorable to the accused, either being exculpatory or impeaching." *Carvajal*, 542 F.3d at 566. But is evidence that "the front seat passenger also shot at Rios" exculpatory? If not, is it impeaching? Of course not, which is likely why Cruz makes no case—again warranting a finding of waiver, *Schaefer*, 839 F.3d at 607.

Fifth, indulging the merits, as to exculpation, no rational juror could have believed this fact is "something that suggests [Cruz's] innocence." *Socha v. Richardson*, 874 F.3d 983, 988 (7th Cir. 2017). And Movants are clueless as to what the evidence would have impeached. Cruz did not submit *whose* testimony this would have impeached, nor *how*. *See id.* (explaining that impeachment evidence can be used on cross-examination when, e.g., it contradicts a witness). He does not even gesture at which witness' testimony would have been undermined by evidence that Rios—whose on-scene presence after the shooting was documented—was an additional victim. The evidence was neither impeaching nor exculpatory, such that summary judgment must enter.

### f. Cruz does not claim Movants were personally involved in subparagraph (f).

Finally, Cruz has not alleged any Movants' personal involvement in subparagraph (f)'s allegation that Guevara caused Jaramillo to sign a "One-page Document." (Dkt. 491, Resp. at 40.) To the extent any is implied, summary judgment is warranted on that *Brady* claim based on lack of personal involvement. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005).

### VI. The Court Should Grant Summary Judgment for Certain Movants for Lack of Personal Involvement

The MSJ pointed out that certain Movants were not personally involved in many of Cruz's due process theories. (Dkt. 460, MSJ at 23–25). Cruz agrees that individual liability for a § 1983

24

claim requires personal involvement, but he argues that Movants cannot seek judgment for non-involvement on discrete theories of liability. (Dkt. 491, Resp. at 53–54.)

This is clearly wrong, as *Johnson*—a case Cruz cites—shows. (*Id.* at 53.) In *Johnson*, Judge Ellis granted summary judgment for officers on discrete due process theories based on no personal involvement, while finding other theories survived. 2025 WL 903813, at *22 (there was "sufficient evidence to create an issue of material fact as to whether [one defendant] fabricated [a] lineup report" but "not…as to whether [that defendant] fabricated…identifications"). The same logic applies here. The Court should exit the following Movants from the following due process claims:

- Fabricated Meadors' identification: Rutherford and Boris.
- Fabricated GOCR: Rutherford, Wojcik, Riccio, Boris, Gawrys, Mingey, and Halvorsen.
- Fabricated photo and Constitution: Rutherford, Boris, Gawrys, Mingey, and Halvorsen.
- Suppressed GOCR: Rutherford, Wojcik, Riccio, Boris, Gawrys, Mingey, and Halvorsen.
- Suppressed Meadors' fabricated/coerced identification: Rutherford and Boris.
- Suppressed photo and Constitution: Rutherford, Boris, Gawrys, Mingey, and Halvorsen.
- Suppressed coercion of Jaramillo's identification: Rutherford, Wojcik, Riccio, Boris, Mingey, and Halvorsen.
- Suppressed evidence that Rios was shot at: Wojcik, Riccio, Gawrys, Mingey, and Halvorsen.

## VII. Movants Incorporate Certain of Guevara's Reply Arguments

To preserve the Court's resources, Movants incorporate the following of Guevara's reply arguments: impermissible 404(b) evidence, failure to intervene; conspiracy under Illinois state law, § 1983, and § 1985; and intentional infliction of emotional distress. (*See* Guevara's MSJ Reply at 9–11, 14–16.)