**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE CRUZ, | ) | |
|      **Plaintiff,** | ) | |
| | ) | **Case No. 23-cv-4268** |
| v. | ) | |
| | ) | **Honorable Georgia N. Alexakis** |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
|      **Defendants.** | ) | |

**DEFENDANT GUEVARA'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

I.     **Guevara Should Be Granted Summary Judgment For The Reasons Set Forth In The Opening Briefs And As Set Forth In His Co-Defendants' Reply.**

Plaintiff's Response, with few exceptions, treats the arguments made by all Defendants as if they were one and addresses them collectively. *See generally* Dckt. No. 491 at 1-57. Plaintiff also attempts to "muddy the waters" on straight forward legal and factual arguments by posing specious evidentiary attacks on obviously admissible evidence, misrepresenting governing law and/or not citing any authority for support, and engaging in one of the more outrageous examples of non-compliance with Local Rule 56.1 imaginable in the apparent hopes that this Court will throw up its hands and conclude that a triable issue must exist somewhere in the morass. *See* Reply of Individual Defendants at Parts I-VI. Guevara endeavors not to add to this morass and hereby adopts and incorporates by reference the arguments made by his co-Defendants in their Reply including the following: Parts I (in its entirety), Part II (in its entirety), Part III (in its entirety), Part IV (in its entirety), Part V (in its entirety), and Part VI (as to the law).

II.     **Plaintiff's Attempt To Lump Guevara Into The Various Alleged Claims Of Misconduct Lodged Against Guevara's Co-Defendants Is Legally Baseless In It's Entirety.**

As part of his combined arguments against all Defendants, Plaintiff repeatedly fails to address the indisputable fact that this case has very little to do with Guevara at all. *See* Dckt. No. 491

1

at 1-57. Indeed, in pursuit of his "guilt by association" and tenuous theories against Guevara, Plaintiff includes an outlandish argument on personal involvement which, in essence, appears to claim this Court *cannot* parse out individual defendants on individual claims of misconduct at all but, instead, must allow all claims against all Defendants to proceed as long as he can establish an issue of fact against one Defendant on one claim. *See* Dckt. No. 491 at 53-57. This assertion appears to be premised on a tortured reading of *Camm v. Faith*, 937 F.3d 1096 (7th Cir. 2019)(which did not even involve any issues of personal involvement) and comes to the dubious conclusion that this Court is not allowed to grant summary judgment on sub-theories or issues so long as a plaintiff can make out some claim of some sort against some party. *Id.*

This is an argument that has been "making the rounds" amongst the plaintiff's civil rights bar as of late and it has been rejected (or simply ignored) by the courts essentially every time it has been attempted (including twice in the last year). *See Iglesias v. Guevara,* 2025 WL 3171611, *6 (N.D.Ill. 2025)("Iglesias boldly proclaims that 'once this Court decides Iglesias has shown a genuine dispute of fact on any of his due process theories, it can move forward with a trial on Iglesias's fair trial claim without exploring every argument made by Defendants in their motion, and it can deny summary judgment on that basis.'…As Defendants correctly point out, neither support his argument as the Seventh Circuit, in both *Goudy* and *Camm*, addressed each of the plaintiffs' fair trial theories, accepting some and rejecting others. 'Courts routinely and appropriately assess sub-theories of fabrication and suppression claims to determine which sub-theories are adequately factually supported to advance to trial.'"); *Johnson v. Guevara, et al.*, 2025 WL 903813, *17 (N.D. Ill. 2025)("Johnson argues that if this Court finds that a question of fact exists as to whether his right to a fair trial was violated on any theory of liability that he advances, then this Court should advance all his fair trial claims, with each sub-theory of liability, to trial. Johnson misunderstands this Court's responsibility at the summary judgment stage, however…. Courts routinely and appropriately assess

2

sub-theories of fabrication and suppression claims to determine which sub-theories are adequately factually supported to advance to trial…'").

*Camm* in no way held that a court may ignore summary judgment arguments on particular theories that are legally deficient (much less held that "guilt by association" was a permissible offshoot of this theory) but, rather, simply addressed the materiality standards for assessing the cumulative impact of suppressed evidence which was, in fact, illegally suppressed. 937 F.3d 1096. *Camm* not only addressed each of the *Brady* theories asserted by the plaintiff but actually granted summary judgment based on the insufficiency of some theories. *Id.* at *1110. Indeed, beyond the fact that Rule 56 explicitly provides that summary judgment may be entered on any part of a claim, courts routinely grant summary judgment on particular parts of Due Process claims despite leaving other parts of the same claim intact. *See e.g. Moran v. Calumet City*, 54 F.4th 483, 493-94 (7th Cir. 2022)(court evaluated each alleged *Brady* violation separately to determine whether the plaintiff had produced sufficient evidence to survive summary judgment); *Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019)(separately analyzing each of the plaintiff's theories of liability for both of his due process claims and indicating it undertook a thorough effort to determine which "aspects of claims" could proceed on remand); *Brown v. City of Chi.*, 2022 WL 4602714 (N.D. Ill. 2022)(court evaluated whether plaintiff produced sufficient facts in support of his fabrication and *Brady* claims and granted summary judgment to some theories and denied others). Suffice it to say, courts also routinely dismiss discrete claims and defendants where there is a lack of evidence to establish personal involvement. S*ee de Lima Silva v. Wisconsin Dep't of Correction*s, 917 F.3d 546, 564 (7th Cir. 2019)(no personal involvement of defendants who participated in investigation but not involved in decision to discharge plaintiff); *Almodovar v. Guevara*, 2025 WL 71735, *7 (N.D.Ill. 2025)(judgment when no evidence defendant was involved in act of fabrication despite participating in other aspect of

investigation*); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1050-51 (N.D.Ill. 2018)(claims against officers whose names on reports failed as no evidence of personal involvement).

Properly applying these standards leaves no room for any claim against Guevara to proceed. Beyond incompetent speculation that Guevara might have been present for or involved with some transgression committed by someone else (e.g. leaking Meadors name to the press, Guevera "perhaps" -a word used by Plaintiff to replace any evidence of the fact- being involved in the decision to have Plaintiff sit on a phone book during Plaintiff's lineup, etc.), the totality of the claims against Guevara in particular consist of only two theories: (1) Guevara was present when certain defendants visited Meadors at his home and Meadors failed to make an identification and there is a "fair inference" that Guevara and the others "tr[ied] to influence" Meadors identification (Dckt. No. 491 at 2-5); and (2) Guevara unsuccessfully attempted to coerce Jaramillo to identify Plaintiff as the shooter (*id.*).

Neither of these theories is a legally valid claim for a host of reasons. *See* Dckt. No. 464. Beyond Plaintiff's frivolous evidentiary attack on the admissibility of Meadors' repeated implication of him as the shooter including under oath, Plaintiff's suggestion that Guevara was involved with unlawfully and knowingly fabricating Meadors' implication has no evidentiary basis at all. *See* Dckt. No. 490 at ¶¶ 159-164. Plaintiff does not even *attempt* to present any admissible evidence to support this and engages in blatant violations of Local Rule 56.1 in order to conceal the absence of such evidence from this Court and "muddy the water" with a parade of non-responsive irrelevancies. *Id.* Indeed, Plaintiff attempts to parade a disjointed list of unrelated pieces of evidence in response to a demand by Guevara that Plaintiff point to the actual evidence showing that Guevara himself was personally involved in fabricating or manipulating Meadors identification in any way. *Id.*

4

As set forth to this Court previously, in a blatant attempt to conceal the absence of proof supporting individual pieces of evidence, Plaintiff provided a **16 page response** to a **single** 56.1 assertion of fact by Defendants which appears to be an attempt to incorporate every single fact that Plaintiff thinks is favorable to his case on every claim and allegation at issue. *See* Dckt. No. 491 at ¶ 41. The fact in question was merely whether a police officer directed Meadors to pick a particular picture out of a photo array. *Id.* What Plaintiff provided in response is a disjointed 16 page dissertation which addresses *everything but* this statement including the content of statements by Jaramillo, statements made to and by Rios, documentation of other parts of the investigation, the content of expert reports of experts retained by Plaintiff, interviews of Plaintiff's family members, and all kinds of other matters having nothing at all to do with the fact alleged. *Id.* This literal "fact dump" answer in response to Paragraph 41 of Defendants Local Rule 56.1 Statement of Material Facts is then used as the exclusive (or near exclusive) basis to "dispute" numerous discrete issues of fact properly placed before this Court under Local Rule 56.1 pertaining to Guevara. *See* Dckt. No. 490 at ¶¶ 159-164, 166-69, 171-76. In other words, Plaintiff not only includes a ridiculous 16 page "fact dump" response to one fact but incorporates this abusively noncompliant response as his answer to numerous other allegations of fact. *Id.*; *see also id.* at ¶¶ 103-04, 108-09, 134, 149. In other words, Plaintiff's already bloated and noncompliant responses are even worse than they seem at first glance because Plaintiff then purports to incorporate this 16 page answer **<u>over 20 more times</u>** through his Local Rule 56.1 Response. *Id.* This is a direct and blatant violation of Local Rule 56.1 which provides that "[a] response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." *See* L.R. 56.1(e)(2).

This abusive conduct is similar to that which another District Court judge excoriated another plaintiff's firm for doing in another civil rights case recently (deeming admitted the denials of fact

reliant upon this contumacious conduct). *See Aska v. Yingling*, 2026 WL 179545 (N.D.Ill. 2026). There, Judge Johnston held that a plaintiff's firm had violated Local Rule 56.1 by providing lengthy strings of argument and irrelevant facts in their Response to defendants' Local Rule 56.1 Statement of Material Facts. *Id.* at *1-6. In striking the plaintiff's response to the 56.1 statement, the Court held:

> When a litigant disregards these rules and orders, it makes everything more difficult for everyone. Filings that run afoul of the rules—reading more like long-form op-eds than nonfiction—require its readers to sift through what effectively becomes a second crack at a winning argument. And when a litigant—or a law firm—intentionally and pervasively circumvents the rules time and time again, apparently seeking to obfuscate the record in the hopes that the court will simply throw its hands up in frustration, consequences must follow or the cycle of sordid lawyering will never end. *Id.*

The misconduct here is more egregious than in *Aska*. A 16 page response to a discrete statement of fact is absurd and the inclusion of every single factual theory that Plaintiff believes is favorable to him being claimed as a dispute of every other discrete fact in the case makes a mockery of the Local Rules. *Id.* Indeed, the preclusion against this abusive practice has been well-established for decades. As another district court judge held in another similar immaterial and evasive "fact dump" case:

> [The Local Rule 56.1 statement] is so replete with immaterial facts that any truly undisputed material facts are lost in the morass. Lest anyone think the court is being overly critical, footnote one, on page one of defendants' 56.1(a)(3) statement, states: "Moreover, certain material is incorporated herein as background. Disputes over these issues would not create a triable fact question warranting denial of Defendant's motion." Defendants' admitted inclusion of immaterial facts is a clear violation of the specific dictates of the rule, and alone justifies striking defendants' Local Rule 56.1(a)(3) statement and denying the motion for summary judgment. *Ford v. Lumbermens Mut. Cas. Co.*, 197 F.R.D. 365, 366 (N.D.Ill. 2000).

Plaintiff's Local Rule 56.1 Response should be stricken in its entirety.

Despite Plaintiff's best attempts to obfuscate, it is undisputed that Plaintiff was repeatedly identified by a credible victim eyewitness, Vernon Meadors, as the perpetrator of the murder of Antwane Douglas and shooter of Meadors and Meadors repeatedly re-affirmed this identification until the day he died, including under oath at trial and to Plaintiff's post-conviction attorney. There

is no evidence cited by Plaintiff or in existence contradicting these facts. *See* Dckt. No. 490 at ¶¶ 159-164; Dckt. No. 464 at 2-7; *see also* Dckt. No. 490 at ¶¶ 10, 12, 24, 26-28, 30-41. Nor is there any competent evidence that Guevara engaged in any misconduct relating to Meadors' identification by fabricating his identification, engaging in coercive or suggestive identification tactics, suppressing any evidence on these topics, or conspiring with anyone to any of these things. *Id.* For all the reasons set forth in Guevara's opening brief, he is entitled to summary judgment on any and all claims relating to Meadors as well as any and all claims which require Plaintiff to establish probable cause or materiality. *Id.* Indeed, the precise arguments that Plaintiff attempts to present to defeat Meadors' repeated inculpation of him (i.e. the substantive unreliability of the identification) was directly rejected by another District Court in November. *See Iglesias*, 2025 WL 3171611, at *9, 15 (granting summary judgment to Guevara on fabrication, malicious prosecution, and pretrial detention claims based upon non-recanted inculpatory testimony and rejecting claims that alleged unreliability of identification created an issue of fact).

With respect to Jaramillo, Plaintiff's claims are even thinner. Plaintiff appears to concede that his Fabrication of Evidence claim based on the conduct toward Jaramillo must be dismissed. *See* Dckt. No. 491 at 20, fn. 4. However, Plaintiff maintains he should be allowed to proceed on some other claims based on this evidence (e.g. his pretrial seizure and malicious prosecution claims based on Jaramillo's claims of unsuccessful attempts by Guevara to get Jaramillo to implicate Plaintiff as the shooter). *See* Dckt. No. 491 at 20, fn. 4.

These arguments, buried within a footnote, cite no authority and are, thus, waived. *Id.* And these assertions are, more importantly, plainly wrong on their face. Attempted but unsuccessful coercion is not a valid claim nor does non-identification by one eyewitness to the police (or even an outright recantation) defeat probable cause based on the statements of another witness. *See* Dckt. No. 464 at 7-9, 10-12; *see also Iglesias,* 2025 WL 3171611, at *9; *Johnson v. Guevara*, 2025 WL 903813, at

7

*30–31 (N.D. Ill. 2025)(judgment to Guevara because arrest was supported by probable based on eyewitness identification despite that other eyewitnesses recanted; "An eyewitness identification, 'even if questionable,' sufficed to give the Individual Defendants probable cause to arrest Johnson."); *Moorer v. Valkner*, 2021 WL 5998533 (N.D.Ill. 2021)("It's true that some of the witnesses' identifications don't line up with how they otherwise described the shooting and the suspect…But these inconsistencies and challenges to perception didn't make the witnesses so unreliable that the officers could not believe them").

The Jaramillo evidence in its entirety is based on a complete canard. For all of the reliance on Jaramillo and his subjective claims of feeling coerced because of Guevara's tone of voice, none of this has anything to do with this case. He provided no inculpatory evidence against Plaintiff, he did not testify at trial or any pretrial proceeding, he was disclosed and available to be interviewed by Plaintiff's criminal defense attorney, and his claims that the shooter might have been a Black person has no bearing on whether the contrary testimony of *another witness* implicated Plaintiff. Dckt. No. 464 at 7-9, 10-12. Indeed, while Plaintiff makes numerous passing references to Jaramillo throughout his brief, he never actually tethers this evidence to any claim beyond attempting to claim that Meadors was factually wrong about his identification of Plaintiff. *See* Dckt. No. 491 at 2, 3, 11-13, 40. But, again, none of that is of any legal import on any of the claims lodged against Guevara and Plaintiff has not even attempted to establish otherwise. Instead, Plaintiff has buried numerous disjointed references to Jaramillo as a scattershot attempt to "muddy the waters" generally so this Court throws its hands up and allows his case to proceed against Guevara.

The remaining attempts to keep Guevara in this lawsuit rely on tortured attempts to impose "guilt by association" on Guevara based on undeveloped claims that Guevara conspired and/or failed to intervene in misconduct of others. Dckt. No. 491 at 46-51, 52. In furtherance of this, Plaintiff cites zero evidence supporting these theories beyond incompetent speculation and claims of

"fair inferences" based upon allegations of misconduct against Guevara in other cases and reliance on his abusive "fact dump" answers which never actually address evidence of Guevara's involvement in any conspiracy. *Id.* Plaintiff cites no cases holding this a sufficient basis to defeat summary judgment and none exist. Speculation that evidence might exist is not a basis to defeat summary judgment are not sufficient to establish a genuine issue of material fact. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir.2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Nor is the mere mention of an "inference" to be drawn a basis for failing to produce actual evidence. As the Seventh Circuit held not so long ago "inferences 'that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022).

Plaintiff's claims that his conspiracy and failure to intervene claims "do not have a personal involvement requirement" is plainly incorrect. *Almodovar v. Guevara*, 2025 WL 71735, *1 (N.D.Ill. 2025)("Without sufficient evidence of Olszewski's involvement in a conspiracy, there is insufficient evidence to raise a genuine dispute of fact as to whether he was personally involved in the federal constitutional violations that plaintiffs assert."); *Sanchez v. City of Chicago*, 700 F.3d 919, 928 (7th Cir. 2012)(failure to intervene claims require personal involvement). Indeed, Plaintiff's counsel knows full well this is not the law. Just several months ago, another client that counsel represented lost a federal and state conspiracy claim as well as a failure to intervene claim on summary judgment on these grounds. *See Smith v. City of Chicago*, 785 F.Supp.3d 356, 396 (N.D.Ill. 2025)("[T]he Court agrees with the Officers' position that Smith has not produced evidence that Dwyer had personal involvement in his arrest, interrogation, or confessions. Thus, Dwyer cannot be liable for failing to intervene…[T]he Court agrees with the Officers that Smith fails to establish Dwyer's personal involvement…Smith fails to provide evidence that Dwyer played any role at Area 2. Summary judgment is thus proper for Dwyer on Smith's § 1983 and Illinois state law conspiracy claims.")

More fundamentally, Plaintiff's claims that the allegations against Guevara in other unrelated cases is a basis for a finding that Guevara engaged in a conspiracy *in this particular case* is absurd. As part of his Local Rule 56.1 Statement of Additional Facts, Plaintiff includes references to numerous other alleged acts of misconduct committed by Guevara in other cases which bear no resemblance to anything Guevara is alleged of doing in this case (e.g. coercing confessions, abusing people, threatening people, etc.). *See* Dckt. No. 487 at ¶¶ 55-78. As with Plaintiff's 16-page "fact dump" attempt to obfuscate the absence of involvement of Guevara in any material acts of misconduct in this case, this is yet another example of Plaintiff's abusive and egregious disregard for Local Rule 56.1. Despite dumping dozens of unrelated allegations into his Local Rule 56.1 Statement of Additional Facts and forcing a response, Plaintiff does not bother to explain how any one of these allegations is relevant to anything in this case. *See* Dckt. No. 491. Not a single instance is referenced in the brief itself. *Id.* The inclusion of dozens of immaterial allegations from other cases having nothing at all to do with the facts of this case violates Local Rule 56.1 and should be stricken on its face. *See Ford*, 197 F.R.D. at 367 ("Defendants' admitted inclusion of immaterial facts is a clear violation of the specific dictates of the rule, and alone justifies striking defendants' Local Rule 56.1(a)(3) statement and denying the motion for summary judgment."); *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016)("immaterial assertions" did not comply with Local Rule 56.1).

Rather, the proffered purpose of these voluminous allegations is an attempt to prove that since Guevara allegedly acted unlawfully in some other case in some other undefined way that Plaintiff can create an issue of material fact *in this case* because of the existence of these other allegations. *See* Dckt. No. 491 at 4, 21, 22, 48. Nowhere in Plaintiff's brief is there any citation to authority holding as much. *Id.* The reason for this is obvious. Use of other acts evidence to create an issue of fact on case specific allegations in another case would literally be the definition of propensity evidence that is barred by Fed. R. Evid. 404(a) and governing law in the Seventh Circuit.

10

*United States v. Gomez,* 763 F.3d 845, 853 (7th Cir. 2014); *see also Terrell v. Secretary, Department of Veterans Affairs*, 98 F.4th 1343, 1352 (11th Cir. 2024)("Terrell points to discrimination claims that other employees filed against Doloresco related to distinct hiring decisions, as purported Rule 404(b) evidence of intent to discriminate. But given the absence of record evidence otherwise, these discrimination cases against Doloresco do not create a genuine issue of material fact as to whether discrimination occurred in Terrell's case."). Under Rule 404(b), "'relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Gomez,* 763 F.3d at 860 *citing United States v. Miller,* 673 F.3d 688, 696 (7th Cir. 2012). By claiming that Guevara's alleged misconduct in another case should be used to create a genuine issue of material fact about his alleged misconduct in this case, Plaintiff is blatantly asking for a propensity-based use of this evidence which is not permitted. Indeed, if this were the law, neither Guevara nor any other defendant who has been accused of misconduct in other cases could ever obtain summary judgment on any claim because a plaintiff could just turn around and claim that such defendant allegedly committed some misconduct in some other case and the case should proceed to trial regardless of the absence of evidence. Not surprisingly, again, Plaintiff cites no authority supporting this theory and, to Guevara's knowledge, none exists.

**III.    There Is No Evidence Guevara Commenced Or Continued Any Criminal Proceeding Against Plaintiff.**

In his opening brief, Guevara argued that Plaintiff failed to establish that Guevara was involved in any way with commencing or continuing the prosecution against Plaintiff. *See* Dckt. No. 464 at 20-21. In response, Plaintiff claims that Guevera is wrong on the law because the law provides that this the presumption of prosecutorial discretion can be overcome by establishing that a defendant has "deliberately supplied misleading information that influenced the decision" to prosecute. Dckt. No. 491 at 18-19. Guevara is not wrong on the law in the slightest. In fact, Guevara

11

cited this exact same standard in his opening brief. *See* Dckt. No. 464 at 20-21 (*citing Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) and noting that the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor."). The problem for Plaintiff here is that Plaintiff cites no actual evidence whatsoever of Guevara doing any such thing. *See* Dckt. No. 490 at 42- 43, 86, 97. Plaintiff cites zero evidence that Guevara had any communication at all with any prosecutor relating to Plaintiff's charging much less deliberately supplied any false information to them. *Id.* Guevara also did not testify at any judicial proceeding against Plaintiff at any time. *Id.*; *see also id.* at ¶¶ 99-100, 165. Beyond the baseless representation that Guevara has misstated the law, Plaintiff offers no further argument on the matter and, thus, has waived any opposition to entry of judgment.

### IV. Guevara is Entitled To Qualified Immunity On Plaintiff's Failure To Document/Failure To Disclose Misconduct Claims Under *Brady*.

Plaintiff also separately argues that Guevara's Qualified Immunity arguments on Plaintiff's "failure to affirmatively document/failure to disclose his own misconduct" theory "is both undeveloped and fails on its merits." *See* Dckt. No. 491 at 46. According to Plaintiff, "Guevara spends a full page giving the elements of qualified immunity, but when it comes to identifying the legal doctrine that Guevara is asserting was unknown to him, he asserts only, 'As set forth above, courts routinely hold that Plaintiff's theories of *Brady* violations are not legally sufficient.' *Id.* This is just a blatantly false statement. Guevara specifically alleged in this very Paragraph that "the legal doctrine" at issue is "a failure to affirmatively document activities and/or failing to disclose his own alleged misconduct." *See* Dckt. No. 464 at 18. This statement is in the exact same Paragraph that Plaintiff cites in his Response. *Id.*

Plaintiff is also just flat out wrong on the law. *Guevara* has no burden to establish the existence of Qualified Immunity at all; this is entirely *Plaintiff's* burden on this Motion. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011); *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017)("The plaintiff

bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred"). It is not up to Guevara to prove that the law was well-established that the conduct at issue was not unconstitutional; it is up to Plaintiff to prove that it was well-established that it was unconstitutional. *Id.* Plaintiff has not even attempted to do so. Moreover, even were there some divergence of opinions by courts on this issue, the fact is that there are numerous courts who held (and still to this day hold) that such claims arising from the alleged failure to affirmatively document activities or failure to disclose one's own alleged misconduct are legally invalid claims. *Saunders–El v. Rohde*, 778 F.3d 556 (7th Cir. 2015) ("*Brady* does not require the creation of exculpatory evidence..."); *Coleman v. City of Chi.*, 2025 WL 2410325, at *21 (N.D. Ill. 2025)("[I]f Coleman argues that the detectives and Garfinkel suppressed their own account of the circumstances of Fulton's confession, then the argument is squarely foreclosed by *Saunders-El*, which rejected an argument that police officers' failure to admit their misdeeds amounts to a withholding of exculpatory evidence in violation of Brady."); *Johnson*, 2025 WL 903813, at *27 (same); *Serrano v. Guevara*, 2020 WL 3000284, *19 (N.D. Ill. 2020)(same); *Jackson v. City of Chi.*, 2024 WL 1142015, *12 (N.D.Ill. 2024)(same); *Ezell v. City of Chi.*, 2024 WL 278829, *23 (N.D.Ill. 2024)(same); *Harris v. City of Chi.*, 2015 WL 1331101, *4 (N.D. Ill. 2015)(same); *Alvarado v. Hudak*, 2015 WL 4978683, * 3 (N.D.Ill. 2015)(same); *Myvett v. Heerdt*, 2015 WL 12745087, *6 (N.D.Ill. 2015)(same); *U.S. v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012)(failure to prepare report does not violate *Brady*); *Del Prete v. Village of Romeoville, Illinois*, 2025 WL 446260, *10 (N.D.Ill. 2025)(same); *Brown v. City of Chi.*, 633 F.Supp.3d 1122, 1163–64 (N.D.Ill. 2022)(same).[1]

If there is any disagreement in the courts on the matter, Qualified Immunity applies. As the United States Supreme Court has said in stark terms, "[i]f judges thus disagree on a constitutional

---

[1] Indeed, Plaintiff's counsel knows full well that this is the law since he was lead counsel in a case just last year where such a claim was disposed of on summary judgment. *Smith*, 785 F.Supp.3d at 413 ("To the extent plaintiff is arguing that defendants had a duty to create evidence consistent with plaintiff's theory of fabrication, such a claim must fail.").

question, it is unfair to subject police to money damages for picking the losing side of the controversy." *See Wilson v. Layne*, 526 U.S. 603, 618 (1999); *see also O'Keefe v. Chisholm*, 769 F.3d 936, 942 (7th Cir. 2014)("Public officials can be held liable for violating clearly established law, but not for choosing sides on a debatable issue.").

## V.     Plaintiff's IIED Claim Is Factually And Legally Deficient.

Plaintiff's IIED claim fails for the reasons set forth in Defendants' opening brief, specifically, there can be no IIED claim based on an investigation supported by probable cause nor is there any evidence supporting Guevara's interaction with Plaitnfif at all. *See* Dckt. No. 464 at 22-23. Plaintiff avers that "[a] reasonable jury could reject all of Cruz's federal constitutional claims on any number of complicated grounds and still conclude that Defendants went after Cruz for the sole purpose of causing him emotional distress." Dckt. No. 491 at 51-52. Once again, these arguments are not supported by any legal authority and contradict governing law. *See* Dckt. No. 464 at 22-23 *citing Larsen v. Elk Grove Village*, 433 Fed.Appx. 470, 474 (7th Cir. 2011); *Garcia v. City of Chi.*, 2019 WL 4450499, *8 (N.D.Ill. 2019); *Morris v. Smith*, 2016 WL 3671428, at *2 (N.D. Ill. 2016). Any contrary argument on this is both waived and substantively incorrect.

Second, Plaintiff's claims that his IIED claim is not time-barred. *See* Dckt. No. 491 at 53, fn. 14 (citing district court cases). The Seventh Circuit holds otherwise. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *see also Taylor v. City of Chi.*, 80 F.Supp.3d 817, 828 (N.D. Ill. 2015)(dismissing IIED claim in a reversed conviction case because the statute of limitations began to run on the date of arrest). This is especially so with respect to Guevara because it is undisputed that Guevara neither had any contact with Plaintiff at any point nor participated in any way in his criminal prosecution.

## VI.     Plaintiff's Racial Discrimination Claim Is Factually And Legally Deficient.

Plaintiff's arguments in support of his race-based conspiracy theory is utterly baseless. *See* Dckt. No. 491 at 51-52.

14

First, as noted above, there is no evidence of Guevara's involvement in any conspiracy much less one based on racial animus against a person *with whom Guevara shares the same race. See supra* Part II; Dckt. No. 364 at 23-25.

Second, the crux of Plaintiff's claims are that "[w]here the evidence overwhelmingly points to three black shooters, and Defendants instead go after only one Hispanic, there is more than enough evidence to support a Section 1985 'racial animus' conspiracy claim." Dckt. No. 491 at 51-52. Saying this is so does not make it so. Consistent with the pattern throughout his Response, Plaintiff does not actually cite any authority for such a proposition (*id.*) and, also consistent with this trend, this is not the law. It is not remotely sufficient under Section 1985(3) to simply claim that the police should have investigated a member of another race instead of the plaintiff especially, as here, where an eyewitness has insisted that the perpetrator of the offense in question was a member of a particular race. *See Hogue v. City of Fort Wayne*, 599 F.Supp.2d 1009, 1023 (N.D.Ind. 2009)("Though Hogue is black and the individual Defendants are Caucasian, Hogue does not even argue this point in the context of his § 1985(3) claim and does not point to any evidence that suggests Defendants targeted him because of his race."); *Alexander v. City of South Bend*, 320 F.Supp.2d 761, 778–79 (N.D.Ind.2004)(summary judgment on plaintiff's § 1985 (3) conspiracy claim where aside from presenting the undisputed fact that plaintiff was black, plaintiff offered no evidence that defendants' investigation stemmed from any racial animosity; "Plaintiff has presented no evidence that Defendants' investigation of Plaintiff was premised on a racial animus shared among the Defendants. Plaintiff's complaint alleges that Defendants stopped, interrogated, and detained Plaintiff because he was an African American. Plaintiff's statement is technically correct. Defendants did, in fact, investigate Plaintiff because of his racial status. They did so, however, not because they were motivated by any racial animus, but because each victim and witness to the River Park rapes reported that the perpetrator was an African American."). If the law were otherwise, every criminal

15

defendant who claims that the police failed to investigate some other perpetrator who happened to be of a different race would have a viable claim for race discrimination. This is not the law.

WHEREFORE Defendant Guevara prays this Court enter summary judgment in Defendant Guevara's favor on all counts and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By: /s/ Timothy P. Scahill
   *Special Assistant Corporation Counsel*

Steven B. Borkan
Timothy P. Scahill
Andrea Fabian-Checkai
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*