**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jose Cruz, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 23 cv 4268 |
| | ) | |
| v. | ) | Honorable Judge Alexakis |
| | ) | |
| Former Detective Reynaldo Guevara, et al. | ) | Magistrate Judge Fuentes |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN FURTHER SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT[1]**

---

[1] The City adopts and incorporates herein Defendant Officers' and Defendant Guevara's reply briefs and response to Plaintiff's rule 56.1 statement of additional facts.

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

   I.    The Court should disregard the jumbled mass that Plaintiff presented in his Rule 56.1 submissions. ......................................................................................................... 1

      A.   Response to City's SOF violates Local Rules and this Court's standing order. ............. 2

      B.   Plaintiff's SOAF violates Rule 56.1 and this Court's standing order. ........................... 7

   II.    If the Court grants Defendant Officers' and Guevara's Motion for Summary Judgment, the City is entitled to Summary Judgment. ................................................................... 9

   III.   Plaintiff cannot articulate any clear municipal policy for which to hold the City liable. 9

   IV.   Plaintiff ignores the City's challenges to his purported evidence on discipline. .......... 12

      A.   Plaintiff does not provide a factual basis for his expert's opinion. ............................... 12

      B.   Plaintiff does not defend his failure to identify any actual evidence in response to the City's interrogatories. .............................................................................................. 15

      C.   The jumbled mass Plaintiff submitted does not establish a widespread practice of failure to discipline. ............................................................................................... 16

   V.    Plaintiff does not offer evidence to support a "code of silence" theory. .......................... 19

   VI.   Plaintiff fails to establish municipal fault and causation. ............................................. 21

   VII.   Plaintiff failed to develop evidence to support any other alleged policy. ...................... 22

      A.   Disclosure of exculpatory evidence. .......................................................................... 22

      B.   Detective supervision and training. ............................................................................ 24

      C.   Any other alleged practice of misconduct. ................................................................. 25

CONCLUSION ................................................................................................................. 25

## CASES

*Abbas v. City of Hobart*, No. 24-2464, 2025 WL 2945682 (7th Cir. Oct. 17, 2025) .................... 25

*Aska v. Yingling*, No. 3:23-CV-50004, 2026 WL 179545 (N.D. Ill. Jan. 22, 2026) ............... 2, 3, 4

*Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) ................................ 21

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461 (7th Cir. 2010) ........................................................ 13, 16

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ............................................... 22

*Cesario v. Jewel Food Stores, Inc.*, No. 17 CV 319, 2020 WL 996498 (N.D. Ill. Mar. 2, 2020) ... 2

*Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649 (7th Cir. 2001) ........................... 8

*City of Canton v. Harris*, 489 U.S. 378 (1989) ........................................................................... 21

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ..................................................................... 9

*Coburn v. Daimlerchrysler Servs. N. Am.*, No. 03 C 00759, 2005 WL 736657 (N.D. Ill. Mar. 31, 2005) ........................................................................................................................................ 6

*Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581 (7th Cir. 1992) ................................................. 17

*Connick v. Thompson*, 563 U.S. 51 (2011) .................................................................................. 21

*Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609 (7th Cir. 2006) ..................................................... 17

*Darko v. City of Chi.*, No. 21-cv-6467, 2023 WL 5334600 (N.D. Ill. Aug. 18, 2023) ................. 10

*Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021) ……………………………….22

*Driver v. Chatys*, No. 15 C 4041, 2017 WL 4339819 (N.D. Ill. Sep. 29, 2017) ............................ 6

*Estate of Moreland v. Dieter*, 395 F.3d 747 (7th Cir. 2005) ....................................................... 17

*FDIC v. Chi. Title Ins. Co.*, No. 12-cv-05198, 2017 WL 3592736 (N.D. Ill. Aug. 21, 2017) ........ 6

*Fields v. City of Chi.*, 981 F.3d 534 (7th Cir. 2020) .................................................................... 23

*First Midwest Bank v. City of Chi.*, 988 F.3d 978 (7th Cir. 2021) ........................................... 1, 21

*FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC*, No. 12 C 572, 2014 WL 6065817 (N.D. Ill. Nov. 13, 2014) ................................................................................................................................... 2

*Greer v. Bd. of Ed.*, 267 F.3d 723 (7th Cir. 2001) ........................................................................ 2

*Greycas, Inc. v. Proud,* 826 F.2d 1560 (7th Cir. 1987) ................................................................. 6

*Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021) ...................................... 14

*Hutton v. City of Chi.*, No. 20-cv-03997, 2021 WL 809731 (N.D. Ill. Mar. 3, 2021) .................. 14

*Ideal Mfg. & Sales Corp. v. Pase Grp., Inc.,* No. 06-C-0590, 2008 WL 11463582 (E.D. Wis. Nov. 24, 2008) ............................................................................................................................... 5, 8

*In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719 (3d Cir. 2020) .................................... 6

*JP Morgan Chase Bank, N.A. v. Jenkins*, No. 14 C 4278, 2016 WL 4417072 (N.D. Ill. Aug. 18, 2016) ............................................................................................................................ 5

*King v. Ford Motor Co.*, 872 F.3d 833 (7th Cir. 2017) .................................................. 20

*Kluppelberg v. Burge*, 276 F. Supp. 3d 773 (N.D. Ill. 2017) ........................................ 24

*Laborers' Int'l Union v. Caruso,* 197 F.3d 1195 (7th Cir. 1999) .................................. 25

*LaFond v. Sturz*, No. 03-C-435-C, 2004 WL 1946404 (W.D. Wis. Aug. 18, 2004) .................... 18

*Levy v. Marion Cty. Sheriff*, 940 F.3d 1002 (7th Cir. 2019) .......................................... 10

*Lewis v. Dominick's Finer Foods, LLC*, No. 13 C 530, 2015 WL 2128597 (N.D. Ill. May 5, 2015) ............................................................................................................................ 20

*Little v. Cox's Supermarkets*, 71 F.3d 637 (7th Cir. 1995) ........................................... 21

*Lopez v. Vidljinovic*, 2016 WL 4429637 (N.D. Ill. Aug. 22, 2016) ........................... 18, 22

*Malec v. Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000) .................................................. 3, 7, 9

*McGlenn v. Madison Metro. Sch. Dist.*, 738 F. Supp. 3d 1071 (W.D. Wis. 2024) ....................... 21

*McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1995) .......................................... 10

*Mervyn v. Nelson Westerberg, Inc.,* 142 F. Supp. 3d 663 (N.D. Ill. 2015) ...................... 20

*Mighty v. Safeguard Props. Mgmt.*, LLC, 2018 WL 5619451 (N.D. Ill. Oct. 30, 2018) .............. 20

*Mortensen v. Arrowood,* 711 F. Supp. 3d 935 (N.D. Ill 2023) ........................................ 11

*Murray v. Avon Products, Inc.*, 2004 WL 2921867 (N.D. Ill. Dec. 16, 2004) ..................... 2

*Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001) .......................................................... 9

*Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill. 1983) ...................................... 7

*Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) ............................................ 24

*Phelan v. Cook County*, 463 F.3d 773 (7th Cir. 2006) .................................................. 21

*Quillman v. Estate of Obaisi*, 2020 WL 2084989 (N.D. Ill. Apr. 30, 2020) ..................... 2

*Rivera v. Guevara*, 319 F. Supp. 3d 1004 (N.D. Ill. 2018) ........................................... 24

*Rossi v. City of Chi.*, 790 F.3d 729 (7th Cir. 2015) .................................................. 8, 15

*Siegle v. City of Chicago*, 10 C 04618, 2013 WL 1787579 (N.D. Ill. Apr. 25, 2013) .................. 13

*St. John v. Cach*, LLC, 822 F.3d 388 (7th Cir. 2016) ................................................... 19

*Stabenow v. City of Eau Claire*, 546 F. Supp. 3d 787 (W.D. Wis. 2021) ........................ 14

*Stockton v. Milwaukee Cnty*, 44 F.4th 605 (7th Cir. 2022) .......................................... 22

*Strauss v. City of Chi.*, 760 F.2d 765 (7th Cir. 1985) ............................................ 12, 13, 15

*Taylor v. City of Chicago,* 2012 WL 669063 (N.D. Ill. Feb. 29, 2012) ........................ 6, 8

*Thomas v. Chi. Teachers' Pension Fund*, Nos. 25-1623, 25-1818, 2026 WL 165448 (7th Cir. Jan. 21, 2026) .................................................................................................................. 2, 3

*Thomas v. City of Markham*, No. 16 CV 08107, 2017 WL 4340182 (N.D. Ill. Sep. 29, 2017).... 21

*Tyler v. Runyon,* 70 F.3d 458 (7th Cir. 1995) ............................................................... 11

*U.S. v. Jackson*, 208 F.3d 633 (7th Cir. 2000).................................................................. 6

*Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, *aff'd,* 926 F.3d 409 (7th Cir. 2019)........... 8

*United States v. Jackson*, 208 F.3d 633 (7th Cir. 2000) ................................................... 8

*United States v. Law*, 990 F.3d 1058 (7th Cir. 2021) ................................................... 13

*Wilson v. City of Chi.*, 6 F.3d 1233 (7th Cir. 1993)......................................................... 22

*Wittmer v. Peters*, 87 F.3d 916 (7th Cir. 1996)............................................................... 5

## RULES

L.R. 56.1(d)(1) ......................................................................................................... 7, 9

L.R. 56.1(d)(2) ......................................................................................................... 3, 7

L.R. 56.1(d)(4) ......................................................................................................... 2, 8

L.R. 56.1(e)(2). ........................................................................................................... 2

L.R. 56.1(e)(3) ............................................................................................................ 3

Defendant City of Chicago (the "City"), by and through its undersigned counsel, in further support of its Motion for Summary Judgment on Plaintiff's *Monell* claim ("City Memo.," Dkt. 466), and in reply to Plaintiff's Response in Opposition to Defendants' Summary Judgment Motions ("P. Resp. Memo"),-states as follows:

## INTRODUCTION

The City cannot be held liable under §1983 merely for the constitutional violations of its employees. *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 987 (7th Cir. 2021). Rather, *Monell* imposes liability only for the City's *own* actions. *Id.* This requires Plaintiff to establish a City policy directly caused him constitutional harm and that the City's policymakers were aware that its actions would lead to constitutional violations but "consciously disregarded those consequences." *Id.* Plaintiff comes nowhere near showing sufficient evidence to establish those essential elements.

Not only does Plaintiff fail to identify any specific policy, but he does not offer any cogent argument as to how the City's own actions caused him to suffer a constitutional violation. Instead, Plaintiff presents a jumbled mass that violates Local Rule 56.1 and resorts to unsupported hyperbole. Indeed, Plaintiff's entire argument seems to be that because of decades-old allegations against Jon Burge and allegations against Defendant Guevara, which surfaced decades after Plaintiff's arrest, he must be entitled to *Monell* liability for something. This Court should reject such a hollow attempt and grant the City's Motion for Summary Judgment.

## ARGUMENT

**I.      The Court should disregard the jumbled mass that Plaintiff presented in his Rule 56.1 submissions.**

The Seventh Circuit and courts in this district have repeatedly warned plaintiffs who craft their summary judgment submissions as a "veritable catapult to hurl a jumbled mass of information

at the [court and the defense] in the hope of avoiding summary judgment." *See, e.g., Greer v. Bd. of Ed.*, 267 F.3d 723, 727 (7th Cir. 2001); *Murray v. Avon Products, Inc.*, No. 03 C 7594, 2004 WL 2921867, at *6 (N.D. Ill. Dec. 16, 2004). Yet, that is precisely what Plaintiff presents in contravention of Local Rule 56.1 and this Court's standing order, the purpose of which is to streamline summary judgment. *See Cesario v. Jewel Food Stores, Inc.*, No. 17 CV 319, 2020 WL 996498, at *1 (N.D. Ill. Mar. 2, 2020). Violations of Local Rule 56.1 "make everything more difficult for everyone." *Aska v. Yingling*, No. 3:23-CV-50004, 2026 WL 179545, at *2 (N.D. Ill. Jan. 22, 2026). Accordingly, the Court should deem the offending paragraphs of the City's 56.1 statement (City's SOF") admitted and disregard Plaintiff's statement of additional facts ("P. SOAF").[2]

A.      **Response to City's SOF violates Local Rules and this Court's standing order.**

It is well-settled that responses to a movant's statements of facts "should not contain legal argument," and responses "may not set forth any new facts." L.R. 56.1(d)(4), (e)(2); *Thomas v. Chi. Teachers' Pension Fund*, Nos. 25-1623, 25-1818, 2026 WL 165448, at *2 (7th Cir. Jan. 21, 2026). The rationale behind the rule is that by including argument and new facts in response to a Rule 56.1(b)(2) statement, it unfairly deprives the moving party of a vehicle to dispute them. *Quillman v. Estate of Obaisi*, No. 14 cv 09806, 2020 WL 2084989, at *1 (N.D. Ill. Apr. 30, 2020); *FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC*, No. 12 C 572, 2014 WL 6065817, at *4 (N.D. Ill. Nov. 13, 2014). Further, a response that disputes an asserted fact "must cite specific evidentiary

---

[2] Because Plaintiff designated his additional facts paragraphs pertaining to the City's Motion for Summary Judgment on his *Monell* claim in a separate section of his statement of additional facts (*see* PSOF ¶¶ 1-40, titled "The City's Historical Failures to Discipline Officers who Repeatedly Engaged in Misconduct Resulting in Wrongful Convictions"), and those fact paragraphs do not pertain to the Defendant Officers' and Defendant Guevara's Motions for Summary Judgment, the City is filing its response to the Plaintiff's *Monell* paragraphs in a document separate from the Defendant Officers' responses to Plaintiff's statements of additional fact pertaining to their Motions for Summary Judgment. *See* City Resp. PSOAF ¶¶ 1-40.

2

material" and may be deemed admitted if not. L.R. 56.1(e)(3). Likewise, a statement of material facts "must be supported by citation to the specific evidentiary material" and may be disregarded if not. L.R. 56.1(d)(2); *see also Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities"). District courts are entitled to expect strict compliance with Rule 56.1 and are well within their discretion when they disregard facts presented in a manner that does not follow the rule's instructions. *Thomas*, 2026 WL 165448at *3.

Here, Plaintiff violates Rule 56.1 by responding with improper argument to the City's statement of facts. To start, Plaintiff admits ¶¶ 37, 40, 42, 43, 45, 47, 49, 50, 54, 62, 64, 67, 69, and 77-80, but then "disputes" the "implication" or "suggestion" and then proceeds to argue against the import of the stated fact. (P. Resp. CSOF, Dkt. 489). Any argument regarding the inference of certain facts belongs in the response brief, not the 56.1 submissions. *Aska*, 2026 WL 179545, at *4. Similarly, in response to fact statements about the limited basis for his expert's opinions, Cruz often admits the substance of the fact but then includes unnecessary argument about his reliance on the "broader historical record." *See* P. Resp. to CSOF, Dkt, 489, ¶¶ 36, 43, 44, 47, 49, 50, 52, 64, 67, 77, 78, 79.

In other instances, Plaintiff clouds his responses with argumentative rhetoric. Examples include the following: ¶ 1 (arguing Plaintiff's nearly three page response is "more accurate and precise description" of his *Monell* theory), ¶ 17 (arguing CRs were "*supposed*" to contain documents generated during an investigation but disputing they "actually" did), ¶ 18 (arguing "had CPD actually established a functioning system"), ¶ 23 (arguing order was "both defective and unenforced by the City"), ¶ 25 (arguing directive did not "properly address[] the City's evidence suppression problem"), ¶ 26 (arguing directive was "highly deficient"), ¶ 34 (arguing the City's

3

"characterization is incomplete"), ¶¶ 44, 51, and 52 (arguing the "probative value" of evidence cited and "relevance"), ¶ 48 (arguing "there was no reason" for Longo do have done more to support his opinion), and ¶ 75 (arguing the context of Longo's testimony).

One particularly egregious example is Plaintiff's response to paragraph ¶ 49. There, the City merely identified the civil litigation Longo cites in his report. Plaintiff responds with the unsupported argument that the City "falsely den[ies] the overwhelming evidence of Guevara's and his associates' malicious misconduct …and continue[s] to pay Guevara and his fellow officers [sic] pensions." Like *Aska*, these denials read more like "long-form op-eds than nonfiction." *See Aska*, 2026 WL 179545, at *2. Accordingly, the following paragraphs should be deemed admitted for including improper argument: ¶¶ 1, 12, 17, 18, 23, 25, 26, 28, 30, 32, 35-37, 40, 42-45, 47-52, 54, 62, 64, 66-67, 69, and 77-80.

Plaintiff also responds to the City's SOF by adding facts that do not refute the fact statement cited. For instance, in ¶¶ 6, 7, 9, 14, and 15, Plaintiff does not dispute the substance of the fact statement setting forth his responses to the City's contention interrogatories, but he *adds* additional facts *not* originally included in his answers. Another example is ¶ 16. There, the City merely set forth its written directive, G.O 93-3, regarding officer discipline. Plaintiff admits the language quoted from the directive in the fact statement, but then goes on for over two pages, adding facts and argument about other lawsuits that do not controvert the quoted language in G.O. 93-3. The Court should deem admitted the following paragraphs for including facts that do not refute the stated fact: ¶¶ 1, 6, 7, 9, 12-26, 28, 33, 40, 42, 48, 52, 54-57, 62, 66, 69, 74, and 76.

Plaintiff also attempts to dispute certain fact statements, but he does not support the denial by citing admissible evidence or, in some circumstances, by citing evidence at all. An example is ¶ 17. There, the City provided a basic definition of what a complaint register (CR) file is by

4

explaining that it contains the documents generated during the investigation and stating that "if the complaint was sustained, fair and equitable discipline would be imposed," all with citation to the record. In response, Plaintiff inexplicably references numerous CR files, claiming – without evidence – that the "City failed to maintain and produce" them in the litigation, but he was able to "find" them. Plaintiff's irrelevant, unsupported criticism that CPD does not maintain CR files from 40 years ago does not controvert the basic definition of what a CR file is.

Further, the unsupported conclusions that Plaintiff draws from the CR files do not establish that the CR files themselves do not contain the documents related to an investigation or that, if a CR is sustained, the discipline is fair and equitable. For example, Plaintiff references CR-125360 and draws the conclusions that misconduct occurred and that the complainant never received notification of the outcome. Plaintiff, however, does not provide evidence to show the investigation was deficient. To the extent Plaintiff is arguing the CR should have been sustained and discipline should have been imposed, the record cited also does not support that conclusion. Each of the CRs cited in this paragraph suffers the same flaw. (P. Resp. City SOF, ¶17).

Another example is Plaintiff's attempt to dispute numerous facts by citing expert reports and testimony from other litigation, when he did not hire or disclose those experts. *See* ¶¶ 15, 16, 17, 20, 21, 48, 66, and 69. *See Ideal Mfg. & Sales Corp. v. Pase Grp., Inc.,* No. 06-C-0590, 2008 WL 11463582, at *9 (E.D. Wis. Nov. 24, 2008). Plaintiff's reliance on his own expert's unverified report is also impermissible. *JP Morgan Chase Bank, N.A. v. Jenkins*, No. 14 C 4278, 2016 WL 4417072, at *2 (N.D. Ill. Aug. 18, 2016) (unsworn expert reports are not admissible at summary judgment) (citing *Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir. 1996)).

Likewise, Plaintiff impermissibly relies on other court opinions, websites, and newspaper articles to dispute statements of fact. *See* ¶¶ 1, 7, 16, 17, 21-22, 24, 58, and 66. *See Taylor v. City*

*of Chicago,* No. 09 C 5092, 2012 WL 669063 (N.D. Ill. Feb. 29, 2012) (Shadur, J.) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)); *Driver v. Chatys*, No. 15 C 4041, 2017 WL 4339819, at *5 (N.D. Ill. Sep. 29, 2017) (website is inadmissible hearsay) (citing *U.S. v. Jackson*, 208 F.3d 633 (7th Cir. 2000)); *Coburn v. Daimlerchrysler Servs. N. Am.*, No. 03 C 00759, 2005 WL 736657, at *11 (N.D. Ill. Mar. 31, 2005) ("newspaper articles and unsworn letters are clearly not admissible evidence and must be disregarded under fundamental principles of summary judgment law").  And Plaintiff's reliance on jury verdicts is impermissible.  "A jury bases its verdict on evidence; it does not create evidence." *In re Processed Egg Prods. Antitrust Litig.*, 962 F.3d 719, 729–730 (3d Cir. 2020); *see also FDIC v. Chi. Title Ins. Co.*, No. 12-cv-05198, 2017 WL 3592736, at *9 (N.D. Ill. Aug. 21, 2017) (civil judgments not usable in subsequent proceedings as evidence of the facts underlying the judgment) (citing *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir. 1987).  The following paragraphs should be deemed admitted for relying on inadmissible evidence: ¶¶ 6, 7, 9, 12-24, 28, 30, 32, 43-45, 47-48, 53, 54-58, 66, 69, 74-75.

Numerous other paragraphs also include factual assertions without citations to any evidence.  For instance, in ¶ 52, the City asserted that Longo did not explain how various historical documents are probative of the City's practices in 1993.  Plaintiff disputes the assertion, but without pointing to anything in Longo's report to support it.  Another troubling example is ¶ 6, where he refers to the litigation in *Klipfel v. City of Chicago* and asks the Court to search the docket for him.  The following paragraphs should be deemed admitted for failing to cite to evidence in the record: ¶¶ 36, 37, 42, 47, 49, 50, 63-68, 74-79.

And finally the following response paragraphs to the City's statement of fact are not concise and should be deemed admitted: ¶¶ 1, 3, 7, 9-10, 12-14, 17- 20, 22, 23, 26, 28, 30, 32, 35-

37, 40, 42, 43, 44, 47-48, 50, 52, 54, 58, 62, 64, 66-67, 69, 74, 75, 79, and 80. Egregious examples include ¶¶ 1,15-17, 21, and 28, which span multiple pages.

**B.      Plaintiff's SOAF violates Rule 56.1 and this Court's standing order.**

Plaintiff's Local Rule 56.1 (b)(3) statement of additional facts also contains numerous violations of Rule 56.1. What is most obvious at the outset is that Plaintiff's statements of fact are not concise. *See Malec*, 191 F.R.D. at 583 ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"); L.R. 56.1(d)(1). The most egregious are those paragraphs where Plaintiff attaches as an "exhibit" what he describes as a "chart" or "compilation" that merely includes *additional* facts and citations. *See* P. Resp. CSOF, ¶¶ 1, 5, 6, 7, 8, and 27. Likely drafted by Plaintiff's counsel, those "charts" and "compilations" necessarily multiply the number of fact assertions in each paragraph and skirt this Court's order limiting Plaintiff to 40 additional fact statements. (Dkt. 473). Another problematic example is ¶ 6, which also violates L.R. 56.1(d)(2). There, Plaintiff cites three reports, ranging from approximately 100 to 350 pages long, with no cited page number, apparently expecting the Court to sift through over 600 pages for him. The Court should disregard the following paragraphs for containing multiple assertions of fact: ¶¶ 1, 4-5, 6, 8-9, 12, 14-15, 16, 17-18, 20-28, 30-31, 33, 35, 36-40

This Court should also disregard paragraphs that are not supported by admissible evidence. For instance, in numerous instances, Plaintiff improperly relies on the court's opinions, like *Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill. 1983) and *Jones v. City of Chicago,* 856 F.2d 985 (7th Cir. 1988), as well as other cases involving Burge, to establish "facts." Court opinions, however, are inadmissible hearsay. *See Taylor v. City of Chicago,* No. 09 C 5092, 2012 WL 669063

(N.D. Ill. Feb. 29, 2012) (Shadur, J.) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).

Plaintiff also relies on reports and testimony from other cases for experts he did not disclose pursuant to Rule 26(a)(2). *See* PSOAF, ¶¶ 10, 14, 30, and 39. Those, too, are hearsay. *Ideal Mfg. & Sales Corp*, 2008 WL 11463582, at *9. Plaintiff cannot rely on expert testimony that he did not develop in his own case. *See Rossi v. City of Chi.*, 790 F.3d 729, 738 (7th Cir. 2015) (finding no abuse of discretion in disregarding expert reports from other litigation as not properly disclosed). And Plaintiff cannot rely on media reports or websites. Again, that is all hearsay. *Chicago Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001) (media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings.); *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (website postings offered for the truth are hearsay). Still, other paragraphs assert statements of fact that are not supported by the record cited. For instance, in ¶¶ 15-18, Plaintiff relies on his own interpretation of CRs files, but there is no corresponding testimony to establish the foundation of those conclusions. This Court should disregard the following paragraphs for failing to support the fact statement with admissible evidence: ¶¶ 1-11, 13, 15-18, 21-33, 35-40.

Additionally, Plaintiff violates Rule 56.1(d)(4) by inserting argumentative rhetoric in his fact statement. *See Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd,* 926 F.3d 409 (7th Cir. 2019) (responses to the opposing party's statement of facts are not the place for "purely argumentative details"); L.R. 56.1(d)(4). The Court should disregard the following paragraphs for including improper argument: ¶¶1-17, 21-29, 33-40.

8

And finally, the Court should disregard the fact paragraphs that do not assert "material" facts that warrant denial of the City's Motion for summary judgment. L.R. 56.1(d)(1); *see Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). ¶12 is an example. There, Plaintiff provided pages of information related to five reversed convictions, yet nowhere in the fact paragraph does Plaintiff cite evidence to show the City was on notice of any misconduct alleged in those cases. Further, other than two instances where he cites *everything* included in his 56.1 submissions, Plaintiff only specifically cites to ¶¶ 1-19, and 25-26 in his response brief. The fact that Plaintiff did not specifically cite any of the remaining paragraphs to support his argument proves that they have no importance and, therefore, are immaterial. *See Malec*, 191 F.R.D. at 583 (material fact is "pertinent to the outcome of the issues identified in the summary judgment motion"). The Court should disregard the following paragraphs as immaterial: ¶¶ 1-12, 14-40.

II.     **If the Court grants Defendant Officers' and Guevara's Motion for Summary Judgment, the City is entitled to Summary Judgment.**

The City argued in its Memorandum that if the Defendant Officers and Guevara prevail in their Motions for Summary Judgment, the City is entitled to judgment as a matter of law. (City Memo., Dkt. 466, p. 4-5). In response, Plaintiff does not argue that his *Monell* claim can survive without an underlying claim against the officers. *See* P. Resp. Memo, p. 66-67. Accordingly, if the Court grants the officers' motions for summary judgment, then the City is entitled to summary judgment. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (without a constitutional violation, the City's policies are "quite beside the point").

III.    **Plaintiff cannot articulate any clear municipal policy for which to hold the City liable.**

In its Memorandum, the City explained that a municipality can be liable for a §1983 violation only when execution of a municipality's policy or custom caused a particular constitutional injury. Identifying the policy is a critical element in the analysis. *Levy v. Marion*

*Cty. Sheriff*, 940 F.3d 1002, 1011 (7th Cir. 2019). If Plaintiff fails to identify a policy, "that policy cannot be the cause of Plaintiff's alleged constitutional injury." *Darko v. City of Chi.*, No. 21-cv-6467, 2023 WL 5334600, *7 (N.D. Ill. Aug. 18, 2023). Plaintiff, however, fails that basic step. Not only is it unclear what policy Plaintiff seeks to hold the City liable for, but as described below, it appears the "policy" is a jumbled amalgamation of various criticisms of the Chicago Police Department (CPD).

There are three possible avenues to establish a municipal policy: (1) an express policy, (2) a well-settled widespread practice, or (3) an act of a final policymaker. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). While Plaintiff states that he does not seek to hold the City liable for an express policy (*see* P. Resp. CSOF, ¶3), he does not clearly state which of the other two avenues he is pursuing or describe a municipal policy at all. Instead, Plaintiff states that the "City maintained a broken and dysfunctional police accountability and disciplinary system that it failed to identify, track, and discipline officers who engaged in repeated misconduct." (P. Resp. Memo, p. 57). While he describes this as his "one *Monell* theory," appearing to allege a failure to discipline officers, Plaintiff still fails to identify a specific practice or custom. (P. Resp., p. 57). It is not clear if he is alleging that the City failed to discipline its officers generally, or only those who committed repeated misconduct. Nor does he explain if failing to "identify" and "track" was a separate policy or practice. He does not even identify what the City's disciplinary practices were.

What's more, in the same paragraph, Plaintiff states that the City "enabled and condoned corrupt officers to repeatedly engage in misconduct that caused wrongful convictions." He then describes "Officer misconduct," or "Misconduct A-H," as fabricating false evidence, coercing and abusing suspects to give false confessions, threatening and abusing witnesses to make false identifications, suppressing evidence, maliciously prosecuting defendants, providing perjured

testimony, conspiring to build wrongful convictions, and failing to intervene to stop wrongful convictions. (P. Resp. p. 57-58). Yet, he does not state if "enabling and condoning" officers to commit misconduct was a separate policy or practice from "failing to identify, track, and discipline," nor does he state whether he is alleging a widespread practice of any of the allegations included in "Officer misconduct" or "Misconduct A-H," and he certainly does not provide evidence to support any such widespread practice or practices.

Added to that, Plaintiff describes "City misconduct" as failing to train, supervise, discipline, and failing to stop an alleged "code of silence." *Id.* p. 58. But, again, he does not describe those as separate policies or customs, and it is unclear whether he claims that is something different from his "one theory" regarding failing to "identify, track, and discipline officers."

Consequently, it is unclear if the policy Plaintiff is claiming caused him injury is a widespread practice of failing to discipline or a widespread practice of engaging in "Misconduct A-H," or the "City misconduct," or some combination of those things. *See also*, P. Resp. CSOF, ¶1 (requiring nearly three pages to dispute recitation of his *Monell* theories from his complaint).

On top of that, Plaintiff does not cite any legal authority to clarify or support his claim. *See Tyler*, 70 F.3d at 464 ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."). All of this shows that Plaintiff cannot clearly articulate to the Court the specific municipal policy for which he seeks to hold the City liable. Such vague assertions are not sufficient to survive a motion to dismiss, and so they should not survive summary judgment here. *See Mortensen v. Arrowood,* 711 F. Supp. 3d 935, 938 (N.D. Ill 2023) (dismissing *Monell* claim based on "conclusory statements" and "catch phrases" strung together in a kitchen sink pleading approach).

11

**IV.     Plaintiff ignores the City's challenges to his purported evidence on discipline.**

     **A.     Plaintiff does not provide a factual basis for his expert's opinion.**

Assuming Plaintiff's theory is failure to discipline, the City's Memorandum demonstrated that the only evidence Plaintiff could muster was the opinion of his expert, Timothy Longo. (City Memo., Dkt. 466, p. 5). The City explained that Longo's opinion was insufficient to establish a widespread practice because it was primarily based on allegations against Burge regarding physical abuse and allegations against Defendant Guevara. *Id.* at p. 6-11. The City also showed that while Longo listed "exonerees," other lawsuits, and "historical documentation" about Burge and Guevara, he did not assess whether those individuals identified in his report ever made complaints to CPD before 1993, such that it would have an opportunity to investigate and determine whether discipline was warranted. *Id.* at p. 8-9. And even with the limited number of complaints Longo identified, he did not evaluate the underlying files to show that CPD's investigation and/or resulting discipline were deficient. *Id.* at p. 6-8. Put simply, Longo could not identify any instance in which the City knew an officer should be disciplined but failed to impose it. *See Strauss v. City of Chi.*, 760 F.2d 765, 769 (7th Cir. 1985) ("the number of complaints filed, without more, indicates nothing" as "people may file a complaint for many reasons, or for no reason at all").

In response, Plaintiff does not address the deficiency of Longo's opinions. Plaintiff stated that he would address the admissibility of Longo's opinion in response to the City's *Daubert* motion. (P. Resp. Memo., Dkt. 491, p. 64, 67). However, the City's arguments in its Memorandum supporting its motion for summary judgment did not concern admissibility. To the contrary, the City stated that even if this Court accepts Longo's opinions, they are nevertheless insufficient to establish *Monell* liability. (City Memo., Dkt. 466, p. 6). Plaintiff's failure to respond waives the argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an opposing party's argument results in waiver).

12

Plaintiff also does not dispute the City's factual assertions regarding Longo. Plaintiff admits that for the ten CR files Longo included in his report regarding Burge, Longo (1) "did not review the individual CR files," (2) "did not know what evidence was developed in connection with each complaint," (3) "did not assess the quality of the investigations into those complaints," and (4) did not use them "to establish the truth of the underlying allegations." P. Resp. CSOF ¶35-37. The fact that he identified allegations "indicates nothing." *Straus*, 760 F.2d 765, 769.

Plaintiff also admits that, despite relying on the "Goldston-Sanders Report" as a basis for his opinion, Longo "did not independently review or re-investigate the individual cases" in the report and admits that the report did not "reach an express outcome as to the integrity of specific CR investigation." P. Resp. CSOF ¶35, 37, 39; *see Siegle v. City of Chicago*, 10 C 04618, 2013 WL 1787579, *8-9 (N.D. Ill. Apr. 25, 2013) (finding no basis to infer failure to discipline when complaints were not sustained; without evidence to impeach the integrity of the investigations, there is no basis to conclude any allegations had merit"). Added to that, Plaintiff provides no evidence to dispute that the Police Foundation evaluated Goldston's conclusions and informed CPD that Goldston's approach was not sufficient to justify his conclusions. (P. Resp. CSOF, ¶41).[3]

The same is true for allegations against Defendant Guevara. Plaintiff admits that Longo did not "conduct a case-specific re-investigation of independent factual analysis" of the CRs against Guevara. (P. Resp. CSOF, ¶48). Further, Plaintiff offers no evidence to dispute that discipline was imposed in two of the four cases he cited or offer any evidence to challenge the integrity of those investigations. (P. Resp. CSOF, ¶48) (disputing with argument only). And while

---

[3] Plaintiff wrongly objects to the Police Foundation Report as hearsay. The report provides evidence of the City's actions in response to Goldston's report and the information it received and not for the truth of the matter asserted. *See United States v. Law*, 990 F.3d 1058, 1062 (7th Cir. 2021) (When an out-of-court statement is offered for its effect on the listener, and not for its truth, it is not hearsay).

Longo also referenced several affidavits against Guevara, Plaintiff admitted that those affidavits are all dated *after* 1993. (P. Resp. CSOF, ¶53). *See Stabenow v. City of Eau Claire*, 546 F. Supp. 3d 787, 802 (W.D. Wis. 2021) (evidence that occurred after the alleged constitutional violations are not helpful because those events do not provide notice to a municipality).

For all other individuals in Longo's report (those he identified as having their convictions overturned or who filed lawsuits), Plaintiff admits that Longo did not know whether they made complaints to CPD, much less before 1993, such that CPD could have even investigated to determine whether discipline was warranted.[4] (P. Resp. CSOF ¶43, 47, 49).

Moreover, Plaintiff spends most of his response brief hyperbolizing allegations of "torture." Yet nowhere does he offer evidence or argument to show that those allegations are at all like what he alleges here when he admits he suffered *no* physical abuse. (P. Resp. CSOF, ¶42). Thus, those allegations cannot support an inference of a widespread practice. *See Howell v. Wexford Health* Sources, Inc., 987 F.3d 647, 657-58 (7th Cir. 2021) (prior instances must be sufficiently similar to infer a widespread practice); *Hutton v. City of Chi.*, No. 20-cv-03997, 2021 WL 809731, at *4 (N.D. Ill. Mar. 3, 2021) (if plaintiff cannot establish a pattern of similar instances to what he experienced, he cannot establish a true municipal policy).

Plaintiff also offers no rebuttal to the argument that a limited set of allegations, mostly concerning Burge, is insufficient to establish a widespread practice. *See Howell*, 987 F.3d at 654 (*Monell* requires establishing a true municipal policy rather than the isolated wrongdoing of or a few rouge employees). Plaintiff fails to respond to the City's legal authority, and he offers none of his own to show that the narrow set of allegations targeted to one person, or even a handful of people, can establish a widespread practice. *See Rossi*, 790 F.3d at 737 (rejecting *Monell* claim

---

[4] The absence of this evidence is also shown in PSOAF, ¶¶ 12, 24-26. Nowhere does Plaintiff identify any complaints made to CPD, much less prior to 1993.

where plaintiff failed to demonstrate a widespread practice in the context of a large and diverse institution such as CPD); Ex. 1, Feb. 22, 2024, Tr. of Oral Ruling on Mot. to Dismiss, *Higuera v. City of Chicago*, at 42:21-23 ("The practice must be a pandemic. It's not just one sick person. It's sick people. Widespread"). In fact, he offers no evidence to dispute that the City *did* impose significant discipline during the years leading up to Plaintiff's arrest. (City Memo. Dkt. 466, p. 11; P. Resp. CSOF, ¶20).[5]

Accordingly, without evidence to show that, as a matter of widespread practice, (1) the City was made aware of circumstances requiring discipline and (2) that the City either failed to investigate or wrongly decided against disciplining officers, Plaintiff cannot establish a widespread practice of failure to discipline. *See Strauss*, *supra*; *see also Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (the gravamen of a *Monell* claim "is not individual misconduct by police officers….but a widespread practice that permeates a critical mass of an institutional body").

**B.      Plaintiff does not defend his failure to identify any actual evidence in response to the City's interrogatories.**

The City's motion also explained that Plaintiff cannot rely on evidence other than Longo's opinions because he did not identify any evidence in his contention interrogatory responses. (City Memo., Dkt. 466, p. 13-14). The City demonstrated that while Plaintiff provided rambling and argumentative answers, he did not identify specific documents by bates stamp and, except for a few scant instances, did not identify specific witness testimony. Of course, Plaintiff cannot prosecute this case with a Google search. He was required to identify *actual evidence*. As Magistrate Judge Fuentes wrote in compelling the answers, Plaintiff must inform the City about his contentions, the theories behind them, and "their evidentiary support." (Dkt. 322, p. 42).

---

[5] In response to this paragraph, Plaintiff wrongly argues the City's annual reports are inadmissible hearsay. They are not. As stated in the fact paragraph, they are supported by the verified report of the City's expert. (CSOF, ¶20).

The City explained that Plaintiff's failure to identify evidence prohibits him from relying on something new now.  (City Memo., Dkt. 466, p. 12).  It is not fair for Plaintiff to dodge the answer and then expect the City to guess how he intends to support his claim.  *See* Dkt 466, Ex. 2, Trans. *Solache/Reyes*.  In response, Plaintiff does not argue this point at all and, therefore, concedes the point.  *See Bonte*, 624 F.3d at 466 (silence leads to concluding a concession).

### C.      The jumbled mass Plaintiff submitted does not establish a widespread practice of failure to discipline.

Plaintiff's only discussion of the factual basis for his theory that the City failed to discipline is limited to the four bullet points on page 59 of his response brief.

Bullet point 1 purports to establish torture committed by Burge and unidentified "officers he led" and is supported by citation to ten different fact statements. Those fact statements merely cite isolated statements from political figures, reports created decades after Plaintiff's arrest, reports related to allegations of torture, unsupported conclusions drawn from court opinions, requests to admit regarding Burge and allegations of physical abuse, the unverified report of his expert, and reports from experts that were not disclosed in this case. (PSOF, ¶¶ 1-10).

Bullet point 2 purports to establish "physical and psychological coercion…to obtain fabricated confessions and eyewitness statements" committed by Guevara and unidentified "officers he led," and is supported by citation to nine different fact paragraphs.  Those fact statements merely cite the National Registry of Exonerations website, newspaper articles, other cases involving Defendant Guevara, including court opinions, testimony, and pleadings (none of which identify a complaint made to CPD), the unverified report of Plaintiff's expert, expert reports from other cases that Plaintiff did not disclose, unsupported conclusions from four CR files, and unsupported conclusions from a 2001 FBI report.  (PSOF, ¶¶ 11-19).

16

Bullet points 3 and 4 purport to establish that three former detectives and other unidentified "corrupt officers" caused wrongful convictions, and that former Sergeant Watts and "corrupt officers under his command" fabricated drug cases on innocent men. For those assertions, Plaintiff relies on the National Registry of Exonerations website and news reports. (PSOF, ¶¶ 25-26).

This is precisely the "jumbled mass" that Rule 56.1 prohibits, and the Court is not required to hunt and peck through a morass of documents to determine whether the bullet points are even supported. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (Finding waiver where the plaintiffs failed to discuss the facts relevant to their claim and stating the Court "will not scour a record to locate evidence supporting a party's legal argument"); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) (and advocate should "make it easy for the court to rule.").

If that were not enough, Plaintiff does not explain how the purported evidence establishes the City's disciplinary practices with any legal argument or authority. Instead, Plaintiff's response brief meanders on with unsupported assertions.[6] Consequently, to the extent the bullet points are supposed to constitute an argument of what evidence supports a widespread practice, it is undeveloped and, therefore, waived. *See Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581, 593 (7th Cir. 1992) (perfunctory and undeveloped arguments are waived).

In any event, the City already addressed in its Memorandum the deficiencies in the purported evidence Plaintiff relies on, and yet Plaintiff provides no counterargument in response.

For instance, Plaintiff cites to the 2016 Police Accountability Task Force Report, the 2017 DOJ report, and 2006 special prosecutors' report. (PSOF, ¶6). The City explained that Plaintiff

---

[6] One example is Plaintiff's strange detour in his response brief regarding the differentiation between "citywide" and "widespread," which does not undermine the City's argument that Plaintiff failed to develop evidence of a municipal policy. (P. Resp., p. 67-68). Another example is Plaintiff's claim that the City did not use the right legal terminology in its motion for summary judgment, even though the City could not be clearer that for all the reasons stated in its Memorandum of Law, "the City is entitled to summary judgment on the entirety of Plaintiff's *Monell* claim." (Dkt. 453).

17

cannot rely on reports that post-date Plaintiff's arrest to establish the City's disciplinary processes in 1993. (City Memo., Dkt. 466, p. 13-14). Plaintiff offers no argument to the contrary.[7] Plaintiff also provides no argument regarding the myriad quotes from elected officials about Burge and/or statements about a "code of silence." The City's Memorandum explained that evidence must be supported with personal knowledge. What Plaintiff mostly cites to, however, appears to be opinions about Burge made decades after the fact.[8] *Id.* at p. 10. Moreover, Plaintiff does not respond to the City's challenge that none of the various statements made over a decade later are probative of the City's disciplinary practices in 1993. (City Memo., Dkt. 466, p. 13).

Added to that, Plaintiff's reliance on the City's responses to requests to admit is overstated. Plaintiff concedes that he was merely requesting the City admit to whether the statement identified in the requests was *made*, not whether the underlying statement was *true*. (P. Resp. CSOF, ¶80). Further, Judge Fuentes did not deem the requests admitted, such that they became incontrovertible evidentiary admissions. Just the opposite, the Court preserved the City's objections and took no position on admissibility, stating, instead, that the Court's approach "leaves the City room to challenge admissibility of the admissions or even their truth later in the case." (Dkt. 322, p. 3-7).

---

[7] The only legal support he includes in his response brief is a reference to the cases of *Simmons v. City of Chicago*, 2017 WL 370844 (N.D. Ill. Aug 28, 2017), regarding the PATF report, and *Daniel v. Cook County*. 833 F.3d F.3d 728 (7th Cir. 2016), regarding the admissibility of a DOJ report unrelated to the City of Chicago, and *Arrington v. City of Chicago*, 2018 WL 620036 (N.D. Ill. Jan 30, 2018), regarding admissibility of DOJ report for a 2016 incident; *LaPorta v. City of Chicago*, 2017 WL 4340094, regarding admissibility of the PATF report and Mayor's 2015 statements for a 2010 incident. Nevertheless, Plaintiff fails to address how either the 2016 PATF report, the 2017 DOJ report, or the former Mayor's 2015 statements are relevant to establishing the City's practices in 1993. Plaintiff also fails to explain how the specific evidence he seeks to rely on here is admissible under either Fed. R. Evid. 801(d)(2)(A-D). Further, in his footnote 17, Plaintiff's reliance on *Estate of McIntosh*, 2002 WL 4448737 (N.D. Ill. Sept. 23, 2022) is misplaced as the Court did not address the admissibility issue.

[8] Plaintiff argues without support that they are "admissions" by the City, but they are not. *See Lopez v. Vidljinovic,* 2016 WL 4429637, at *5 (purported lay opinions and hearsay statements of Mayor Rahm Emanuel concerning an alleged "code of silence" within the CPD and requests made by city council members are inadmissible); *LaFond v. Sturz*, No. 03-C-435-C, 2004 WL 1946404, at *4 (W.D. Wis. Aug. 18, 2004) (city council member's statement was not an admission by the City under Fed. R. Evid. 801(d)(2)(D)).

Plaintiff fails to develop evidence of the truth of the underlying statement for any request to admit. *See* City Resp. PSOAF, ¶¶ 8-9. And, nevertheless, most of them pertain to allegations against Burge, which, for all the reasons explained above, do not establish a widespread practice.

Other evidence Plaintiff relies on includes settlements, newspaper articles, internet searches, experts' reports from other cases which he did not disclose in this case, his expert's own unverified report, and conclusions from documents without foundation to support them, all of which is inadmissible. *See* City Resp. PSOAF, ¶¶ 8,9, 27. Again, Plaintiff offers no legal argument to support the admissibility of any of this purported evidence. Even more, Plaintiff fails to provide a citation to legal authority to show how his purported evidence supports the elements of his *Monell* claim. *See* P. Resp. Memo, p. 58-75; *St. John v. Cach*, LLC, 822 F.3d 388, 392 (7th Cir. 2016) (arguments without legal authority are waived).

## V.      Plaintiff does not offer evidence to support a "code of silence" theory.

To the extent that Plaintiff is pursuing a "code of silence" as a policy that caused him to suffer a constitutional violation, the City's Memorandum explained that Longo's opinion is factually insufficient to establish a widespread practice of a "code of silence" because he did not identify a single example of any circumstance where an officer failed to report another officer pursuant to such a "code." Plaintiff still offers no such example. *See* P. Resp. Memo. Dkt, 489, p, 59-63. Indeed, despite all the bullet points on pages 60-63 of his response brief, Plaintiff does not identify one specific example of such conduct, much less evidence to show a widespread practice before 1993. In fact, most of what is described in the bullet points is dated at least a decade *after* Plaintiff's arrest. *Id*. at p. 60-63. The only reference before 1993 pertains to one isolated statement made by former Superintendent Martin without context (*Id*. at p. 60), which Plaintiff concedes he did not produce in discovery. *See* P. Resp. CSOF, ¶55 (indicating counsel was "recently able to

find a copy"); *Mighty v. Safeguard Props. Mgmt.*, LLC, No. 16 C 10815, 2018 WL 5619451, at *10-11 (N.D. Ill. Oct. 30, 2018) (barring unfair reliance on documents party knew were not produced but were included in response as if they had been properly disclosed).

Moreover, most of the bullet points Plaintiff includes in his response do not cite any evidence at all. *See* P. Resp. Memo., Dkt. 489, p. 60-63. The same is true regarding the fictionalized quote at the top of page 60, claiming "blue does not rat on blue," which Plaintiff attributed to no one and for which he cites no evidence. *See King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017) (failure to cite to the record is a basis to disregard the assertion).

The Court should also disregard any reference to Magistrate Judge Fuentes order as evidence supporting assertions of fact. As explained above, Plaintiff was obligated to adduce evidence supporting the underlying facts for those requests, and he cites to no such evidence here. P. Resp. Memo., Dkt. 489, p. 60-63. *See Lewis v. Dominick's Finer Foods, LLC*, No. 13 C 530, 2015 WL 2128597, at *3 (N.D. Ill. May 5, 2015) (finding memorandum deficient for including factual allegations but not indicating which 56.1 statements support those allegations).

Finally, to the extent the bullet points refer to anything resembling evidentiary material, all but one refer to exhibits rather than the 56.1 submissions. The Court should disregard those arguments as well. *Mervyn v. Nelson Westerberg, Inc.,* 142 F. Supp. 3d 663, 665 (N.D. Ill. 2015) (disregarding facts not supported with citations to the 56.1 submissions). The Court is not required to scour the record to piece together a party's argument. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). That is especially the case here, where Plaintiff has made no effort to identify and explain evidence of a code of silence supported with any legal authority.

## VI.    Plaintiff fails to establish municipal fault and causation.

As the City explained in its opening Memorandum, Plaintiff failed to establish the requisite elements of deliberate indifference and causation.   Plaintiff did not show past constitutional violations similar to his own to show that the City's policymakers were aware of an obvious risk of harm.  *See Thomas v. City of Markham*, No. 16 CV 08107, 2017 WL 4340182, at *3-5 (N.D. Ill. Sep. 29, 2017).   Nor did Plaintiff develop evidence of a deliberate action attributable to the City. *See First Midwest Bank.*, 988 F.3d at 987; *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) ("It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once…the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision").   The City further explained that allegations against Burge cannot establish deliberate indifference because Burge was fired from the police department.

In response, Plaintiff offered the heading, "Cruz Has Established That the City Was On Notice of its Detectives' and Officers' Constitutional Injuries," but left the substance of it blank. (P. Resp. p. 74).   The rest of his argument does not help him because it is devoted to Burge and Andrew Wilson's allegations of torture.   Plaintiff was obligated to show that the City was aware of the same *type of risk* that led to his alleged harm.  *See McGlenn v. Madison Metro. Sch. Dist.*, 738 F. Supp. 3d 1071, 1112 (W.D. Wis. 2024) (citing *Connick v. Thompson*, 563 U.S. 51, 56-57 (2011); *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 412 (1997); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).   But Plaintiff admits he suffered no physical abuse, much less that he was tortured.   (P. Resp. CSOF, ¶42).   Further, Plaintiff does not dispute that Burge was fired, and his complaint that he was not fired sooner is unsupported and ignores that Wilson initially refused to cooperate in OPS's investigation of his claims.   (City Resp. PSOAF,

21

¶8). Ultimately, Plaintiff offers nothing to show he developed evidence different than what Wilson presented in his own civil suit, which resulted in a finding of no *Monell* liability. *Wilson v. City of Chi.*, 6 F.3d 1233, 1240-41 (7th Cir. 1993).

And, finally, the City established in its Memorandum that Plaintiff did not develop evidence to show that the Defendant Officers and Guevara were motivated by any specific City policy in investigating Plaintiff's case. *Monell* requires a "rigorous" causation standard, demanding a "direct causal link between the challenged municipal action and the violation of [plaintiff's] constitutional rights." *Stockton v. Milwaukee Cnty*, 44 F.4th 605, 617 (citing *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (internal quotations omitted).

Plaintiff's only defense is to deny that the City argued causation in its Memorandum. Yet the City showed that Plaintiff developed no evidence that the Defendant Officers allegedly violated his rights because of some City policy. (City Memo., Dkt. 466, p. 18). The City supported that argument with legal authority, showing summary judgment should be granted because Plaintiff failed to develop evidence that the Defendant Officers believed they could violate Plaintiff's rights without consequence, and showed the City imposed significant discipline in the years leading up to Plaintiff's arrest. (*Id*). *See Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1176 (N.D. Ill. 2022); *Lopez v. Vidljinovic*, No. 1:12-cv-5751, 2016 WL 4429637, at *5 (N.D. Ill. Aug. 22, 2016) (finding no evidence from defendants' disciplinary history to establish causal link).

## VII. Plaintiff failed to develop evidence to support any other alleged policy.

### A. Disclosure of exculpatory evidence.

As explained in Section III above, it is unclear if Plaintiff is arguing that he developed sufficient evidence to establish any other policy, practice, or custom. Nevertheless, Plaintiff argues an alleged "suppression problem" in his response brief, so the City addresses that here.

22

The City's Memorandum explained that Plaintiff failed to develop evidence of a widespread practice of failing to disclose exculpatory evidence. Longo failed to identify any other instance where detectives withheld evidence in the way Plaintiff alleges occurred in his case. He also conflated the *Jones* and *Palmer* cases (litigation arising a decade before Plaintiff's arrest) that concerned the production of "street files." Those cases are irrelevant here because Plaintiff does not allege a "street file" in this case. (P. Resp. CSOF, ¶62). While Longo identified other civil cases (*Fields*, *Rivera*, and *Brown*), Plaintiff conceded he did not discuss those cases in his report and, at his deposition, Longo did not recall the facts of those cases or what evidence was alleged to have been withheld, surmising he may have merely read about them in Plaintiff's complaint and acknowledging that a complaint is not evidence. (P. Resp. CSOF, ¶¶ 66, 67).

In response, Plaintiff ignores the City's arguments about Longo but asserts his own facts related to *Fields* and *Rivera*, as well as another case, *Kluppleberg v. City of Chicago*.[9] In doing so, however, Plaintiff misleads the Court. *Fields*, *Rivera*, and *Kluppleberg* all involved allegations of "street files," meaning the plaintiff alleged that specific documents in the City's possession were withheld in so-called "street files." *Fields v. City of Chi.*, 981 F.3d 534, 542 (7th Cir. 2020) (alleging policy to withhold "street files"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1056 (N.D. Ill. 2018) (identifying multiple *Monell* theories, including maintaining "street files"); *Kluppelberg v. Burge*, 276 F. Supp. 3d 773, 778 (N.D. Ill. 2017) (discussing alleged policy or practice of withholding "street files"). Here, Plaintiff concedes there is no "street file" in his case. (P. Resp. CSOF, ¶62). He does not even allege that the City withheld any documents in his possession. (P.

---

[9] Indeed, the only citation to the 56.1 submissions in Plaintiff's response is his response to the City's statement of facts, at ¶21-29. As explained above, the paragraphs merely lay out the written directives. Plaintiff impermissibly added facts in those paragraphs related to other litigation that did not refute the stated fact about the written directive, ostensibly to deny the City an opportunity to respond and dispute them. Further, any cites to exhibits should be disregarded, as the parties are obligated to cite to the 56.1 submissions.

Resp., p. 40). Moreover, Plaintiff ignores that *Palmer II* found that the class plaintiffs failed to develop evidence to support their claim. *Palmer v. City of Chicago*, 806 F.2d 1316, 1320-21 (7th Cir. 1987) (plaintiffs "went on a fishing expedition, and the pond was empty"). Thus, Plaintiff's assertion regarding a "suppression problem" is unsupported. Further, Plaintiff does not identify any cases where the detectives failed to record the steps of their investigation, as Plaintiff claims here, to support the inference of any widespread practice.

To the extent Plaintiff is attempting to establish deficiencies in the City's written policies, that argument is also undeveloped. (Dkt. 491, p. 70-71). He did not present evidence or argument that the City was on notice of and consciously disregarded those deficiencies or explain how they caused him to suffer a constitutional violation. (*Id*). And finally, Plaintiff's argument regarding Guevara "not getting the memo" and being "a one-man suppression machine" is also conspicuously unsupported by any fact statement. (*Id*. p. 71). This Court should ignore all of Plaintiff's bluster and find Plaintiff has not developed this *Monell* theory.

### B.      Detective supervision and training.

Plaintiff does not distinguish in his response between a failure to supervise and a failure to discipline, which is addressed above. Further, Plaintiff makes no argument about an alleged lack of an "early warning system," thereby abandoning that theory.

To the extent Plaintiff is arguing a policy of failure to train, the City explained in its Memorandum that Longo's opinion was insufficient to establish *Monell* liability because he did not identify the City's training or any particular flaw or how it should have been improved. (City Memo, Dkt, 466, p. 23-24). In response, Plaintiff still does not describe the training or how it was lacking.[10] Nor does he present evidence that the City's policymakers knew of past or probable

---

[10] In his response to the City's statement of facts, Plaintiff disputes that training was provided because (1) the training materials the City produced are dated 1996, (2) the training histories did not include a specific

24

future constitutional violations to put the City on notice regarding deficiencies in its training or evidence to show a constitutional violation occurred in this case because of a lack of training. Without that, he cannot establish a failure to train. *Abbas v. City of Hobart*, No. 24-2464, 2025 WL 2945682, *2-3 (7th Cir. Oct. 17, 2025) (affirming dismissal of failure to train theory where Plaintiff failed to present evidence that City knew its training program was deficient or that a lack of training caused the plaintiff's injury).

### C. Any other alleged practice of misconduct.

The City's memorandum explained that despite claiming otherwise at his deposition, Longo did not offer an opinion to establish a practice of detectives fabricating evidence, coercing witnesses and suspects, or committing perjury. Plaintiff does not contend with this argument in his response brief. Nor does Plaintiff direct the Court to evidence establishing that misconduct occurred in any specific case. The same is true for other misconduct encapsulated in Plaintiff's catchall, "Misconduct A-H." Plaintiff does not point the Court to specific cases to show the City was on notice of the myriad misconduct he alleges and that it deliberately chose to condone or disregard it. Thus, to the extent Plaintiff intends to establish liability on any disparate catchall theory of misconduct, he has woefully failed to meet the elements.

### CONCLUSION

For the foregoing reasons, the City respectfully requests this Honorable Court grant the City's motion for summary judgment in its entirety.

Dated: March 11, 2026                                     Respectfully Submitted,

---

reference to *Brady*, and (3) some of the individual defendants were unable to recall their training at their depositions over 30 years later. Plaintiff fails to make any of these arguments in his response brief, and so they are waived. *See Laborers' Int'l Union v. Caruso,* 197 F.3d 1195, 1197 (7th Cir. 1999). Nevertheless, Plaintiff concedes that (1) the City's 30(b)(6) witness testified he did not know of any difference in training before 1996; (2) Plaintiff cannot establish a foundation for his reading of the detectives' training histories, and (3) certainly the Defendants' lack of memory about their training decades later is not prove they were not trained.

/s/ *Catherine M. Barber*
Catherine M. Barber
Special Assistant Corporation Counsel
*One of the Attorneys for City of Chicago*

Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Lauren M. Ferrise
Sabrina Scardamaglia
ROCK FUSCO & CONNELLY, LLC
333 W. Wacker Dr., 19th Floor
Chicago, IL 60606
(312) 494-1000
cbarber@rfclaw.com

26